# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| Shenzhen Zehuijin Investment Center (Limited Partnership), | ) Case No. 24-6215 |
| Petitioner-Appellee, | ) |
| v. | ) **PETITIONER-APPELLEE'S OPPOSITION TO RESPONDENT-APPELLEE'S MOTION FOR EXTENSION OF TIME** |
| Liu Yingkui, | ) |
| Respondent-Appellant. | ) |

Petitioner-Appellee Shenzhen Zehuijin Investment Center ("SZIC") opposes Respondent-Appellant Liu Yingkui's ("Liu") motion for a second 30-day extension of his opening brief deadline. The Court may extend the briefing deadline for "a showing of diligence and substantial need." Ninth Circuit Rule 31-2.2(b). However, "[m]ultiple motions for extension of time to file a brief are disfavored." Cir. Advisory Comm. Note to Rule 31-2.2. Here, Liu fails to establish the requisite substantial need or diligence necessary to obtain the requested second extension. Liu provides no reason for his desire for additional time other than one of Liu's attorneys' competing obligations to: (i) his other clients in an entirely unrelated International Trade Commission investigation in which an evidentiary hearing is scheduled to take place five months from now (in May 2025); and (ii) his family over the Thanksgiving holiday (which took place three weeks ago), and the

Christmas and Hannukah holidays, which take place *after* the current December 23, 2024 deadline for Liu's opening brief.[1]  Furthermore, Liu and his attorneys knew or reasonably should have known of the circumstances about which they now complain weeks, if not months, ago.  Separately, even if, *arguendo*, Liu were to satisfy Rule 31-2.2(b)'s requirements (he does not), the Court should deny the motion for a second 30-day extension of Liu's opening brief deadline because it is prejudicial to SZIC's interests in collecting on its confirmed arbitral award.

## I.    Liu Fails to Establish Diligence Or a Substantial Need for a Second 30-Day Extension.

Nothing in Liu's motion establishes the necessary "diligence" or a "substantial need" for his second requested 30-day extension of his opening brief deadline.  Ninth Circuit Rule 31-2.2(b).

*First*, Liu does not demonstrate a valid reason that he cannot timely file an opening brief within the allotted two-and-a-half months' time between noticing his appeal and the current deadline.  Liu merely claims in conclusory fashion that one of his attorneys:  (i)  also represents other clients in an entirely unrelated International Trade Commission investigation scheduled for evidentiary hearings five months from now, in May 2025; and (ii) has family obligations during the

---

1.  Christmas Eve falls on December 24, 2024 and Christmas Day falls on December 25, 2024.  This year, Hannukkah begins the evening of December 25, 2024 and ends January 2, 2025.

Thanksgiving holiday (which took place three weeks ago) and the Christmas and Hannukah holidays (which fall *after* the current December 23, 2024 deadline for Liu's opening brief). (*See* Declaration of Anthony J. Dain, dated Dec. 16, 2024 ("Dain Decl."), ¶¶ 8-10.) "A conclusory statement as to the press of business does not constitute a showing of diligence and substantial need." *See* Ninth Circuit Rule 31-2.2(b). Notably, Liu's motion and supporting declaration do not say that his attorneys are unable or unavailable to timely complete Liu's opening brief.

*Second*, Liu has not established the "diligence" required by Rule 31-2.2(b). He does not make any showing of diligence other than his counsel's conclusory representation that he has been "diligently researching and drafting." (Dain Decl. ¶ 11.)

*Third*, Liu did not diligently request an extension. Liu and his attorneys have known about the circumstances they now argue constrain one of his attorneys' time even before Liu noticed his appeal on October 9, 2024. (*See* Dain Decl. ¶¶ 8-10 (referencing an investigation that commenced in August and annual holidays).) Liu also fails to acknowledge that these circumstances are partially of his and his attorneys' own making. By the time the Clerk issued the time schedule order (ECF No. 37), Liu and his counsel should have been aware that his opening brief was due on November 23, 2024, that one of his attorneys had pre-existing and foreseeable work and holiday commitments, and that Rule 31-2.2 clearly instructs

3

that a streamlined extension cannot exceed 30 days. Nonetheless, Liu waited until November 15, 2024 to submit his first request for a streamlined extension—requesting the Court to move his briefing deadline to no later than December 2024—and waited until now to seek the new January 2025 deadline that he desires. Liu sought the current December 23, 2024 deadline and must manage his deadline in this and other cases.

## II. The Requested Extension Will Prejudice SZIC's Interests.

Even if, *arguendo*, Liu were to establish a "substantial need" and "diligence" (he does not), the Court should deny his motion because the requested second 30-day extension will prejudice SZIC's interests.

SZIC has a strong interest in resolving this appeal as expeditiously as possible to put an end to Liu's years-long efforts to delay and avoid enforcement of an arbitration award entered in SZIC's favor in 2021. Liu brought multiple unmeritorious challenges to that award and to enforcement judgments in Beijing courts, each of which the Beijing courts rejected. (Exhibit A, at 4.) SZIC then attempted to enforce the award in Singapore, where the court issued yet another judgment in favor of SZIC and rejected Liu's challenge to the award. (Exhibit A, at 4-5.) SZIC subsequently commenced proceedings against Liu in Virginia based on evidence that, following the Southern District of California Court's entry of its Order Granting Petition to Confirm Arbitration Award and Denying Cross-Motion

4

to Dismiss Or Stay below, Liu attempted to transfer his assets in Virginia to avoid anticipated judgment enforcement and to hide his assets out of SZIC's reach. (Exhibit B.)

It is apparent that Liu's latest request to extend his deadline for another 30-days is merely a part of Liu's ongoing bad-faith efforts to avoid enforcement and delay SZIC's ability to collect on its arbitration award.

## CONCLUSION

For the reasons set forth above, SZIC respectfully requests that the Court deny the Respondent-Appellant's motion for a second extension of his opening brief deadline.

Dated: Los Angeles, California     HUGHES HUBBARD & REED LLP
       December 18, 2024

                              By: /s/ Yi-Chin Ho
                                   Yi-Chin Ho
                                   Meaghan Gragg
                                   1999 Avenue of the Stars, 9th Floor
                                   Los Angeles, California 90067-4620
                                   Telephone: (213) 613-2800
                                   Fax: (213) 613-2950
                                   yichin.ho@hugheshubbard.com
                                   meaghan.gragg@hugheshubbard.com

                                   Counsel for Petitioner-Appellee
                                   Shenzhen Zehuijin Investment Center

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with Fed. R. App. P. 27(d) and Circuit R. 27-1(d), in that it was prepared using Times New Roman 14-point font, contains 941 words, and does not exceed 20 pages.

/s/ Yi-Chin Ho
Yi-Chin Ho

6

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| Shenzhen Zehuijin Investment Center (Limited Partnership), | ) Case No. 24-6215 ) |
| Petitioner-Appellee, | ) **DECLARATION OF YI-CHIN HO IN** ) **SUPPORT OF PETITIONER-** |
| v. | ) **APPELLEE'S OPPOSITION TO** ) **RESPONDENT-APPELLEE'S MOTION** ) **FOR EXTENSION OF TIME** |
| Liu Yingkui, | ) ) |
| Respondent-Appellant. | ) ) |

I, Yi-Chin Ho, an attorney duly admitted to practice law before the courts of the State of California, hereby declare under penalty of perjury:

1.      I am a partner at Hughes Hubbard & Reed LLP, counsel for Petitioner-Appellee Shenzhen Zehuijin Investment Center ("SZIC") in this action. I am fully familiar with the matters set forth in this declaration.

2.      I submit this declaration in support of SZIC's Opposition to Respondent-Appellant Liu Yingkui's ("Liu") Motion for Extension of Time.

3.      Attached hereto as Exhibit A is a true and correct copy of the Southern District of California Court's Order Granting Petition to Confirm Arbitration Award and Denying Cross Motion to Dismiss Or Stay, dated September 10, 2024.

4.    Attached hereto as Exhibit B is a true and correct copy of the

Complaint filed by SZIC against Liu and the Liu Family 2024 Nevada Trust, dated

October 31, 2024.


I, YI-CHIN HO, hereby declare under penalty of perjury that the foregoing

is true and correct.

Dated: Los Angeles, California
          December 18, 2024

                                    /s/ Yi-Chin Ho
                                    Yi-Chin Ho

2

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHEN ZEHUIJIN INVESTMENT CENTER,<br><br>                              Petitioner,<br><br>v.<br><br>LIU YINGKUI, et al.,<br><br>                              Respondents. | Case No. 24-cv-372-MMA-DEB<br><br>**ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD; AND**<br><br>[Doc. No. 1]<br><br>**DENYING CROSS-MOTION TO DISMISS OR STAY**<br><br>[Doc. No. 12] |

        On February 26, 2024, Shenzhen Zehuijin Investment Center ("Petitioner" or "SZIC") filed a Petition to confirm an arbitration award against Respondents Liu Yingkui ("Respondent Liu") and Zhang Xin ("Respondent Zhang"). Doc. No. 1 ("Pet."). On April 30, 2024, Respondent Zhang filed a response in opposition to the Petition. Doc. No. 9. On May 16, 2024, Respondent Liu filed a response in opposition to the Petition as well as a cross-motion to dismiss or stay the Petition. Doc. No. 12. Both the Petition and Respondent Liu's cross-motion are fully briefed. *See* Doc. Nos. 16, 20, 25.[1] The Court

---

[1] Respondent Zhang was granted leave to file a surreply. Doc. No. 24.

1  found these matters suitable for disposition on the papers and without oral argument

2  pursuant to Civil Local Rule 7.1.d.1.  Doc. No. 13.  For the reasons set forth below, the

3  Court **GRANTS** SZIC's Petition and **DENIES** Respondent Liu's cross-motion to dismiss

4  or stay.

## I. INTRODUCTION

6  Petitioner SZIC asks the Court to confirm a foreign arbitration award issued on

7  March 22, 2021, by the Beijing Arbitration Commission against Respondent Liu.  Except

8  where otherwise noted, the facts contained in this background section are derived from

9  the Petition and its attachments, including the March 22, 2021 award, Doc. No. 1-7,[2] and

10  are not to be construed as factual findings by this Court.

## A.  Factual Background

12  In September 2017, SZIC entered into a one-year loan agreement with Respondent

13  Liu and Sinowel Communication Technology Co., Ltd (the "Loan Agreement").  Pet.

14  ¶¶ 11–12.  Pursuant to the Loan Agreement, SZIC was to loan Respondent Liu

15  160,000,000 Yuan, which was to be used to repurchase and release the VIE structure of

16  Beijing Sinowel Communication Technology Co., Ltd. and Beijing Sinowel Asset

17  Administration Co., Ltd. (collectively, the "Target Company") Pet. ¶ 11; Pet. Ex. D at

18  56.[3]

19  The Loan Agreement provides that any dispute between the parties was to be

20  governed by the laws of China, and that if amicable negotiations fail, "any party shall

21  have the right to file a lawsuit with Beijing Arbitration Commission, and the dispute shall

22  be settled through arbitration in Beijing in accordance with the rules of Beijing

23  Arbitration Commission."  Pet. ¶¶ 14–15; *see also* Pet. Ex. A at 20.

---

26  [2] The Court refers to all exhibits appended to the declarations submitted in this matter by the number or letter identified.  For example, the Court refers to Doc. No. 1-7 as "Petitioner's Exhibit D" or "Pet. Ex. D."

27  [3] Unless otherwise noted, all citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Also in 2017, two related agreements were executed.  First, SZIC, Respondent Liu, and the Target Company entered into a Cooperation Agreement.  Pet. ¶ 16.  The Cooperation Agreement provides that when SZIC loans Respondent Liu 160,000,000 Yuan under the Loan Agreement, "SZIC's creditor's rights could be converted into equities and that, after converting into equities, Respondent should transfer 13.79% of the Target Company to SZIC which, after transfer is final, should fully settle the principal and interest paid pursuant to the Loan Agreement."  *Id.*

Second, SZIC, the Target Company, and Ningbo Zhenrong entered into an Investment Agreement, pursuant to which Ningbo Zhenrong was to extend a loan of 120,000,000 Yuan to the Target Company for one year to be repaid at 8% interest only if the equity conversion of the Target Company failed.  *Id.* ¶ 17.  The parties to the Investment Agreement simultaneously drafted an Investment Memorandum, outlining the relevant investment returns and the fund relationship between SZIC and Respondent Liu. *Id.*

The funding under the Loan Agreement began on December 22, 2017, and was completed in four installments: two payments on December 22, 2017, in the amounts of 120,000,000 Yuan and 20,000,000 Yuan; 10,000,000 Yuan on April 17, 2018; and 10,000,000 Yuan on May 3, 2018.  Pet. ¶¶ 19, 21; Doc. No. 1-3 ¶ 10; Pet. Ex. D at 47. These payments were made "by SZIC individually and through third parties" including, as relevant here, Ningbo Zhenrong, "as outlined and planned for in the Loan Agreement." Pet. ¶ 20.

One year later, in December 2018, the loan matured, and Respondent Liu failed to repay the liabilities outlined in the Loan Agreement.  Pet. ¶¶ 11, 20; Pet. Ex. D at 47.

**B.     Arbitration History and Record**

On July 23, 2020, SZIC submitted an arbitration dispute to the Beijing Arbitration Commission ("BAC").  Pet. Ex. D at 46.  The arbitration hearing was held on November 12, 2020, before a tribunal of three arbitrators (the "Tribunal").  *Id.*  On March 22, 2021, the Tribunal found in SZIC's favor and awarded SZIC: 140,000,000 Yuan, the principal

1   pursuant to the Loan Agreement; 8% interest totalling 11,200,000 Yuan; liquidated

2   damages at the rate of 5% per day from July 10, 2020 to the date of actual payment;

3   lawyer's fees in the amount of 400,000 Yuan; and 80% of the arbitration fees, totalling

4   1,080,966.27 Yuan (the "Award"). *Id.* at 65.  The Tribunal ordered that Respondent Liu

5   fully perform his obligations under the Award within 15 days of service of the Award.

6   *Id.*

7       On May 8, 2021, an Enforcement Notice issued and was served on Respondent

8   Liu, requiring a freeze and transfer of 152,680,966.27 Yuan.  Pet. ¶ 16.

9       On June 2, 2021, the Beijing Fourth Intermediate People's Court rejected

10  Respondent Liu's application to revoke the Award. Pet. ¶ 20; Pet. Ex. E at 19.

11      On August 16, 2021, the Beijing Second Intermediate People's Court rejected

12  Respondent Liu's objection to the Enforcement Notice and request to unfreeze his assets

13  on the grounds that he never received notice.  Pet. ¶ 33; Pet. Ex. F.  However, this court

14  unfroze certain bank accounts "because the sale of [Respondent Liu's] stocks and other

15  freezing measures satisfied the debts he owed to SZIC such that additional asset freezes

16  were unnecessary." *Id.*

17      On September 9, 2021, the Beijing Second Intermediate People's Court rejected

18  Respondent Liu's application for non-enforcement of the Award.  Pet. ¶ 34; Pet. Ex. G at

19  19.

20      On November 2, 2022, SZIC's application to enforce the Award in Singapore

21  pursuant to § 29(l) of the International Arbitration Act of 1994 was granted by the

22  Assistant Registrar for the General Division of the High Court of the Republic of

23  Singapore.  Pet. ¶ 36; Pet. Ex. I at 2.

24      On November 15, 2022, the Fourth Branch of the Beijing Municipal People's

25  Procuratorate denied Respondent Liu's petition for supervision of the Beijing Fourth

26  Intermediate People's Court decision.  Pet. ¶ 35; Pet. Ex. H at 5.

27      On February 20, 2023, Respondent Liu's application to set aside the enforcement

28  order in Singapore was denied.  Pet. ¶¶ 37–38; Pet. Ex. J.

1        On March 3, 2023, the High Court of the Republic of Singapore issued a judgment

2    in SZIC's favor and ordered Respondent Liu to pay all sums due.  Pet. ¶ 39; Pet. Ex. K.

3        On April 5, 2023, the High Court of the Republic of Singapore denied Respondent

4    Liu's appeal.  Pet. ¶ 40; Pet. Ex. L.

## II. LEGAL STANDARD

6        Confirmation of an arbitration award "is a summary proceeding that converts a

7    final arbitration award into a judgment of the court."  *See Ministry of Def. & Support for*

8    *the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc*. ("*Cubic Def.*"),

9    665 F.3d 1091, 1094 n.1 (9th Cir. 2011).  Once an award is confirmed, it has the same

10   force and effect as a judgment in a civil action and may be enforced by any means

11   available to enforce civil judgments.  *Id.*  The burden of proof in a proceeding to confirm

12   an arbitration award is on the party defending against enforcement.  *See Empresa*

13   *Constructora Contex Limitada v. Iseki*, 106 F.Supp.2d 1020, 1024 (S.D. Cal. 2000)

14   (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*

15   *(RAKTA)*, 508 F.2d 969, 973 (2nd Cir. 1974)).

16        "Confirmation of foreign arbitration awards is governed by the Convention on the

17   Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T.

18   2517, known as the New York Convention, and federal law implementing the

19   Convention, 9 U.S.C. §§ 201–208."  *Cubic Def.*, 665 F.3d at 1095.  After the United

20   States entered into the New York Convention, Congress enacted Chapter Two of the

21   Federal Arbitration Act ("FAA"), 9 U.S.C. § 201–208, "to provide for the effective and

22   efficient resolution of international arbitral disputes."  *Day v. Orrick, Herrington &*

23   *Sutcliffe, LLP*, 42 F.4th 1131, 1133 (9th Cir. 2022).  The New York Convention is

24   intended "to encourage the recognition and enforcement of commercial arbitration

25   agreements in international contracts and to unify the standards by which agreements to

26   arbitrate are observed and arbitral awards are enforced in signatory countries."  *Glencore*

27   *Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1120 (9th Cir.

28   2002) (citations omitted).

1    Within three years after an award falling under the New York Convention is made,

2    "any party to the arbitration may apply to any court having jurisdiction . . . for an order

3    confirming the award as against any other party to the arbitration." 9 U.S.C. § 207.

4    "Under the Convention, [a] district court's role in reviewing a foreign arbitral award is

5    strictly limited." *Changzhou AMEC E. Tools & Equip. Co., Ltd. V. E. Tools & Equip.,*

6    *Inc.*, No. EDCV 11-00354, 2012 U.S. Dist. LEXIS 106967, 2012 WL 3106620, at *14

7    (C.D. Cal. 2012) (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,

8    126 F.3d 15, 19 (2d Cir.1997) (internal quotation marks omitted)); *see also Shanghai Lan*

9    *Cai Asset Mgmt. Co. v. Yueting*, No. CV 18-10255 SJO (MRWx), 2019 U.S. Dist. LEXIS

10   217634, at *7 (C.D. Cal. Mar. 26, 2019). "The court shall confirm the award unless it

11   finds one of the grounds for refusal or deferral of recognition or enforcement of the

12   award specified" in the Convention. 9 U.S.C. § 207. The defenses are construed

13   narrowly and the party opposing recognition or enforcement bears the burden of

14   establishing that a defense applies. *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832,

15   836 (9th Cir. 2010). "The Convention and its implementing legislation have a pro-

16   enforcement bias, a policy long-recognized by the Supreme Court." *Glencore Grain*, 284

17   F.3d at 1120. Thus, the burden on the party seeking to avoid enforcement of an award "is

18   substantial." *Polimaster*, 623 F.3d at 836 (internal citation omitted).

### III. EVIDENTIARY OBJECTIONS

20   As a preliminary matter, the parties have filed numerous evidentiary objections to

21   the various declarations submitted in this matter. *See* Doc. Nos. 9-2, 12-4, 17, 21, 27. It

22   is not entirely clear how the Federal Rules of Evidence factor into this proceeding. The

23   FAA provides that all applications related to arbitration awards "shall be made and heard

24   in the manner provided by law for the making and hearing of motions, . . . ." 9 U.S.C.

25   § 6. This includes petitions to compel arbitration, *id.* § 4, and petitions to confirm,

26   modify, or vacate an award, *id.* §§ 9–12. The same applies for petitions to compel, *id.*

27   § 206, and confirm, *id.* § 207, foreign arbitration awards falling under the New York

28   Convention, *id.* § 208 (providing that Chapter 1, 9 U.S.C. §§ 1–16, applies to foreign

arbitration proceedings brought under Chapter 2). The Supreme Court has noted that "[a] directive to a federal court to treat arbitration applications 'in the manner provided by law' for all other motions is simply a command to apply the usual federal procedural rules. . . ." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (quoting 9 U.S.C. § 6); *see also* Fed. R. Civ. P. 81(a)(6)(B) (providing that the Federal Rules of Civil Procedure apply in proceedings "relating to arbitration" brought under Title 9 of the United States Code).

When faced with a petition or motion brought pursuant to the FAA, many courts apply a standard similar to the summary judgment standard under Rule 56. *Thompson v. La Petite Acad., Inc.*, No. 2:22-cv-04348-AB-JPR, 2023 U.S. Dist. LEXIS 115329, at *8 (C.D. Cal. Apr. 28, 2023) (quoting *Alvarez v. T-Mobile USA, Inc.*, 2011 U.S. Dist. LEXIS 146757, 2011 WL 6702424 at * 3 (E.D. Cal. Dec. 21, 2011)). Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (explaining that at summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial"); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial."). As a result, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez—Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)). Consequently, courts have recognized that evidentiary objections on grounds such as speculation, hearsay, and lack of authentication are inappropriate "where it is apparent that the evidence is capable of being reduced to admissible evidence at trial." *Thompson*, 2023 U.S. Dist. LEXIS 115329, at *8 (quoting *Alvarez*, 2011 U.S. Dist. LEXIS 146757, at *10 (itself quoting *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011))). With this in mind, the Court turns to each set of objections.

**A.    Respondents' Objections to Petition Declaration**

To begin, Respondents Zhang and Liu object to several paragraphs in Pu Gang's declaration, Doc. No. 1-3 ("Gang Decl."), which Petitioner submitted in support of the Petition.  *See* Doc. No. 9-1; Doc. No. 12-4.  Petitioner filed a response to Respondent Liu's objections.  Doc. No. 18.

Respondent Liu objects to the entire declaration in a footnote, asserting that it is unduly prejudicial and confusing and therefore subject to exclusion pursuant to Federal Rule of Evidence 403.  Doc. No. 12-4 at 1 fn.1.  The Court **OVERRULES** this objection.  Pu Gang's declaration is not, as a whole, unduly prejudicial or confusing.  And Respondent Liu's position that he was denied due process in the underlying arbitration has no bearing on the admissibility of this declaration.

The Court **OVERRULES** the objections to ¶ 2.  Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the terms of the Loan Agreement.  Fed. R. Evid. 602.  His testimony as to the terms of the Loan Agreement does not contain any legal conclusions, Fed. R. Evid. 703, nor does this paragraph contain testimony on an "ultimate issue," or is otherwise subject to exclusion under Federal Rule of Evidence 704.

The Court **OVERRULES** the objections to ¶ 3.  This paragraph does not contain any legal conclusions.  Moreover, Pu Gang makes this statement based on his personal knowledge of these facts.  Fed. R. Evid. 701.  Further, Pu Gang does not attempt to lay foundation for any evidence by way of this paragraph.  Fed. R. Evid. 901.

The Court **SUSTAINS IN PART** the objections to ¶ 4.  This paragraph does not contain any legal conclusions.  However, to the extent Pu Gang speaks to the content and terms of the Loan Agreement and Cooperation Agreement, his testimony is barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **SUSTAINS IN PART** the objections to ¶ 6.  Federal Rule of Evidence 611(a) has no apparent applicability here.  This paragraph is not argumentative.  Fed. R. Evid. 403.  Pu Gang does not attempt to lay foundation for any evidence by way of this

paragraph.  Fed. R. Evid. 901.  And Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending and agreements.  Fed. R. Evid. 602.  Further, his testimony as to these events is not a legal conclusion, Fed. R. Evid. 703, nor is this impermissible testimony on an "ultimate issue," Fed. R. Evid. 704.  However, to the extent Pu Gang speaks to the content and terms of the Loan Agreement and Investment Agreement and Memorandum, his testimony is barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 8.  Federal Rule of Evidence 611(a) has no apparent applicability here and this paragraph is not argumentative.  Fed. R. Evid. 403.  Further, Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending under the Loan Agreement.  Fed. R. Evid. 602.  And his testimony as to these events does not contain any legal conclusions, Fed. R. Evid. 703, nor is it impermissible testimony on an "ultimate issue," Fed. R. Evid. 704.

The Court **SUSTAINS** the objections to ¶ 9.  The best evidence rule prohibits Pu Gang from testifying to the content and terms of the Loan Agreement.  Fed. R. Evid. 1002.

The Court **SUSTAINS IN PART** the objections to ¶ 10.  Federal Rule of Evidence 611(a) has no apparent applicability here.  This paragraph is not argumentative.  Fed. R. Evid. 403.  Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending under the Loan Agreement.  Fed. R. Evid. 602.  His testimony as to these events is not a legal conclusion, Fed. R. Evid. 703, nor is this an "ultimate issue," Fed. R. Evid. 704.  However, to the extent Pu Gang offers testimony as to the content of the Loan Agreement, Cooperation Agreement, and Investment Agreement and Memorandum, his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 11.  The Court finds that this paragraph is not unduly prejudicial, confusing, or argumentative, and that it contains no

1   legal conclusions.  Fed. R. Evid. 403.  Additionally, Federal Rule of Evidence 611(a) has

2   no apparent applicability here.

3   The Court **SUSTAINS** the objections to ¶¶ 13, 14, and 16.  The content of the

4   documents in the underlying arbitration record, including the Award and the Enforcement

5   Notice, are subject to the best evidence rule.  Fed. R. Evid. 1002.

6   The Court **OVERRULES** the objections to ¶ 17.  The Court finds that this

7   paragraph is not unduly prejudicial, confusing, or argumentative.  Fed. R. Evid. 403.

8   Additionally, Federal Rule of Evidence 611(a) has no apparent applicability here.

9   Finally, this paragraph contains no legal conclusions.  Fed. R. Evid. 703.

10  The Court **OVERRULES** the objections to ¶ 18.  This paragraph is not

11  argumentative or subject to exclusion under Federal Rules of Evidence 403 or 611(a).

12  The Court **OVERRULES** the objections to ¶ 19.  This paragraph is not

13  argumentative or unduly prejudicial, and it contains no legal conclusions.  Fed. R. Evid.

14  403.  Further, Federal Rule of Evidence 611(a) has no apparent applicability here.

15  The Court **SUSTAINS IN PART** the objections to ¶¶ 20, 22, 24, 30.  These

16  paragraphs are not argumentative, nor do they contain any legal conclusions.  Fed. R.

17  Evid. 403.  Moreover, Pu Gang has sufficient personal knowledge of the underlying

18  events, including the history of the arbitration.  Fed. R. Evid. 602.  However, to the extent

19  Pu Gang seeks to testify to the content of the documents in the arbitration record, his

20  statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

21  **B.   Petitioner's Objections to Opposition and Cross-Motion Declarations**

22  Next, Petitioner objects to the four declarations Respondent Liu offers in support

23  of his opposition and cross-motion.  Doc. No. 17.  Respondent Liu filed a response in

24  opposition to these objections.  Doc. No. 22.

25  ***1.   Ding Declaration***

26  Petitioner objects to paragraphs in Ding Zhexuan's declaration.  Doc. No. 12-1

27  ("Ding Decl.").  Ding Zhexuan was the legal director of the Target Company from

28  December 2015 to October 2020.  Ding Decl. ¶ 4.

1    The Court **OVERRULES** the objections to ¶¶ 6 and 8.  Out-of-court statements

2  made by a representative of the opposing party are not hearsay.  Fed. R. Evid.

3  801(d)(2)(A).

4    The Court **SUSTAINS** the objection to ¶ 9.  The Court finds that this paragraph—

5  wherein Ding Zhexuan recounts a phone conversation with Arbitrator Zhan Hui—

6  contains hearsay and does not fall within the residual exception to hearsay.  Fed. R. Evid.

7  807.  Respondent Liu explains that Ding Zhexuan was Respondent Liu's arbitration

8  attorney and is an officer of the court and therefore that his statements carry a sufficient

9  guarantee of trustworthiness.  Doc. No. 11 at 2–3.  But Ding Zhexuan does not declare

10  that he was Respondent Liu's arbitration attorney or that he is an officer of the court.[4]

11  Further, these out-of-court statements were not made during other judicial or quasi-

12  judicial proceedings.  Accordingly, Respondent Liu fails to offer sufficient guarantees of

13  trustworthiness on this basis.  Fed. R. Evid. 807(a)(1).  Even assuming Respondent Liu

14  offered sufficient guarantees of trustworthiness, he fails to explain how this evidence is

15  more probative than any other evidence that he could obtain through reasonable efforts.

16  Fed. R. Evid. 807(a)(2).  And it is not clear to the Court that this evidence could

17  nevertheless be reduced to admissible form at trial.

18    The Court **OVERRULES** the objections to ¶ 10.  Ding Zhexuan makes his

19  declaration on personal knowledge and as a percipient witness.  Fed. R. Evid. 602, 901.

20    ### 2.   *Zimmerman Declaration*

21    Petitioner objects to paragraphs in James M. Zimmerman's declaration.  Doc.

22  No. 12-2 ("Zimmerman Decl.").  Mr. Zimmerman is an attorney licensed to practice in

23  California and is a registered Foreign Lawyer with the "Beijing Justice Bureau/Chinese

24  Ministry of Justice."  Zimmerman Decl. ¶ 1.

---

[4] The Court acknowledges that "Ding Zhexuan, legal manager of Beijing Best Wealth Investment &
Administration Co., Ltd." appears listed as one of seven attorneys for Respondent Liu at the top of the
Award.  Pet. Ex. D at 45.  But Ding Zhexuan does not declare that he is an attorney, officer of the court,
or that he represented Respondent Liu during the arbitration.

1    The Court **OVERRULES** all of the objections to Mr. Zimmerman's declaration.

2  Respondent Liu offers Mr. Zimmerman as an expert on the issue of arbitrations in China.

3  Although he is not licensed to practice law in China, the Court finds this fact alone is not

4  dispositive because he offers sufficient foundation for his knowledge, including his

5  experience with Chinese arbitrations, *id.* ¶ 3, which the Court lacks.  Fed. R. Evid. 702.

6        ### 3.    Xie Declaration

7        Petitioner next objects to the declaration of Minmin Xie.  Doc. No. 12-3 ("Xie

8  Decl.").  Minmin Xie is an attorney licensed to practice law in China.  Xie Decl. ¶ 1.  The

9  Court similarly **OVERRULES** all of the objections to Minmin Xie's declaration.

10  Minmin Xie is a Chinese attorney and has specialized knowledge of and experience with

11  China's evidentiary laws, which the Court lacks.  Fed. R. Evid. 702.

12        ### 4.    Liu Declaration

13        Finally, Petitioner objects to paragraphs contained in Respondent Liu's declaration.

14  Doc. No. 12-5 ("Liu Decl.").

15        The Court **OVERRULES** the objections to ¶ 9.  Respondent Liu may testify to his

16  understanding of the purpose of the Loan Agreement, and the Court finds that these

17  paragraphs do not contain any legal conclusions or improper speculation.  Fed. R. Evid.

18  701, 1002.

19        The Court **SUSTAINS** the objections to ¶ 10.  The Court finds that this statement

20  contains improper legal conclusions and is barred by the best evidence rule.  Fed. R.

21  Evid. 701, 1002.

22        The Court **SUSTAINS IN PART** the objections to ¶¶ 12, 13, 15–18, 20–22, and

23  24.  These statements do not contain legal conclusions or improper speculation.  Fed. R.

24  Evid. 701.  However, to the extent Respondent Liu seeks to testify to the content of the

25  Cooperation Agreement, Investment Agreement, Memorandum, or Letter of Cooperation,

26  his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

27        The Court **SUSTAINS IN PART** the objections to ¶ 27.  Respondent Liu may

28  testify as a percipient witness.  Fed. R. Evid. 602.  However, pursuant to the best

1  evidence rule, an audio or video recording or transcript is required to prove what took

2  place at the arbitration hearing.  Fed. R. Evid. 1002.

3      The Court **OVERRULES** the objections to ¶ 32.  Respondent Liu can offer his

4  opinion in this respect as it is neither a legal conclusion, improper speculation, nor

5  prohibited by the best evidence rule.  Fed. R. Evid. 701, 1002.

6      The Court **SUSTAINS** the objections to ¶ 35.  For the same reasons discussed

7  above, the Court finds that this statement also does not fall within the residual exception

8  to hearsay.  Fed. R. Evid. 807.  Ding Zhexuan never states that he was Respondent Liu's

9  arbitration attorney or that he is an officer of the court.  Further, these out-of-court

10  statements were not made during other judicial or quasi-judicial proceedings.

11  Accordingly, Respondent Liu fails to offer sufficient guarantees of trustworthiness on this

12  basis.  Fed. R. Evid. 807(a)(1).  Further, even assuming Respondent Liu offered sufficient

13  guarantee of trustworthiness, he fails to explain how this evidence is more probative than

14  any other evidence that he could obtain through reasonable efforts.  Fed. R. Evid.

15  807(a)(2).

16      Moreover, even if the Court finds that the statements made to Ding Zhexuan

17  statement were subject to the residual hearsay exception, Respondent Liu's statement

18  appears to contain hearsay within hearsay, and he offers no other exception or exclusion.

19  Fed. R. Evid. 805.  Finally, it is not clear to the Court that this evidence could

20  nevertheless be reduced to admissible form at trial.

21      The Court **SUSTAINS IN PART** the objections to ¶¶ 36 and 39.  The Court finds

22  that these paragraphs do not contain any legal conclusions or improper speculation.  Fed.

23  R. Evid. 701.  However, to the extent Respondent Liu seeks to testify to the content of the

24  Arbitration Award, his statements are barred by the best evidence rule.  Fed. R. Evid.

25  1002.

26  **C.    Respondents' Objections to Petition Reply Declarations**

27      Respondents Zhang and Liu have also lodged objections to the declarations

28  Petitioner submits in support of its opposition to Respondent Liu's cross-motion and

reply in support of its Petition.  Doc. No. 21.  Petitioner filed a response in opposition to these objections.  Doc. No. 28.

### 1. *Gang Declaration*

Petitioner offers a second declaration from Pu Gang in support of its omnibus opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc. No. 16-1 ("Gang Opp. Decl.").

The Court **OVERRULES** the objections to ¶ 3.  This statement is not barred by the best evidence rule because Pu Gang is not testifying to the content of the Investment Agreement and Memorandum.  Fed. R. Evid. 1002.  Nor is this statement unduly prejudicial or confusing.  Fed. R. Evid. 403.

The Court **OVERRULES** the objections to ¶¶ 5, 6, and 7.  Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the transfer of funds under the Loan Agreement and Ningbo Zhenrong's involvement.  Fed. R. Evid. 602.  His testimony as to the terms of the Loan Agreement does not contain any legal conclusions, Fed. R. Evid. 703, nor does he testify to an "ultimate issue," Fed. R. Evid. 704.  And because Pu Gang does not seek to lay the foundation of any item of evidence through these paragraphs, Respondents' lack of foundation objections are without merit.  Fed. R. Evid. 901.

The Court **OVERRULES** the objections to ¶ 9.  Declarant Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the arbitration proceedings.  Fed. R. Evid. 602.  His statements do not contain any legal conclusions, Fed. R. Evid. 703, nor do these statements bear on an "ultimate issue," Fed. R. Evid. 704.  Because Pu Gang does not seek to lay the foundation of any item of evidence through these paragraphs, Respondents' lack of foundation objections are without merit.  Fed. R. Evid. 901.  Finally, this paragraph does not contain any out-of-court statements.  Fed. R. Evid. 802.

The Court **OVERRULES** the objections to ¶ 10.  This paragraph does not contain any legal conclusions or hearsay.  Fed. R. Evid. 602, 802.  Moreover, Pu Gang makes this

statement based on his personal knowledge of these facts, and he does not seek to lay the foundation for any item of evidence.  Fed. R. Evid. 701, 901.

The Court **OVERRULES** the objections to ¶¶ 11–13.  Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the arbitration proceedings and Petitioner's collection efforts, Respondent Liu's involvement with the Target Company, and the Chinese litigation the parties are currently involved in.  Fed. R. Evid. 602.  His statements do not contain any legal conclusions, Fed. R. Evid. 703, nor do these statements bear on an "ultimate issue," Fed. R. Evid. 704.  Further, because Pu Gang does not seek to lay the foundation for any item of evidence through these paragraphs, Respondents' lack of foundation objections are without merit.  Fed. R. Evid. 901.  Finally, this paragraph does not contain any out-of-court statements.  Fed. R. Evid. 802.

### 2.   *Jian Declaration*

Petitioner also offers a declaration from Zhang Jian in support of its omnibus opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc. No. 16-2 ("Jian Decl.").

The Court **OVERRULES** the objections to ¶ 2.  The Court finds that this paragraph is not subject to the best evidence rule, Fed. R. Evid. 1002, nor is it unduly prejudicial or confusing, Fed. R. Evid. 403.

The Court **OVERRULES** the objections to ¶ 4–6.  Zhang Jian makes his declaration on personal knowledge, and these paragraphs contain no legal conclusions or improper speculation.  Fed. R. Evid. 602.  Additionally, Zhang Jian is not offering expert testimony, Fed. R. Evid. 703, and because he does not seek to offer or authenticate any evidence, the lack of foundation objections are without merit.  Fed. R. Evid. 901.

### 3.   *Ho Declaration*

Finally, Petitioner offers a declaration from Yi-Chin Ho in support of its omnibus opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc. No. 16-3 ("Ho Decl.").  Yi Chin-Ho is an attorney representing Petitioner in this matter.

Ho Decl. ¶ 1.  Attorney Ho offers a declaration and seeks to lay the foundation for two exhibits.  Ho Decl. ¶¶ 3–4.

Respondents Zhang and Liu object to paragraphs 3 and 4 on relevance grounds. Fed. R. Evid. 401.  The Court **OVERRULES** the objections.  The Court finds that the two exhibits are relevant—they are two Chinese court rulings and are part of the arbitration record and procedural history of this matter.

**D.     Petitioner's Objections to Cross-Motion Reply Declarations**

Lastly, Petitioner has filed objections to the declarations Respondent Liu submits with his reply in support of his cross-motion.  Doc. No. 27.  Respondent Liu filed a response in opposition to these objections.  Doc. No. 29.

**1.     *Liu Declaration***

Respondent Liu submits a second declaration with his reply in support of his cross-motion to dismiss or stay.  Doc. No. 20-1 ("Liu Reply Decl.").

The Court **OVERRULES** the objections to ¶ 6.  This paragraph does not contain any legal conclusions.  Fed. R. Evid. 701.

The Court **OVERRULES** the objections to ¶ 10.  Respondent Liu makes his declaration on personal knowledge and this statement contains no legal conclusions or improper speculation.  Fed. R. Evid. 602.  Additionally, Respondent Liu does not seek to authenticate any evidence.  Fed. R. Evid. 901.

The Court **OVERRULES** the objections to ¶ 12.  This paragraph does not contain any legal conclusions.  Fed. R. Evid. 701.

**2.     *Xie Declaration***

Respondent Liu offers a second declaration from Minmin Xie in support of his reply.  Doc. No. 20-2 ("Xie Reply Decl.").

The Court **OVERRULES** the objections to ¶ 5.  Minmin Xie is a Chinese attorney and has specialized experience with Chinese litigation, which the Court lacks.  Fed. R. Evid. 702.  He offers proper expert testimony, and his declaration does not contain improper legal conclusions or speculation.

The Court **SUSTAINS IN PART** the objections to ¶ 6.  Minmin Xie's statements are within the realm of proper expert testimony, and this paragraph does not contain legal conclusions or improper speculation.  Fed. R. Evid. 702.  However, to the extent Minmin Xie seeks to offer testimony as to the contents of the "Regulatory Opinions of the Beijing Higher People's Court on Requirements for Materials to File Civil Cases," his statements are subject to exclusion under the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 7.  Minmin Xie offers proper expert testimony, and this paragraph does not contain legal conclusions or improper speculation.  Fed. R. Evid. 702.  Further, this paragraph is not unduly prejudicial or confusing.  Fed. R. Evid. 403.

### 3.    *Zhang Declaration*

Respondent Liu offers a declaration from Respondent Zhang in support of his reply.  Doc. No. 20-3 ("Zhang Reply Decl.").  The Court **OVERRULES** Petitioner's objections to ¶¶ 4–6.  Respondent Zhang makes her declaration based on her personal knowledge.  These paragraphs do not contain any legal conclusions or improper speculation, and because Respondent Zhang does not seek to lay the foundation for any evidence, Petitioner's lack of foundation objection is without merit.  Fed. R. Evid. 901.

## IV. DISCUSSION

In accordance with the New York Convention, Petitioner asks the Court to confirm the Award.  Doc. No. 1.  Respondents argue that the Court should deny the Petition on various grounds.  Doc. Nos. 9, 12.  Additionally, Respondent Liu moves to dismiss the Petition for lack of personal jurisdiction, *forum non conveniens*, and for failure to join an indispensable party.  Alternatively, Respondent Liu moves to stay this action pending resolution of litigation in China.  Doc. No. 12.  Because Respondent Liu challenges the Court's personal jurisdiction over him, the Court first addresses his cross-motion.

### A.    Cross-Motion to Dismiss

As noted, Respondent Liu asks the Court to dismiss the Petition for lack of personal jurisdiction, *forum non conveniens*, and failure to join an indispensable party.

Doc. No. 12 at 14–22.  The Court addresses each of these arguments in turn.

### 1.   *Personal Jurisdiction*

Courts reviewing petitions to confirm arbitration awards, including those falling under the New York Convention, are obligated to find personal jurisdiction before enforcing an award.  *Glencore Grain*, 284 F.3d at 1121 ("We hold that neither the Convention nor its implementing legislation removed the district courts' obligation to find jurisdiction over the defendant in suits to confirm arbitration awards.").  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)).  "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

In support of the Court's jurisdiction over Respondents, Petitioner alleges that Respondents are residents of San Diego County, California, but acknowledges that their primary residence is in Beijing.  Pet. ¶ 5.

Respondent Liu argues that the Court lacks specific and general personal jurisdiction over him.  First, he asserts that there is no general personal jurisdiction because he is not "at home" here.  Doc. No. 12 at 14 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).  According to Respondent Liu, although he is physically present within the District now, he does not intend to remain here indefinitely.  Liu Decl. ¶ 4.

A natural person is considered "at home" for general personal jurisdiction purposes where he or she is domiciled.  *Daimler*, 571 U.S. at 137; *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  An individual's domicile is determined by several factors, including: current residence, location of personal and real property, location of bank accounts, location of spouse and

family, and driver's license and automobile registration. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

Second, Respondent Liu asserts that there is no specific personal jurisdiction over him because the minimum contacts test is not satisfied. Doc. No. 12 at 15 (citing *Mavrix Photo*, 647 F.3d at 1227–28). Under California law, whether the Court may exercise specific personal jurisdiction over a non-resident defendant depends on the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The party asserting the court's personal jurisdiction bears the burden of satisfying the first two prongs. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Once satisfied, the burden then shifts to the party disputing jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

Respondent Liu's arguments and discussion of these two personal jurisdiction tests relies on the faulty premise that he is an "out-of-state defendant." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). He is not. Critically, Respondent Liu does not factually dispute that he is presently residing in this District.

"Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 (1990). Pursuant to this principle, courts recognize what is often called "tag" or "transient" jurisdiction—the jurisdictional theory that service upon a person physically

present in a forum, even if only temporarily and engaged in activity unrelated to the litigation, suffices to confer jurisdiction. *Bourassa v. Desrochers*, 938 F.2d 1056, 1058 (9th Cir. 1991) (quoting *Burnham*, 495 U.S. at 632 (Brennan, J., concurring)); *see also Ridgway v. Phillips*, 383 F. Supp. 3d 938, 945 (N.D. Cal. 2019) (quoting *Martinez*, 764 F.3d at 1067). In other words, it is well-settled that a court may, consistent with the Due Process Clause, exercise personal jurisdiction over a defendant who was physically present within the state when they were served. *Martinez*, 764 F.3d at 1067 (explaining that in *Burnham*, the Supreme Court "reaffirmed th[is] historical rule" after *International Shoe*); *Bourassa*, 938 F.2d at 1058 ("In *Burnham*, the Supreme Court recently affirmed the constitutional validity of transient jurisdiction.")

Here, Respondent Liu admits he is presently in California. Liu Decl. ¶ 4. And he does not dispute that he has been living at the Rancho Santa Fe address where the Petition was served, Doc. No. 3, or that he has continuously lived there since April 2022, Gang Opp. Decl. ¶ 10.

In reply, Respondent Liu argues that he was not personally served with the Petition. Doc. No. 20 at 3–4. To the extent Respondent Liu challenges the sufficiency of service of the Petition here, generally, the Court notes that it can disregard this argument as it was inappropriately raised in his reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *see also FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.") (collecting cases); *see also* Fed. R. Civ. P. 12(h)(1) (providing that challenges to service are waived if not properly raised). Relatedly, Respondent Liu's declaration submitted in reply contains almost entirely new evidence on this issue, *see* Liu Reply Decl., which was similarly inappropriate, *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Nevertheless, to the extent Respondent Liu challenges the Court's personal jurisdiction over him based upon a lack of proper or personal service, the Court reaches this argument.

1    Respondent Liu was not personally served.[5]  Doc. No. 3.  He was served with the

2    Petition by mail.  Fed. R. Civ. P. 5(b)(2)(C).  In compliance with Rule 5, Petitioner

3    mailed a copy of the Petition and its attachments to the Rancho Santa Fe address.  Doc.

4    No. 3 at 6.  Respondent Liu does not dispute that this is the location where he resides nor

5    does he argue that this is not his current or last known address.  Alternatively, assuming

6    Rule 4 applies, Respondent Liu was duly served by delivery to his residence.  Fed. R.

7    Civ. P. 4(e)(1)–(2).  Rule 4 is to be liberally construed here as Respondent Liu does not

8    dispute that he received actual notice of this action.  *Direct Mail Specialists, Inc. v. Eclat*

9    *Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("Rule 4 is a flexible rule

10   that should be liberally construed so long as a party receives sufficient notice of the

11   complaint.") (internal quotation marks and citation omitted).  Petitioner attempted

12   personal service twice, left the Petition at the Rancho Santa Fe property with an adult

13   who represented themselves to be a co-tenant, Doc. No. 3 at 3, and mailed the Petition to

14   this same address thereafter.  The Court finds on this record that Petitioner substantially

15   complied with Rules 4(e)(1) and (2).[6]

16   _____

17   [5] In challenging this Court's personal jurisdiction over him, Respondent Liu primarily argues that he was

18   not personally served with the Petition.  Doc. No. 12 at 3–4.  Respondent Liu alternatively contends that

     service did not comply with California Code of Civil Procedure § 415.20.  *Id.* at 4.  Federal Rule of Civil

19   Procedure 4, which governs service of a summons and complaint, allows for the application of

     California's service of process rules in federal court.  Fed. R. Civ. P. 4(e)(1).  Thus, Respondent Liu has

20   apparently taken the position that Rule 4 governs service of the Petition here.

         However, Respondent Liu has failed to address the service of process provision contained within

21   the FAA.  Section 9 provides that "[i]f the adverse party is a resident of the district within which the

     award was made," service is to be accomplished by following the law for service of a motion in that

22   district.  9 U.S.C. § 9.  Rule 5 governs service of motions in federal court.  On the other hand, "[i]f the

     adverse party [is] a nonresident, then the notice of the application shall be served by the marshal of any

23   district within which the adverse party may be found in like manner as other process of the court."  *Id.*

         It is not clear how the service rules set forth in § 9 factor into this proceeding, where the Award

24   was not made in any United States district and where Respondents claim to be nonresidents of the state

     but are nevertheless residing here.  In any event, because Respondent Liu does not argue he was subject

25   to service by U.S. Marshal, the Court assumes without deciding that Petitioner was not required under 9

26   U.S.C. § 9 to serve Respondents in this manner.

     [6] Rule 4(e)(1) authorizes service pursuant to state law, and California permits substituted service by,

27   among other methods, leaving a summons and complaint with an adult at the party's usual residence or

28   place of business with service by mail after.  Cal. Code Civ. P. § 415.20.

1        The Court can find no rule in *Burnham* that the exercise of personal jurisdiction

2   based upon physical presence only comports with due process if the nonresident

3   defendant is personally served.  Doc. No. 20 at 3.  True, in *Burnham*, the nonresident

4   defendant was personally served while present in the forum.  495 U.S. at 607.  But many

5   courts, including the Supreme Court, have not so limited the constitutional validity of

6   jurisdiction based on physical presence.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S.

7   873, 880 (2011) ("Presence within a State at the time suit commences through service of

8   process is another example" of a person submitting to personal jurisdiction); *see also*

9   *Ewing v. 8 Figure Dream Lifestyle, Ltd. Liab. Co.*, No. 18-CV-1063-AJB-AGS, 2019

10  U.S. Dist. LEXIS 54574, at \*22 (S.D. Cal. Mar. 29, 2019) ("General jurisdiction over an

11  individual is permissible only where he has been served with process while voluntarily in

12  the forum, is domiciled in the forum, or consents to the court's jurisdiction."); *Greystone*

13  *Hous. Found., Inc. v. Fantasy Holdings, Ltd. Liab. Co.*, No. 16-CV-0300-AJB-DHB,

14  2017 U.S. Dist. LEXIS 74683, at \*6 (S.D. Cal. May 16, 2017) (same); *Karalis v. Carn*,

15  No. 3:24-cv-01143-JSC, 2024 U.S. Dist. LEXIS 88871, at \*4 (N.D. Cal. May 16, 2024)

16  ("'A federal court obtains personal jurisdiction over a defendant if it is able to serve

17  process on him.'") (quoting *Butcher's Union Loc. No. 498, United Food & Com. Workers*

18  *v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)).

19        Moreover, as the Supreme Court in *Burnham* concluded: "The short of the matter

20  is that jurisdiction *based on physical presence alone* constitutes due process because it is

21  one of the continuing traditions of our legal system that define the due process standard

22  of 'traditional notions of fair play and substantial justice.'"  495 U.S. at 619 (emphasis

23  added).  For this reason, California's long-arm statute similarly recognizes the exercise of

24  personal jurisdiction based on presence.  Judicial Council comment to Cal. Code Civ. P.

25  § 410.10 ("All the recognized bases of judicial jurisdiction are included. In the case of

26  natural persons, such bases currently include presence, . . . .").

27        Respondent Liu lives in California.  He has continuously been physically present in

28  this district, voluntarily, for the last two years.  Gang Opp. Decl. ¶ 10.  Thus, he is subject

1    to service of process in this state and, if served accordingly, subject to this Court's

2    personal jurisdiction. *Burnham*, 495 U.S. at 615 ("We do not know of a single state or

3    federal statute, or a single judicial decision resting upon state law, that has abandoned in-

4    state service as a basis of jurisdiction."); *cf. J. McIntyre*, 564 U.S. at 881 ("By contrast,

5    those who live or operate primarily outside a State have a due process right not to be

6    subjected to judgment in its courts as a general matter.").

7            Therefore, based on Respondent Liu's physical presence in the Southern District of

8    California and the fact that he was properly served here, the Court is satisfied that it has

9    personal jurisdiction over him. *See, e.g.*, *United Tactical Sys. LLC v. Real Action*

10   *Paintball, Inc.*, 108 F. Supp. 3d 733, 742 (N.D. Cal. 2015) ("As in *Burnham*, the fact that

11   these [third party defendants] did not purposefully avail themselves of California's laws

12   and protections does not necessarily mean they are protected from litigation here if tag or

13   transient jurisdiction is established."); *Marino v. Nery's USA, Inc.*, No. 14-CV-497-BEN

14   (JMA), 2015 U.S. Dist. LEXIS 181427, at *17 (S.D. Cal. Feb. 25, 2015) (finding that the

15   defendant "was served in the state of California, which is sufficient to establish general

16   personal jurisdiction"). Accordingly, the Court **DENIES** Respondent Liu's motion to the

17   extent he seeks dismissal of the Petition for lack of personal jurisdiction.[7]

18           ***2.       The Doctrine of* Forum Non Conveniens**

19           Next, Respondent Liu asserts that the Petition should be dismissed based on the

20   doctrine of *forum non conveniens*. Doc. No. 12 at 15–18. "The principle of *forum non*

21   *conveniens* is simply that a court may resist imposition upon its jurisdiction even when

22   jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp.*

23   *v. Gilbert*, 330 U.S. 501, 507 (1947); *see also Carijano v. Occidental Petroleum Corp.*,

24   643 F.3d 1216, 1224 (9th Cir. 2011).

25

26

27   [7] Although Respondent Zhang does not dispute this Court's personal jurisdiction over her, the record
     similarly reflects that she is currently living in California and was served at the same residence in

28   Rancho Santa Fe. Doc. No. 4. Consequently, for these same reasons, the Court finds that it has personal
     jurisdiction over Respondent Zhang.

1    As the Ninth Circuit has explained:

2
       The doctrine of *forum non conveniens* is a drastic exercise of the court's
3      "inherent power" because, unlike a mere transfer of venue, it results in the
       dismissal of a plaintiff's case. The harshness of such a dismissal is especially
4      pronounced where, as here, the district court declines to place any conditions
       upon its dismissal. Therefore, we have treated *forum non conveniens* as "an
5      exceptional tool to be employed sparingly," and not a "doctrine that compels
6      plaintiffs to choose the optimal forum for their claim." *Dole Food Co. v.
       Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting *Ravelo Monegro*, 211
7      F.3d at 514) (internal quotations omitted). The mere fact that a case involves
8      conduct or plaintiffs from overseas is not enough for dismissal.

9

10   *Carijano*, 643 F.3d at 1224.

11       The party moving to dismiss based on *forum non conveniens* bears the burden of

12   showing both that there is an adequate alternative forum, and that the balance of private

13   and public interest factors favors dismissal. *Dole Food Co. v. Watts*, 303 F.3d 1104,

14   1118 (9th Cir. 2002). "The standard to be applied to a motion for dismissal on the

15   ground of *forum non conveniens* is whether defendants have made a clear showing of

16   facts which establish such oppression and vexation of a defendant as to be out of

17   proportion to plaintiff's convenience, which may be shown to be slight or nonexistent."

18   *Id.* (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)) (cleaned up).

19       Respondent Liu argues that China is an adequate alternative forum. Doc. No. 12 at

20   16. According to Respondent Liu, he is a resident of China and Petitioner is a Chinese

21   company, and both are subject to, or have submitted to, jurisdiction in China. *Id.* He also

22   refers to pending litigation in China, initiated by the Target Company in 2024, between

23   Petitioner, Respondent Liu, the Target Company, and Ningbo Zhenrong, which involves

24   "the rights of Petitioner, Liu, Ningbo Zhenrong and the Target Company regarding

25   Ningbo Zhenrong's remittance of the 120 million RMB to the Target Company." Doc.

26   No. 12 at 13; *id.* at 17.

27       However, as Petitioner argues in opposition, *forum non conveniens* is not one of

28   the enumerated grounds under Article V to refuse to confirm a foreign arbitration award.

Doc. No. 16 at 15–16.  This would appear to foreclose application of the doctrine in these circumstances.  But even assuming the doctrine of *forum non conveniens* applies to arbitration confirmation proceedings such as this one, the Court finds that Respondent Liu has not met his burden.

With respect to the private interest factors, *see Carijano*, 643 F.3d at 1229 (identifying the seven private interest factors), it is highly relevant that this is a summary proceeding.  The fact that China is the location where witnesses or evidence resides, and that the events precipitating the arbitration took place in China, carries very little if any weight.  To that end, there will be no trial or evidentiary hearing during these proceedings, so there will be no costs associated with bringing any remote witnesses to trial nor will there be any issues compelling their testimony.  Additionally, Respondent Liu is currently living in California, not China.  Liu Decl. ¶ 4.  Therefore, on balance, the private interest factors do not weigh in Respondent Liu's favor.

Turning to the public interest factors, *see Carijano*, 643 F.3d at 1232 (identifying the five public interest factors), the Court finds that the burden, congestion, and costs on the Court do not weigh in favor of dismissal because, again, this is a summary proceeding.  And while the local interest in the underlying dispute—a contract dispute between a Chinese citizen and Chinese company concerning a loan agreement executed in China—may be low, the United States is a party to the New York Convention and therefore has an interest in confirming enforceable foreign arbitration awards.  And these arbitration confirmation proceedings do not call on the Court to apply any foreign law.  Accordingly, the public interest factors similarly do not weigh in favor of dismissal.

Finally, Respondent Liu fails to identify any tangible burden, or facts establishing "oppression and vexation," by having to respond to this Petition here as opposed to in China.  For these reasons, the Court **DENIES** Respondent Liu's motion to dismiss based on the doctrine of *forum non conveniens*.  *See Zhejiang Meds. & Health Prods. Imp. & Exp. Co. v. Blue Cal. Co.*, No. CV 08-06327 RGK (FFMx), 2009 U.S. Dist. LEXIS 141024, at *10 (C.D. Cal. Apr. 23, 2009).

### 3. *Failure to Join Indispensable Parties*

Finally, Respondent Liu moves to dismiss the Petition on the grounds that Ningbo Zhenrong and the Target Company are indispensable parties that cannot be joined. Doc. No. 12 at 18–22. Federal Rule of Civil Procedure 19 governs the joinder of required parties. Courts analyzing Rule 19 employ a three-step analysis: (1) is the absent party necessary; (2) if so, is it feasible to join the absent party; and (3) if joinder is not feasible, can the action proceed without the absent party or "is the absent party indispensable," thereby requiring dismissal of the action. Fed. R. Civ. P. 19(a); *Salt River Project Agric. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012); *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999).

An absent party is "required" under Rule 19(a) if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
   (i) as a practical matter impair or impede the person's ability to protect the interest; or

   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)–(B).

The failure and inability to join a required party is not an enumerated defense to confirmation under Article V, so Rule 19 appears inapplicable to this proceeding. *See Shanghai Lan*, 2019 U.S. Dist. LEXIS 217634, at *10–11 (confirming arbitration award over objection that indispensable party was not joined). But even assuming Rule 19 may be properly raised in defense to confirmation proceedings under the New York Convention, Respondent Liu does not explain how these parties are required under either Rule 19(a)(1)(A) or (b) except to say that they are necessary parties because "at the heart

of the parties' dispute" is whether "the transfer of 120 million RMB" was a loan from Ningbo Zhenrong to the Target Company or from Petitioner to Respondent Liu.  Doc. No. 12 at 19.

At the heart of this proceeding is whether the Court must confirm the Award or whether one of the seven grounds to refuse confirmation set forth in Article V are present.  In particular, whether: Respondent Liu was denied due process, Doc. No. 12 at 22–24; the Award was beyond the scope of the submission, *id.* at 24–26; or enforcement of the Award is contrary to public policy, *id.* at 26–29.  The underlying dispute that was submitted to and resolved by the BAC Tribunal is not at issue in this proceeding.  Moreover, neither Ningbo Zhenrong nor the Target Company were parties to the arbitration or named as responsible for the Award.  Accordingly, the Court finds that Ningbo Zhenrong and the Target Company are not required parties as defined by Rule 19(a)(1).  Because Respondent Liu has failed to demonstrate that they are necessary parties, the Court need not and does not reach the remainder of the Rule 19 analysis.  *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990) ("[N]o inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied.").  Consequently, the Court **DENIES** Respondent Liu's motion to dismiss the Petition.

## B.   Motion to Stay

In the alternative, Respondent Liu asks the Court to stay this action pending resolution of litigation in China.  Doc. No. 12 at 29–30.  According to Respondent Liu, the Target Company initiated a lawsuit in China in 2024 against Petitioner, Liu, and Ningbo Zhenrong regarding "Ningbo Zhenrong's transfer of 120 million RMB to the Target Company . . . ."  Doc. No. 12 at 29.

As discussed above, the Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified" in the Convention.  9 U.S.C. § 207.  Respondent Liu does not identify any enumerated basis to defer these proceedings.  Instead, he briefs the factors for a *Landis* stay.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Assuming the Court has the inherent authority to stay arbitration confirmation proceedings pending other litigation, the Court finds that a stay is not warranted here.  In *Landis*, the Supreme Court recognized the general principle that "[a] district court has discretionary power to stay proceedings in its own court."  *Lockyer v. Mirant*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 254).  A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily controlling of the action before the court."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (identifying the *Landis* factors)).  The burden is on the movant to show that a stay is appropriate.  *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

Here, Petitioner concedes that a stay will not result in any harm.  Doc. No. 16 at 23.  But the Court is not satisfied that the pending litigation in China has any bearing on this proceeding or that Respondents face any hardship in the absence of a stay.  But for the general description that the Chinese lawsuit is "with respect to Ningbo Zhenrong's transfer of 120 million RMB to the Target Company is pending in China," Doc. No. 12 at 29, Respondent Liu provides no information as to what claims are before the Chinese court or matters are being litigated.  The Court assumes on this limited record that the Chinese litigation will revisit the issue of whether the loan from Ningbo Zhenrong was

made on behalf of Petitioner and pursuant to the Loan Agreement. But as far as the Court is concerned, this dispute was already resolved by the BAC, and the only disputes before the Court in this proceeding are the defenses under Article V that Respondents put forth. Moreover, this is a summary proceeding that is fully briefed and there is nowhere forward for Respondents to go. For these reasons as well, the orderly course of justice does not call for a stay and there is simply no risk of inconsistent judgments. Accordingly, the Court **DENIES** Respondent Liu's alternative request for a stay.

## C.    Petition to Confirm the Award

Turning to the Petition, SZIC asks the Court to confirm the Award and names both Liu and Zhang as Respondents. However, as Respondent Zhang points out in opposition, she was neither a party to the Loan Agreement nor named as a respondent in the arbitration. Doc. No. 9 at 2; Doc. No. 9-1 ("Zhang Decl.") ¶¶ 6–8, 10–15. Rather, according to the Petition, Respondent Zhang is Respondent Liu's wife, and this appears to be the sole basis for naming her as a respondent on the Petition. Pet. ¶ 5.[8]

The FAA is clear that for arbitration awards falling under the New York Convention, "any party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award *as against any other party to the arbitration.*" 9 U.S.C. § 207 (emphasis added). Respondent Zhang was not a party to the arbitration. Pet. Ex. D at 45 (identifying Petitioner as the Applicant and Respondent Liu as the only Respondent). And she is not named on the Award. *See generally* Pet. Ex. D.

Nevertheless, in support of its position that naming Respondent Zhang was proper, Petitioner explains that she is "listed as the Target Company's legal representative in the Loan Agreement and the Cooperation Agreement (Petition Exs. A-B), and she is a party to the Investment Agreement and Memorandum (Petition Ex. C.)." Doc. No. 16 at 23.

---

[8] Respondent Zhang is mentioned once in the Petition, Pet. ¶ 5, and Petitioner expressly disclaims her involvement in the arbitration, *id.* at 2 fn.1.

1   Petitioner then explains that Respondent Zhang is jointly and severally liable on the
2   Award and that she owns property and assets in California.  *Id.* at 23–24.

3       The fact that other courts have found Respondent Zhang jointly liable for the
4   Award, or permitted enforcement against her, *see* Doc. No. 16 at 24, has no bearing on
5   this summary proceeding through which the Court is merely tasked with determining
6   whether one of the seven grounds to refuse confirmation of the Award are present.  The
7   Court's authority to reduce the Award to a judgment here comes from Congress' grant of
8   such power, 9 U.S.C. § 207, and Petitioner offers no legal authority for its position that
9   the Court can confirm an arbitration award against a person who was not a party to the
10   arbitration.  *C.f. United States ex rel. John A. Weber Co. v. Milcon Contr.*, 523 F. Supp.
11   3d 1203, 1211 (D. Haw. 2021) (declining to confirm an arbitration award against a surety
12   who was not a party to the arbitration).  Accordingly, the Court finds that it was
13   statutorily improper under the FAA for Petitioner to name Respondent Zhang as a
14   respondent and the Court lacks the authority to confirm the Award as against her.  The
15   Court therefore **DISMISSES** the Petition as it relates to Respondent Zhang.

16       Turning to the merits of the Petition, for the reasons set forth below, the Court
17   finds that the Award falls under the New York Convention, and that Respondent Liu fails
18   to meet his burden of demonstrating that the Award should not be confirmed.

19       First, the parties do not dispute, and the Court finds, that the Award falls under the
20   New York Convention.  A foreign arbitration agreement or arbitral award "falls under"
21   the New York Convention if it "aris[es] out of a legal relationship, whether contractual or
22   not, which is considered as commercial" unless such relationship that is entirely between
23   United States citizens.  9 U.S.C. § 202.  "Courts generally address four factors to
24   determine whether to enforce an arbitration agreement under the Convention."  *Balen*
25   *v. Holland Am. Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009) (citations omitted).  These
26   four factors examine whether the suit to enforce the foreign arbitration involves: (1) "an
27   agreement in writing within the meaning of the Convention" that (2) "provides for
28   arbitration in the territory of a signatory of the Convention" and (3) "arises out of a legal

1  relationship, whether contractual or not, which is considered commercial," as well as

2  whether (4) "a party to the agreement is not an American citizen, or that the commercial

3  relationship has some reasonable relation with one or more foreign state." *Balen*, 583

4  F.3d at 655 (quoting *Bautista*, 396 F.3d at 1294 n.7) (internal quotation marks omitted);

5  *see also* 9 U.S.C. § 202.

6        The Loan Agreement, to which the Petitioner and Respondent Liu are signatories,

7  is an agreement in writing within the meaning of the Convention.  Pet. Ex. A.  Second,

8  the Loan Agreement calls for arbitration in Beijing according to the rules of the BAC.  *Id.*

9  at 20.  Third, because the Loan Agreement provides that SZIC loan was to repurchase

10  and release the VIE structure of the Target Company, the Court agrees that the instant

11  action arises out of a legal commercial relationship between Petitioner and Respondent

12  Liu.  *See* 9 U.S.C. § 202 ("Commercial" "includ[es] a transaction, contract, or agreement

13  described in section 2," namely "a contract evidencing a transaction involving

14  commerce").  Finally, Petitioner is a Chinese corporation with its principal place of

15  business in Shenzhen, Guangdon Province.  Pet. ¶ 4; Pu Gang Decl. ¶ 1.  Therefore,

16  Petitioner is not an American citizen.  Accordingly, the Court finds that the Award falls

17  under the New York Convention and the Court therefore has jurisdiction over this matter

18  pursuant to 9 U.S.C. § 203.

19        As a result, the Court must confirm the Award unless it finds one of the seven

20  defenses applicable.  The seven grounds for refusing to confirm an award are set out in

21  Article V, which provides:

23      (1) Recognition and enforcement of the award may be refused, at the request
24  of the party against whom it is invoked, only if that party furnishes to the
     competent authority where the recognition and enforcement is sought, proof
25  that:

26          (a) The parties to the agreement . . . were, under the law applicable to
27          them, under some incapacity, or the said agreement is not valid under

the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

(2) Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, Art. V.

These defenses are construed narrowly and the party opposing recognition or enforcement bears the burden of establishing that a defense applies. *See Polimaster*, 623 F.3d at 836. "The Convention and its implementing legislation have a pro-enforcement bias, a policy long-recognized by the Supreme Court." *Glencore Grain*, 284 F.3d at

1120.  Thus, the burden on the party seeking to avoid enforcement of an award "is

substantial."  *Polimaster*, 623 F.3d at 836 (internal citation omitted).

Respondent Liu presses three of the Article V defenses.  Doc. No. 12 at 22–31.

### 1.    Denial of Due Process – Article V(1)(b)

First, Respondent Liu contends that he was denied due process in violation of

Article V(1)(b) of the New York Convention.  Doc. No. 12 at 22–24.  Pursuant to Article

V(1)(b), a court may deny enforcement if "[t]he party against whom the award is invoked

was not given proper notice of the appointment of the arbitrator or of the arbitration

proceedings or was unable to otherwise present his case."  New York Convention, art. V,

§ 1(b).  This provision "essentially sanctions the application of . . . United States

standards of due process."  *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan

Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298 (5th Cir. 2004); *see also Lihua Song v.

Que*, No. 23-cv-02159-RFL, 2024 U.S. Dist. LEXIS 101438, at *3 (N.D. Cal. May 31,

2024).  Accordingly, an arbitration hearing must "meet[] the minimal requirements of

fairness—adequate notice, a hearing on the evidence, and an impartial decision by the

arbitrator," with the parties having had "an opportunity to be heard at a meaningful time

and in a meaningful manner."  *Karaha Bodas*, 364 F.3d at 299 (internal quotation marks

omitted).  However, "[t]he right to due process does not include the complete set of

procedural rights guaranteed by the Federal Rules of Civil Procedure."  *Id.*  (footnote

omitted).  "This provision does not authorize a court to refuse to recognize or enforce an

award unless it finds a denial of fundamental fairness in the arbitration proceedings."

*Bartlit Beck LLP v. Okada*, 25 F.4th 519, 523 (7th Cir. 2022).

Here, Respondent Liu asserts that he was denied the opportunity to confront and

cross-examine "crucial witnesses" in violation of his due process rights.  Doc. No. 12 at

24.  According to Respondent Liu:

> At the substantive heart of the issues in arbitration was whether the 120
> million RMB Ningbo Zhenrong transferred to the Target Company was a loan
> from Petitioner to Liu, as per the Loan Agreement and as argued by Petitioner,

1    or whether it was a convertible equity investment in the Target Company by

2    Ningbong Zhenron, as in the Investment Agreement, Memo and Letter of

     Ningbong Zhenron, as in the Investment Agreement, Memo and Letter of
     Commitment and as argued by Liu.

3

4    *Id.* at 23.

5         Respondent Liu contends that at the arbitration hearing, Petitioner offered

6    "explanation notes"—"self-serving" notes submitted at the arbitration hearing

7    "purportedly authored by Ningbo Zhenrong"—in support of its position on this matter.

8    *Id.*  Respondent Liu contends he was not given the opportunity to cross-examine, for

9    example, the author of the "explanation notes." *Id.*

10        "[A] party does not have an absolute right to cross-examination." *Sunshine Mining*

11   *Co. v. United Steelworkers of Am., etc.*, 823 F.2d 1289, 1295 (9th Cir. 1987) (citing

12   *Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local*

13   *901*, 763 F.2d 34, 40 (1st Cir. 1985)).  "The arbitrator must, however, give each of the

14   parties to the dispute an adequate opportunity to present its evidence and arguments." *Id.*

15   Here, Respondent Liu summarily asserts that he was "denied the right to examine crucial

16   witnesses."  Doc. No. 12 at 24.  But he does not identify a single person by name that he

17   was unable to cross-examine—Respondent Liu only identifies unknown persons.  Doc.

18   No. 12 at 23 ("Liu did not get an opportunity to confront and cross-examine witness(es),

19   such as whoever authored the 'explanation' notes, and/or whoever had percipient

20   knowledge of any facts supporting them.").

21        More importantly, the record, namely, the transcript of the arbitration hearing,

22   reflects that Respondent Liu was not denied due process.  First, Respondent Liu was

23   represented by counsel, and he was given the opportunity to submit evidence and present

24   argument at the hearing.  *See generally* Doc. No. 12-5 at 14–26 ("Hrg. Tr.").  Further, all

25   parties agreed to the procedures, including the method and manner of cross-examination.

26   Hrg. Tr. at 14.  And specifically with respect to the "explanation notes," it appears from

27   the record that Respondent Liu raised concerns to the Tribunal and that an exchange

28   involving authenticity issues and "cross-examination opinion" took place.  Hrg. Tr. at

20–21 (discussing Exhibit 5). Further, at the conclusion of the hearing, the parties were invited to submit written "cross-examination opinion." Hrg. Tr. at 25. At bottom, Respondent Liu fails to explain how these procedures were inadequate, how he was prejudiced by the absence of an ability to cross examine these unknown witnesses, or how the arbitration was fundamentally unfair as a result of his inability to conduct this cross-examination.

Respondent Liu's evidence does not change this outcome. First, he offers hearsay evidence from Ding Zhexuan. Even assuming the Court accepts this evidence under the residual exception to hearsay, Ding Zhexuan only suggests that there was some miscommunication four months after the hearing as to whether there would be a second hearing. Ding Decl. ¶ 9. His testimony does not undermine the sufficiency and fairness of the procedures Respondent Liu had already received at the hearing.

Respondent Liu also offers a declaration from James M. Zimmerman, an attorney with expert knowledge of and experience with Chinese arbitrations, including those under the BAC. Zimmerman Decl. ¶¶ 1–3. Mr. Zimmerman testifies to various BAC procedures that amount to, in his opinion, "systemic and institution conditions and limitations that impact the fairness and impartiality of the BAC dispute resolution process." Zimmerman Decl. ¶ 6. But there is no explanation of how these procedures as applied in this arbitration proceeding deprived Respondent Liu of his right to due process. Mr. Zimmerman also discusses the procedures of selecting arbitrators and challenging arbitrator selections, specifically Petitioner's selection of Arbitrator Jingmin Zhai. Zimmerman Decl. ¶¶ 8–9. Mr. Zimmerman appears to question Arbitrator Zhai's impartiality. *Id.* But Respondent Liu does not argue that Arbitrator Zhai engaged in any misconduct or that Respondent Liu's due process rights were in any way affected by Arbitrator Zhai's presence on the Tribunal. Further, Mr. Zimmerman calls into question Arbitrator Zhai's candor in his declaration statement, Zimmerman Decl. ¶ 9, but Respondent Liu does not argue that his due process rights were violated or affected by this declaration.

1    Accordingly, the Court finds that Article V(1)(b) does not provide a basis for the

2    Court to deny confirmation of the Award.

3        **2.    *Beyond the Scope of Submission – Article V(1)(c)***

4    Next, Respondent Liu argues that the Award was beyond the scope of the matter

5    submitted to arbitration.  Doc. No. 12 at 24–26.  This defense, enumerated at Article

6    V(1)(c), allows a court to refuse to confirm a foreign award if:

7

8    > The award deals with a difference not contemplated by or not falling within
     > the terms of the submission to arbitration, or it contains decisions on matters
9    > beyond the scope of the submission to arbitration, provided that, if the
     > decisions on matters submitted to arbitration can be separated from those not
10   > so submitted, that part of the award which contains decisions on matters
     > submitted to arbitration may be recognized and enforced.
11

12

13   New York Convention, art. V, § 1(c).

14   According to Respondent Liu, the arbitration was initiated based on the Loan

15   Agreement, which included an arbitration provision and to which Respondent Liu was a

16   signatory.  Doc. No. 12 at 25.  Respondent Liu explains that the Loan Agreement did not

17   govern the transfer of 120 million Yuan from Ningbo Zhenrong to the Target Company.

18   *Id.*  Rather, Respondent Liu contends that this loan was made pursuant to the Investment

19   Agreement, which does not include an arbitration clause and to which Respondent Liu is

20   not a signatory.  *Id.*  Thus, "Petitioner had no right to initiate arbitration of events that

21   occurred pursuant to the Investment Agreement. And, the Arbitration Tribunal had no

22   jurisdiction to address matters related to the Investment Agreement."  Doc. No. 12 at 26.

23   The Court is not persuaded by this argument, which appears to rehash the merits of

24   the parties' dispute that was submitted to arbitration and is beyond the scope of these

25   proceedings.  The Loan Agreement's arbitration provision provides, in full:

26

27   > 4.2  Any dispute arising from the interpretation or performance of this
     > Agreement shall first be settled through amicable negotiation. If negotiation
28

1
2
3

> failed, then any party shall have the right to file a lawsuit with the Beijing Arbitration Commission, and the dispute shall be settled through arbitration in Beijing in accordance with the rules of Beijing Arbitration Commission.

4   Pet. Ex. A at 20.

5       Accepting Respondent Liu's narrative, the underlying dispute involved, in part,

6   whether Petitioner's performance (funding the loan) included Ningbo Zhenrong's loan of

7   120 million Yuan.  Doc. No. 12 at 23.  So the issue of whether the loan from Ningbo

8   Zhenrong was made pursuant to the Loan Agreement or the Investment Agreement, as

9   Petitioner contends, falls within the scope of the arbitration clause in the Loan Agreement

10  and therefore the submission.  Beyond this, Respondent Liu's argument on this defense is

11  devoid of any reference to the Award and therefore he fails to demonstrate how any part

12  of the Award is beyond the scope of the matter submitted.  Accordingly, the Court finds

13  that Article V(1)(c) of the New York Convention does not provide a valid basis for the

14  Court to refuse to confirm the Award.

15      **3.      Contrary to Public Policy – Article V(2)(b)**

16      Finally, Respondent Liu argues that confirmation of the Award would be contrary

17  to the public policy.  Doc. No. 12 at 27.  The Convention's public policy defense, Article

18  V(2)(b), states:

19
20      > Recognition and enforcement of an arbitral award may . . . be refused if the competent authority in the country where recognition and enforcement is
21      > sought finds that . . . (b) The recognition or enforcement of the award would
22      > be contrary to the public policy of that country.

23  New York Convention, art. V, § 2(b).

24      "In recognition of a presumption favoring upholding international arbitration

25  awards under the Convention, this defense is construed narrowly" and "applies only

26  when confirmation or enforcement of a foreign arbitration award 'would violate the

27  forum state's most basic notions of morality and justice."  *Cubic Def.*, 665 F.3d at 1096–

28  97 (internal citations and quotation marks omitted).  "Although this defense is frequently

raised, it 'has rarely been successful.'" *Id.* at 1097 (quoting Andrew M. Campbell, Annotation, *Refusal to Enforce Foreign Arbitration Awards on Public Policy Grounds*, 144 A.L.R. Fed. 481 (1998 & supp.) (collecting cases)).

As an initial matter, Respondent Liu argues that the Award violates California's public policy. Doc. No. 12 at 27–29. But violation of the public policy of California, or any particular state, is technically not an enumerated defense. The New York Convention's public policy defense states that in order for the Court to refuse to confirm an award, enforcement must be "contrary to the public policy of that country," here, the United States. New York Convention, art. V, § 2. Thus, to the extent Respondent Liu asks the Court to deny confirmation of the Award because confirmation would violate California's public policy, this is not an enumerated defense, and the Court therefore rejects this argument.

The Court nevertheless considers whether confirmation of the Award would violate public policy of the United States. In support of this defense, Respondent Liu first reiterates that he was denied the right to cross-examine unknown witnesses, including the preparer of the "explanation notes" and witnesses with percipient knowledge of the facts contained therein. Doc. No. 12 at 27. As discussed above, the Court is not persuaded that Respondent Liu was denied due process in this respect. Accordingly, for these same reasons, the Court finds that recognition of the Award does not contravene the United States' public policy.

Second, Respondent Liu argues that "there is evidence Petitioner acted unscrupulously sought to corrupt the process." Doc. No. 12 at 29. In support, he relies exclusively on the declaration of Ding Zhexuan, who states:

> 6. Petitioner approached me several times when the Arbitration was ongoing. In particular, around approximately August 2020 to October 2020, Mr. Yan Lianggang ("Mr. Yang"), a representative of Petitioner, approached me and offered me certain benefits as long as I was willing to help Petitioner during the Arbitration. I did not accept it.

7. The Arbitration panel consisted of three arbitrators. Liu could nominate one arbitrator. I recommend Arbitrator Zhan Hui ("Arbitrator Zhan") to Liu. Liu nominated Arbitrator Zhan, who became one of the three arbitrators.

8. During the Arbitration, Mr. Yang asked me to introduce Arbitrator Zhan to him. I refused.

Ding Decl. ¶¶ 6–8.

Further, Respondent Liu refers back to the Zimmerman Declaration. As discussed above, Mr. Zimmerman testifies to various BAC procedures, which he opines amount to "systemic and institution conditions and limitations that impact the fairness and impartiality of the BAC dispute resolution process." Zimmerman Decl. ¶ 6. Mr. Zimmerman also offers information on Arbitrator Zhai, the arbitrator Petitioner selected. Zimmerman Decl. ¶ 8. Mr. Zimmerman explains that it is his understanding that Arbitrator Zhai "once held several prominent positions in the High People's Court of Beijing" including "director of the Beijing Commission on Discipline and Inspection responsible for supervising Communist Party officials and activities within the court, which is a powerful political role." Id. According to Mr. Zimmerman, "[i]n these roles, Mr. Zhai had the ability to exert much influence over the arbitration process to the benefit of Petitioner and to the detriment of Respondent." Id. Respondent Liu concludes that "[i]n light of Petitioner's attempt to corrupt the arbitration proceedings and the susceptibility of arbitration in China to corruption, the Arbitration Award should not be confirmed. New York Convention, Art. V(2)(b)." Doc. No. 12 at 29.

Respondent Liu identifies no public policy. And his arguments are not specific as to why confirmation of this Award would violate any public policy of the United States. There was, by Respondent Liu's own evidence, no corruption. And to the extent Respondent Liu takes the position that all arbitrations before local arbitration institutions in China, such as the BAC, are corrupt, Doc. No. 12 at 27–28, the Court will not find on this record that *any* award issued by the BAC violates the United States' basic notions of morality and justice.

Consequently, the Court finds that confirmation of the Award is not contrary to public policy of the United States.

**D.     Award of Costs**

In its prayer for relief, Petitioner asks for costs incurred in bringing this action. Pet. at 17.  In his opposition and cross-motion, Respondent Liu argues that the Court should not award Petitioner costs because he raised colorable arguments in good faith. Doc. No. 12 at 30–31.

The question of whether a party defending against enforcement under the New York Convention raised colorable arguments in good faith bears on the matter of attorney's fees, not costs. *Cubic Def.*, 665 F.3d at 1104 ("It is well settled, however, that even absent express statutory authority, federal courts have authority to award attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."); *see also BU8 Sdn. Bhd. v. CreAgri, Inc.*, No. C-14-4503-EMC, 2015 U.S. Dist. LEXIS 27950, at *31 (N.D. Cal. Mar. 6, 2015*); Sheet Metal Workers Int'l Asso. Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 747 (9th Cir. 1985). Here, Petitioner does not ask the Court for an award of attorney's fees.  So Respondent Liu's arguments are inapposite.  Moreover, Federal Rule of Civil Procedure 54 provides, in relevant part:

> (1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

Fed. R. Civ. P. 54(d)(1); *see also* CivLR 54.1.

Respondent Liu does not point to any statute, rule, or court order providing that Petitioner should not be entitled to recover its costs as the prevailing party in this proceeding.  But more importantly, the taxation of costs is a routine, ministerial function

of the Clerk's Office, and judgment has not yet been entered and Petitioner has not yet filed an application and bill of costs. Accordingly, the Court declines to rule on any request by Respondent Liu to deny Petitioner costs at this time.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Respondent Liu's cross-motion to dismiss or stay and **GRANTS** the Petition. The Court **CONFIRMS** the Award and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED**.

Dated: September 10, 2024

HON. MICHAEL M. ANELLO
United States District Judge

# EXHIBIT B

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

FILED
INTAKE

2024 OCT 31 P 3: 48

J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

| | | |
|---|---|---|
| Shenzhen Zehuijin Investment Center (Limited Partnership) | ) ) ) | |
| Plaintiff, | ) ) | Case No.: **2024 15476** |
| v. | ) ) | |
| Liu Yingkui | ) ) | |
| and | ) ) | |
| Liu Family 2024 Nevada Trust | ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff Shenzhen Zehuijin Investment Center (Limited Partnership) ("SZIC" or "Plaintiff"), by counsel, submits the following Complaint against Liu Yingkui ("Liu") and the Liu Family 2024 Nevada Trust (the "Liu Trust," collectively "Defendants"):

## INTRODUCTION

1. This is a fraudulent conveyance action seeking the set aside of the May 28, 2024 conveyance for $0 from Liu to the Liu Trust of a parcel of real property in Fairfax County located at 10190 Akhtamar Drive, Great Falls, VA 22066 (the "Property") via quitclaim deed recorded in Deed Book 28142 at Page 1336 among the Land Records of Fairfax County, Virginia.

2. Liu conveyed the Property to the Liu Trust with the intent to delay hinder or defraud creditors, including SZIC.

1

## PARTIES

3.       SZIC is a Limited Partnership organized under the laws of the People's Republic of China, with its principal place of business located at 2305, 8F, QianHai Excellence Finance Centre, Phase I Unit 2 GuiWan Area, NanShan Sub-District, QianHai ShenZhen-Hong Kong Cooperation Zone, (Suite 515 5/F Tsinghua Information Harbor Research Building, Keyuan Road, Xili Street, Nanshan District), Shenzen, Guangdong Provence.

4.       Liu is a citizen of the People's Republic of China, but is currently domiciled in the United States at the address 16978 Circa Del Sur, Rancho Santa Fe, CA 92067.

5.       The Liu Trust is a trust organized under the laws of the State of Nevada. Upon information and belief, Liu is the trustee of the Trust.

## JURISDICTION & VENUE

6.       Jurisdiction in the Commonwealth of Virginia is proper as to all Defendants under Virginia Code § 8.01-328.1(A)(6), because the causes of action stated in this pleading arose from Defendants having an interest in, using, or possessing real property in the Commonwealth.

7.       Venue is proper in the Circuit Court of Fairfax County under Virginia Code § 8.01-261(3)(a) and (b) because SZIC seeks to subject land in Fairfax County to a debt.

## FACTS

### I.    The Underlying Loans and Arbitration Award

8.       The dispute underlying this case is rooted in a foreign arbitration award in favor of Plaintiff SZIC and against Defendant Liu in the amount equivalent to US$ 21.4 million. On September 10, 2024, the United States District Court for the Southern District of California issued a judgment confirming the award (the "Judgment," attached hereto as **Exhibit A**).

9.       The arbitration was held on November 12, 2020 before a panel of three arbitrators at the Beijing Arbitration Commission (the "Arbitration"). The Arbitration was conducted in

accordance with the Beijing Arbitration Commission's Arbitration Rules and the panel heard the parties' respective arguments, facts, and evidence.

10.     During the Arbitration, both parties stated their claims and the facts and grounds on which the claims and respective defenses were based. Both parties testified and cross-examined the witnesses produced by them and expressed their arguments. The panel conducted the investigation and verification on the relevant issues in the case and both parties made final statements.

11.     Thereafter, on March 22, 2021, the panel rendered an award (the "Award," attached hereto along with English translation as **Exhibit D**) finding that Lui was liable to SZIC for 152.6 million Yuan, which is roughly equivalent to US$ 21.4 million using today's exchange rate.

12.     Liu brought numerous legal challenges against the Award before the courts at the seat of the arbitration in the People's Republic of China seeking to set aside the award and secure a non-enforcement order. The Chinese courts rejected each of Liu's attempts to overrule or set aside the Award.

## II.     SZIC Seeks and Obtains Confirmation of the Award in the Southern District of California

13.     On February 26, 2024, SZIC sought confirmation of the Award in the United States by filing a petition in the United States District Court for the Southern District of California (the "Petition," attached hereto as **Exhibit B**), under the case caption *Shenzhen Zehuijin Investment Center (Limited Partnership) v. Liu Yingkui et al.*, Case No. 3:24-cv-00372-MMA-DEB (the "Confirmation Action").

14.     In the Petition, SZIC sought recognition and confirmation of the Award under the 1958 Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "New

3

York Convention") as implemented by the United States in Chapter 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 201 *et seq.*

15. Liu appeared in the Confirmation Action and on May 16, 2024 filed a motion to dismiss the case (attached hereto as **Exhibit C**).

16. As set forth in more detail below, twelve days later after seeking dismissal of Plaintiff's action to confirm the foreign arbitral award, Liu transferred the Property to the Liu Trust for $0.

17. On September 10, 2024, the Southern District of California denied Liu's motion to dismiss and granted SZIC's Petition and issued the Judgment confirming the Award, thereby rendering it enforceable in the United States as a judgment of the United States District Court for the Southern District of California.

18. Liu has appealed the Judgment to the United States Court of Appeals for the Ninth Circuit, Case No. 24-6215. That appeal is currently pending. Liu has not posted a supersedeas bond and the Judgment is enforceable while on appeal.

19. The Judgment has not been satisfied.

**III. While the Confirmation Action is Pending, Liu Conveys the Property to the Liu Trust for $0.**

20. According to Fairfax County Land Records for the Property (the "Land Records," attached hereto as **Exhibit E**) Liu acquired the Property in November 2013 and paid a purchase price of $1,650,000 for it, and Liu owned the Property for over ten years.

21. According to the Land Records, the Property's current assessed value in 2024 is $1,836,380.

4

22.     On May 28, 2024—twelve days after filing his motion to dismiss the Confirmation Action—Liu conveyed the Property to "LIU YINGKUI TR," a designation which is a reference to the Defendant Liu Trust (the "Conveyance").

23.     The Property was conveyed from Liu to the Liu Trust in exchange for consideration of $0.

24.     Liu made the Conveyance while the Confirmation Action was pending in the United States District Court for the Southern District of California.

25.     At the time of the Conveyance, Liu knew that the Confirmation Action was still pending because he filed a motion to dismiss the case twelve days prior.

### COUNT I – Fraudulent Conveyance

26.     SZIC restates and incorporates by reference the allegations set forth in Paragraphs 1 through 25 above.

27.     Following the Conveyance, Liu—as trustee for the Liu Trust—has retained *de facto* ownership of the Property.

28.     Liu made the Conveyance while the Confirmation Action was pending in the United States District Court for the Southern District of California.

29.     Liu made the Conveyance with knowledge of his debt to SZIC, the Award against him in favor of SZIC, and the pendency of the Confirmation Action in the United States District Court for the Southern District of California seeking confirmation in the United States of the Award.

30.     The Conveyance was made with a lack of or gross inadequacy of consideration.

31.     Liu made the Conveyance to the Liu Trust with the intent to delay, hinder, or defraud creditors, including SZIC.

5

32. The Conveyance was a fraudulent conveyance in violation of Virginia Code § 55.1-400.

33. Pursuant to Virginia Code § 55.1-404, this Court can and should set aside the Conveyance.

34. Pursuant to Virginia Code § 55.1-403, SZIC is entitled to recover its attorneys' fees and sanctions.

## COUNT II – Implied Constructive Trust

35. SZIC restates and incorporates by reference the allegations set forth in Paragraphs 1 through 34 above.

36. Liu made the Conveyance to the Liu Trust with the intent to delay, hinder, or defraud creditors, including SZIC.

37. But for the Conveyance of the Property, the Property would be subject to attachment to satisfy the Judgement.

38. Accordingly, the Court should impose an implied constructive trust upon the Property for the benefit of SZIC.

## PRAYER FOR RELIEF

WHEREFORE, SZIC respectfully requests that the Court award the following relief:

A. That the Court impose an implied constructive trust upon the Property for the benefit of SZIC;

B. That the Court set aside and void the Conveyance of the Property made by Liu to the Liu Trust on May 28, 2024;

C. That the Court award SZIC all of its costs incurred in prosecuting this action;

D.    That the Court enter an award of sanctions against Liu and the Liu Trust including, but not limited to, reasonable attorney's fees, and that such sanctions and attorney's fees be taxed as costs of the sale and be deducted from the proceeds derived from the sale of the Property pursuant to Virginia Code § 55.1-403;

E.    That the Court award to SZIC such other and further relief as appropriate under the circumstances.

Dated: October 31, 2024                    Respectfully submitted,

HUGHES HUBBARD & REED LLP

*James H. Boykin*

James H. Boykin III (Va. Bar No. 67980)
Winthrop S. Jordan (Va. Bar No. 95841)
1775 I Street NW, Suite 700
Washington, DC 20006
Telephone: (202) 721-4600
Facsimile: (202) 721-4646
james.boykin@hugheshubbard.com
winthrop.jordan@hugheshubbard.com

*Counsel for Plaintiff Shenzhen Zehuijin
Investment Center (Limited Partnership)*

7