No. 24-6215

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

**SHENZHEN ZEHUIJIN INVESTMENT CENTER (Limited Partnership),**

Petitioner-Appellee,

v.

**LIU YINGKUI, et al.**

Respondent-Appellant.

_____

On Appeal from the United States District Court
for the Southern District of California
District Court Case No. 3:24-cv-00372-MMA-DEB

Honorable Michael M. Anello

_____

### RESPONDENT-APPELLANT LIU YINGKUI'S
### EXCERPTS OF RECORD: VOLUME 1 OF 1

_____

Anthony J. Dain (Bar No. 98947)
E-mail: anthony.dain@procopio.com
PROCOPIO, CORY, HARGREAVES &
SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorney for Respondent-Appellant LIU YINGKUI

# INDEX

| Date | USDC Dkt. | Description | Page |
|---|---|---|---|
| 09/10/2024 | 31 | Judgement in a Civil Case | 4 |
| 09/10/2024 | 30 | ORDER Granting Petition to Confirm Arbitration Award; and Denying Cross−Motion to Dismiss or Stay | 5 |
| 07/22/2024 | 20 | Respondent Liu Yingkui's Reply in Support of His Cross-Motion and Request for Stay | 46 |
| 07/22/2024 | 20-1 | Supplemental Declaration of Respondent Liu Yingkui in support of His Reply in Support of His Cross-Motion and Request for Stay | 57 |
| 07/22/2024 | 20-3 | Declaration of Zhang Xin in support of Respondent Liu Yingkui's Reply in Support of His Cross-Motion and Request for Stay | 60 |
| 07/10/2024 | 16 | Petitioner's Opposition to Respondent Liu Yingkui's Motion to Dismiss | 62 |
| 05/16/2024 | 12 | Respondent Liu Yingkui's Opposition to Petitioner to Confirm Arbitration, Cross-Motion to Dismiss the Petitioner and Request for a Stay | 86 |
| 05/16/2024 | 12-5 | Declaration of Liu Yingkui in Support of His Opposition and Cross-Motion to Dismiss and Request for a Stay | 117 |

| 03/04/2024 | 3 | Proof of Service on Petition to Confirm Arbitration Award and for Entry of Judgment on Respondent Liu Yingkui | 200 |
|---|---|---|---|
| 02/26/2024 | 1 | Petition to Confirm Arbitration Award | 209 |
| 10/09/2024 | 35 | Notice of Appeal | 226 |
| | | Docket Report for 3:24-cv-00372-MMA-DEB – United States District court, Southern District of California (San Diego) | 227 |



# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shenzhen Zehuijin Investment Center, Limited Partnership | Civil Action No.    24cv372-MMA-DEB |
| **Plaintiff,** | |
| **V.** | |
| Liu Yingkui; Zhang Xin | **JUDGMENT IN A CIVIL CASE** |
| **Defendant.** | |

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED:

The Court DENIES Respondent Liu's cross-motion to dismiss or stay and GRANTS the Petition. The Court CONFIRMS the Award. The case is hereby closed.

**Date:**      9/10/24

**CLERK OF COURT**
**JOHN MORRILL, Clerk of Court**
By:  s/  B. Chandler

B. Chandler, Deputy

**ER-4**

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHENZHEN ZEHUIJIN INVESTMENT CENTER, | Case No. 24-cv-372-MMA-DEB |
| Petitioner, | **ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD; AND** |
| v. | [Doc. No. 1] |
| LIU YINGKUI, et al., | |
| Respondents. | **DENYING CROSS-MOTION TO DISMISS OR STAY** |
| | [Doc. No. 12] |

On February 26, 2024, Shenzhen Zehuijin Investment Center ("Petitioner" or "SZIC") filed a Petition to confirm an arbitration award against Respondents Liu Yingkui ("Respondent Liu") and Zhang Xin ("Respondent Zhang"). Doc. No. 1 ("Pet."). On April 30, 2024, Respondent Zhang filed a response in opposition to the Petition. Doc. No. 9. On May 16, 2024, Respondent Liu filed a response in opposition to the Petition as well as a cross-motion to dismiss or stay the Petition. Doc. No. 12. Both the Petition and Respondent Liu's cross-motion are fully briefed. *See* Doc. Nos. 16, 20, 25.[1] The Court

---

[1] Respondent Zhang was granted leave to file a surreply. Doc. No. 24.

found these matters suitable for disposition on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 13. For the reasons set forth below, the Court **GRANTS** SZIC's Petition and **DENIES** Respondent Liu's cross-motion to dismiss or stay.

## I. INTRODUCTION

Petitioner SZIC asks the Court to confirm a foreign arbitration award issued on March 22, 2021, by the Beijing Arbitration Commission against Respondent Liu. Except where otherwise noted, the facts contained in this background section are derived from the Petition and its attachments, including the March 22, 2021 award, Doc. No. 1-7,[2] and are not to be construed as factual findings by this Court.

### A. Factual Background

In September 2017, SZIC entered into a one-year loan agreement with Respondent Liu and Sinowel Communication Technology Co., Ltd (the "Loan Agreement"). Pet. ¶¶ 11–12. Pursuant to the Loan Agreement, SZIC was to loan Respondent Liu 160,000,000 Yuan, which was to be used to repurchase and release the VIE structure of Beijing Sinowel Communication Technology Co., Ltd. and Beijing Sinowel Asset Administration Co., Ltd. (collectively, the "Target Company") Pet. ¶ 11; Pet. Ex. D at 56.[3]

The Loan Agreement provides that any dispute between the parties was to be governed by the laws of China, and that if amicable negotiations fail, "any party shall have the right to file a lawsuit with Beijing Arbitration Commission, and the dispute shall be settled through arbitration in Beijing in accordance with the rules of Beijing Arbitration Commission." Pet. ¶¶ 14–15; *see also* Pet. Ex. A at 20.

---

[2] The Court refers to all exhibits appended to the declarations submitted in this matter by the number or letter identified. For example, the Court refers to Doc. No. 1-7 as "Petitioner's Exhibit D" or "Pet. Ex. D."

[3] Unless otherwise noted, all citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Also in 2017, two related agreements were executed. First, SZIC, Respondent Liu, and the Target Company entered into a Cooperation Agreement. Pet. ¶ 16. The Cooperation Agreement provides that when SZIC loans Respondent Liu 160,000,000 Yuan under the Loan Agreement, "SZIC's creditor's rights could be converted into equities and that, after converting into equities, Respondent should transfer 13.79% of the Target Company to SZIC which, after transfer is final, should fully settle the principal and interest paid pursuant to the Loan Agreement." *Id.*

Second, SZIC, the Target Company, and Ningbo Zhenrong entered into an Investment Agreement, pursuant to which Ningbo Zhenrong was to extend a loan of 120,000,000 Yuan to the Target Company for one year to be repaid at 8% interest only if the equity conversion of the Target Company failed. *Id.* ¶ 17. The parties to the Investment Agreement simultaneously drafted an Investment Memorandum, outlining the relevant investment returns and the fund relationship between SZIC and Respondent Liu. *Id.*

The funding under the Loan Agreement began on December 22, 2017, and was completed in four installments: two payments on December 22, 2017, in the amounts of 120,000,000 Yuan and 20,000,000 Yuan; 10,000,000 Yuan on April 17, 2018; and 10,000,000 Yuan on May 3, 2018. Pet. ¶¶ 19, 21; Doc. No. 1-3 ¶ 10; Pet. Ex. D at 47. These payments were made "by SZIC individually and through third parties" including, as relevant here, Ningbo Zhenrong, "as outlined and planned for in the Loan Agreement." Pet. ¶ 20.

One year later, in December 2018, the loan matured, and Respondent Liu failed to repay the liabilities outlined in the Loan Agreement. Pet. ¶¶ 11, 20; Pet. Ex. D at 47.

## B. Arbitration History and Record

On July 23, 2020, SZIC submitted an arbitration dispute to the Beijing Arbitration Commission ("BAC"). Pet. Ex. D at 46. The arbitration hearing was held on November 12, 2020, before a tribunal of three arbitrators (the "Tribunal"). *Id.* On March 22, 2021, the Tribunal found in SZIC's favor and awarded SZIC: 140,000,000 Yuan, the principal

pursuant to the Loan Agreement; 8% interest totalling 11,200,000 Yuan; liquidated damages at the rate of 5% per day from July 10, 2020 to the date of actual payment; lawyer's fees in the amount of 400,000 Yuan; and 80% of the arbitration fees, totalling 1,080,966.27 Yuan (the "Award"). *Id.* at 65.  The Tribunal ordered that Respondent Liu fully perform his obligations under the Award within 15 days of service of the Award. *Id.*

On May 8, 2021, an Enforcement Notice issued and was served on Respondent Liu, requiring a freeze and transfer of 152,680,966.27 Yuan.  Pet. ¶ 16.

On June 2, 2021, the Beijing Fourth Intermediate People's Court rejected Respondent Liu's application to revoke the Award.  Pet. ¶ 20; Pet. Ex. E at 19.

On August 16, 2021, the Beijing Second Intermediate People's Court rejected Respondent Liu's objection to the Enforcement Notice and request to unfreeze his assets on the grounds that he never received notice.  Pet. ¶ 33; Pet. Ex. F.  However, this court unfroze certain bank accounts "because the sale of [Respondent Liu's] stocks and other freezing measures satisfied the debts he owed to SZIC such that additional asset freezes were unnecessary." *Id.*

On September 9, 2021, the Beijing Second Intermediate People's Court rejected Respondent Liu's application for non-enforcement of the Award.  Pet. ¶ 34; Pet. Ex. G at 19.

On November 2, 2022, SZIC's application to enforce the Award in Singapore pursuant to § 29(l) of the International Arbitration Act of 1994 was granted by the Assistant Registrar for the General Division of the High Court of the Republic of Singapore.  Pet. ¶ 36; Pet. Ex. I at 2.

On November 15, 2022, the Fourth Branch of the Beijing Municipal People's Procuratorate denied Respondent Liu's petition for supervision of the Beijing Fourth Intermediate People's Court decision.  Pet. ¶ 35; Pet. Ex. H at 5.

On February 20, 2023, Respondent Liu's application to set aside the enforcement order in Singapore was denied.  Pet. ¶¶ 37–38; Pet. Ex. J.

1     On March 3, 2023, the High Court of the Republic of Singapore issued a judgment
2  in SZIC's favor and ordered Respondent Liu to pay all sums due.  Pet. ¶ 39; Pet. Ex. K.

3     On April 5, 2023, the High Court of the Republic of Singapore denied Respondent
4  Liu's appeal.  Pet. ¶ 40; Pet. Ex. L.

## II. LEGAL STANDARD

6     Confirmation of an arbitration award "is a summary proceeding that converts a
7  final arbitration award into a judgment of the court."  *See Ministry of Def. & Support for*
8  *the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc*. ("*Cubic Def.*"),
9  665 F.3d 1091, 1094 n.1 (9th Cir. 2011).  Once an award is confirmed, it has the same
10 force and effect as a judgment in a civil action and may be enforced by any means
11 available to enforce civil judgments.  *Id.*  The burden of proof in a proceeding to confirm
12 an arbitration award is on the party defending against enforcement.  *See Empresa*
13 *Constructora Contex Limitada v. Iseki*, 106 F.Supp.2d 1020, 1024 (S.D. Cal. 2000)
14 (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*
15 *(RAKTA)*, 508 F.2d 969, 973 (2nd Cir. 1974)).

16     "Confirmation of foreign arbitration awards is governed by the Convention on the
17 Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T.
18 2517, known as the New York Convention, and federal law implementing the
19 Convention, 9 U.S.C. §§ 201–208."  *Cubic Def.*, 665 F.3d at 1095.  After the United
20 States entered into the New York Convention, Congress enacted Chapter Two of the
21 Federal Arbitration Act ("FAA"), 9 U.S.C. § 201–208, "to provide for the effective and
22 efficient resolution of international arbitral disputes."  *Day v. Orrick, Herrington &*
23 *Sutcliffe, LLP*, 42 F.4th 1131, 1133 (9th Cir. 2022).  The New York Convention is
24 intended "to encourage the recognition and enforcement of commercial arbitration
25 agreements in international contracts and to unify the standards by which agreements to
26 arbitrate are observed and arbitral awards are enforced in signatory countries."  *Glencore*
27 *Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1120 (9th Cir.
28 2002) (citations omitted).

Within three years after an award falling under the New York Convention is made, "any party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. "Under the Convention, [a] district court's role in reviewing a foreign arbitral award is strictly limited." *Changzhou AMEC E. Tools & Equip. Co., Ltd. V. E. Tools & Equip., Inc.*, No. EDCV 11-00354, 2012 U.S. Dist. LEXIS 106967, 2012 WL 3106620, at *14 (C.D. Cal. 2012) (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir.1997) (internal quotation marks omitted)); *see also Shanghai Lan Cai Asset Mgmt. Co. v. Yueting*, No. CV 18-10255 SJO (MRWx), 2019 U.S. Dist. LEXIS 217634, at *7 (C.D. Cal. Mar. 26, 2019). "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified" in the Convention. 9 U.S.C. § 207. The defenses are construed narrowly and the party opposing recognition or enforcement bears the burden of establishing that a defense applies. *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010). "The Convention and its implementing legislation have a pro-enforcement bias, a policy long-recognized by the Supreme Court." *Glencore Grain*, 284 F.3d at 1120. Thus, the burden on the party seeking to avoid enforcement of an award "is substantial." *Polimaster*, 623 F.3d at 836 (internal citation omitted).

### III. EVIDENTIARY OBJECTIONS

As a preliminary matter, the parties have filed numerous evidentiary objections to the various declarations submitted in this matter. *See* Doc. Nos. 9-2, 12-4, 17, 21, 27. It is not entirely clear how the Federal Rules of Evidence factor into this proceeding. The FAA provides that all applications related to arbitration awards "shall be made and heard in the manner provided by law for the making and hearing of motions, . . . ." 9 U.S.C. § 6. This includes petitions to compel arbitration, *id.* § 4, and petitions to confirm, modify, or vacate an award, *id.* §§ 9–12. The same applies for petitions to compel, *id.* § 206, and confirm, *id.* § 207, foreign arbitration awards falling under the New York Convention, *id.* § 208 (providing that Chapter 1, 9 U.S.C. §§ 1–16, applies to foreign

arbitration proceedings brought under Chapter 2).  The Supreme Court has noted that "[a] directive to a federal court to treat arbitration applications 'in the manner provided by law' for all other motions is simply a command to apply the usual federal procedural rules. . . ."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (quoting 9 U.S.C. § 6); *see also* Fed. R. Civ. P. 81(a)(6)(B) (providing that the Federal Rules of Civil Procedure apply in proceedings "relating to arbitration" brought under Title 9 of the United States Code).

When faced with a petition or motion brought pursuant to the FAA, many courts apply a standard similar to the summary judgment standard under Rule 56.  *Thompson v. La Petite Acad., Inc.*, No. 2:22-cv-04348-AB-JPR, 2023 U.S. Dist. LEXIS 115329, at *8 (C.D. Cal. Apr. 28, 2023) (quoting *Alvarez v. T-Mobile USA, Inc.*, 2011 U.S. Dist. LEXIS 146757, 2011 WL 6702424 at * 3 (E.D. Cal. Dec. 21, 2011)).  Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (explaining that at summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial"); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial.").  As a result, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez—Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)).  Consequently, courts have recognized that evidentiary objections on grounds such as speculation, hearsay, and lack of authentication are inappropriate "where it is apparent that the evidence is capable of being reduced to admissible evidence at trial." *Thompson*, 2023 U.S. Dist. LEXIS 115329, at *8 (quoting *Alvarez*, 2011 U.S. Dist. LEXIS 146757, at *10 (itself quoting *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011))).  With this in mind, the Court turns to each set of objections.

**A.    Respondents' Objections to Petition Declaration**

To begin, Respondents Zhang and Liu object to several paragraphs in Pu Gang's declaration, Doc. No. 1-3 ("Gang Decl."), which Petitioner submitted in support of the Petition.  *See* Doc. No. 9-1; Doc. No. 12-4.  Petitioner filed a response to Respondent Liu's objections.  Doc. No. 18.

Respondent Liu objects to the entire declaration in a footnote, asserting that it is unduly prejudicial and confusing and therefore subject to exclusion pursuant to Federal Rule of Evidence 403.  Doc. No. 12-4 at 1 fn.1.  The Court **OVERRULES** this objection. Pu Gang's declaration is not, as a whole, unduly prejudicial or confusing.  And Respondent Liu's position that he was denied due process in the underlying arbitration has no bearing on the admissibility of this declaration.

The Court **OVERRULES** the objections to ¶ 2.  Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the terms of the Loan Agreement.  Fed. R. Evid. 602.  His testimony as to the terms of the Loan Agreement does not contain any legal conclusions, Fed. R. Evid. 703, nor does this paragraph contain testimony on an "ultimate issue," or is otherwise subject to exclusion under Federal Rule of Evidence 704.

The Court **OVERRULES** the objections to ¶ 3.  This paragraph does not contain any legal conclusions.  Moreover, Pu Gang makes this statement based on his personal knowledge of these facts.  Fed. R. Evid. 701.  Further, Pu Gang does not attempt to lay foundation for any evidence by way of this paragraph.  Fed. R. Evid. 901.

The Court **SUSTAINS IN PART** the objections to ¶ 4.  This paragraph does not contain any legal conclusions.  However, to the extent Pu Gang speaks to the content and terms of the Loan Agreement and Cooperation Agreement, his testimony is barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **SUSTAINS IN PART** the objections to ¶ 6.  Federal Rule of Evidence 611(a) has no apparent applicability here.  This paragraph is not argumentative.  Fed. R. Evid. 403.  Pu Gang does not attempt to lay foundation for any evidence by way of this

paragraph.  Fed. R. Evid. 901.  And Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending and agreements.  Fed. R. Evid. 602.  Further, his testimony as to these events is not a legal conclusion, Fed. R. Evid. 703, nor is this impermissible testimony on an "ultimate issue," Fed. R. Evid. 704.  However, to the extent Pu Gang speaks to the content and terms of the Loan Agreement and Investment Agreement and Memorandum, his testimony is barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 8.  Federal Rule of Evidence 611(a) has no apparent applicability here and this paragraph is not argumentative.  Fed. R. Evid. 403.  Further, Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending under the Loan Agreement.  Fed. R. Evid. 602.  And his testimony as to these events does not contain any legal conclusions, Fed. R. Evid. 703, nor is it impermissible testimony on an "ultimate issue," Fed. R. Evid. 704.

The Court **SUSTAINS** the objections to ¶ 9.  The best evidence rule prohibits Pu Gang from testifying to the content and terms of the Loan Agreement.  Fed. R. Evid. 1002.

The Court **SUSTAINS IN PART** the objections to ¶ 10.  Federal Rule of Evidence 611(a) has no apparent applicability here.  This paragraph is not argumentative.  Fed. R. Evid. 403.  Pu Gang, as an Executive Partner of SZIC, has sufficient personal knowledge of the underlying events, including the lending under the Loan Agreement.  Fed. R. Evid. 602.  His testimony as to these events is not a legal conclusion, Fed. R. Evid. 703, nor is this an "ultimate issue," Fed. R. Evid. 704.  However, to the extent Pu Gang offers testimony as to the content of the Loan Agreement, Cooperation Agreement, and Investment Agreement and Memorandum, his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 11.  The Court finds that this paragraph is not unduly prejudicial, confusing, or argumentative, and that it contains no

legal conclusions.  Fed. R. Evid. 403.  Additionally, Federal Rule of Evidence 611(a) has no apparent applicability here.

The Court **SUSTAINS** the objections to ¶¶ 13, 14, and 16.  The content of the documents in the underlying arbitration record, including the Award and the Enforcement Notice, are subject to the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 17.  The Court finds that this paragraph is not unduly prejudicial, confusing, or argumentative.  Fed. R. Evid. 403.  Additionally, Federal Rule of Evidence 611(a) has no apparent applicability here.  Finally, this paragraph contains no legal conclusions.  Fed. R. Evid. 703.

The Court **OVERRULES** the objections to ¶ 18.  This paragraph is not argumentative or subject to exclusion under Federal Rules of Evidence 403 or 611(a).

The Court **OVERRULES** the objections to ¶ 19.  This paragraph is not argumentative or unduly prejudicial, and it contains no legal conclusions.  Fed. R. Evid. 403.  Further, Federal Rule of Evidence 611(a) has no apparent applicability here.

The Court **SUSTAINS IN PART** the objections to ¶¶ 20, 22, 24, 30.  These paragraphs are not argumentative, nor do they contain any legal conclusions.  Fed. R. Evid. 403.  Moreover, Pu Gang has sufficient personal knowledge of the underlying events, including the history of the arbitration.  Fed. R. Evid. 602.  However, to the extent Pu Gang seeks to testify to the content of the documents in the arbitration record, his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

**B.    Petitioner's Objections to Opposition and Cross-Motion Declarations**

Next, Petitioner objects to the four declarations Respondent Liu offers in support of his opposition and cross-motion.  Doc. No. 17.  Respondent Liu filed a response in opposition to these objections.  Doc. No. 22.

### 1.    *Ding Declaration*

Petitioner objects to paragraphs in Ding Zhexuan's declaration.  Doc. No. 12-1 ("Ding Decl.").  Ding Zhexuan was the legal director of the Target Company from December 2015 to October 2020.  Ding Decl. ¶ 4.

1  The Court **OVERRULES** the objections to ¶¶ 6 and 8.  Out-of-court statements

2  made by a representative of the opposing party are not hearsay.  Fed. R. Evid.

3  801(d)(2)(A).

4  The Court **SUSTAINS** the objection to ¶ 9.  The Court finds that this paragraph—

5  wherein Ding Zhexuan recounts a phone conversation with Arbitrator Zhan Hui—

6  contains hearsay and does not fall within the residual exception to hearsay.  Fed. R. Evid.

7  807.  Respondent Liu explains that Ding Zhexuan was Respondent Liu's arbitration

8  attorney and is an officer of the court and therefore that his statements carry a sufficient

9  guarantee of trustworthiness.  Doc. No. 11 at 2–3.  But Ding Zhexuan does not declare

10  that he was Respondent Liu's arbitration attorney or that he is an officer of the court.[4]

11  Further, these out-of-court statements were not made during other judicial or quasi-

12  judicial proceedings.  Accordingly, Respondent Liu fails to offer sufficient guarantees of

13  trustworthiness on this basis.  Fed. R. Evid. 807(a)(1).  Even assuming Respondent Liu

14  offered sufficient guarantees of trustworthiness, he fails to explain how this evidence is

15  more probative than any other evidence that he could obtain through reasonable efforts.

16  Fed. R. Evid. 807(a)(2).  And it is not clear to the Court that this evidence could

17  nevertheless be reduced to admissible form at trial.

18  The Court **OVERRULES** the objections to ¶ 10.  Ding Zhexuan makes his

19  declaration on personal knowledge and as a percipient witness.  Fed. R. Evid. 602, 901.

20  ### 2. *Zimmerman Declaration*

21  Petitioner objects to paragraphs in James M. Zimmerman's declaration.  Doc.

22  No. 12-2 ("Zimmerman Decl.").  Mr. Zimmerman is an attorney licensed to practice in

23  California and is a registered Foreign Lawyer with the "Beijing Justice Bureau/Chinese

24  Ministry of Justice."  Zimmerman Decl. ¶ 1.

25

26

27  [4] The Court acknowledges that "Ding Zhexuan, legal manager of Beijing Best Wealth Investment & Administration Co., Ltd." appears listed as one of seven attorneys for Respondent Liu at the top of the Award.  Pet. Ex. D at 45.  But Ding Zhexuan does not declare that he is an attorney, officer of the court,

28  or that he represented Respondent Liu during the arbitration.

1    The Court **OVERRULES** all of the objections to Mr. Zimmerman's declaration.

2    Respondent Liu offers Mr. Zimmerman as an expert on the issue of arbitrations in China.

3    Although he is not licensed to practice law in China, the Court finds this fact alone is not

4    dispositive because he offers sufficient foundation for his knowledge, including his

5    experience with Chinese arbitrations, *id.* ¶ 3, which the Court lacks.  Fed. R. Evid. 702.

6    ### 3.    Xie Declaration

7    Petitioner next objects to the declaration of Minmin Xie.  Doc. No. 12-3 ("Xie

8    Decl.").  Minmin Xie is an attorney licensed to practice law in China.  Xie Decl. ¶ 1.  The

9    Court similarly **OVERRULES** all of the objections to Minmin Xie's declaration.

10    Minmin Xie is a Chinese attorney and has specialized knowledge of and experience with

11    China's evidentiary laws, which the Court lacks.  Fed. R. Evid. 702.

12    ### 4.    Liu Declaration

13    Finally, Petitioner objects to paragraphs contained in Respondent Liu's declaration.

14    Doc. No. 12-5 ("Liu Decl.").

15    The Court **OVERRULES** the objections to ¶ 9.  Respondent Liu may testify to his

16    understanding of the purpose of the Loan Agreement, and the Court finds that these

17    paragraphs do not contain any legal conclusions or improper speculation.  Fed. R. Evid.

18    701, 1002.

19    The Court **SUSTAINS** the objections to ¶ 10.  The Court finds that this statement

20    contains improper legal conclusions and is barred by the best evidence rule.  Fed. R.

21    Evid. 701, 1002.

22    The Court **SUSTAINS IN PART** the objections to ¶¶ 12, 13, 15–18, 20–22, and

23    24.  These statements do not contain legal conclusions or improper speculation.  Fed. R.

24    Evid. 701.  However, to the extent Respondent Liu seeks to testify to the content of the

25    Cooperation Agreement, Investment Agreement, Memorandum, or Letter of Cooperation,

26    his statements are barred by the best evidence rule.  Fed. R. Evid. 1002.

27    The Court **SUSTAINS IN PART** the objections to ¶ 27.  Respondent Liu may

28    testify as a percipient witness.  Fed. R. Evid. 602.  However, pursuant to the best

evidence rule, an audio or video recording or transcript is required to prove what took place at the arbitration hearing. Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 32. Respondent Liu can offer his opinion in this respect as it is neither a legal conclusion, improper speculation, nor prohibited by the best evidence rule. Fed. R. Evid. 701, 1002.

The Court **SUSTAINS** the objections to ¶ 35. For the same reasons discussed above, the Court finds that this statement also does not fall within the residual exception to hearsay. Fed. R. Evid. 807. Ding Zhexuan never states that he was Respondent Liu's arbitration attorney or that he is an officer of the court. Further, these out-of-court statements were not made during other judicial or quasi-judicial proceedings. Accordingly, Respondent Liu fails to offer sufficient guarantees of trustworthiness on this basis. Fed. R. Evid. 807(a)(1). Further, even assuming Respondent Liu offered sufficient guarantee of trustworthiness, he fails to explain how this evidence is more probative than any other evidence that he could obtain through reasonable efforts. Fed. R. Evid. 807(a)(2).

Moreover, even if the Court finds that the statements made to Ding Zhexuan statement were subject to the residual hearsay exception, Respondent Liu's statement appears to contain hearsay within hearsay, and he offers no other exception or exclusion. Fed. R. Evid. 805. Finally, it is not clear to the Court that this evidence could nevertheless be reduced to admissible form at trial.

The Court **SUSTAINS IN PART** the objections to ¶¶ 36 and 39. The Court finds that these paragraphs do not contain any legal conclusions or improper speculation. Fed. R. Evid. 701. However, to the extent Respondent Liu seeks to testify to the content of the Arbitration Award, his statements are barred by the best evidence rule. Fed. R. Evid. 1002.

**C.     Respondents' Objections to Petition Reply Declarations**

Respondents Zhang and Liu have also lodged objections to the declarations Petitioner submits in support of its opposition to Respondent Liu's cross-motion and

1  reply in support of its Petition.  Doc. No. 21.  Petitioner filed a response in opposition to
2  these objections.  Doc. No. 28.

3     ### *1.     Gang Declaration*

4     Petitioner offers a second declaration from Pu Gang in support of its omnibus
5  opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc.
6  No. 16-1 ("Gang Opp. Decl.").

7     The Court **OVERRULES** the objections to ¶ 3.  This statement is not barred by
8  the best evidence rule because Pu Gang is not testifying to the content of the Investment
9  Agreement and Memorandum.  Fed. R. Evid. 1002.  Nor is this statement unduly
10  prejudicial or confusing.  Fed. R. Evid. 403.

11     The Court **OVERRULES** the objections to ¶¶ 5, 6, and 7.  Pu Gang is an
12  Executive Partner of SZIC and therefore has sufficient personal knowledge of the
13  underlying events, including the transfer of funds under the Loan Agreement and Ningbo
14  Zhenrong's involvement.  Fed. R. Evid. 602.  His testimony as to the terms of the Loan
15  Agreement does not contain any legal conclusions, Fed. R. Evid. 703, nor does he testify
16  to an "ultimate issue," Fed. R. Evid. 704.  And because Pu Gang does not seek to lay the
17  foundation of any item of evidence through these paragraphs, Respondents' lack of
18  foundation objections are without merit.  Fed. R. Evid. 901.

19     The Court **OVERRULES** the objections to ¶ 9.  Declarant Pu Gang is an
20  Executive Partner of SZIC and therefore has sufficient personal knowledge of the
21  underlying events, including the arbitration proceedings.  Fed. R. Evid. 602.  His
22  statements do not contain any legal conclusions, Fed. R. Evid. 703, nor do these
23  statements bear on an "ultimate issue," Fed. R. Evid. 704.  Because Pu Gang does not
24  seek to lay the foundation of any item of evidence through these paragraphs,
25  Respondents' lack of foundation objections are without merit.  Fed. R. Evid. 901.
26  Finally, this paragraph does not contain any out-of-court statements.  Fed. R. Evid. 802.

27     The Court **OVERRULES** the objections to ¶ 10.  This paragraph does not contain
28  any legal conclusions or hearsay.  Fed. R. Evid. 602, 802.  Moreover, Pu Gang makes this

statement based on his personal knowledge of these facts, and he does not seek to lay the foundation for any item of evidence.  Fed. R. Evid. 701, 901.

The Court **OVERRULES** the objections to ¶¶ 11–13.  Pu Gang is an Executive Partner of SZIC and therefore has sufficient personal knowledge of the underlying events, including the arbitration proceedings and Petitioner's collection efforts, Respondent Liu's involvement with the Target Company, and the Chinese litigation the parties are currently involved in.  Fed. R. Evid. 602.  His statements do not contain any legal conclusions, Fed. R. Evid. 703, nor do these statements bear on an "ultimate issue," Fed. R. Evid. 704.  Further, because Pu Gang does not seek to lay the foundation for any item of evidence through these paragraphs, Respondents' lack of foundation objections are without merit.  Fed. R. Evid. 901.  Finally, this paragraph does not contain any out-of-court statements.  Fed. R. Evid. 802.

### 2.    *Jian Declaration*

Petitioner also offers a declaration from Zhang Jian in support of its omnibus opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc. No. 16-2 ("Jian Decl.").

The Court **OVERRULES** the objections to ¶ 2.  The Court finds that this paragraph is not subject to the best evidence rule, Fed. R. Evid. 1002, nor is it unduly prejudicial or confusing, Fed. R. Evid. 403.

The Court **OVERRULES** the objections to ¶ 4–6.  Zhang Jian makes his declaration on personal knowledge, and these paragraphs contain no legal conclusions or improper speculation.  Fed. R. Evid. 602.  Additionally, Zhang Jian is not offering expert testimony, Fed. R. Evid. 703, and because he does not seek to offer or authenticate any evidence, the lack of foundation objections are without merit.  Fed. R. Evid. 901.

### 3.    *Ho Declaration*

Finally, Petitioner offers a declaration from Yi-Chin Ho in support of its omnibus opposition to Respondent Liu's cross-motion and reply in support of the Petition.  Doc. No. 16-3 ("Ho Decl.").  Yi Chin-Ho is an attorney representing Petitioner in this matter.

Ho Decl. ¶ 1. Attorney Ho offers a declaration and seeks to lay the foundation for two exhibits. Ho Decl. ¶¶ 3–4.

Respondents Zhang and Liu object to paragraphs 3 and 4 on relevance grounds. Fed. R. Evid. 401. The Court **OVERRULES** the objections. The Court finds that the two exhibits are relevant—they are two Chinese court rulings and are part of the arbitration record and procedural history of this matter.

**D.    Petitioner's Objections to Cross-Motion Reply Declarations**

Lastly, Petitioner has filed objections to the declarations Respondent Liu submits with his reply in support of his cross-motion. Doc. No. 27. Respondent Liu filed a response in opposition to these objections. Doc. No. 29.

**1.    *Liu Declaration***

Respondent Liu submits a second declaration with his reply in support of his cross-motion to dismiss or stay. Doc. No. 20-1 ("Liu Reply Decl.").

The Court **OVERRULES** the objections to ¶ 6. This paragraph does not contain any legal conclusions. Fed. R. Evid. 701.

The Court **OVERRULES** the objections to ¶ 10. Respondent Liu makes his declaration on personal knowledge and this statement contains no legal conclusions or improper speculation. Fed. R. Evid. 602. Additionally, Respondent Liu does not seek to authenticate any evidence. Fed. R. Evid. 901.

The Court **OVERRULES** the objections to ¶ 12. This paragraph does not contain any legal conclusions. Fed. R. Evid. 701.

**2.    *Xie Declaration***

Respondent Liu offers a second declaration from Minmin Xie in support of his reply. Doc. No. 20-2 ("Xie Reply Decl.").

The Court **OVERRULES** the objections to ¶ 5. Minmin Xie is a Chinese attorney and has specialized experience with Chinese litigation, which the Court lacks. Fed. R. Evid. 702. He offers proper expert testimony, and his declaration does not contain improper legal conclusions or speculation.

The Court **SUSTAINS IN PART** the objections to ¶ 6.  Minmin Xie's statements are within the realm of proper expert testimony, and this paragraph does not contain legal conclusions or improper speculation.  Fed. R. Evid. 702.  However, to the extent Minmin Xie seeks to offer testimony as to the contents of the "Regulatory Opinions of the Beijing Higher People's Court on Requirements for Materials to File Civil Cases," his statements are subject to exclusion under the best evidence rule.  Fed. R. Evid. 1002.

The Court **OVERRULES** the objections to ¶ 7.  Minmin Xie offers proper expert testimony, and this paragraph does not contain legal conclusions or improper speculation.  Fed. R. Evid. 702.  Further, this paragraph is not unduly prejudicial or confusing.  Fed. R. Evid. 403.

### 3. *Zhang Declaration*

Respondent Liu offers a declaration from Respondent Zhang in support of his reply.  Doc. No. 20-3 ("Zhang Reply Decl.").  The Court **OVERRULES** Petitioner's objections to ¶¶ 4–6.  Respondent Zhang makes her declaration based on her personal knowledge.  These paragraphs do not contain any legal conclusions or improper speculation, and because Respondent Zhang does not seek to lay the foundation for any evidence, Petitioner's lack of foundation objection is without merit.  Fed. R. Evid. 901.

## IV. DISCUSSION

In accordance with the New York Convention, Petitioner asks the Court to confirm the Award.  Doc. No. 1.  Respondents argue that the Court should deny the Petition on various grounds.  Doc. Nos. 9, 12.  Additionally, Respondent Liu moves to dismiss the Petition for lack of personal jurisdiction, *forum non conveniens*, and for failure to join an indispensable party.  Alternatively, Respondent Liu moves to stay this action pending resolution of litigation in China.  Doc. No. 12.  Because Respondent Liu challenges the Court's personal jurisdiction over him, the Court first addresses his cross-motion.

## A.  Cross-Motion to Dismiss

As noted, Respondent Liu asks the Court to dismiss the Petition for lack of personal jurisdiction, *forum non conveniens*, and failure to join an indispensable party.

Doc. No. 12 at 14–22.  The Court addresses each of these arguments in turn.

### 1.    *Personal Jurisdiction*

Courts reviewing petitions to confirm arbitration awards, including those falling under the New York Convention, are obligated to find personal jurisdiction before enforcing an award.  *Glencore Grain*, 284 F.3d at 1121 ("We hold that neither the Convention nor its implementing legislation removed the district courts' obligation to find jurisdiction over the defendant in suits to confirm arbitration awards.").  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)).  "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

In support of the Court's jurisdiction over Respondents, Petitioner alleges that Respondents are residents of San Diego County, California, but acknowledges that their primary residence is in Beijing.  Pet. ¶ 5.

Respondent Liu argues that the Court lacks specific and general personal jurisdiction over him.  First, he asserts that there is no general personal jurisdiction because he is not "at home" here.  Doc. No. 12 at 14 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).  According to Respondent Liu, although he is physically present within the District now, he does not intend to remain here indefinitely.  Liu Decl. ¶ 4.

A natural person is considered "at home" for general personal jurisdiction purposes where he or she is domiciled.  *Daimler*, 571 U.S. at 137; *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  An individual's domicile is determined by several factors, including: current residence, location of personal and real property, location of bank accounts, location of spouse and

family, and driver's license and automobile registration. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

Second, Respondent Liu asserts that there is no specific personal jurisdiction over him because the minimum contacts test is not satisfied. Doc. No. 12 at 15 (citing *Mavrix Photo*, 647 F.3d at 1227–28). Under California law, whether the Court may exercise specific personal jurisdiction over a non-resident defendant depends on the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The party asserting the court's personal jurisdiction bears the burden of satisfying the first two prongs. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Once satisfied, the burden then shifts to the party disputing jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

Respondent Liu's arguments and discussion of these two personal jurisdiction tests relies on the faulty premise that he is an "out-of-state defendant." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). He is not. Critically, Respondent Liu does not factually dispute that he is presently residing in this District.

"Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 (1990). Pursuant to this principle, courts recognize what is often called "tag" or "transient" jurisdiction—the jurisdictional theory that service upon a person physically

present in a forum, even if only temporarily and engaged in activity unrelated to the litigation, suffices to confer jurisdiction. *Bourassa v. Desrochers*, 938 F.2d 1056, 1058 (9th Cir. 1991) (quoting *Burnham*, 495 U.S. at 632 (Brennan, J., concurring)); *see also Ridgway v. Phillips*, 383 F. Supp. 3d 938, 945 (N.D. Cal. 2019) (quoting *Martinez*, 764 F.3d at 1067). In other words, it is well-settled that a court may, consistent with the Due Process Clause, exercise personal jurisdiction over a defendant who was physically present within the state when they were served. *Martinez*, 764 F.3d at 1067 (explaining that in *Burnham*, the Supreme Court "reaffirmed th[is] historical rule" after *International Shoe*); *Bourassa*, 938 F.2d at 1058 ("In *Burnham*, the Supreme Court recently affirmed the constitutional validity of transient jurisdiction.")

Here, Respondent Liu admits he is presently in California. Liu Decl. ¶ 4. And he does not dispute that he has been living at the Rancho Santa Fe address where the Petition was served, Doc. No. 3, or that he has continuously lived there since April 2022, Gang Opp. Decl. ¶ 10.

In reply, Respondent Liu argues that he was not personally served with the Petition. Doc. No. 20 at 3–4. To the extent Respondent Liu challenges the sufficiency of service of the Petition here, generally, the Court notes that it can disregard this argument as it was inappropriately raised in his reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *see also FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.") (collecting cases); *see also* Fed. R. Civ. P. 12(h)(1) (providing that challenges to service are waived if not properly raised). Relatedly, Respondent Liu's declaration submitted in reply contains almost entirely new evidence on this issue, *see* Liu Reply Decl., which was similarly inappropriate, *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Nevertheless, to the extent Respondent Liu challenges the Court's personal jurisdiction over him based upon a lack of proper or personal service, the Court reaches this argument.

1    Respondent Liu was not personally served.[5]  Doc. No. 3.  He was served with the

2    Petition by mail.  Fed. R. Civ. P. 5(b)(2)(C).  In compliance with Rule 5, Petitioner

3    mailed a copy of the Petition and its attachments to the Rancho Santa Fe address.  Doc.

4    No. 3 at 6.  Respondent Liu does not dispute that this is the location where he resides nor

5    does he argue that this is not his current or last known address.  Alternatively, assuming

6    Rule 4 applies, Respondent Liu was duly served by delivery to his residence.  Fed. R.

7    Civ. P. 4(e)(1)–(2).  Rule 4 is to be liberally construed here as Respondent Liu does not

8    dispute that he received actual notice of this action.  *Direct Mail Specialists, Inc. v. Eclat*

9    *Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("Rule 4 is a flexible rule

10   that should be liberally construed so long as a party receives sufficient notice of the

11   complaint.") (internal quotation marks and citation omitted).  Petitioner attempted

12   personal service twice, left the Petition at the Rancho Santa Fe property with an adult

13   who represented themselves to be a co-tenant, Doc. No. 3 at 3, and mailed the Petition to

14   this same address thereafter.  The Court finds on this record that Petitioner substantially

15   complied with Rules 4(e)(1) and (2).[6]

---

[5] In challenging this Court's personal jurisdiction over him, Respondent Liu primarily argues that he was not personally served with the Petition.  Doc. No. 12 at 3–4.  Respondent Liu alternatively contends that service did not comply with California Code of Civil Procedure § 415.20.  *Id.* at 4.  Federal Rule of Civil Procedure 4, which governs service of a summons and complaint, allows for the application of California's service of process rules in federal court.  Fed. R. Civ. P. 4(e)(1).  Thus, Respondent Liu has apparently taken the position that Rule 4 governs service of the Petition here.

However, Respondent Liu has failed to address the service of process provision contained within the FAA.  Section 9 provides that "[i]f the adverse party is a resident of the district within which the award was made," service is to be accomplished by following the law for service of a motion in that district.  9 U.S.C. § 9.  Rule 5 governs service of motions in federal court.  On the other hand, "[i]f the adverse party [is] a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."  *Id.*

It is not clear how the service rules set forth in § 9 factor into this proceeding, where the Award was not made in any United States district and where Respondents claim to be nonresidents of the state but are nevertheless residing here.  In any event, because Respondent Liu does not argue he was subject to service by U.S. Marshal, the Court assumes without deciding that Petitioner was not required under 9 U.S.C. § 9 to serve Respondents in this manner.

[6] Rule 4(e)(1) authorizes service pursuant to state law, and California permits substituted service by, among other methods, leaving a summons and complaint with an adult at the party's usual residence or place of business with service by mail after.  Cal. Code Civ. P. § 415.20.

1    The Court can find no rule in *Burnham* that the exercise of personal jurisdiction

2   based upon physical presence only comports with due process if the nonresident

3   defendant is personally served.  Doc. No. 20 at 3.  True, in *Burnham*, the nonresident

4   defendant was personally served while present in the forum.  495 U.S. at 607.  But many

5   courts, including the Supreme Court, have not so limited the constitutional validity of

6   jurisdiction based on physical presence.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S.

7   873, 880 (2011) ("Presence within a State at the time suit commences through service of

8   process is another example" of a person submitting to personal jurisdiction); *see also*

9   *Ewing v. 8 Figure Dream Lifestyle, Ltd. Liab. Co.*, No. 18-CV-1063-AJB-AGS, 2019

10   U.S. Dist. LEXIS 54574, at *22 (S.D. Cal. Mar. 29, 2019) ("General jurisdiction over an

11   individual is permissible only where he has been served with process while voluntarily in

12   the forum, is domiciled in the forum, or consents to the court's jurisdiction."); *Greystone*

13   *Hous. Found., Inc. v. Fantasy Holdings, Ltd. Liab. Co.*, No. 16-CV-0300-AJB-DHB,

14   2017 U.S. Dist. LEXIS 74683, at *6 (S.D. Cal. May 16, 2017) (same); *Karalis v. Carn*,

15   No. 3:24-cv-01143-JSC, 2024 U.S. Dist. LEXIS 88871, at *4 (N.D. Cal. May 16, 2024)

16   ("'A federal court obtains personal jurisdiction over a defendant if it is able to serve

17   process on him.'") (quoting *Butcher's Union Loc. No. 498, United Food & Com. Workers*

18   *v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)).

19    Moreover, as the Supreme Court in *Burnham* concluded: "The short of the matter

20   is that jurisdiction *based on physical presence alone* constitutes due process because it is

21   one of the continuing traditions of our legal system that define the due process standard

22   of 'traditional notions of fair play and substantial justice.'"  495 U.S. at 619 (emphasis

23   added).  For this reason, California's long-arm statute similarly recognizes the exercise of

24   personal jurisdiction based on presence.  Judicial Council comment to Cal. Code Civ. P.

25   § 410.10 ("All the recognized bases of judicial jurisdiction are included. In the case of

26   natural persons, such bases currently include presence, . . . .").

27    Respondent Liu lives in California.  He has continuously been physically present in

28   this district, voluntarily, for the last two years.  Gang Opp. Decl. ¶ 10.  Thus, he is subject

to service of process in this state and, if served accordingly, subject to this Court's personal jurisdiction. *Burnham*, 495 U.S. at 615 ("We do not know of a single state or federal statute, or a single judicial decision resting upon state law, that has abandoned in-state service as a basis of jurisdiction."); *cf. J. McIntyre*, 564 U.S. at 881 ("By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.").

Therefore, based on Respondent Liu's physical presence in the Southern District of California and the fact that he was properly served here, the Court is satisfied that it has personal jurisdiction over him. *See, e.g.*, *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 742 (N.D. Cal. 2015) ("As in *Burnham*, the fact that these [third party defendants] did not purposefully avail themselves of California's laws and protections does not necessarily mean they are protected from litigation here if tag or transient jurisdiction is established."); *Marino v. Nery's USA, Inc.*, No. 14-CV-497-BEN (JMA), 2015 U.S. Dist. LEXIS 181427, at *17 (S.D. Cal. Feb. 25, 2015) (finding that the defendant "was served in the state of California, which is sufficient to establish general personal jurisdiction"). Accordingly, the Court **DENIES** Respondent Liu's motion to the extent he seeks dismissal of the Petition for lack of personal jurisdiction.[7]

### 2. *The Doctrine of* **Forum Non Conveniens**

Next, Respondent Liu asserts that the Petition should be dismissed based on the doctrine of *forum non conveniens*. Doc. No. 12 at 15–18. "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947); *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

---

[7] Although Respondent Zhang does not dispute this Court's personal jurisdiction over her, the record similarly reflects that she is currently living in California and was served at the same residence in Rancho Santa Fe. Doc. No. 4. Consequently, for these same reasons, the Court finds that it has personal jurisdiction over Respondent Zhang.

As the Ninth Circuit has explained:

> The doctrine of *forum non conveniens* is a drastic exercise of the court's "inherent power" because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case. The harshness of such a dismissal is especially pronounced where, as here, the district court declines to place any conditions upon its dismissal. Therefore, we have treated *forum non conveniens* as "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting *Ravelo Monegro*, 211 F.3d at 514) (internal quotations omitted). The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal.

*Carijano*, 643 F.3d at 1224.

The party moving to dismiss based on *forum non conveniens* bears the burden of showing both that there is an adequate alternative forum, and that the balance of private and public interest factors favors dismissal. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). "The standard to be applied to a motion for dismissal on the ground of *forum non conveniens* is whether defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)) (cleaned up).

Respondent Liu argues that China is an adequate alternative forum. Doc. No. 12 at 16. According to Respondent Liu, he is a resident of China and Petitioner is a Chinese company, and both are subject to, or have submitted to, jurisdiction in China. *Id.* He also refers to pending litigation in China, initiated by the Target Company in 2024, between Petitioner, Respondent Liu, the Target Company, and Ningbo Zhenrong, which involves "the rights of Petitioner, Liu, Ningbo Zhenrong and the Target Company regarding Ningbo Zhenrong's remittance of the 120 million RMB to the Target Company." Doc. No. 12 at 13; *id.* at 17.

However, as Petitioner argues in opposition, *forum non conveniens* is not one of the enumerated grounds under Article V to refuse to confirm a foreign arbitration award.

Doc. No. 16 at 15–16.  This would appear to foreclose application of the doctrine in these circumstances.  But even assuming the doctrine of *forum non conveniens* applies to arbitration confirmation proceedings such as this one, the Court finds that Respondent Liu has not met his burden.

With respect to the private interest factors, *see Carijano*, 643 F.3d at 1229 (identifying the seven private interest factors), it is highly relevant that this is a summary proceeding.  The fact that China is the location where witnesses or evidence resides, and that the events precipitating the arbitration took place in China, carries very little if any weight.  To that end, there will be no trial or evidentiary hearing during these proceedings, so there will be no costs associated with bringing any remote witnesses to trial nor will there be any issues compelling their testimony.  Additionally, Respondent Liu is currently living in California, not China.  Liu Decl. ¶ 4.  Therefore, on balance, the private interest factors do not weigh in Respondent Liu's favor.

Turning to the public interest factors, *see Carijano*, 643 F.3d at 1232 (identifying the five public interest factors), the Court finds that the burden, congestion, and costs on the Court do not weigh in favor of dismissal because, again, this is a summary proceeding.  And while the local interest in the underlying dispute—a contract dispute between a Chinese citizen and Chinese company concerning a loan agreement executed in China—may be low, the United States is a party to the New York Convention and therefore has an interest in confirming enforceable foreign arbitration awards.  And these arbitration confirmation proceedings do not call on the Court to apply any foreign law.  Accordingly, the public interest factors similarly do not weigh in favor of dismissal.

Finally, Respondent Liu fails to identify any tangible burden, or facts establishing "oppression and vexation," by having to respond to this Petition here as opposed to in China.  For these reasons, the Court **DENIES** Respondent Liu's motion to dismiss based on the doctrine of *forum non conveniens*.  *See Zhejiang Meds. & Health Prods. Imp. & Exp. Co. v. Blue Cal. Co.*, No. CV 08-06327 RGK (FFMx), 2009 U.S. Dist. LEXIS 141024, at *10 (C.D. Cal. Apr. 23, 2009).

### 3. *Failure to Join Indispensable Parties*

Finally, Respondent Liu moves to dismiss the Petition on the grounds that Ningbo Zhenrong and the Target Company are indispensable parties that cannot be joined.  Doc. No. 12 at 18–22.  Federal Rule of Civil Procedure 19 governs the joinder of required parties.  Courts analyzing Rule 19 employ a three-step analysis: (1) is the absent party necessary; (2) if so, is it feasible to join the absent party; and (3) if joinder is not feasible, can the action proceed without the absent party or "is the absent party indispensable," thereby requiring dismissal of the action.  Fed. R. Civ. P. 19(a); *Salt River Project Agric. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012); *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999).

An absent party is "required" under Rule 19(a) if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)–(B).

The failure and inability to join a required party is not an enumerated defense to confirmation under Article V, so Rule 19 appears inapplicable to this proceeding.  *See Shanghai Lan*, 2019 U.S. Dist. LEXIS 217634, at *10–11 (confirming arbitration award over objection that indispensable party was not joined).  But even assuming Rule 19 may be properly raised in defense to confirmation proceedings under the New York Convention, Respondent Liu does not explain how these parties are required under either Rule 19(a)(1)(A) or (b) except to say that they are necessary parties because "at the heart

1  of the parties' dispute" is whether "the transfer of 120 million RMB" was a loan from

2  Ningbo Zhenrong to the Target Company or from Petitioner to Respondent Liu.  Doc.

3  No. 12 at 19.

4       At the heart of this proceeding is whether the Court must confirm the Award or

5  whether one of the seven grounds to refuse confirmation set forth in Article V are

6  present.  In particular, whether: Respondent Liu was denied due process, Doc. No. 12 at

7  22–24; the Award was beyond the scope of the submission, *id.* at 24–26; or enforcement

8  of the Award is contrary to public policy, *id.* at 26–29.  The underlying dispute that was

9  submitted to and resolved by the BAC Tribunal is not at issue in this proceeding.

10  Moreover, neither Ningbo Zhenrong nor the Target Company were parties to the

11  arbitration or named as responsible for the Award.  Accordingly, the Court finds that

12  Ningbo Zhenrong and the Target Company are not required parties as defined by Rule

13  19(a)(1).  Because Respondent Liu has failed to demonstrate that they are necessary

14  parties, the Court need not and does not reach the remainder of the Rule 19 analysis.

15  *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990) ("[N]o inquiry under Rule 19(b) is

16  necessary, because the threshold requirements of Rule 19(a) have not been satisfied.").

17  Consequently, the Court **DENIES** Respondent Liu's motion to dismiss the Petition.

18  **B.    Motion to Stay**

19       In the alternative, Respondent Liu asks the Court to stay this action pending

20  resolution of litigation in China.  Doc. No. 12 at 29–30.  According to Respondent Liu,

21  the Target Company initiated a lawsuit in China in 2024 against Petitioner, Liu, and

22  Ningbo Zhenrong regarding "Ningbo Zhenrong's transfer of 120 million RMB to the

23  Target Company . . . ."  Doc. No. 12 at 29.

24       As discussed above, the Court "shall confirm the award unless it finds one of the

25  grounds for refusal or deferral of recognition or enforcement of the award specified" in

26  the Convention.  9 U.S.C. § 207.  Respondent Liu does not identify any enumerated basis

27  to defer these proceedings.  Instead, he briefs the factors for a *Landis* stay.  *See Landis*

28  *v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Assuming the Court has the inherent authority to stay arbitration confirmation proceedings pending other litigation, the Court finds that a stay is not warranted here. In *Landis*, the Supreme Court recognized the general principle that "[a] district court has discretionary power to stay proceedings in its own court." *Lockyer v. Mirant*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 254). A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (identifying the *Landis* factors)). The burden is on the movant to show that a stay is appropriate. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

Here, Petitioner concedes that a stay will not result in any harm. Doc. No. 16 at 23. But the Court is not satisfied that the pending litigation in China has any bearing on this proceeding or that Respondents face any hardship in the absence of a stay. But for the general description that the Chinese lawsuit is "with respect to Ningbo Zhenrong's transfer of 120 million RMB to the Target Company is pending in China," Doc. No. 12 at 29, Respondent Liu provides no information as to what claims are before the Chinese court or matters are being litigated. The Court assumes on this limited record that the Chinese litigation will revisit the issue of whether the loan from Ningbo Zhenrong was

made on behalf of Petitioner and pursuant to the Loan Agreement. But as far as the Court is concerned, this dispute was already resolved by the BAC, and the only disputes before the Court in this proceeding are the defenses under Article V that Respondents put forth. Moreover, this is a summary proceeding that is fully briefed and there is nowhere forward for Respondents to go. For these reasons as well, the orderly course of justice does not call for a stay and there is simply no risk of inconsistent judgments. Accordingly, the Court **DENIES** Respondent Liu's alternative request for a stay.

## C.     Petition to Confirm the Award

Turning to the Petition, SZIC asks the Court to confirm the Award and names both Liu and Zhang as Respondents. However, as Respondent Zhang points out in opposition, she was neither a party to the Loan Agreement nor named as a respondent in the arbitration. Doc. No. 9 at 2; Doc. No. 9-1 ("Zhang Decl.") ¶¶ 6–8, 10–15. Rather, according to the Petition, Respondent Zhang is Respondent Liu's wife, and this appears to be the sole basis for naming her as a respondent on the Petition. Pet. ¶ 5.[8]

The FAA is clear that for arbitration awards falling under the New York Convention, "any party to the arbitration may apply to any court having jurisdiction . . . for an order confirming the award *as against any other party to the arbitration.*" 9 U.S.C. § 207 (emphasis added). Respondent Zhang was not a party to the arbitration. Pet. Ex. D at 45 (identifying Petitioner as the Applicant and Respondent Liu as the only Respondent). And she is not named on the Award. *See generally* Pet. Ex. D.

Nevertheless, in support of its position that naming Respondent Zhang was proper, Petitioner explains that she is "listed as the Target Company's legal representative in the Loan Agreement and the Cooperation Agreement (Petition Exs. A-B), and she is a party to the Investment Agreement and Memorandum (Petition Ex. C.)." Doc. No. 16 at 23.

---

[8] Respondent Zhang is mentioned once in the Petition, Pet. ¶ 5, and Petitioner expressly disclaims her involvement in the arbitration, *id.* at 2 fn.1.

Petitioner then explains that Respondent Zhang is jointly and severally liable on the Award and that she owns property and assets in California. *Id.* at 23–24.

The fact that other courts have found Respondent Zhang jointly liable for the Award, or permitted enforcement against her, *see* Doc. No. 16 at 24, has no bearing on this summary proceeding through which the Court is merely tasked with determining whether one of the seven grounds to refuse confirmation of the Award are present. The Court's authority to reduce the Award to a judgment here comes from Congress' grant of such power, 9 U.S.C. § 207, and Petitioner offers no legal authority for its position that the Court can confirm an arbitration award against a person who was not a party to the arbitration. *C.f. United States ex rel. John A. Weber Co. v. Milcon Contr.*, 523 F. Supp. 3d 1203, 1211 (D. Haw. 2021) (declining to confirm an arbitration award against a surety who was not a party to the arbitration). Accordingly, the Court finds that it was statutorily improper under the FAA for Petitioner to name Respondent Zhang as a respondent and the Court lacks the authority to confirm the Award as against her. The Court therefore **DISMISSES** the Petition as it relates to Respondent Zhang.

Turning to the merits of the Petition, for the reasons set forth below, the Court finds that the Award falls under the New York Convention, and that Respondent Liu fails to meet his burden of demonstrating that the Award should not be confirmed.

First, the parties do not dispute, and the Court finds, that the Award falls under the New York Convention. A foreign arbitration agreement or arbitral award "falls under" the New York Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial" unless such relationship that is entirely between United States citizens. 9 U.S.C. § 202. "Courts generally address four factors to determine whether to enforce an arbitration agreement under the Convention." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009) (citations omitted). These four factors examine whether the suit to enforce the foreign arbitration involves: (1) "an agreement in writing within the meaning of the Convention" that (2) "provides for arbitration in the territory of a signatory of the Convention" and (3) "arises out of a legal

relationship, whether contractual or not, which is considered commercial," as well as whether (4) "a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign state." *Balen*, 583 F.3d at 655 (quoting *Bautista*, 396 F.3d at 1294 n.7) (internal quotation marks omitted); *see also* 9 U.S.C. § 202.

The Loan Agreement, to which the Petitioner and Respondent Liu are signatories, is an agreement in writing within the meaning of the Convention.  Pet. Ex. A.  Second, the Loan Agreement calls for arbitration in Beijing according to the rules of the BAC.  *Id.* at 20.  Third, because the Loan Agreement provides that SZIC loan was to repurchase and release the VIE structure of the Target Company, the Court agrees that the instant action arises out of a legal commercial relationship between Petitioner and Respondent Liu.  *See* 9 U.S.C. § 202 ("Commercial" "includ[es] a transaction, contract, or agreement described in section 2," namely "a contract evidencing a transaction involving commerce").  Finally, Petitioner is a Chinese corporation with its principal place of business in Shenzhen, Guangdon Province.  Pet. ¶ 4; Pu Gang Decl. ¶ 1.  Therefore, Petitioner is not an American citizen.  Accordingly, the Court finds that the Award falls under the New York Convention and the Court therefore has jurisdiction over this matter pursuant to 9 U.S.C. § 203.

As a result, the Court must confirm the Award unless it finds one of the seven defenses applicable.  The seven grounds for refusing to confirm an award are set out in Article V, which provides:

> (1) Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> > (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under

the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

(2) Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, Art. V.

These defenses are construed narrowly and the party opposing recognition or enforcement bears the burden of establishing that a defense applies. *See Polimaster*, 623 F.3d at 836. "The Convention and its implementing legislation have a pro-enforcement bias, a policy long-recognized by the Supreme Court." *Glencore Grain*, 284 F.3d at

1120.  Thus, the burden on the party seeking to avoid enforcement of an award "is

substantial."  *Polimaster*, 623 F.3d at 836 (internal citation omitted).

Respondent Liu presses three of the Article V defenses.  Doc. No. 12 at 22–31.

### 1.      *Denial of Due Process – Article V(1)(b)*

First, Respondent Liu contends that he was denied due process in violation of

Article V(1)(b) of the New York Convention.  Doc. No. 12 at 22–24.  Pursuant to Article

V(1)(b), a court may deny enforcement if "[t]he party against whom the award is invoked

was not given proper notice of the appointment of the arbitrator or of the arbitration

proceedings or was unable to otherwise present his case."  New York Convention, art. V,

§ 1(b).  This provision "essentially sanctions the application of . . . United States

standards of due process."  *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan*

*Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298 (5th Cir. 2004); *see also Lihua Song v.*

*Que*, No. 23-cv-02159-RFL, 2024 U.S. Dist. LEXIS 101438, at *3 (N.D. Cal. May 31,

2024).  Accordingly, an arbitration hearing must "meet[] the minimal requirements of

fairness—adequate notice, a hearing on the evidence, and an impartial decision by the

arbitrator," with the parties having had "an opportunity to be heard at a meaningful time

and in a meaningful manner."  *Karaha Bodas*, 364 F.3d at 299 (internal quotation marks

omitted).  However, "[t]he right to due process does not include the complete set of

procedural rights guaranteed by the Federal Rules of Civil Procedure."  *Id.*  (footnote

omitted).  "This provision does not authorize a court to refuse to recognize or enforce an

award unless it finds a denial of fundamental fairness in the arbitration proceedings."

*Bartlit Beck LLP v. Okada*, 25 F.4th 519, 523 (7th Cir. 2022).

Here, Respondent Liu asserts that he was denied the opportunity to confront and

cross-examine "crucial witnesses" in violation of his due process rights.  Doc. No. 12 at

24.  According to Respondent Liu:

> At the substantive heart of the issues in arbitration was whether the 120
> million RMB Ningbo Zhenrong transferred to the Target Company was a loan
> from Petitioner to Liu, as per the Loan Agreement and as argued by Petitioner,

1   or whether it was a convertible equity investment in the Target Company by
2   Ningbong Zhenron, as in the Investment Agreement, Memo and Letter of
    Commitment and as argued by Liu.
3

4   *Id.* at 23.

5         Respondent Liu contends that at the arbitration hearing, Petitioner offered

6   "explanation notes"—"self-serving" notes submitted at the arbitration hearing

7   "purportedly authored by Ningbo Zhenrong"—in support of its position on this matter.

8   *Id.*  Respondent Liu contends he was not given the opportunity to cross-examine, for

9   example, the author of the "explanation notes."  *Id.*

10        "[A] party does not have an absolute right to cross-examination."  *Sunshine Mining*

11  *Co. v. United Steelworkers of Am., etc.*, 823 F.2d 1289, 1295 (9th Cir. 1987) (citing

12  *Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local*

13  *901*, 763 F.2d 34, 40 (1st Cir. 1985)).  "The arbitrator must, however, give each of the

14  parties to the dispute an adequate opportunity to present its evidence and arguments."  *Id.*

15  Here, Respondent Liu summarily asserts that he was "denied the right to examine crucial

16  witnesses."  Doc. No. 12 at 24.  But he does not identify a single person by name that he

17  was unable to cross-examine—Respondent Liu only identifies unknown persons.  Doc.

18  No. 12 at 23 ("Liu did not get an opportunity to confront and cross-examine witness(es),

19  such as whoever authored the 'explanation' notes, and/or whoever had percipient

20  knowledge of any facts supporting them.").

21        More importantly, the record, namely, the transcript of the arbitration hearing,

22  reflects that Respondent Liu was not denied due process.  First, Respondent Liu was

23  represented by counsel, and he was given the opportunity to submit evidence and present

24  argument at the hearing.  *See generally* Doc. No. 12-5 at 14–26 ("Hrg. Tr.").  Further, all

25  parties agreed to the procedures, including the method and manner of cross-examination.

26  Hrg. Tr. at 14.  And specifically with respect to the "explanation notes," it appears from

27  the record that Respondent Liu raised concerns to the Tribunal and that an exchange

28  involving authenticity issues and "cross-examination opinion" took place.  Hrg. Tr. at

20–21 (discussing Exhibit 5).  Further, at the conclusion of the hearing, the parties were invited to submit written "cross-examination opinion."  Hrg. Tr. at 25.  At bottom, Respondent Liu fails to explain how these procedures were inadequate, how he was prejudiced by the absence of an ability to cross examine these unknown witnesses, or how the arbitration was fundamentally unfair as a result of his inability to conduct this cross-examination.

Respondent Liu's evidence does not change this outcome.  First, he offers hearsay evidence from Ding Zhexuan.  Even assuming the Court accepts this evidence under the residual exception to hearsay, Ding Zhexuan only suggests that there was some miscommunication four months after the hearing as to whether there would be a second hearing.  Ding Decl. ¶ 9.  His testimony does not undermine the sufficiency and fairness of the procedures Respondent Liu had already received at the hearing.

Respondent Liu also offers a declaration from James M. Zimmerman, an attorney with expert knowledge of and experience with Chinese arbitrations, including those under the BAC.  Zimmerman Decl. ¶¶ 1–3.  Mr. Zimmerman testifies to various BAC procedures that amount to, in his opinion, "systemic and institution conditions and limitations that impact the fairness and impartiality of the BAC dispute resolution process."  Zimmerman Decl. ¶ 6.  But there is no explanation of how these procedures as applied in this arbitration proceeding deprived Respondent Liu of his right to due process.  Mr. Zimmerman also discusses the procedures of selecting arbitrators and challenging arbitrator selections, specifically Petitioner's selection of Arbitrator Jingmin Zhai.  Zimmerman Decl. ¶¶ 8–9.  Mr. Zimmerman appears to question Arbitrator Zhai's impartiality.  *Id.*  But Respondent Liu does not argue that Arbitrator Zhai engaged in any misconduct or that Respondent Liu's due process rights were in any way affected by Arbitrator Zhai's presence on the Tribunal.  Further, Mr. Zimmerman calls into question Arbitrator Zhai's candor in his declaration statement, Zimmerman Decl. ¶ 9, but Respondent Liu does not argue that his due process rights were violated or affected by this declaration.

1    Accordingly, the Court finds that Article V(1)(b) does not provide a basis for the

2    Court to deny confirmation of the Award.

3    ### 2.    *Beyond the Scope of Submission – Article V(1)(c)*

4    Next, Respondent Liu argues that the Award was beyond the scope of the matter

5    submitted to arbitration.  Doc. No. 12 at 24–26.  This defense, enumerated at Article

6    V(1)(c), allows a court to refuse to confirm a foreign award if:

> The award deals with a difference not contemplated by or not falling within
> the terms of the submission to arbitration, or it contains decisions on matters
> beyond the scope of the submission to arbitration, provided that, if the
> decisions on matters submitted to arbitration can be separated from those not
> so submitted, that part of the award which contains decisions on matters
> submitted to arbitration may be recognized and enforced.

13   New York Convention, art. V, § 1(c).

14   According to Respondent Liu, the arbitration was initiated based on the Loan

15   Agreement, which included an arbitration provision and to which Respondent Liu was a

16   signatory.  Doc. No. 12 at 25.  Respondent Liu explains that the Loan Agreement did not

17   govern the transfer of 120 million Yuan from Ningbo Zhenrong to the Target Company.

18   *Id.*  Rather, Respondent Liu contends that this loan was made pursuant to the Investment

19   Agreement, which does not include an arbitration clause and to which Respondent Liu is

20   not a signatory.  *Id.*  Thus, "Petitioner had no right to initiate arbitration of events that

21   occurred pursuant to the Investment Agreement. And, the Arbitration Tribunal had no

22   jurisdiction to address matters related to the Investment Agreement."  Doc. No. 12 at 26.

23   The Court is not persuaded by this argument, which appears to rehash the merits of

24   the parties' dispute that was submitted to arbitration and is beyond the scope of these

25   proceedings.  The Loan Agreement's arbitration provision provides, in full:

> 4.2 Any dispute arising from the interpretation or performance of this
> Agreement shall first be settled through amicable negotiation. If negotiation

1
2
3

        failed, then any party shall have the right to file a lawsuit with the Beijing Arbitration Commission, and the dispute shall be settled through arbitration in Beijing in accordance with the rules of Beijing Arbitration Commission.

4  Pet. Ex. A at 20.

5         Accepting Respondent Liu's narrative, the underlying dispute involved, in part,

6  whether Petitioner's performance (funding the loan) included Ningbo Zhenrong's loan of

7  120 million Yuan. Doc. No. 12 at 23. So the issue of whether the loan from Ningbo

8  Zhenrong was made pursuant to the Loan Agreement or the Investment Agreement, as

9  Petitioner contends, falls within the scope of the arbitration clause in the Loan Agreement

10  and therefore the submission. Beyond this, Respondent Liu's argument on this defense is

11  devoid of any reference to the Award and therefore he fails to demonstrate how any part

12  of the Award is beyond the scope of the matter submitted. Accordingly, the Court finds

13  that Article V(1)(c) of the New York Convention does not provide a valid basis for the

14  Court to refuse to confirm the Award.

15     **3.**     **Contrary to Public Policy – Article V(2)(b)**

16         Finally, Respondent Liu argues that confirmation of the Award would be contrary

17  to the public policy. Doc. No. 12 at 27. The Convention's public policy defense, Article

18  V(2)(b), states:

19
20
21
22

        Recognition and enforcement of an arbitral award may . . . be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

23  New York Convention, art. V, § 2(b).

24        "In recognition of a presumption favoring upholding international arbitration

25  awards under the Convention, this defense is construed narrowly" and "applies only

26  when confirmation or enforcement of a foreign arbitration award 'would violate the

27  forum state's most basic notions of morality and justice." *Cubic Def.*, 665 F.3d at 1096–

28  97 (internal citations and quotation marks omitted). "Although this defense is frequently

raised, it 'has rarely been successful.'" *Id.* at 1097 (quoting Andrew M. Campbell, Annotation, *Refusal to Enforce Foreign Arbitration Awards on Public Policy Grounds*, 144 A.L.R. Fed. 481 (1998 & supp.) (collecting cases)).

As an initial matter, Respondent Liu argues that the Award violates California's public policy. Doc. No. 12 at 27–29. But violation of the public policy of California, or any particular state, is technically not an enumerated defense. The New York Convention's public policy defense states that in order for the Court to refuse to confirm an award, enforcement must be "contrary to the public policy of that country," here, the United States. New York Convention, art. V, § 2. Thus, to the extent Respondent Liu asks the Court to deny confirmation of the Award because confirmation would violate California's public policy, this is not an enumerated defense, and the Court therefore rejects this argument.

The Court nevertheless considers whether confirmation of the Award would violate public policy of the United States. In support of this defense, Respondent Liu first reiterates that he was denied the right to cross-examine unknown witnesses, including the preparer of the "explanation notes" and witnesses with percipient knowledge of the facts contained therein. Doc. No. 12 at 27. As discussed above, the Court is not persuaded that Respondent Liu was denied due process in this respect. Accordingly, for these same reasons, the Court finds that recognition of the Award does not contravene the United States' public policy.

Second, Respondent Liu argues that "there is evidence Petitioner acted unscrupulously sought to corrupt the process." Doc. No. 12 at 29. In support, he relies exclusively on the declaration of Ding Zhexuan, who states:

> 6. Petitioner approached me several times when the Arbitration was ongoing. In particular, around approximately August 2020 to October 2020, Mr. Yan Lianggang ("Mr. Yang"), a representative of Petitioner, approached me and offered me certain benefits as long as I was willing to help Petitioner during the Arbitration. I did not accept it.

1
2

7. The Arbitration panel consisted of three arbitrators. Liu could nominate one arbitrator. I recommend Arbitrator Zhan Hui ("Arbitrator Zhan") to Liu. Liu nominated Arbitrator Zhan, who became one of the three arbitrators.

3
4

8. During the Arbitration, Mr. Yang asked me to introduce Arbitrator Zhan to him. I refused.

5

6    Ding Decl. ¶¶ 6–8.

7         Further, Respondent Liu refers back to the Zimmerman Declaration.  As discussed

8    above, Mr. Zimmerman testifies to various BAC procedures, which he opines amount to

9    "systemic and institution conditions and limitations that impact the fairness and

10   impartiality of the BAC dispute resolution process."  Zimmerman Decl. ¶ 6.

11   Mr. Zimmerman also offers information on Arbitrator Zhai, the arbitrator Petitioner

12   selected.  Zimmerman Decl. ¶ 8.  Mr. Zimmerman explains that it is his understanding

13   that Arbitrator Zhai "once held several prominent positions in the High People's Court of

14   Beijing" including "director of the Beijing Commission on Discipline and Inspection

15   responsible for supervising Communist Party officials and activities within the court,

16   which is a powerful political role."  *Id.*  According to Mr. Zimmerman, "[i]n these roles,

17   Mr. Zhai had the ability to exert much influence over the arbitration process to the benefit

18   of Petitioner and to the detriment of Respondent."  *Id.*  Respondent Liu concludes that

19   "[i]n light of Petitioner's attempt to corrupt the arbitration proceedings and the

20   susceptibility of arbitration in China to corruption, the Arbitration Award should not be

21   confirmed. New York Convention, Art. V(2)(b)."  Doc. No. 12 at 29.

22        Respondent Liu identifies no public policy.  And his arguments are not specific as

23   to why confirmation of this Award would violate any public policy of the United States.

24   There was, by Respondent Liu's own evidence, no corruption.  And to the extent

25   Respondent Liu takes the position that all arbitrations before local arbitration institutions

26   in China, such as the BAC, are corrupt, Doc. No. 12 at 27–28, the Court will not find on

27   this record that *any* award issued by the BAC violates the United States' basic notions of

28   morality and justice.

1  Consequently, the Court finds that confirmation of the Award is not contrary to

2  public policy of the United States.

3  **D.     Award of Costs**

4  In its prayer for relief, Petitioner asks for costs incurred in bringing this action.

5  Pet. at 17.  In his opposition and cross-motion, Respondent Liu argues that the Court

6  should not award Petitioner costs because he raised colorable arguments in good faith.

7  Doc. No. 12 at 30–31.

8  The question of whether a party defending against enforcement under the New

9  York Convention raised colorable arguments in good faith bears on the matter of

10  attorney's fees, not costs.  *Cubic Def.*, 665 F.3d at 1104 ("It is well settled, however, that

11  even absent express statutory authority, federal courts have authority to award attorney's

12  fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive

13  reasons."); *see also BU8 Sdn. Bhd. v. CreAgri, Inc.*, No. C-14-4503-EMC, 2015 U.S.

14  Dist. LEXIS 27950, at *31 (N.D. Cal. Mar. 6, 2015*); *Sheet Metal Workers Int'l Asso.

15  Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 747 (9th Cir. 1985).

16  Here, Petitioner does not ask the Court for an award of attorney's fees.  So Respondent

17  Liu's arguments are inapposite.  Moreover, Federal Rule of Civil Procedure 54 provides,

18  in relevant part:

19

20  (1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or
    a court order provides otherwise, costs—other than attorney's fees—should
21  be allowed to the prevailing party. But costs against the United States, its
    officers, and its agencies may be imposed only to the extent allowed by law.
22  The clerk may tax costs on 14 days' notice. On motion served within the next
23  7 days, the court may review the clerk's action.

24

25  Fed. R. Civ. P. 54(d)(1); *see also* CivLR 54.1.

26  Respondent Liu does not point to any statute, rule, or court order providing that

27  Petitioner should not be entitled to recover its costs as the prevailing party in this

28  proceeding.  But more importantly, the taxation of costs is a routine, ministerial function

1   of the Clerk's Office, and judgment has not yet been entered and Petitioner has not yet

2   filed an application and bill of costs. Accordingly, the Court declines to rule on any

3   request by Respondent Liu to deny Petitioner costs at this time.

## V. Conclusion

5   For the foregoing reasons, the Court **DENIES** Respondent Liu's cross-motion to

6   dismiss or stay and **GRANTS** the Petition. The Court **CONFIRMS** the Award and

7   **DIRECTS** the Clerk of Court to enter judgment accordingly.

8   **IT IS SO ORDERED**.

9   Dated: September 10, 2024

HON. MICHAEL M. ANELLO
United States District Judge

Anthony J. Dain (Bar No. 98947)
E-mail: anthony.dain@procopio.com
Lianlian Wu (Bar No. 306523)
E-mail: lianlian.wu@procopio.com
PROCOPIO, CORY, HARGREAVES &
  SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Respondents
Liu Yingkui and Zhang Xin

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHEN ZEHUIJIN INVESTMENT CENTER (Limited Partnership), <br><br> Petitioner, <br><br> v. <br><br> LIU YINGKUI; ZHANG XIN, <br><br> Respondents. | Case No. 3:24-cv-00372-MMA-DEB <br><br> *Assigned to Hon. Michael M. Anello* <br><br> **RESPONDENT LIU YINGKUI'S REPLY IN SUPPORT OF HIS CROSS-MOTION TO DISMISS THE PETITION AND REQUEST FOR STAY** |

## I.    INTRODUCTION

Respondent Liu Yingkui ("Respondent Liu") respectfully submits this Reply in support of his Cross-Motion to Dismiss the Petition, and alternatively Request for Stay.

Petitioner's Opposition fails to establish that this Court has personal jurisdiction over Respondent Liu because: (1) Liu was not personally served, and (2) Liu does not domicile in or otherwise have continuous or systematic contacts with California. Additionally, Petitioner's argument that *in rem* jurisdiction is an alternative fails because the property at issue is separate property not subject attachment and the property is not the subject matter of this suit.

Petitioner's Opposition also fails to refute that an adequate alternative forum exists in China since the Chinese court has already ruled that the value of the frozen stocks is sufficient to pay the Arbitration Award. In addition, Petitioner fails to address the public and private interest factors. Legally and factually, Petitioner fails to refute that Ningbo Zhenrong and the Target Company Beijing Sinowel are necessary parties to this action who must be joined. Petitioner's Opposition to the stay of the case is based on its conclusory allegation that suit brought by the Target Company is a sham suit. Finally, Petitioner's argument that it is entitled to costs lacks merit.

## II.   FACTUAL BACKGROUND RELEVANT TO THIS REPLY

The summons and the Petition were not served on Respondent Liu. (Supplemental Declaration of Liu Yingkui in support of His Reply in Support of His Cross Motion to Dismiss the Petition and Request for Stay ("Suppl. Liu Decl."), ¶ 3.) Instead, the summons and Petition were handed to a Jing Ya[1] (Doc. 3, Affidavit of Service), an acquaintance of Respondent Zhang Xin, who happened to be visiting and approaching the front door of Ms. Zhang's property located at 16978 Circa Del Sur, Rancho Santa Fe, CA 92067 (the "Property"). (*Id*., at ¶¶4-5.) Jing Ya was not a resident or member of household and Respondent Liu never otherwise authorized Jing Ya to

---

[1] Whom Petitioner's process server misspelled "Jing Yu."

1

1  accept service on his behalf. (*Id.*, at ¶5.)

2      Mr. Liu does not own the Property (Supp. Liu Decl., ¶ 6.) The Property is Ms.

3  Zhang's separate property. (Declaration of Zhang Xin in support of Respondent Liu

4  Yingkui's Reply in Support of His Cross Motion to Dismiss the Petition and Request

5  for Stay ("Zhang Decl."), ¶ 4.) At the time of her purchase of the Property, Respondent

6  Zhang was domiciled in Singapore. (*Id.*, at ¶ 5.)

7      Respondent Liu does not maintain the P.O. Box 8426 in Rancho Santa Fe.

8  (Suppl. Liu Decl., ¶ 6.)  The P.O. Box is Ms. Zhang's. (Zhang Decl., ¶ 7.)

9      Petitioner has levied and emptied Respondent Liu's bank accounts and social

10  security provident fund account in China. (Suppl. Liu Decl., ¶ 8.) Respondent Liu

11  withdrew from the Target Company in 2020. (*Id.*, at ¶ 12.) He has had no association

12  with the Target Company since 2020, let alone any control over the Target Company.

13  (*Id.*) The Target Company commenced a lawsuit against Ningbo Zhenrong, Petitioner

14  and Respondent Liu with respect to the 120 million RMB in China (the "China

15  Lawsuit"). (*Id.*, at ¶ 13.) Respondent Liu did not cooperate or coordinate with the

16  Target Company to create the China Lawsuit. (*Id.*)

17  **III.   ARGUMENT**

18      **A.   This Court Should Dismiss the Petition Against Respondent Liu
           Because this Court Lacks Personal Jurisdiction Over Him.**
19

20      Petitioner's Petition against Respondent Liu must be dismissed because this

21  Court lacks personal jurisdiction. See Fed. R. Civ. P. 12(b)(2).

22          **1.   Personal Jurisdiction Is Not Established Because Respondent
               Liu Was Not Personally Served.**
23

24      A court can exercise personal jurisdiction over a nonresident only when the

25  nonresident is personally served with process while physically present in the state.

26  *Burnham v. Superior Ct.* (1990) 495 U.S. 604, 610–11. Under California law[2], such

27  _____

28  [2] Jurisdictional analyses under California state law and federal due process are the
   same. *Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

2

service must be by personal delivery to the person to be served, Cal. Code Civ. Proc. § 415.10(a). Alternatively, if process "cannot with reasonable diligence be personally delivered to the person to be served," it may be delivered to his "dwelling house, usual place of abode, usual place of business, or usual [physical] mailing address ... in the presence of a competent member of the household or a person apparently in charge of [such abode, business or physical mailing address] … who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." C.C.P. § 415.20(b).

Here, Petitioner did not comply with Section 415, and thus failed to comport with the due process requirements for this Court to acquire jurisdiction. Petitioner did not deliver the summons and Petition to Respondent Liu. (Suppl. Liu Decl., ¶ 3.) Rather, Petitioner delivered the summons and Petition to a person named Jing Ya, an acquaintance of Respondent Zhang, who happened to be visiting and was at the time approaching the front door of the Property.[3] (*Id*., at ¶¶ 4-5). Petitioner then attached the summons and Petition to an e-mail addressed to Petitioner. (*See* Doc 3.) While Petitioner subsequently mailed a copy of the summons and Petition to the Property (*Id*.), without compliance with the requirement of personal delivery to a person authorized to receive delivery under Section 415.20, mailing was insufficient.

Because Petitioner's attempted service of the summons and Petition on Respondent Liu did not comport with the minimum requirements under state and federal due process, this Court does not have personal jurisdiction.

---

[3] Petitioner's Proof of Service makes the conclusory allegation that Ms. Jing is a "Co-Tenant," but provides no support for that conclusion. In fact, another statement in the proof of service belies that allegation. Under "Description of person Served," the process server states of Ms. Jing: "Spoke very little English." Given that Ms. Jing spoke little English, such that the process server even got Ms. Jing's name wrong, it is improbable that Ms. Jing would have stated she was a "co-tenant." More likely, the process server concluded that whomever he served was a co-tenant. The fact that Ms. Jing spoke very little English may also explain why the process server did not aver that he informed Ms. Jing "of the contents thereof," as mandated by C.C.P. § 415.20(b).

**2.    The Court Has No General Jurisdiction Over Respondent Liu.**

Petitioner's argument that the Court has general jurisdiction over Respondent Liu relies solely on conclusory allegations that Respondent Liu resides in and has an intent to remain in California, and that he has a P.O. Box and Venmo account. (*See* Doc 16 at 13, 15.)

In his initial Declaration, Respondent Liu declared that he does not reside in California and has no intent to remain in California indefinitely. (*See* Doc 12-5, ¶ 4.) If Petitioner had any evidence to counter Respondent Liu's Declaration it would have included it in its Omnibus filing. However, with disturbing consistency, Petitioner continues to base its jurisdictional arguments solely "on information and belief."  For instance, Petitioner's counter argument to Respondent Liu's unequivocal denial that he domiciles, or has any intent to remain indefinitely, in California rests solely on the Declaration of Pu Gang in Support of Petitioner's Opposition. Yet, the Declaration of Pu Gang contains nothing but conclusory speculation. At paragraph 10, Pu Gang declares: "On information and belief, Mr. Liu resides and intends to remain in California ... He has also had the P.O. Box … On information and belief he uses his Venmo account to transact business in California …"  (*See* Doc 16-1, ¶ 10.) Petitioner relies on at least six other references in Pu Gang's Declaration that are based solely on "information and belief." (*See* Doc 16-1, ¶¶ 9-12.)

Given that Petitioner has failed to counter Respondent Liu's unequivocal denial with any competent "information" on which it maintains its "belief" this Court should conclude that personal jurisdiction is lacking. *See, Data Disc, Inc. v. Systems Tech. Assocs., Incs.*, 557 F.2d at 1284 (noting the court may not assume the truth of allegations in a pleading which are contradicted by affidavits). Petitioner had the opportunity in its Opposition to counter Respondent Liu's percipient testimony with competent evidence but chose to stand on mere information and belief. This is insufficient to meet the minimal standard to establish personal jurisdiction. *See, e.g., Silverstein v. Experienced Internet.com, Inc.*, 2005 WL 1629935 at *3 (N.D. Cal. July

4

1   11, 2005).

2          As further evidence of no personal jurisdiction, Respondent Liu provides his

3   Supplemental Declaration affirming that he does not own any real property in San

4   Diego, nor does he maintain a P.O. Box in California. (Suppl. Liu Decl., ¶¶ 6-7.)

5   Rather than presenting any evidence in support of its speculation of personal

6   jurisdiction Petitioner actually concedes, that Ms. Zhang, "owns the California

7   Property in her individual capacity." (*See* Doc 16 at 7, fn. 2.)  Moreover, Petitioner

8   provides no authority that, even were Mr. Liu to own a P.O. Box or Venmo account,

9   such ownership would be sufficient to confer personal jurisdiction.

10         Petitioner has failed to establish the Court has general jurisdiction over

11  Respondent Liu.

12         **3.      There Is No *In Rem* Jurisdiction Over Respondent Zhang's**

13              **Separate Property.**

14         Petitioner attempts to bootstrap its failed argument that there is personal

15  jurisdiction over non-California domiciled Liu, by arguing the arbitration award can

16  be enforced against Respondent Zhang's California Property through *in rem*

17  jurisdiction. In support, Petitioner attempts to use the presumption of California

18  domiciliary community property rights under California Family Code Section 760 as

19  a third-party sword rather than the marital property shield it is.

20         Section 760 provides: "**Except as otherwise provided by statute**, all property,

21  real or personal, wherever situated, **acquired by a married person during the**

22  **marriage while domiciled in this state is community property**." (Emphasis added).

23  Irrespective of Petitioner's misapplication of the statute in gross, Petitioner's argument

24  fails for two reasons. First, in her Declaration, Ms. Zhang avers that the Property is

25  her separate property, and that Respondent Liu has no ownership interest in it. (Zhang

26  Decl., ¶¶ 4, 6). Respondent Liu affirms that he has no ownership interest in Ms.

27  Zhang's Property. (Suppl. Liu Decl., ¶ 6.)  Petitioner produces no evidence to counter

28  Ms. Zhang's and Mr. Liu's testimony. Thus, as "otherwise provided by statute," i.e.,

5

1 Family Code Section 770, the Property is Ms. Zhang's separate property. Second, Ms.

2 Zhang avers that at the time she purchased the property she was domiciled in

3 Singapore, not California. (Zhang Decl., ¶ 5.)   Again, Petitioner has no proof

4 otherwise. Thus, pursuant to Section 760, the Property is not community property.

5       Additionally, Petitioner ignores the distinction between *in rem* and *quasi in rem*

6 jurisdiction. *In rem* jurisdiction "is the court's power to adjudicate rights over

7 property." *United States v. Obaid*, 971 F.3d 1095, 1098 (9th Cir. 2020) In a true in rem

8 proceeding, the property is either "the subject matter of [the] litigation" or "the

9 underlying cause of the action related to the property." *Id*., at 1101.  Thus, in a true *in*

10 *rem* proceeding, personal jurisdiction is irrelevant. Here, however, Petitioner seeks to

11 confirm a foreign arbitration award. Neither Ms. Zhang's Property nor the Venmo

12 account Petitioner asserts is California personal property are the subject matter or

13 cause of this case. The property is secondary to the underlying cause of action.

14 Therefore, Petitioner is asking the Court to assert *quasi in rem* jurisdiction over

15 Respondent Zhang Xin's Property. Where *quasi in rem* jurisdiction is sought, a critical

16 prerequisite remains *in personam* jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 193,

17 209, 213.

18              **4.      Discovery Will Not Help Petitioner Establish Jurisdiction.**

19       "Discovery may be appropriately granted where pertinent facts bearing on the

20 question of jurisdiction are controverted or where a more satisfactory showing of the

21 facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)

22 Jurisdictional discovery is not warranted here. Petitioner has not alleged **any** facts

23 supporting jurisdiction; instead, it merely incants "information and belief."  On the

24 other hand, Respondent has submitted competent evidence proving personal

25 jurisdiction does not exist. This is not an issue of competing evidence, or where more

26 satisfactory evidence could be gleaned through discovery. Petitioner has no evidence.

27      **B.      Forum Non Conveniens Applies In This Case.**

28       In its opposition, Petitioner cites two cases: *Lueck v. Sundstrand Corp*., 236

6

F.3d 1137 (9th Cir. 2001) and *Costa v. Keppel Singmarine Dockyard PTE, Ltd.,* No. Cv 01-11-15MMM, 2003 WL 24242419 (C.D. Cal. Apr. 24, 2003). In *Lueck*, the court held that the foreign forum is adequate if it "provides the plaintiff with some remedy." *Lueck*, *supra,* 236 F.3d. at 1143-44. In *Costa*, the court held that "an alternative forum is considered inadequate if the plaintiff would be deprived of all remedies there." *Costa*, *supra*, 2003 WL 24242419, at *27. These two cases apply perfectly to the instant case and support that China is an adequate alternative forum.

Here, through enforcement proceedings in China, Petitioner has frozen Respondent Liu's numerous assets in China, including bank accounts and stocks. (*See* Doc. 12-5, ¶ 38.) Petitioner has levied and emptied Respondent Liu's bank accounts and social security provident fund account in China. (Suppl. Liu Decl., ¶ 8.) Petitioner also acknowledged that Petitioner "is currently in the process of applying for the auction of Liu Yingkui's shares, and all of the outstanding shares have already been auctioned, with the remaining shares being restricted shares…The court in China recently identified a house in China owned by Liu Yingkui." (Doc 16-1, ¶ 13.)

Petitioner provides no supporting evidence for its conclusory allegation that Liu's assets in China are insufficient to cover the Award. To the contrary, the Beijing High People's Court's has ruled that the frozen stock was sufficient to cover the Arbitration Award. (*See* Doc 12-5, ¶ 39, Ex. F.)  China as a foreign forum "provides the [Petitioner] with some remedy" under *Lueck, supra*, 236 F.3d. at 1143-44; and the Petitioner is not "deprived of all remedies" in China as in *Costa*, *supra*, 2003 WL 24242419, at *27.

Noticeably, Petitioner fails to address the public and private interest factors in analyzing forum non conveniens and, so, does not refute Respondent Liu's position that the public and private interest factors favor dismissal of the Petition.

### C. Ningbo Zhenrong and the Target Company Are Indispensable Parties and Are Missing From This Action.

Petitioner argues in the Opposition that there is no dispute as to the nature of the

7

1  120 million RMB sent by Ningbo Zhenrong to the Target Company. (*See* Doc16 at19-

2  20.)  This argument is specious.

3      Petitioner does not refute the authenticity of the Letter of Commitment issued

4  concomitantly with Ningbo Zhenrong's payment of 120 million RMB. Petitioner

5  merely submits two self-serving[4], and conclusory, declarations in which Ningbo

6  Zhenrong's managing partner and corporate representative repeat the mantra that the

7  120 million RMB transferred by Ningbo Zhenrong to the Target Company are not its

8  investment in the Target Company. (*See* Doc 16-1, ¶¶5-7 and Doc. 16-2, ¶¶4-6.) These

9  two declarations, just as the two Notes Petitioner submitted during the Arbitration, are

10  directly in contrast with Ningbo Zhenrong's Letter of Commitment, which

11  unequivocally expressed that the 120 million RMB constituted Ningbo Zhenrong's

12  loan to the Target Company to be converted into an equity interest. (*See* Doc 12-5, Ex.

13  A.) The Letter of Commitment specifically stated that 120 million RMB constituted

14  Ningbo Zhenrong's own funds, were not entrusted on behalf of others and were its

15  investment in the Target Company. (*Id*.)

16      Furthermore, the Petitioner's conclusionary allegation that Respondent Liu has

17  de facto control over the Target Company is directly contradicted by Respondent Liu's

18  Declaration that he is not associated with the Target Company and has no control over

19  it. (Suppl. Liu Dec., ¶ 12) Respondent Liu declares that he did not direct the Target

20  company to file any lawsuit to avoid paying the Arbitration Award. (*Id*., ¶ **13**).

21  Respondent Liu's testimony is bolstered by the fact that the Target Company sued not

22  only Petitioner and Ningbo Zhenrong, but Respondent Liu as well. Moreover,

23  Petitioner's characterization of the complaint filed by the Target Company is wrong

24  and misleading. (*See* Doc16 at 10, 20.) The complaint speaks for itself. (*See* Doc. 12-

25  5, Ex. H.) It is a breach of contract case. (*Id*.) The underlying claims and subject matter

26  of the complaint relate to the transfer of the120 million RMB. (*Id*.)  As shown in the

27

28  ---
[4] For instance, Pu Gang admits that he is both the Executive Manager of Petitioner and one of the managing partners of Ningbo Zhenrong. *See* Doc 16-1, ¶¶1, 3.

1    complaint, the Target Company brought the action because of Ningbo Zhenrong's

2    contradictory representations, i.e., its representation at the time of investment that the

3    120 million RMB was Ningbo Zhenrong's investment in the Target Company and its

4    representation to the Arbitration Tribunal that the 120 million RMB was Petitioner's

5    loan to Respondent. (*Id.*)  Other than its rank assertion, Petitioner has no evidence that

6    the lawsuit is a sham.

7         **D.    The BAC Proceedings Were Improper**

8         Petitioner's opposition fails to address the fundamental problem with the BAC

9    proceedings; irrespective of whether the BAC allowed what it termed cross-

10   examination of evidence, i.e., challenges to the authenticity of documents. (*See* Doc

11   16 at 21-22.) The BAC proceedings did not allow for the opportunity to cross-exam

12   any witnesses. Because of the directly contradictory documents put forth by Petitioner

13   and Ningbo Zhenrong, even minimal notions of due process dictate that Respondent

14   Liu should have been afforded the right to cross-examine those parties' witnesses.

15   Petitioner again offers nothing but conclusory statements by its declarants that

16   Respondent Liu did not attempt to cross-examine them. But as set forth in the

17   Supplemental Declaration of Attorney Minmin Xie, Respondent Liu was not given the

18   opportunity to cross-examine any witness. (Supplemental Declaration of Minmin Xie

19   in Support of Respondent Liu's Reply, ¶ 5).

20        Petitioner does not address or refute Respondent Liu's argument that the

21   arbitration award is contrary to the public policy of the United States since the

22   arbitration award violates California's most basic notions of justice and there is

23   evidence that Petitioner sought to corrupt the arbitration process. Instead, Petitioner

24   states "Respondent Liu Yingkui effectively concedes that China is an inadequate

25   forum by presenting with its Opposition a sworn declaration stating the same. (*See*

26   ECF No. 12-2 (detailing why [Mr. Zimmerman] discouraged his clients from litigating

27   matters in China due to fairness issues.)" (*See* Doc. 16 at 18, fn.4.) Petitioner's

28   argument actually supports that arbitration in China is not fair and underlines

9

Respondent Liu's position that the arbitration award is contrary to public policy. The Arbitration Award should not be confirmed pursuant to Art. V of the New York Convention.

### E.    A Stay Is Warranted

As detailed in Section C, Ningbo Zhenrong, the Target Company, Petitioner and Respondent Liu are all involved in the dispute regarding the nature of the transfer of the 120 million RMB. The transfer of the 120 million RMB is the subject matter of the lawsuit brought by the Target Company against Petitioner, Ningbo Zhenrong and Respondent Liu in China. (See Doc 12-5, Ex. H.)  The Court should stay this instant Petition pending resolution of the lawsuit in China.

### F.    Petitioner Is Not Entitled To Its Costs.

A court should only award attorney's fees and costs when a party acts in bad faith. There is no evidence to show Respondent Liu has acted in bad faith. Therefore, Petitioner is not entitled to its costs.[5]

## IV.   CONCLUSION

For each of the foregoing reasons and as set forth in Respondent Liu's moving papers, Respondent Liu respectfully requests this Court enter an order dismissing Petitioner's Petition, or in the alternative stay this action.

DATED: July 22, 2024              PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


                                  By:  /s/ Anthony J. Dain
                                       Anthony J. Dain
                                       Lianlian Wu
                                       Attorneys for Respondents
                                       Liu Yingkui and Zhang Xin

---

[5] Petitioner requested only costs, not attorney's fees.

10

Anthony J. Dain (Bar No. 98947)
E-mail: anthony.dain@procopio.com
Lianlian Wu (Bar No. 306523)
E-mail: lianlian.wu@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Respondents
Liu Yingkui and Zhang Xin

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHEN ZEHUIJIN INVESTMENT CENTER (Limited Partnership), <br><br> Petitioner, <br><br> v. <br><br> LIU YINGKUI; ZHANG XIN, <br><br> Respondents. | Case No. 3:24-cv-00372-MMA-DEB <br><br> *Assigned to Hon. Michael M. Anello* <br><br> **SUPPLEMENTAL DECLARATION OF LIU YINGKUI IN SUPPORT OF HIS REPLY IN SUPPORT OF HIS CROSS MOTION TO DISMISS AND REQUEST FOR STAY** |

I, Liu Yingkui, declare as follows:

1.    I have personal knowledge of the facts detailed below, and if called as a witness, I could and would competently testify thereto.

2.    I submit this Supplemental Declaration in support of my Reply in support of my Cross Motion to Dismiss and Request for Stay.

3.    The summons and the Petition were not delivered to me.

4.    The summons and the Petition were delivered to Ms. Jing Li. The proof of service filed by the Petitioner shows her name as Ms. Jing Ya. That's a mistake. Her true name is Ms. Jing Li.

5.    Ms. Jing Li is merely an acquaintance who happened to be visiting at Respondent Zhang Xin's property at 16978 Circa Del Sur, Rancho Santa Fe,

California 92067 on the day Petitioner delivered documents to her. I have never authorized Ms. Jing to receive service of process on behalf of me.

6.      I do not have any ownership in the real property located at 16978 Circa Del Sur, Rancho Santa Fe, California 92067.

7.      I do not maintain the P.O. Box 8426 address located in Rancho Santa Fe.

8.      Petitioner has levied and emptied my bank accounts and my social security provident fund account in China. I did not obstruct such levy.

9.      Petitioner has auctioned my outstanding shares in Zhongjia Bochuang (securities code 000889.SZ), a public listed company on the Shenzhen Exchange ("Public Company") via the enforcement court.  I did nothing to obstruct the auction of these outstanding shares.

10.     In addition, Petitioner also froze my restricted shares in Zhongjia Bochuang.   Petitioner and the Public Company are controlled by the same person, Mr. Ying Wu.

11.     My appeals of the Arbitration Award in China are purely to exercise my rights bestowed upon Chinese law.

12.     I withdrew from Beijing Sinowel Communication Technology Co., Ltd (the "Target Company") in 2020. I am no longer associated with the Target Company. I have no control over the Target Company.

13.     The Target Company commenced a lawsuit against Ningbo Zhenrong Equity Investment Partnerships (Limited Partnership), Petitioner and me with respect to the 120 million RMB in China (the "China Lawsuit"). I did not cooperate with the Target Company to create the China Lawsuit.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on this 21th  day of July 2024, in San Diego, California.

_____
Liu Yingkui

3

CASE NO. 3:24-CV-00372-MMA-DEB

Anthony J. Dain (Bar No. 98947)
E-mail: anthony.dain@procopio.com
Lianlian Wu (Bar No. 306523)
E-mail: lianlian.wu@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Respondents
Liu Yingkui and Zhang Xin

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHEN ZEHUIJIN INVESTMENT CENTER (Limited Partnership), | Case No. 3:24-cv-00372-MMA-DEB |
| Petitioner, | *Assigned to Hon. Michael M. Anello* |
| v. | **DECLARATION OF ZHANG XIN SUPPORT OF RESPONDENT LIU YINGKUI'S REPLY IN SUPPORT OF HIS CROSS MOTION TO DISMISS AND REQUEST FOR STAY** |
| LIU YINGKUI; ZHANG XIN, | |
| Respondents. | |

I, ZHANG XIN, declare as follows:

1.      I am a resident of San Diego, California.

2.      I have personal knowledge of the facts detailed below, and if called as a witness, I could and would competently testify thereto.

3.      I submit this Declaration in support of Respondent Liu Yingkui's Reply in support of my Cross Motion to Dismiss and Request for Stay.

4.      The real property located at 16978 Circa Del Sur, Rancho Santa Fe, California 92067 ("Property") is my separate property.

5.      At the time I purchased this Property, I was not domiciled in California. Rather, I was living in Singapore at that time.

6.      Respondent Liu Yingkui ("Respondent Liu") has no ownership interest in this Property.

7.     I maintain the P.O. Box 8426 address located in Rancho Santa Fe since the P.O. Box is related to the Property. Respondent Liu does not maintain this P.O. Box.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on this 21th day of July 2024, in San Diego, California.

_____

ZHANG XIN

2

1  YI-CHIN HO (CA SBN 204834)
2  yichin.ho@hugheshubbard.com
   HANNAH A. BOGEN (CA SBN 324294)
3  hannah.bogen@hugheshubbard.com
4  HUGHES HUBBARD & REED LLP
   1999 Avenue of the Stars, 9th Floor
5  Los Angeles, California  90067-4620
   Telephone:  (213) 613-2800
6  Facsimile:  (213) 613-2950
7
8  Attorneys for Petitioner
   Shenzhen Zehuijin Investment Center (Limited Partnership)
9

10              **UNITED STATES DISTRICT COURT**

11         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

12

13  SHENZHEN ZEHUIJIN INVESTMENT        Case No.  3:24-cv-00372-MMA-DEB
    CENTER (Limited Partnership),
14                                      **PETITIONER'S OMNIBUS**
15              Petitioner,             **OPPOSITION AND REPLY TO**
                                        **RESPONDENT LIU YINGKUI'S**
16       v.                             **OPPOSITION TO PETITIONER'S**
                                        **PETITION TO CONFIRM**
17  LIU YINGKUI; ZHANG XIN,             **ARBITRATION AWARD, CROSS-**
                                        **MOTION TO DISMISS THE**
18              Respondents.            **PETITION FOR LACK OF**
                                        **PERSONAL JURISDICTION, ON**
19                                      **THE GROUNDS OF FORUM NON**
20                                      **CONVENIENS AND FOR FAILURE**
                                        **TO JOIN A PARTY; REQUEST FOR**
21                                      **STAY**
22

23
24
25
26
27
28

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO
CONFIRM ARBITRATION AWARD

ER-62

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................... 1

II.   FACTUAL BACKGROUND ............................................... 2

    A.    Liu Yingkui and Zhang Xin's Connection to California ...................... 2

    B.    Ningbo Zhenrong's Connection to the Loan Agreement ...................... 3

    C.    Liu Yingkui's Control Over the Target Company ................................. 4

    D.    The Award, Respondents' Failure to Pay and the Instant Action .......... 4

    E.    The Target Company's Sham Lawsuit ................................................... 5

III.   ARGUMENT ........................................................................ 6

    A.    The Court Has Personal Jurisdiction Over This Matter ........................ 6

        1.    Jurisdiction is Established Through Service of Process for Both Respondents ................................................................. 6

        2.    The Court Has General Jurisdiction Over Both Respondents ................................................................. 7

        3.    The Court Has In Rem Jurisdiction Over Respondents' Assets in California ................................................................. 8

        4.    In the Alternative, the Court Should Permit Jurisdictional Discovery ................................................................. 9

    B.    *Forum Non Conveniens* Does Not Apply In This Case ....................... 10

        1.    No Adequate Alternative Forum Exists ................................... 11

        2.    There is No Need to Weigh Public and Private Interest Factors ................................................................. 13

    C.    No Necessary or Indispensable Parties Are Missing from this Action ................................................................. 14

    D.    The BAC Proceedings Were Proper in all Respects ........................... 16

    E.    A Stay is Unwarranted ................................................................. 17

    F.    SZIC is Entitled to its Costs ................................................................. 18

    G.    Respondent Zhang Xin is a Proper Party to the Instant Suit ............... 18

IV.   CONCLUSION ................................................................. 19

i

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-63**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aanestad v. Beech Aircraft Corp.*,
   521 F.2d 1298 (9th Cir.1974) ............................................................. 7

*Al-Quraishi v. Landers Distribution Grp. Inc.*,
   No. CV-19-03181-PHX-DLR, 2020 WL 1158567
   (D. Ariz. Mar. 10, 2020) ................................................................. 10

*Amini Innovation Corp. v. JS Imports, Inc.*,
   497 F. Supp. 2d 1093 (C.D. Cal. 2007) .............................................. 7

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ...................................................... 5, 6, 9

*Baumgart v. Fairchild Aircraft Corp.*,
   981 F.2d 824 (5th Cir.1993) ............................................................ 11

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   5 F. Supp. 3d 25 (D.D.C. 2013), aff'd, 794 F.3d 99 (D.C. Cir. 2015) ............... 13

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) .......................................................... 9

*Burnham v. Superior Ct. of California, Cnty. of Marin*,
   495 U.S. 604, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990) ..................... 6

*Carolina Power & Light Co. v. Uranex*,
   451 F.Supp. 1044 (N.D.Cal.1977) ..................................................... 8

*China Nat. Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*,
   379 F.3d 796 (9th Cir. 2004) .......................................................... 10

*Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*,
   697 F. Supp. 2d 46 (D.D.C. 2010) .................................................... 12

*Costa v. Keppel Singmarine Dockyard PTE, Ltd.*,
   No. CV 01-11015MMM, 2003 WL 24242419 (C.D. Cal. Apr. 24, 2003) ........ 11

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-64**

*Creative Tech. Ltd. v. Aztech System PTE, Ltd.*,
   61 F.3d 696 (9th Cir.1995) .................................................................. 11

*Cross v. Padi Am.'s Inc.*,
   No. 13-CV-837-L(MDD), 2014 WL 12160757, at *3
   (S.D. Cal. Mar. 6, 2014) .................................................................... 13

*Devas Multimedia Priv. Ltd. v. Antrix Corp.*,
   No. C18-1360 TSZ, 2021 WL 1170366 (W.D. Wash. Mar. 29, 2021).............. 12

*Entes Indus. Plants, Constr. & Erection Contracting Co. Inc. v.
   Kyrgyz Republic*,
   No. CV 18-2228 (RC), 2019 WL 5268900 (D.D.C. Oct. 17, 2019) ................. 12

*Fireman's Fund Ins. Co. v. National Bank of Cooperatives*,
   103 F.3d 888 (9th Cir.1996) .................................................................. 7

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) ............................................................... 8

*International Shoe Co. v. Washington*,
   326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) .................................... 7

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir.2005) ............................................................. 17

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
   No. C09-03529 JSW, 2010 WL 1136279 (N.D. Cal. Mar. 22, 2010) ............. 7

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ............................................................. 11

*Melaleuca, Inc. v. Kot Nam Shan*,
   No. 4:18-CV-00036-DCN, 2018 WL 1952523 (D. Idaho Apr. 24, 2018)......... 11

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
   198 F.R.D. 670 (S.D.Cal.2001) ........................................................... 9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ........................... 11

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ............................................................. 11

iii

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO
CONFIRM ARBITRATION AWARD

**ER-65**

*Reid-Walen v. Hansen*,
  933 F.2d 1390 (8th Cir.1991) ....................................................................11

*Roberts v. Dunsmuir*,
  75 Cal. 203 (1888) .......................................................................................6

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ...................................................................6, 9

*SDS Korea Co. v. SDS USA, Inc.*,
  732 F. Supp. 2d 1062 (S.D. Cal. 2010) ......................................................9

*Shamoun v. Republic of Iraq*,
  441 F. Supp. 3d 976 (S.D. Cal. 2020) ........................................................9

*Shanghai Lan Cai Asset Mgmt. Co, Ltd. v. Jia Yueting*,
  No. 218CV10255SJOMRWX, 2018 WL 10151034
  (C.D. Cal. Dec. 13, 2018) .........................................................................10

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ....................................................................6

*Tatneft v. Ukraine*,
  21 F.4th 829 (D.C. Cir. 2021)...................................................................12

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
  411 F.3d 296 (D.C. Cir. 2005)............................................................12, 13

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
  556 F.2d 406 (9th Cir.1977) .......................................................................9

*Zhejiang Medicines & Health Prod. Imp. & Exp. Co. v. Blue California Co.*,
  No. CV0806327RGKFFMX, 2009 WL 10702552
  (C.D. Cal. Apr. 23, 2009) .........................................................................10

**Statutes and Rules**

9 U.S.C § 207 ...................................................................................10, 15

Cal. Fam. Code § 760 .........................................................................................2

Fed. R. Civ. P. 19 .................................................................................14

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO
CONFIRM ARBITRATION AWARD

**ER-66**

Shenzhen Zehuijin Investment Center ("SZIC") respectfully submits its Omnibus Opposition to Respondent Liu Yingkui ("Mr. Liu")'s Motion to Dismiss its Petition to Confirm the Arbitration Award ("Petition") and Request for Stay and its Reply in support of its Petition ("Opposition")[1].

## I.   INTRODUCTION

Since the Beijing Arbitration Commission ("BAC") issued an award in favor of SZIC and against Respondent Liu Yingkui in or around March 2021 (the "Award"), Respondents Liu Yingkui and Zhang Xin have attempted to circumvent their obligations to comply with its orders to pay SZIC what it is lawfully owed. Between March 2021 and present, Respondent Liu Yingkui has filed numerous appeals seeking to overturn the Award, asserting many of the same arguments he now raises in this action.  All of his attempts have failed.  Now faced with an impending judgment against their assets in California, Respondents attempt to obstruct proceedings here.  None of their reasons in support of denying SZIC's Petition have merit.

Respondents are a married couple who reside in San Diego County, California, at a property that Respondent Zhang Xin owns.  Both individuals own portions of the company at issue in this case and both were directly involved in the drafting and execution of the three agreements that formed the basis of the Award. Ten days after SZIC filed the instant Petition, in an attempt to further delay the inevitable, Respondent Liu Yingkui caused the company that he controls to file a lawsuit against himself, Ningbo Zhenrong, and SZIC, seeking damages for purported malicious breach of contract related to the same facts at issue here. Respondent Liu Yingkui now attempts to use that sham lawsuit as a reason for

---

[1] All declarations submitted in support of SZIC's Opposition are in support of its Petition as a whole, including both its Opposition to Respondent Mr. Liu's Motion to Dismiss its Petition to Confirm the Arbitration Award and Request for Stay and its Reply in support of its Petition, which addresses Respondent Zhang Xin's arguments in her response to the Petition filed on April 30, 2024. (ECF No. 9.)

1

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-67

further delaying his obligations to pay SZIC pursuant to the Award. However, the BAC squarely rejected the arguments made by Liu Yingkui's company both during the arbitration proceedings, in the language of its Award, and all of these same arguments were rejected on Liu Yingkui's numerous appeals. Liu Yingkui's newest lawsuit is a misguided attempt to delay paying SZIC, has no merit, and the Court should therefore reject all arguments favoring dismissal or a stay related to this lawsuit.

The Court has jurisdiction over this matter, there is no alternative forum that could provide SZIC with the relief it seeks here, there are no parties missing from this action, and dismissal and a stay are unwarranted.

For the reasons detailed below, the Court should disregard Respondents' frivolous legal arguments, grant SZIC's Petition, and award SZIC its costs.

## II.   FACTUAL BACKGROUND

Petitioner hereby incorporates the factual and procedural background on pages 1-4 of its memorandum in support of its Petition, ECF No. 1-2, including all defined terms.

### A.   Liu Yingkui and Zhang Xin's Connection to California

Respondents Liu Yingkui and Zhang Xin both reside in Rancho Santa Fe, California. (Supplemental Declaration of Pu Gang ("Suppl. Pu Gang Decl.") ¶ 10.) Mr. Liu resides and intends to remain in California. (*Id.*) He and his wife live[2] at 16978 Circa Del Sur, Rancho Santa Fe, California 92067. In addition, since July

---

[2] On information and belief, Respondent Zhang Xin owns the California property in her individual capacity. *But see* Cal. Fam. Code section 760 states that "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Respondents were married at the time they purchased property in California. (Declaration of Pu Gang ("Pu Gang Decl.") ¶ 3; *see also* Pu Gang Decl. Ex B. pp. SZIC_00024-26 (acknowledging spousal consent to transaction in 2017, five years before the purchase of California property); Ex. C pp. SZIC_00042, SZIC_00079 (same).)

2

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-68**

2022, Respondent Liu Yingkui has maintained P.O. Box 8426 address located in Rancho Santa Fe, California.  (*Id.*)  Respondent Liu Yingkui also has a Venmo account, which cannot be used to transact business outside the United States.  (*Id.*)  On information and belief, Respondent Liu Yingkui uses his Venmo account to transact business in California.  (*Id.*)

**B.     Ningbo Zhenrong's Connection to the Loan Agreement**

In connection with the Loan Agreement executed between SZIC, Respondent Liu Yingkui, and the Target Company, the parties executed two additional agreements.  (See Petition ¶¶ 16-17, ECF No. 1.)  In 2017, SZIC, Respondent Liu Yingkui, and the Target Company entered into a Cooperation Agreement which provides that:  (1) when SZIC pays to Respondent Liu Yingkui 160,000,000 Yuan pursuant to the Loan Agreement, SZIC's creditor's rights could be converted into equities; (2) after that conversion, Respondent Liu Yingkui  shall  transfer 13.79% of the Target Company to SZIC; and (3) that transfer shall fully settle the principal and interest paid by SZIC to Respondent Liu Yingkui pursuant to the Loan Agreement. (*Id.*) In December 2017, SZIC, Ningbo Zhenrong, Respondents Liu Yingkui and Zhang Xin, the Target Company and three other entities entered into an Investment Agreement pursuant to which Ningbo Zhenrong agreed to loan 120,000,000 Yuan to the Target Company for one year, which the Target Company would by obligated to repay at 8% interest only if the equity conversion of the Target Company failed. (*Id.*)  In the same month, the same parties also drafted an Investment Memorandum outlining the relevant returns on investment and clarifying the fund relationship between SZIC and Respondent Liu Yingkui (collectively, the "Investment Agreement and Memorandum"). (*Id.*)  The Investment Agreement and Memorandum clarified that Ningbo Zhenrong's 120 million RMB was "invested by SZIC…" and subsequently "lent to Ningbo Zhenrong as the capital increase of Ningbo Zhenrong to [the Target Company]." (Petition Ex. C, ECF 1-6 at ¶ 2.)  The Investment Agreement and Memorandum also

3

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-69**

states that SZIC and Respondent Liu Yingkui would "work together to raise another RMB 120 million to set up a new partnership to replace Ningbo Zhenrong's capital increase to [the Target Company], and Ningbo Zhenrong will repay the aforesaid RMB 120 million loan to SZIC]." (*Id.* ¶ 3.)   The Loan Agreement, Cooperation Agreement and Investment Agreement and Memorandum are interconnected and concern dissolution of the VIE structure of the Target Company.  (*See* Petition Exs. A-C.)

On December 22, 2018, Respondent Liu Yingkui failed to complete repayment pursuant to the terms of the Loan Agreement.  (Petition ¶ 11.)  As a result, SZIC's loan (which includes the 120 million RMB paid through Ningbo Zhenrong) remained outstanding and it was entitled to seek remedies pursuant to the Loan Agreement.  (*Id.*; See Petition Ex. C.)

## C.  Liu Yingkui's Control Over the Target Company

At the time of execution of the Loan Agreement, Cooperation Agreement, and Investment Agreement and Memorandum, Respondents Liu Yingkui and Zhang Xin were listed as the legal representatives of the Target Company.  (Petition Exs. A-C.)  Respondent Liu Yingkui was the largest shareholder and actual controller of the Target Company.  (*Id.*)

Although business registration information shows that, on December 2, 2020, Liu Yingkui withdrew from the Target Company and is not associated with the Target Company, in reality, on information and belief, the Target Company is still under the de facto control of Liu Yingkui.  (Suppl. Pu Gang Decl. ¶ 11.)

## D.  The Award, Respondents' Failure to Pay and the Instant Action

After Respondent Liu Yingkui's default on the Loan Agreement, SZIC initiated mandatory binding arbitration before the BAC, as agreed to in the Loan Agreement.  (*See* Petition Ex. A subd. 4.2, ECF No. 1-4.)  On March 22, 2021, the BAC's arbitration tribunal ("Tribunal") issued its Award and ruled that Respondent Liu Yingkui owed SZIC the following: 140,000,000 Yuan, the principal pursuant to

4

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-70**

the Loan Agreement; 8% interest on that loan between December 22, 2017 and December 22, 2018 totaling 11,200,000 Yuan; liquidated damages for overdue payment on the principal loan of 140,000,000 Yuan at the rate of 5% per day to the date of actual settlement; lawyer's fees in the amount of 400,000 Yuan; and 80% of the arbitration fees in the amount of 1,080,966.27 Yuan.  (*Id.*) Pursuant to the Tribunal's Award, Respondent was required to pay the above sums within 15 days of service of the Tribunal's March 22, 2021 Award, and that, in the event of late payment, the interest rate on the damages award would be doubled for the period after the payment deadline. (*Id.*)

   To date, Respondents have failed to pay all amounts due pursuant to the Award.  Left with no choice, on February 26, 2024, SZIC initiated proceedings in this Court to enforce the BAC's Award in the United States.  (*See* ECF No. 1.) Respondents were properly served on March 11, 2024.  (ECF Nos. 3-4.)

### E.   The Target Company's Sham Lawsuit

   Ten days later, on March 21, 2024, in China, the Target Company sued SZIC, Respondent Liu Yingkui, and Ningbo Zhenrong, questioning the BAC's finding that Ningbo Zhenrong loaned, rather than invested, funds to the Target Company, and seeking to hold Ningbo Zhenrong and SZIC jointly and severally liable for liquidated damages of more than 50 million RMB.  (ECF No. 12 p. 2.)

   Although Respondent Liu Yingkui allegedly withdrew from the Target Company in December 2020, on information and belief, he still has de facto control over it.  (Suppl. Pu Gang Decl. ¶ 11.)  On information and belief, since on or around 2021, the Target Company has been cooperating with Liu Yingkui to impede the execution of the BAC Tribunal's Award in favor of SZIC.  (*Id.* ¶ 12.)  Respondent Liu Yingkui's "withdrawal" from the Target Company is a sham designed to obstruct the execution of the Award and avoid his payment obligations thereunder. (*Id.*)

5

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-71**

## III.  ARGUMENT

### A.    The Court Has Personal Jurisdiction Over This Matter

When a motion to dismiss is "based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "[F]actual conflicts between dueling affidavits "must be resolved in the plaintiff's favor." *Id.*  (citing *Schwarzenegger*, 374 F.3d at 800.)

#### 1.    Jurisdiction is Established Through Service of Process for Both Respondents

The United States Supreme Court has held that a non-resident served with summons while physically in California is subject to the personal jurisdiction of California courts.  *Burnham v. Superior Ct. of California, Cnty. of Marin*, 495 U.S. 604, 604, 110 S. Ct. 2105, 2107, 109 L. Ed. 2d 631 (1990) ("[E]xercise of personal jurisdiction based on service on the defendant while in the state comports with traditional notions of fair play and substantial justice.") (collecting numerous cases in multiple states holding the same including *Roberts v. Dunsmuir*, 75 Cal. 203, 204 (1888) (holding that British non-resident residing in and served in California was subject to the court's jurisdiction, noting "[t]he action is transitory, and the defendant may be sued wherever found; otherwise, a person might in some cases escape such liability by simply going into another state.").

Here, both Respondents were served with summons while physically at their residence in California.[3]  (*See* ECF Nos. 3-4.)  Under well-settled U.S. Supreme Court precedent, service while in the state is sufficient to confer jurisdiction and allow this Court to resolve this dispute.

---

[3] Respondent Zhang Xin does not dispute jurisdiction.  (*See* ECF No. 9.)

6

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-72

### 2. The Court Has General Jurisdiction Over Both Respondents

"Whether a federal court can exercise personal jurisdiction over a non-resident defendant turns on two independent considerations: whether an applicable state rule or statute permits service of process on the defendant, and whether the assertion of personal jurisdiction comports with constitutional due process principles…when service of process has been effected under California law, the statutory and constitutional requirements merge, and the court asks only whether the exercise of jurisdiction over defendant would comport with due process. The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant that has sufficient minimum contacts with the forum that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1100–01 (C.D. Cal. 2007) (citing See *Fireman's Fund Ins. Co. v. National Bank of Cooperatives,* 103 F.3d 888, 893 (9th Cir.1996); *Aanestad v. Beech Aircraft Corp.,* 521 F.2d 1298, 1300 (9th Cir.1974); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

"[G]eneral jurisdiction…arises when the defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters." *Amini*, 497 F. Supp. 2d at 1101 (citations and quotation marks omitted).  "To determine if a defendant's contacts with the forum state are "continuous and systematic" or "substantial," the court must examine all of its activities that impact the state, including whether it makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, or has employees there." *Id.*  "The Court considers several factors when determining general jurisdiction, including "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. It is the nature and extent of the contacts that determines whether they are

7

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-73

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

'substantial' or 'continuous and systematic. Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." *Id.  Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C09-03529 JSW, 2010 WL 1136279, at *1 (N.D. Cal. Mar. 22, 2010) (citations and quotation marks omitted).

Here, despite Respondent Liu Yingkui's contention that he has no intent to remain in California, both Respondents have resided in San Diego County, California for over two years at a property that Respondent Zhang Xin acquired after she married Respondent Liu Yingkui.  (Suppl. Pu Gang Decl. ¶ 10.) Additionally, Respondent Liu Yingkui also maintains a P.O. Box address in California and a Venmo account, which can be used to transact business in the United States only.  (*Id.*)  Given that Respondents have lived in California for at least two years, maintain a California mailing address, and an account for transacting business (i.e., sending and receiving money) in California, they are integrated into California's economic markets, by owning property, living there for over two years, and by transacting business in California's postal service markets and through Venmo.  (Suppl. Pu Gang Decl. ¶ 10.)  General personal jurisdiction is satisfied.

### 3.     The Court Has In Rem Jurisdiction Over Respondents' Assets in California

Even if personal jurisdiction were not satisfied by service and, separately and independtly, by Respondents' continuous and systematic presence in California (it is), the Court can enforce the Award under the doctrine of *in rem* jurisdiction against Respondents' assets in California.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State

8

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-74

would have jurisdiction to determine the existence of the debt as an original matter.") (citing *Carolina Power & Light Co. v. Uranex*, 451 F.Supp. 1044, 1049 (N.D.Cal.1977) (holding plaintiff may attach defendant's California property as security pending arbitration between the parties in New York) (citations omitted).

Here, Respondents reside at property in San Diego County, California. (Suppl. Pu Gang Decl. ¶ 10.)  Respondent Liu Yingkui also uses Venmo to conduct business in California, indicating that he has assets here.  (*Id.*) Therefore, in addition to the Court's general personal jurisdiction and specific personal jurisdiction over Respondents', the Court separately and independently has the authority to enforce *in rem* jurisdiction over Respondents' assets in California.

### 4.    In the Alternative, the Court Should Permit Jurisdictional Discovery

To the extent the Court is not convinced that personal jurisdiction is satisfied (it is), additional jurisdictional discovery is warranted before dismissing the case. "[When] jurisdictional facts are disputed ..., the parties should be allowed to conduct discovery for the limited purpose of establishing jurisdictional facts before the claims can be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citing *Shamoun v. Republic of Iraq*, 441 F. Supp. 3d 976, 1002 (S.D. Cal. 2020).) "Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977)); *SDS Korea Co. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1081 (S.D. Cal. 2010) (same) (citing *Orchid Biosciences, Inc. v. St. Louis Univ.,* 198 F.R.D. 670, 672 (S.D.Cal.2001).)

When a motion to dismiss is "based on written materials rather than an evidentiary hearing, 'the plaintiff need only make prima facie showing of jurisdictional facts.'"  *Ayla*, 11 F.4th at 978 (citations omitted).  "[F]actual conflicts

9

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-75**

between dueling affidavits "must be resolved in the plaintiff's favor." *Id.* (citing *Schwarzenegger*, 374 F.3d at 800.)

Here, Respondent Zhang Xin does not dispute jurisdiction. (*See* ECF No. 9.) However, Respondent Liu Yingkui claims that he has no intent to remain in California indefinitely. (ECF No. 12-5 ¶ 4.) SZIC provides evidence to rebut that claim, namely, Respondent Liu Yingkui's property in California, his P.O. Box in California, and his Venmo account that he likely uses to transact business while in California. (Suppl. Pu Gang Decl. ¶ 10.) These dueling affidavits should be resolved in SZIC's favor, and the Court should hold that personal jurisdiction is satisfied. However, to the extent the Court disagrees (it should not), jurisdictional discovery is warranted here as it will establish Respondents' additional contacts with California.

**B.    *Forum Non Conveniens* Does Not Apply In This Case**

According to the New York Convention and the Federal Arbitration Act ("FAA"), a district court's role in reviewing an arbitral award is strictly limited. 9 U.S.C § 207. "Section 207 of the FAA provides that a U.S. court shall confirm a foreign arbitral award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York Convention]." *Shanghai Lan Cai Asset Mgmt. Co, Ltd.  v. Jia Yueting*, No. 218CV10255SJOMRWX, 2018 WL 10151034, at *4 (C.D. Cal. Dec. 13, 2018)(citing 9 U.S.C. § 207; *China Nat. Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004) (quotation marks omitted)). *Forum non conveniens* is not one of the enumerated grounds for refusing to confirm an arbitration award. *See* 9 U.S.C. § 207; New York Convention Art. V.

Multiple courts in the Ninth Circuit have denied requests for *forum non conveniens* dismissal because the doctrine is not enumerated in the New York Convention. *Al-Quraishi v. Landers Distribution Grp. Inc.,* No. CV-19-03181-PHX-DLR, 2020 WL 1158567, at *2 (D. Ariz. Mar. 10, 2020) (confirming

10

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-76**

arbitration Award and denying request for *forum non conveniens* dismissal on the basis that none of the enumerated grounds in the New York Convention for refusal to confirm an arbitration award applied); *Zhejiang Medicines & Health Prod. Imp. & Exp. Co. v. Blue California Co.*, No. CV0806327RGKFFMX, 2009 WL 10702552, at \*4 (C.D. Cal. Apr. 23, 2009) ( "[T]he New York Convention was adopted precisely to confirm this type of award, so the fact that it is based on an arbitration award that was initially rendered in China, according to Chinese law, does not compel dismissal. Finally, since Defendant is a California corporation and resides in California, California is an appropriate location for Plaintiff to seek confirmation of the arbitral award.")

Similarly, here, Petitioner brought this action pursuant to the New York Convention and *forum non conveniens* is not one of the enumerated grounds in the New York Convention for refusing to confirm the Award. Accordingly, the Court should reject Respondent's request to dismiss the case on grounds of *forum non conveniens*.

### 1.  No Adequate Alternative Forum Exists

Even if the doctrine of *forum non conveniens* applied in this case (it does not), it is not appropriate there. The doctrine of *forum non conveniens* is "an exceptional tool to be employed sparingly, [not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim." *Melaleuca, Inc. v. Kot Nam Shan*, No. 4:18-CV-00036-DCN, 2018 WL 1952523, at \*4 (D. Idaho Apr. 24, 2018) (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).) Under the doctrine of *forum non conveniens*, the court may dismiss if (1) an adequate alternative forum exists, and (2) the balance of relevant private and public interest factors favor dismissal. *Creative Tech. Ltd. v. Aztech System PTE, Ltd.*, 61 F.3d 696, 699 (9th Cir.1995). "The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate. As with the other requirements of a forum non conveniens dismissal, the burden of showing the existence of an

11

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-77

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

adequate alternative forum is the defendant[s']." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143–44 (9th Cir. 2001). "Generally, an alternative forum is considered inadequate if the plaintiff would be deprived of all remedies there." *Costa v. Keppel Singmarine Dockyard PTE, Ltd.*, No. CV 01-11015MMM, 2003 WL 24242419, at *27 (C.D. Cal. Apr. 24, 2003) (citing See, e.g., *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 835 (5th Cir.1993); *Reid-Walen v. Hansen,* 933 F.2d 1390, 1393 n. 2 (8th Cir.1991). Cf. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ("Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice").)

Multiple federal courts, including one in the Ninth Circuit, have held that where the relief sought involves enforcing a judgment in the United States, an adequate alternative forum does not exist. *Devas Multimedia Priv. Ltd. v. Antrix Corp.*, No. C18-1360 TSZ, 2021 WL 1170366, at *2 (W.D. Wash. Mar. 29, 2021) (detailing procedural history and noting that the Court "declined to dismiss the action based on the doctrine of *forum non-conveniens*, concluding that Petitioner had no adequate alternative forum in which to execute on property that Respondent may own in the United States, and that the dismissal would unfairly prejudice Petitioner."); *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 304 (D.C. Cir. 2005) ("Because there is no other forum in which TMR could reach the SPF's property, if any, in the United States, we affirm the district court's refusal to dismiss this action based upon the doctrine of *forum non conveniens*."); *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021) ("[W]e have squarely held that *forum non conveniens* is not available in proceedings to confirm a foreign arbitral Award because only U.S. courts can attach foreign commercial assets found within the United States.") (citations omitted); *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46, 57 (D.D.C. 2010) ("The Nigerian forum favored by the

12

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-78

defendants cannot grant the same relief that a United States court can. [O]nly a court of the United States (or one of them) may attach the commercial property of a foreign nation located in the United States."); *Entes Indus. Plants, Constr. & Erection Contracting Co. Inc. v. Kyrgyz Republic*, No. CV 18-2228 (RC), 2019 WL 5268900, at *6 (D.D.C. Oct. 17, 2019) ("It is clear that *forum non conveniens* is no basis for dismissal here because no other court system can provide Entes with a judgment that it can use to attach property that is, or may someday be, held in the United States.").

Similarly, here, no adequate alternative forum exists to confirm and enforce the Award against Respondents *in California*. (Suppl. Pu Gang Decl. ¶ 13.) Even if China were an adequate alternative forum (it is not)[4], SZIC has already attempted to seek relief in China and has been unsuccessful. (*Id.*) Respondent Liu Yingkui continues to object to enforcement of the Award, impeding enforcement procedures at every turn. (*Id.*) Further, his available assets in China are insufficient to cover the cost of the Award. (*Id.*) The only court that can enforce the Award against Respondents in California is this Court. Accordingly, no adequate alternative forum exists.

## 2. There is No Need to Weigh Public and Private Interest Factors

Because SZIC has established that China is not an adequate alternative forum in which it can confirm and enforce the Award against Respondents' assets in California, the Court need not address the public and private interest factors. *Cross v. Padi Am.'s Inc.*, No. 13-CV-837-L(MDD), 2014 WL 12160757, at *3 (S.D. Cal. Mar. 6, 2014) (finding no adequate alterative forum and stopping analysis there);

---

[4] Respondent Liu Yingui effectively concedes that China is an inadequate forum by presenting with its Opposition a sworn declaration stating the same. (*See* ECF No. 12-2 (detailing why he discourages his clients from litigating matters in China due to fairness issues).

13

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-79**

*see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 34 (D.D.C. 2013), aff'd, 794 F.3d 99 (D.C. Cir. 2015) ("Because GOB's forum non conveniens argument falters at the first step, I need not consider the second."); *See TMR Energy*, 411 F.3d at 303 ("The district court need not weigh any factors favoring dismissal ... if no other forum to which the plaintiff may repair can grant the relief it may obtain in the forum it chose.").   In sum, *forum non conveniens* does not apply to this case.  Even if it did, Respondent Liu Yingkui's arguments in favor of an alternative forum fail because no adequate alternative forum exists.

**C.     No Necessary or Indispensable Parties Are Missing from this Action**

A party is necessary if "in that [party's] absence, the court cannot accord complete relief among existing parties; or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  See Fed. R. Civ. P. 19.

Here, Respondent Liu Yingkui argues that Ningbo Zhenrong and the Target Company are necessary parties because there is a dispute as to whether the 120 million RMB that Ningbo Zhenrong sent to the Target Company was an independent investment, or if Ningbo Zhenrong was purely the vehicle that funneled SZIC's original loan pursuant to the Loan Agreement.  (*See* ECF No. 12 pp. 13-16.) First, there is no dispute that the 120 million RMB that Ningbo Zhenrong sent to the Target Company was SZIC's loan, not Ningbo Zhenrong's independent investment, as confirmed by Ningbo Zhenrong's managing partner and additional officer at the time of the transaction.  (Suppl. Pu Gang Decl. ¶¶ 5-7; *See* Declaration of Zhang Jian ("Jian Decl.").)  The BAC also rejected this theory during the original arbitration proceeding, and Chinese courts rejected it on Respondent Liu Yingkui's numerous appeals.  (*See* Petition Exs. D-L.)  Accordingly, none of Ningbo

14

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-80**

Zhenrong's "interests" would be affected by the Court's confirmation of the Award because Ningbo Zhenrong's 120 million RMB belongs to SZIC. (Suppl. Pu Gang Decl. ¶¶ 5-7.) Second, on information and belief, Respondent Liu Yingkui still has de facto control over the Target Company, and initiated its March 2024 lawsuit intentionally to prevent this Court from confirming the Award. (*Id.* ¶¶ 11-12.) Further, the Loan Agreement, Cooperation Agreement and Investment Agreement and Memorandum were executed with the goal of adjusting the Target Company's VIE structure by making certain equity conversions on which SZIC's loan payment was contingent. (Petition Exs. A-C.) The Target Company suffered no palpable loss based on Respondent Liu Yingkui's failure to use SZIC's loan to do so, and would be unaffected by any judgment Respondents would be ordered to pay. (*Id.*) Although the "Target Company" now seeks damages for alleged malicious breach of contract, its claims have nothing to do with any performance owed pursuant to the agreements at issue in this case. (*See* ECF No. 12-5.) Instead, the suit argues that Ningbo Zhenrong misrepresented the legal relationship between the parties during the arbitration at issue in this case, causing the Tribunal to rule in favor of SZIC. (*Id.*) This argument holds no weight. As evidenced by all contractual agreements at issue in this case, the Tribunal's ruling, the rulings on Respondent Liu Yingkui's various appeals, and Ningbo Zhenrong's managing partner at the time of the transaction, the 120 million RMB that Ningbo Zhenrong paid to the Target Company was SZIC's loan, not an investment. (*See* Petition Exs. D-L (Award ruling in favor of SZIC and various courts rejecting Respondent Liu Yingkui's arguments on appeal that the 120 million RMB was not SZIC's loan); *Id.* Ex. C ¶¶ 2-3 (clarifying that Ningbo Zhenrong's 120 million RMB payment was a loan originally paid to it by SZIC); (Suppl. Pu Gang Decl. ¶¶ 5-7 (same); *See* Jian Decl. (same).)

Respondent Liu Yingkui has exhausted all options in terms of avoiding paying the BAC's Award in China, and now seeks to obstruct straightforward

15

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-81

proceedings in this Court to do the same.  As established above, courts confirming arbitration awards issued under the New York Convention can only refuse to confirm them under very narrow circumstances, none of which includes rehashing legal theories already squarely rejected by the Tribunal and Chinese courts in all other related appeals, or creating a sham lawsuit to misconstrue the true issues in a case.  *See* 9 U.S.C. § 207; New York Convention Art. V.  Neither Ningbo Zhenrong nor the Target Company are necessary parties in this case, and the Court should reject Respondents' argument to the contrary.

### D.     The BAC Proceedings Were Proper in all Respects

Respondent Liu Yingkui argues that:  (1) he was denied due process; (2) the Award was beyond the scope of the submission; and (3) the Award is contrary to public policy.  (ECF No. 12 pp. 16-20.)  None of those arguments has merit.

All parties to the Loan Agreement, including Respondent Lui Yingkui, consented to arbitration before the BAC.  (Petition Ex. A subd. 4.2.)  Further, as evidenced by the transcript of the arbitration hearing that *he* submitted to the Court, all parties consented to the procedures during the hearing, including the manner in which evidence would be cross-examined, and Respondent Liu Yingkui did not object or otherwise request to cross-examine a representative from Ningbo Zhenrong.  (ECF No. 12-5 p. 6 ("Xiuming Tao: The Tribunal notes that the parties have submitted additional evidence this week, and asks whether the parties agree to cross-examine the evidence in court? Claimant, Respondent: Yes. Xiuming Tao: Next, the evidence will be produced and cross-examined. If either party needs to examine the original document when cross-examining the other party's evidence, they must raise such need in court. Otherwise, the original document and the copy will be deemed to be consistent. Are the parties clear? Claimant, Respondent: Yes.");  *Id.* pp. 7-8 (adhering to the cross examination of the explanation note); *Id.* p. 9 ("Xiuming Tao: Does Respondent agree to waive the cross-examination period for in-court cross-examination of the exhibits submitted in court by Claimant?

16

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

**ER-82**

Respondent: Agreed. We will examine the authenticity in session, and submit a written cross-examination opinion post-session.").)  Additionally, as Respondent Liu Yingkui knows, Mr. Pu Gang, who attended the arbitration, was Ningbo Zhenrong's managing partner.  (Suppl. Pu Gang Decl. ¶ 9.)  Respondent had the opportunity to cross examine him and chose not to do so.  (*Id.*)  Even if Respondent Liu Yingkui had viable theories that he was denied the opportunity to conduct cross examination, that the BAC's Award exceeded the scope of the Loan Agreement, or that the Award was contrary to public policy (he does not), multiple courts in China already squarely rejected these theories after he appealed the Tribunal's Award. (Petition Ex. E pp. SZIC_00016-18 (rejecting Respondent Liu's arguments on appeal that the arbitration was procedurally improper, that any explanation notes were forged, and that the Award exceeded the scope of the Loan Agreement, noting that he "failed to raise any objections" to jurisdiction, procedure, or any other issues during the hearing); Petition Ex. G (same); Petition Ex. H (same); Petition Ex. L (same and rejecting Respondent's argument that the BAC's Award was contrary to public policy); Petition Ex. I (order enforcing the BAC's original Award); Petition Ex. K (Judgment ordering same).)  Respondents have run out of excuses to evade judgment. There is no valid basis for the Court to vacate the Award.  The Court should therefore confirm it.

### E.    A Stay is Unwarranted

Respondent Liu Yingkui argues that the Court should stay the instant enforcement action pending resolution of the Target Company's suit in China and that all factors weigh in favor of doing so.  (ECF No. 12 pp. 23-24.)  This argument is without merit.

Courts consider three factors when determining whether to grant a stay pending parallel proceedings: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of

17

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-83

the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir.2005).

Here, no damage, hardship or inequity will result from granting a stay. As detailed in section C above, neither Ningbo Zhenrong nor the Target Company are involved in this dispute, nor will their interests be affected by enforcement of the BAC's Award. Further, there is no need to simplify issues, proof or questions of law. As established by Chinese courts that dismissed Respondent Liu Yingkui's appeals, his arguments are without merit. The 120 million RMB paid by Ningbo Zhenrong to the Target Company was SZIC's money. It is time for SZIC to be compensated for the damages that Respondent Liu Yingkui caused. As such, a stay is unwarranted.

### F.    SZIC is Entitled to its Costs

Respondent Liu Yinkui's arguments in favor of avoiding payment of SZIC's costs in bringing this action are unfounded. As established above, Respondent Liu Yingkui's arguments are without merit, and he apparently initiated the Target Company's newest lawsuit to avoid paying his debts. (Suppl. Pu Gang Decl. ¶ 12.) As SZIC's Petition shows, multiple Chinese courts have rejected Respondent Liu Yingkui's arguments, and the Court should not find differently here. SZIC is entitled to its costs, especially given Respondent Liu Yingkui's recent attempts to obstruct enforcement efforts related to the BAC Award.

### G.    Respondent Zhang Xin is a Proper Party to the Instant Suit

Respondent Zhang Xin's arguments that she should be excluded from any relief ordered by the Court should be rejected. (*See* ECF No. 9.) She is listed as the Target Company's legal representative in the Loan Agreement and the Cooperation Agreement (Petition Exs. A-B), and she is a party to the Investment Agreement and Memorandum (Petition Ex. C.) She also resides in California and, on information and belief, has an ownership interest in California property that she shares with Liu

18

PETITIONER'S OMNIBUS OPPOSITION AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S PETITION TO CONFIRM ARBITRATION AWARD

ER-84

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Yingkui.  (Suppl. Pu Gang Decl. ¶ 10.)  The fact that she did not personally participate in the underlying arbitration has no bearing on whether her assets are at issue in the instant enforcement action. Indeed, several Chinese court rulings have found Respondent Zhang Xin jointly and severally liable for the damages awarded to Petitioner by the BAC in the Award (Declaration of Yi-Chin Ho dated July 10, 2024 and Exs.  A (May 15, 2023 ruling of the Beijing High Court) & B (July 18, 2022 ruling of the Beijing Second Intermediate Court).  To the extent the Court grants SZIC's Petition, Respondent Zhang Xin should be involved in the enforcement process.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Respondent Liu Yingkui's Motion, reject Respondent Zhang Xin's Response to SZIC's Petition, and grant SZIC's Petition in its entirety.


DATED:  July 10, 2024                    YI-CHIN HO
                                         HANNAH A. BOGEN
                                         HUGHES HUBBARD & REED LLP


                                         By: /s/ Yi-Chi Ho
                                              Yi-Chin Ho
                                         Attorneys for Petitioner
                                         SHENZHEN ZEHUIJIN INVESTMENT
                                                      CENTER

1  Anthony J. Dain (Bar No. 98947)
   E-mail:      anthony.dain@procopio.com
2  Lianlian Wu (Bar No. 306523)
   E-mail:      lianlian.wu@procopio.com
3  PROCOPIO, CORY, HARGREAVES &
       SAVITCH LLP
4  525 B Street, Suite 2200
   San Diego, CA 92101
5  Telephone: 619.238.1900
   Facsimile: 619.235.0398
6
   Attorneys for Respondents
7  Liu Yingkui and Zhang Xin

8              UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 SHENZHEN ZEHUIJIN INVESTMENT          Case No. 3:24-cv-00372-MMA-
   CENTER (Limited Partnership),         DEB
11
12              Petitioner,              **RESPONDENT LIU YINGKUI'S
                                         OPPOSITION TO
13 v.                                    PETITIONER'S PETITION TO
                                         CONFIRM ARBITRATION
14 LIU YINGKUI; ZHANG XIN,               AWARD, CROSS-MOTION TO
                                         DISMISS THE PETITION FOR
15              Respondents.             LACK OF PERSONAL
                                         JURISDICTION, ON THE
16                                       GROUNDS OF FORUM NON
                                         CONVENIENS AND FOR
17                                       FAILURE TO JOIN A PARTY;
                                         REQUEST FOR STAY;
18                                       MEMORANDUM OF POINTS
                                         AND AUTHORITIES IN
19                                       SUPPORT THEREOF**
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................ 3

    A.  The Agreements and Transfer of Funds .................................... 3

    B.  The Parties to the Agreements and Witnesses are Located in China ...... 5

    C.  The Arbitration and Award ........................................................ 5

    D.  Post Arbitration Award Enforcement Proceedings ................... 7

III.  ARGUMENT ...................................................................................... 8

    A.  The Petition Should Be Dismissed for Lack of Personal Jurisdiction ..... 8

        1.  There Is No General Jurisdiction over Liu ...................... 8

        2.  There is No Specific Jurisdiction over Liu ...................... 9

    B.  The Petition Should Be Dismissed on the Grounds of the Doctrine of Forum Non Conveniens ...... 9

    C.  The Petition Cannot Proceed Until Indispensable Parties Are Joined ... 12

        1.  Ningbo Zhenrong and the Target Company are Necessary Parties ...... 13

        2.  It Is Not Feasible to Join Ningbo Zhenrong and the Target Company in the Proceeding Before this Court. ...... 14

        3.  The Case Should be Dismissed if Joinder of Ningbo Zhenrong and the Target Company is Not Feasible ...... 14

    D.  The Arbitration Award Should Not Be Confirmed Because It Violates Article V Of The New York Convention. ...... 16

        1.  Respondent Liu was Denied Due Process Under New York Convention Art. V(1)(b), as He Was Denied the Right to Examine Crucial Witness(es) on an Issue at the Heart of the Parties Dispute. ...... 16

        2.  The Arbitration Award Was Beyond the Scope of the Submission, in violation of New York Convention Art. V(1)(c). ...... 18

        3.  This Arbitration Award is Contrary to the Public Policy of the United States, in violation of New York Convention Art. V(2)(b). ...... 20

    E.  The Petition Should Be Stayed Pending Resolution of Litigation

i

Among the Parties Which is Proceeding in China.................................23

F.    The Court Should Not Award Petitioner its Costs Accrued in
      Bringing This Petition Since Liu Has Raised Colorable Arguments
      In Good Faith. .........................................................................................24

IV.   CONCLUSION .................................................................................................25

134082-00000001/7980976.8

CASE NO. 3:24-CV-00372-MMA-DEB

**ER-88**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

5     *BU8 Sdn. Bhd v. CreAgi, Inc.*
         No. C–14–4503–EMC, 2015 WL 1010090 (N.D. Cal., Mar. 6, 2015)..............25
6
      *County of Santa Clara v. Astra USA, Inc.*
7        401 F. Supp. 2d 1022 (N.D. Cal. 2005)................................................................13

8     *CP Nat'l Corp. v. Bonneville Power Admin.*
9        928 F.2d 905 (9th Cir. 1991) ......................................................................12, 15

10    *Creative Tech. Ltd. v. Aztech System PTE, Ltd.*
11       61 F.3d 696 (9th Cir.1995) .....................................................................9, 10, 11

12    *Daimler AG v. Bauman*
13       571 U.S. 117 (2014) .........................................................................................8

14    *Davis v. Alaska*
15       415 U.S. 308 (1974) ........................................................................................18

16    *Engenharia de Projeto Ltda v. Republic of Peru*
         665 F.3d 384 (2d Cir. 2011) ............................................................................10
17
      *Flynt Distrib. Co. v. Harvey*
18       734 F.2d 1389 (9th Cir. 1984) ...........................................................................8

19    *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*
20       141 S. Ct. 1017 (2021)......................................................................................8

21    *Generica Ltd. v. Pharm. Basics, Inc.*
22       125 F.3d 1123 (7th Cir. 1997)..........................................................................17

23    *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*
24       284 F.3d 1114 (9th Cir. 2002) ...........................................................................8

25    *In Matter of Watkins-Johnson Co., v. Public Utilities Auditors*
         No. C-95 20715 RMW(E.I.)., 1996 WL 83883, at *4 (N. D. Cal., Feb. 20, 1996)
26       ...........................................................................................................................18

27

28

*In the Matter of the Arbitration Between Monegasque de Reassurances S.A.M.*
   *(Monde Re) v. NAK Naftogaz of Ukraine*
   311 F.3d 488 (2d Cir. 2002) ..............................................................9, 10

*Int'l Shoe Co. v. State of Washington*
   326 U.S. 310 (1945) ...............................................................................8

*Lew v. Moss*
   797 F.2d 747 (9th Cir. 1986) ...................................................................8

*Lockman Found. v. Evangelical Alliance Mission*
   930 F.2d 764 (9th Cir.1991) ...................................................................10

*Lockyer v. Mirant Corp.*
   398 F.3d 1098 (9th Cir.2005) .................................................................23

*Mavrix Photo, Inc. v. Brand Techs., Inc.*
   647 F.3d 1218 (9th Cir. 2011) .................................................................9

*Melton v. Oy Nautor Ab*
   No. 97–15395, 1998 WL 613798 (9th Cir. Aug. 10, 1998) ...............................10

*Ministry of Defense and Support for the Armed Forces of the Islamic Republic of
   Iran v. Cubic Defense Systems, Inc.*
   665 F. 3d 1091 (9th Cir.2011) ................................................................20

*Move, Inc. v. Citigroup Glob. Mkts., Inc.*
   840 F.3d 1152 (9th Cir. 2016) ................................................................16

*Panavision Intern, L.P. v. Toeppen*
   141 F.3d 1316 (9th Cir. 1998) .................................................................8

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du
   Papier*
   508 F.2d 969 (2d Cir. 1974) ...............................................................16, 20

*Piper Aircraft Co. v. Reyno*
   454 U.S. 235 (1981) .............................................................................10

*Provident Tradesmens Bank & Trust Co. v. Patterson*
   390 U.S. 102 (1968) .............................................................................15

*Republic of Philippines v. Pimentel*
   553 U.S. 851 (2008) .............................................................................15

*Sana v. Hawaiian Cruises, Ltd.*
    181 F.3d 1041 (9th Cir.1999) ............................................................... 18

*Sheet Metal Workers Intern. Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*
    756 F.2d 742 (9th Cir. 1985) ............................................................... 25

*Socoloff v. LRN Corp.*
    646 Fed. App'x 538 (9th Cir. 2016) ...................................................... 19

*Sunshine Mining Co. v. United Steelworkers of Am.*
    823 F.2d 1289 (9th Cir. 1987) .............................................................. 17

*United Steel Workers v. Warrior & Gulf Navigation Co.*
    363 U.S. 574 (1960) .............................................................................. 19

**CALIFORNIA CASES**

*In re Lucero L.*(2020)
    22 Cal. 4th, 1227.................................................................................. 21

*Mitri v. Arnel Mgmt. Co.*
    157 Cal. App. 4th 1164 (2007) ............................................................. 19

**FEDERAL STATUTES, REGULATIONS, AND RULES**

9 U.S.C. § 201 ............................................................................................. 2

Rules of Civil Procedure
    Rule 19............................................................................................. 12, 15
    Rule 19(a) .................................................................................... 12, 13, 14
    Rule 19(a)(1) .......................................................................................... 13
    Rule 19(a)(1)(A) ..................................................................................... 13
    Rule 19(a)(2)........................................................................................ 2, 13
    Rule 19(b) .......................................................................................... 14, 16
    Rule 19(b)(2) .......................................................................................... 15
    Rule 19(b)(3) .......................................................................................... 15
    Rule 19(b)(4) .......................................................................................... 16

**CALIFORNIA STATUTES, REGULATIONS, AND RULES**

Code of Civil Procedure § 410.10 ............................................................. 8

## I.     **INTRODUCTION**

Respondent Yingkui Liu ("Liu") opposes Petitioner Shenzhen Zehuijin Investment Center (Limited Partnership) ("Petitioner") Petition to Confirm [the] Arbitration Award of a Chinese arbitral tribunal, and cross-moves for dismissal of the Petition.  The Court should deny and dismiss the Petition for multiple reasons.

First, the Court should dismiss the Petition for lack of personal jurisdiction. Petitioner has presented no evidence supporting its argument that Liu is domiciled in California. Moreover, Petitioner does not allege, or provide any evidence, that jurisdiction arises from, or is related to, any activities of Liu within California, Thus, Petitioner fails to meet its burden that California has personal jurisdiction over Liu, whether general or specific.

Second, the Court should dismiss the Petition on the grounds of forum non conveniens. This is a dispute entirely between Chinese parties, arising out of transactions that occurred in China and is governed by the substantive law of China. China is an adequate alternative forum. Following the Arbitration Award, Petitioner initiated enforcement proceedings against Liu in China and obtained a freeze of many of Liu's assets in China. To that point, a Chinese court ruled that the value of Liu's frozen stock, alone, is sufficient to satisfy the Arbitration Award.  Additionally, there is related litigation ongoing in China among all the parties to the dispute. The balance of private and public interest factors favor dismissal on grounds of forum non conveniens.

Third, the Court should dismiss the Petition for failure to join two indispensable parties, Ningbo Zhenrong Equity Investment Partnerships (Limited Partnership) ("Ningbo Zhenrong") and Beijing Sinowel Communication Technology Co., Ltd. (the "Target Company"). The Arbitration Award holds that a transfer of 120 million RMB from third party Ningbo Zhenrong to the Target Company was, in essence, a loan from Petitioner to Liu.  However, in a Letter of Commitment that Ningbo Zhenrong issued concomitantly with its transfer of 120 million to the Target Company, Ningbo

1

1   Zhenrong avers that the 120 million RMB constitutes its own funds and not funds

2   entrusted on behalf of others, and that the 120 million RMB is its investment in the

3   Target Company. On March 21, 2024, in China, the Target Company sued,

4   questioning the finding in the Arbitration Award that the investment was instead a loan

5   to a third party, naming as parties Ningbo Zhenrong, Petitioner and Liu, and seeking

6   to hold Ningbo Zhenrong and Petitioner jointly and severally liable for liquidated

7   damages of more than 50 million RMB.  This Court cannot appropriately address the

8   relief sought by Petitioner, without prejudicing Ningbo Zhenrong, the Target

9   Company and Liu. Where necessary "person[s]" have not been joined, "the court must

10  order that the person[s] be made a party." Fed. R. Civ. P. 19(a)(2).

11       Fourth, the Court should deny confirmation of the Arbitration Award because

12  the Arbitration violated the Convention on the Recognition and Enforcement of

13  Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (entered into force December

14  29, 1970) (the "New York Convention," as reflected in 9 U.S.C. § 201 et seq.).  Liu

15  was denied fundamental due process, in violation of New York Convention Art.

16  V(1)(b). The Arbitration Award was beyond the scope of the submission, in violation

17  Art. V(1)(c). And the Arbitration Award is contrary to the public policy of the United

18  States in violation of Art. V(2)(b).

19       Fifth, at a minimum, the Court should stay this Petition pending review of the

20  previously described litigation filed by the Target Company. That case seeks to resolve

21  the rights of Petitioner, Liu, Ningbo Zhenrong and the Target Company regarding the

22  120 million RMB that is the subject of the petition to Confirm Arbitration Award.

23  Proceeding on the Petition to Confirm before resolution of this connected lawsuit

24  would create risk of inconsistent rulings and prejudice to Respondent Liu as well as

25  Respondent Zhang Xin.

26       For these reasons, as articulated in more detail below, the Court should deny the

27  Petition to Confirm Arbitration Award in all respects.

28

134082-00000001/7980976.8                          CASE NO. 3:24-CV-00372-MMA-DEB

1  ## II.     FACTUAL BACKGROUND

2        ### A.     The Agreements and Transfer of Funds

3        Liu founded Beijing Sinowel Communication Technology Co., Ltd. (the

4  "Target Company".)  (Declaration of Liu Yingkui in Support of Liu's Opposition to

5  Petitioner's Petition, Cross-Motion to Dismiss for Lack of Jurisdiction, on the Grounds

6  of Forum Non Conveniens and for Failure to Join a Party, and Request for Stay ("Liu

7  Decl."), filed concurrently herewith, ¶ 6.) In September 2017, Petitioner, Liu and the

8  Target Company entered into a Loan Agreement (the "Loan Agreement") in China.

9  (*Id*., at ¶ 7.)  This Loan Agreement contains an arbitration clause, which states "any

10  dispute arising from the interpretation or performance of this Agreement shall first be

11  settled through amicable negotiation. If negotiation failed, then any party shall have

12  the right to file a lawsuit with Beijing Arbitration Commission, and the dispute shall

13  be settled through arbitration in Beijing in accordance with the rules of Beijing

14  Arbitration Commission." (*Id*., at ¶ 8; also see Doc 1-4, Exh. A at p. SZIC_00019.)

15  The purpose of the Loan Agreement was to provide a credit line from Petitioner to Liu

16  of not exceeding 160 million RMB to terminate the variable interest entity structure of

17  the Target Company. (Liu Decl., at ¶ 9.) Further, the Loan Agreement requires that

18  any amendment to this agreement shall be in writing signed by all parties.  (*Id*., at ¶

19  10; also see Doc 1-4, Exh. A. at SZIC_00019.)

20        Subsequently, in November 2017, Petitioner, Liu and the Target Company

21  entered a "Cooperation Agreement" (the "Cooperation Agreement") in China. (Liu

22  Decl., at ¶ 11.)  Under the Cooperation Agreement, Petitioner would still loan 160

23  million RMB to Liu, but Petitioner would now be entitled to convert the loan to equity

24  in the Target Company via a debt-equity swap for 13.79% of the shares of Target

25  Company.  (*Id.,* at ¶ 12.)  This Cooperation Agreement contains an arbitration clause

26  but makes no reference to the Loan Agreement.  (*Id*., at ¶ 13.)

27        Petitioner also introduced another company, Ningbo Zhenrong, to Liu. (Liu

28  Decl., at ¶14.) In December 2017, Ningbo Zhenrong, Liu, the Target Company and

1 | other parties, entered into an investment agreement (the "Investment Agreement").

2 | (*Id*.) Under the Investment Agreement, Ningbo Zhenrong would lend 120 million

3 | RMB to the Target Company and be entitled to a compulsory debt-to-equity swap for

4 | 5.71% of the shares in the Target Company. (*Id*., at ¶ 15.) Petitioner is not a party to

5 | the Investment Agreement. (*Id.,* at ¶ 16.) The Investment Agreement does not make

6 | any reference to the Loan Agreement. (Id., at ¶ 17.) The Investment Agreement does

7 | not contain an arbitration clause. (Liu Decl., at ¶ 18) Rather, the Investment Agreement

8 | contains a clause that if there is any dispute arising from the agreement, the parties

9 | shall file a lawsuit in a competent people's court of China where the agreement is

10 | signed. (*Id*.)

11 | In December 2017, Petitioner, Liu, the Target Company, and Ningbo Zhenrong,

12 | along with 4 other parties, signed a Memorandum (the "Memo") (Liu Decl., at ¶ 19.)

13 | Under the Memo, it was agreed that instead of Petitioner lending 160 million RMB to

14 | Liu under the Cooperation Agreement, Petitioner would instead lend 120 million RMB

15 | to Ningbo Zhenrong. Ningo Zhenrong would use this loan to fulfill its investment in

16 | the Target Company under the Investment Agreement. Petitioner would also loan 40

17 | million RMB directly to the Target Company. (*Id*., at ¶ 20.) The Memo does not

18 | mention the Loan Agreement. (*Id.*, at ¶ 21) Instead, the Memo states its purpose is to

19 | supplement the Cooperation Agreement and the Investment Agreement. (*Id.*) In

20 | addition, the Memo does not contain an arbitration clause. (*Id.*, at ¶ 22.)

21 | On December 22, 2017, Ningbo Zhenrong remitted 120 million RMB to the

22 | Target Company. (Liu Decl., at ¶ 23.) Shortly thereafter, on January 23, 2018, Ningbo

23 | Zhenrong issued a Letter of Commitment stamped with its official seal. (*Id*., at ¶ 24,

24 | Ex. A to Liu's Decl.) In its Letter of Commitment, Ningbo Zhenrong stated that

25 | pursuant to the Investment Agreement, it provided a loan of 120 million RMB to the

26 | Target Company, which would be converted into a capital contribution of the Target

27 | Company. (*Id*.) Ningbo Zhenrong further stated that the 120 million RMB constituted

28 | its own funds, that the funds were not entrusted on behalf of others and the funds were

4

1   its investment in the Target Company. (*Id*.)  Ningbo Zhenrong acknowledged the

2   authenticity of the Letter of Commitment in another court proceeding in China.

3   (Declaration of Minmin Xie in Support of Respondent Liu's Opposition to Petitioner,

4   Cross-Motion to Dismiss the Petition and Request for Stay. ("Xie Decl."), filed

5   concurrently herewith, ¶ 6, Ex. A to Xie's Decl.) However, during the Arbitration,

6   Petitioner introduced two "Explanation" notes that were created by Ningbo Zhenrong

7   after the arbitration process began, which directly contradicted their Letter of

8   Commitment. (Liu Decl., at ¶¶ 29-32.)  In the Explanation notes Ningbo Zhenrong

9   claimed that its 120 million RMB investment was, instead, "essentially" a loan from

10  petitioner to Liu.  (*Id*., at ¶31.)

11      **B.**    **The Parties to the Agreements and Witnesses are Located in China**

12      The parties to the Agreements and most, if not all, the witnesses to the

13  Agreements and underlying transactions are located in China. (Liu Decl., at ¶ 41.)  All

14  conduct related to the underlying dispute happened in China. (*Id*., at ¶ 42; Ex. G to

15  Liu's Decl.) None of such activities occurred in the United States. (*Id*.)

16      **C.**    **The Arbitration and Award**

17      On July 23, 2020, Petitioner commenced an arbitration proceeding (the

18  "Arbitration") against Liu for breach of the Loan Agreement before the Beijing

19  Arbitration Commission (the "Tribunal") according to the arbitration clause in the

20  Loan Agreement only. (Liu Decl., at ¶ 25.)

21      The Tribunal consisted of three arbitrators. (Liu Decl., at ¶ 26.) Mr. Ding

22  Zhexuan, the legal director of the Target Company at that time, recommended

23  Arbitrator Zhai Hui to Liu. (*Id*.; Ding Zhexuan Declaration in support of Liu's

24  Opposition and Cross Motion ("Ding Decl."), filed concurrently herein, ¶7.) Liu

25  nominated Arbitrator Zhan Hui ("Liu's Arbitrator"). (*Id*.) Petitioner nominated

26  Arbitrator Minjing Zhai ("Petitioner's Arbitrator"). (*Id*.) Petitioner's Arbitrator held

27  several prominent positions in the High People's Court of Beijing: director of the

28  political department, vice president, presiding judge, secretary of the discipline

1     inspection commission of the Beijing municipal commission for discipline inspection

2     in the Beijing High Court (*Id*.)

3         After the commencement of the Arbitration, Petitioner approached Mr. Ding,

4     the legal director of the Target Company at that time. (Ding Decl., filed concurrently

5     herein, ¶¶ 4,6.) Petitioner offered Ding certain benefits as long as he was willing to

6     help Petitioner during the Arbitration. (*Id.,* at ¶ 6).   Petitioner also asked Ding to

7     introduce Liu's Arbitrator to Petitioner (*Id*., at ¶ 8.)

8         The Arbitration's merits hearing took place on November 12, 2020. (Liu Decl.,

9     at ¶ 27.) The hearing was brief and perfunctory. (*Id*.) Although the Arbitration Award

10    states that, "Both parties testified and cross-examined the evidences produced by them

11    and expressed their arguments[,]" (see Doc 2-1, Supplemental Ex. D, at p.

12    SZIC_00044) in fact, no witnesses testified. (Liu Decl., at ¶ 27.)   Cross-examination

13    was not taken or allowed. (*Id.*) The Arbitration consisted solely of the parties

14    submitting documents and the parties' counsel making objections to, and argument

15    based on, those documents. (Liu Decl.; Ex. B to Liu Decl.)

16        After the hearing, Petitioner submitted supplemental evidence, such as the

17    Cooperation Agreement. (Liu Decl., at ¶ 34.)   Liu made a written request to the

18    Tribunal to have a second hearing to examine the supplemental evidence (*Id.*.; Ex. E

19    to Liu's Decl.).

20        On March 1, 2021, the Tribunal issued a notice of extension of time to render a

21    decision. (Liu Decl., at ¶ 35.) However, Liu did not receive this notice until March 25,

22    2021. (*Id*.)   On that day, Mr. Ding told Liu that Liu's Arbitrator explained the notice

23    was confirmation the Tribunal would hold a second hearing. (Ding Decl., at ¶ 9; Liu

24    Decl., at ¶ 35) The Arbitrator even advised that Liu should prepare well for the second

25    hearing. (Ding Decl., at ¶ 9; Liu Decl., at ¶ 35.) However, only one day later, on March

26    26, 2021, Liu received the Arbitration Award. (Liu Decl., ¶ 37.)   The Award had been

27    issued on March 22, 2021. (*Id*., at ¶ 36.). In the Arbitration Award, the transfer of 120

28    million RMB from Ningbo Zhenrong to the Target Company is characterized as a loan

1   from Petitioner to Liu.  The Award granted Petitioner's claim. (*Id*., at ¶ 36; also see
2   Doc. 1-7, Exh. D.)

3         **D.**   **Post Arbitration Award Enforcement Proceedings**

4         Petitioner started enforcement proceedings in China to enforce and collect this
5   Arbitration Award. (Liu Decl., at ¶ 38.) Petitioner froze Liu's assets in China,
6   including his bank accounts and stocks. (*Id*.) On June 30, 2021, the Beijing No. 2
7   Intermediate court issued a Notice of Enforcement Assistance in favor of Petitioner to
8   the China Securities Depository and Clearing Co., Ltd Shenzhen Branch to freeze
9   Liu's bank accounts and 89,074,100 of Liu's shares in Zhongjia Bochuang (securities
10  code 000889.SZ), a public listed company on the Shenzhen Exchange, from June 30,
11  2021 to June 29, 2024. (*Id*., at ¶ 39.) At the time of such freezing, the value of the
12  frozen stock was around 297,96 million RMB. (*Id*.) On December 30, 2021, the
13  Beijing High People's Court decided that the frozen stock was sufficient to cover the
14  Arbitration Award. (*Id*., Ex. F to Liu's Decl.) It further ruled that "with regard to the
15  possible increase in the amount of the debt to be enforced over time, the claimant for
16  enforcement may apply to the People's Court for another freezing order when the
17  amount of the debt to be enforced is close to the value of the frozen stock."  (*Id*.)

18        In 2022, Petitioner filed a petition to recognize the arbitration award in
19  Singapore against Liu. (Liu Decl., at ¶ 40.)

20        In 2024, the Target Company filed a lawsuit at the people's court of Chaoyang
21  District, Beijing City against Petitioner, Ningbo Zhenrong, and Liu to resolve the
22  rights of Petitioner, Liu, Ningbo Zhenrong and the Target Company regarding Ningbo
23  Zhenrong's remittance of the 120 million RMB to the Target Company. (Liu Decl., at
24  ¶ 43, Ex. H to Liu Decl.) This case seeks to resolve the rights of Petitioner, Liu, Ningbo
25  Zhenrong and the Target Company regarding this 120 million RMB. (*Id*.)

26        In the instant proceedings, Petitioner seeks to confirm the Arbitration Award
27  against Liu in California. Although Liu is currently physically present in California,
28  Liu has no intent to remain here indefinitely. (Liu Decl., at ¶ 4.) Liu is a resident of

7

1 the People's Republic of China. (*Id.*, ¶ 1.)

2 **III.    ARGUMENT**

3     **A.    The Petition Should Be Dismissed for Lack of Personal Jurisdiction**

4     Personal jurisdiction is required in every action to confirm a foreign arbitral

5 award under the New York Convention. *Glencore Grain Rotterdam B.V. v. Shivnath*

6 *Rai Harnarain Co.*, 284 F.3d 1114, 1122 (9th Cir. 2002). A district court must apply

7 the law of the state in which it sits when there is no applicable federal statute governing

8 personal jurisdiction. *Panavision Intern, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th

9 Cir. 1998). District courts in California may exercise personal jurisdiction over a

10 nonresident defendant to the extent permitted by the Due Process Clause of the

11 Constitution. Cal. Code Civ. P. § 410.10. The Due Process Clause requires that the

12 defendant have "certain minimum contacts" with the forum "such that the maintenance

13 of the suit does not offend traditional notions of fair play and substantial justice." *Int'l*

14 *Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945) (citations and internal

15 quotation marks omitted). The party seeking to invoke jurisdiction has the burden of

16 establishing that jurisdiction exists. *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1392

17 (9th Cir. 1984).

18     1.    There Is No General Jurisdiction over Liu

19     A defendant is subject to general jurisdiction only where they are "at home" in

20 the foreign state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). In general, "an

21 individual is subject to general jurisdiction in her place of domicile." *Ford Motor Co.*

22 *v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021). "Domicile,

23 however, requires both physical presence at a given location and an intent to remain

24 there indefinitely." *Lew v. Moss*, 797 F.2d 747, 752 (9th Cir. 1986). Here, although

25 Liu is physically present in California now, Liu has no intent to remain here

26 indefinitely (Liu Decl., at ¶ 4.) In fact, as Petitioner conceded in its Petition, Liu's

27 "primary residence is located at Room 2002, Unit 1, No. 2, DongzimenwaiXiaojieJia,

28 Dongcheng District, Beijing." (Declaration of Pu Gang in Support of Petition to

1   Confirm Arbitration Award, ¶ 3).  Liu is not domiciled in California; therefore, there

2   is no general jurisdiction over Liu.

3                    2.        There is No Specific Jurisdiction over Liu

4        Specific jurisdiction exists when a defendant's minimum contacts with

5   California satisfy the Ninth Circuit's three-prong test:

6            "(1) The non-resident defendant must purposefully direct his activities or

7            consummate some transaction with the forum or resident thereof; *or* perform

8            some act by which he purposefully avails himself of the privilege of conducting

9            activities in the forum, thereby invoking the benefits and protections of its laws;

10           (2) the claim must be one which arises out of or relates to the defendant's forum-

11           related activities; and (3) the exercise of jurisdiction must comport with fair play

12           and substantial justice, i.e. it must be reasonable."

13  *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1227–28 (9th Cir. 2011)

14  (emphasis in original omitted).

15       Petitioner has not alleged any activities of Liu which support prong (1) but, fatal

16  to any special jurisdiction assertion, Petitioner must concede it cannot meet prong (2).

17  All of the activities giving rise to the Arbitration Award happened in China and none

18  are California-related.  Thus, there can be no specific jurisdiction.

19       Because there is no personal jurisdiction over Liu, this Court should dismiss

20  Petitioner's Petition.

21  **B.    The Petition Should Be Dismissed on the Grounds of the Doctrine of Forum Non Conveniens**

22

23       Under the doctrine of forum non conveniens, the court may dismiss the Petition

24  if (1) an adequate alternative forum exists, and (2) the balance of relevant private and

25  public interest factors favor dismissal. *Creative Tech. Ltd. v. Aztech System PTE, Ltd.,*

26  61 F.3d 696, 699 (9th Cir.1995). Numerous federal courts have held that a court

27  presented with a petition to confirm an arbitral award may appropriately dismiss that

28  petition when the traditional basis for application of the forum non conveniens doctrine

9

1    have been met. For example, in *In the Matter of the Arbitration Between Monegasque*

2    *de Reassurances S.A.M. (Monde Re) v. NAK Naftogaz of Ukraine*, 311 F.3d 488 (2d

3    Cir. 2002), the Second Circuit affirmed a district court's forum non conveniens

4    dismissal of a petition to confirm an arbitral award, noting that "there would be great

5    inconvenience in litigating in the United States the complex issues involved in this

6    case," and in particular "the problems implicated in the application of foreign law."

7    *Id*. at 499, 500.  In *Melton v. Oy Nautor Ab*, No. 97–15395, 1998 WL 613798 (9th Cir.

8    Aug. 10, 1998), the Ninth Circuit affirmed a district court's forum non conveniens

9    dismissal of a petition to confirm an arbitral award obtained in Finland, noting that the

10   parties "are subject to, or have submitted to, jurisdiction in Finland. An adequate

11   alternative forum exists" and "[t[he district court did not abuse its discretion in

12   concluding that the balance of private and public interests pointed toward dismissal"

13   *Id*, at *1; *See also Figueiredo Ferraz e Engenharia de Projeto Ltda v. Republic of*

14   *Peru*, 665 F.3d 384, 389 (2d Cir. 2011).

15        The key determination of adequate alternative forum is whether "the remedy

16   provided by the alternative forum is so clearly inadequate or unsatisfactory that it is

17   no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). This

18   requirement is generally satisfied if the defendant is amenable to service of process in

19   the alternative forum. *Id*. at n. 22. Here, Petitioner is a Chinese company, doing

20   business in China. (Liu Decl., at ¶ 5.)  Liu is a Chinese resident. (*Id*., at ¶ 1.)  Thus,

21   both Petitioner and Liu are subject to the jurisdiction of the people's court of China.

22   In fact, Petitioner and Liu have submitted to the jurisdiction of the people's court of

23   China. (Liu Decl., at ¶ 39.) Therefore, China is an adequate alternative forum.

24        "Given the existence of an adequate alternative forum, a district court must

25   consider the balance of private and public interest factors to determine whether to

26   dismiss on grounds of forum non conveniens." *Lockman Found. v. Evangelical*

27   *Alliance Mission,* 930 F.2d 764, 769 (9th Cir.1991). "While there is normally a strong

28   presumption in favor of honoring the plaintiff's choice of forum, a foreign plaintiff's

choice is afforded less deference." *Creative Tech*, 61 F.3d at 703. "The private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive." *Id*. The *Creative Tech* court decided that case can be best litigated in Singapore since "[b]oth primary parties, the key infringing conduct, and the bulk of the witnesses are located in Singapore." *Id*. Here, The Loan Agreement was signed in China. (*Id*., at ¶ 7.) All conducts related to the underlying dispute happened in China. (*Id*., at ¶ 42, Ex. G to Liu's Decl.) Most if not all the witnesses of the underlying transactions are in China. (Liu's Decl., at ¶ 41.) Moreover, the Chinese Complaint filed by the Target Company on March 21, 2024 against Petitioner, Liu and Ningbo Zhenrong is related and overlapping with the Arbitration Award. (*Id*., at ¶ 43, Ex. H to Liu's Decl.) It has overlapping parties and witnesses. Thus, private factors 1, 2 and 4 all favor dismissal. Factor 3 does not apply here since there is no subject premise at issue. In all, the private interest factors favor dismissal on grounds of forum non conveniens.

"The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action: (5) the avoidance of unnecessary problems in conflicts of law." *Creative Tech*, 61 F.3d at 703-704. "This is essentially a dispute between two Singapore corporations……This is not a case involving…American products or substantively involving American companies. As such, the United States' interest in resolving this controversy and the relation of the jury community to this controversy are extremely attenuated and do not sway the balance against dismissal." *Id*, at 704.

Here, this is a dispute between a Chinese citizen and a Chinese company. (Liu Decl., at ¶¶ 1,5.) The Loan Agreement was entered by the parties in China. (*Id*., at ¶

11

1    7.)  The parties and witnesses to the agreements and documentary exhibits are in

2    China. (*Id.*, at ¶ 41.) No conduct relating to the underlying transaction, or the dispute

3    happened in the United States. (*Id.*, at ¶ 42.)  Petitioner has already instituted

4    enforcement and collection proceedings China. (*Id.*, at ¶ 38.) Petitioner has frozen

5    Liu's numerous assets in China, including his bank accounts and stocks. (*Id.*)  On

6    December 30, 2021, the Beijing High People's Court decided that the value of the

7    frozen stock alone was sufficient to cover the Arbitration Award. (*Id.* at ¶ 39) In other

8    words, the Arbitration Award can be fully and effectively satisfied in the enforcement

9    proceedings in China. In particular, the Beijing High Court's ruling also ruled that

10   "with regard to the possible increase in the amount of the debt to be enforced over

11   time, the claimant for enforcement may apply to the People's Court for another

12   freezing order when the amount of the debt to be enforced is close to the value of the

13   frozen stock."  (*Id.*) Therefore, it is completely unnecessary for Petitioner to petition

14   to confirm the Arbitration Award in California.

15        Thus, although factors 1 and 2 may be neutral or non-relevant, public interest

16   factors 3, 4 and 5 all favor dismissal.  In all, the public interest factors favor dismissal

17   as well.

18        Accordingly, the Court should dismiss the Petition on the grounds of the

19   doctrine forum non conveniens.

20        **C.**    **The Petition Cannot Proceed Until Indispensable Parties Are Joined**

21        Federal Rules of Civil Procedure 19 governs compulsory party joinder in federal

22   court. That Rule "is designed to protect the interests of absent parties, as well as those

23   ordered before the court, from multiple litigation, inconsistent judicial determinations

24   or the impairment of interests or rights," and "can be properly raised at any stage in

25   [a] proceeding*." CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911-12

26   (9th Cir. 1991).

27        "Applying these two parts of Rule 19, there are three successive inquiries. First,

28   the court must determine whether a nonparty should be joined under Rule 19(a)…If

an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined. Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction……Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed." *Id*. (internal citations omitted.)

    1. <u>Ningbo Zhenrong and the Target Company are Necessary Parties</u>

   "The heart of Rule 19(a) is a disjunctive analysis." *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1031 (N.D. Cal. 2005). If any of its "prongs is satisfied, joinder is mandatory." *Id*.; Fed. R. Civ. P. 19(a)(2). Ningbo Zhenrong and the Target Company are indispensable parties within the meaning of Fed. R. Civ. P.19(a)(1). Here, in the Arbitration Award, the transfer of 120 million RMB from Ningbo Zhenrong to the Target Company is characterized as a loan from Petitioner to Liu. (Liu Decl., at ¶ 32.) However, Ningbo Zhenrong's Letter of Commitment, issued concomitantly with its payment of 120 million RMB per the Investment Agreement and Memo, unequivocally expressed that the 120 million RMB was its loan to the Target Company to be converted into an equity interest. (*Id*., at ¶ 24, Ex. A to Liu's Decl.) It unequivocally expressed that 120 million constituted its own funds, were not entrusted on behalf of others and were its investment in the Target Company. (*Id*.) This creates an issue at the heart of the parties' dispute, i.e., was the transfer of the 120 million RMB a convertible loan from Ningbo Zhenrong to the Target Company, or was it a loan from Petitioner to Liu.

   To this point, on March 21, 2024, the Target Company instituted a complaint in China against Petitioner, Liu and Ningbo Zhenrong, seeking a determination of the very issues at the heart of Petitioner's action here. Therefore, in the absence of Ningbo Zhenrong and the Target Company, the Court cannot accord complete relief and

13

134082-00000001/7980976.8              CASE NO. 3:24-CV-00372-MMA-DEB

**ER-104**

justice among existing parties. *See* Fed. R. Civ. P. 19(a)(1)(A).

<div style="margin-left:2em">

2.   <u>It Is Not Feasible to Join Ningbo Zhenrong and the Target Company in the Proceeding Before this Court.</u>

</div>

Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction. *See* Fed. R. Civ. P. 19 (a).

Here, at least two of the circumstances render joinder not feasible. First, venue is improper in this Court. The Investment Agreement among Ningbo Zhenrong, Liu, and the Target Company includes a dispute resolution clause that any dispute arising out of this agreement should be litigated in the competent people's court in China where the agreement was signed. (Liu Decl., at ¶ 18.) Second, Ningbo Zhenrong and the Target Company are Chinese companies not subject to personal jurisdiction in this Court.

Therefore, resolution of the issues related to the transfer of the 120 million RMB from Ningbo Zhenrong to the Target Company should be resolved by a competent people's court in China, i.e., the court where the Target Company sued Ningbo Zhenrong, Petitioner and Liu.

<div style="margin-left:2em">

3.   <u>The Case Should be Dismissed if Joinder of Ningbo Zhenrong and the Target Company is Not Feasible</u>

</div>

Pursuant to Fed. R. Civ. P. 19(b), where a necessary party "cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." In weighing that determination, Fed. R. Civ. P. 19(b) requires the consideration of the following factors:

> "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's

14

absence would be adequate; and
          (4) whether the plaintiff would have an adequate
remedy if the action were dismissed for nonjoinder."

The balancing of these factors weighs strongly in favor of dismissal, and against proceeding in the absence of Ningbo Zhenrong and the Target Company. First, a judgment rendered in Ningbo Zhenrong's and the Target Company's absence would cause extraordinary prejudice to Ningbo Zhenrong, the Target Company and Liu. As discussed above, a judgment rendered without Ningbo Zhenrong and the Target Company would not truly solve the issue of whether the 120 million RMB is a loan from Petitioner to Liu or a debt-equity loan from Ningbo Zhenrong to the Target Company. That is the very issue the Target Company seeks to resolve in its litigation against Petitioner, Ningbo Zhenrong and Liu in China.

Second, the prejudice to Ningbo Zhenrong, the Target Company cannot be avoided by "protective provisions in the judgment" or by "shaping the relief." Fed. R. Civ. P. 19(b)(2). This is not a case involving declaratory or injunctive relief, where the Court could tailor its decree to avoid any intrusion into Ningbo Zhenrong's and the Target Company's rights. Rather it is an action to confirm an arbitration award that is devoid of any protection to Ningbo Zhenrong and the Target Company.

Third, a judgment rendered in Ningbo Zhenrong's and the Traget Company's absence would be plainly inadequate. See Fed. R. Civ. P. 19(b)(3). Adequacy refers not "to satisfaction of the [plaintiff's] claims[,]" but "to the 'public stake in settling disputes by wholes, whenever possible.'" *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)) The interests that are being furthered [in Rule 19] are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.") (internal quotation omitted) *CP Nat'l*, 928 F.2d at 912. Here, without Ningbo Zhenrong and the Target Company, a separate lawsuit among the Target Company, Ningbo Zhenrong, Petitioner and Liu is unavoidable; in

15

1  fact that litigation, to resolve the nature of the same essential transfer of 120 million
2  RMB among all parties is underway in China.

3  Fourth, Petitioner would not be "deprived of an adequate remedy if the action
4  were dismissed for nonjoinder." *See* Fed. R. Civ. P. 19(b)(4). Petitioner has frozen
5  many of Liu's assets in China, including his bank accounts and stocks. (Liu Decl., at
6  ¶38.) On December 20, 2021, the High People's Court of Beijing already determined
7  that the value of the frozen stocks alone is sufficient to pay off the Arbitration Award.
8  (*Id.*, at ¶ 39; Ex. D. to Liu's Decl.) Thus, Petitioner has adequate remedy in China.

9  Accordingly, all of the Rule 19(b) factors favor dismissal, and in the event this
10  Court finds joinder of Ningbo Zhenrong to be infeasible, this case should be dismissed.

11 **D.  The Arbitration Award Should Not Be Confirmed Because It**
12  **Violates Article V Of The New York Convention.**

13  If the Court declines to dismiss this Petition for lack of jurisdiction, on the
14  grounds of forum non conveniens or for failure to join a party, it should refuse to
15  recognize the Arbitration Award under the New York Convention.

16  1.  Respondent Liu was Denied Due Process Under New York
17  Convention Art. V(1)(b), as He Was Denied the Right to Examine
  Crucial Witness(es) on an Issue at the Heart of the Parties Dispute.
18

19  A court must refuse recognition or enforcement of an arbitration award under
20  the New York Convention if, "the party against whom the award is invoked … was
21  otherwise unable to present his case." (Art. V(1)(b), New York Convention.) "This
22  provision essentially sanctions the application of the forum state's standards of due
23  process." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie*
24  *du Papier*, 508 F.2d 969, 975 (2d Cir. 1974).  Courts review arbitration awards under
25  this ground, i.e. misbehavior that prejudices a party's rights, afforded to "preserve due
26  process." *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir.
27  2016) (internal citations omitted). Due process is served only when "the parties
28  received a fundamentally fair hearing." *Id*. A fundamentally fair hearing requires that

16

CASE NO. 3:24-CV-00372-MMA-DEB

"each of the parties to the dispute [be given] an adequate opportunity to present its evidence and arguments." *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987). Thus, "an arbitral award should be denied or vacated if the party challenging the award proves that he was not given a meaningful opportunity to be heard as our due process jurisprudence defines it." *Generica Ltd. v. Pharm. Basics, Inc*., 125 F.3d 1123, 1129-30 (7th Cir. 1997).

At the substantive heart of the issues in arbitration was whether the 120 million RMB Ningbo Zhenrong transferred to the Target Company was a loan from Petitioner to Liu, as per the Loan Agreement and as argued by Petitioner, or whether it was a convertible equity investment in the Target Company by Ningbong Zhenron, as in the Investment Agreement, Memo and Letter of Commitment and as argued by Liu.

The 120 million RMB that Ningbo Zhenrong transferred to the Target Company tracked precisely the terms of the Investment Agreement and the Memo.  Ningbo Zhenrong's Letter of Commitment, issued concomitantly with its transfer, further supported that the transfer was Ningbo Zhenrong's investment. To counter this critical evidence, Petitioner introduced two, unsigned, unverified "explanation" notes, purportedly authored by Ningbo Zhenrong on August 4, 2020, after Petitioner had initiated the Arbitration. (Liu Decl., at ¶ 29.)  One "explanation note" stated that at Petitioner's direction, Ningbo Zhenrong transferred 120 million RMB to the Target Company. (*Id*., at ¶ 30; Ex. C to Liu's Decl.)  The other "explanation note" stated that the 120 million RMB Ningbo Zhenrong paid to the Target Company was "essentially" a loan from Petitioner to Liu. (*Id*., at ¶ 31; Ex. D to Liu's Decl.)

Liu did not get an opportunity to confront and cross-examine witness(es), such as whoever authored the "explanation" notes, and/or whoever had percipient knowledge of any facts supporting them. (Liu Decl., at ¶ 33; Declaration of James M. Zimmerman in support of Respondent Liu's Opposition to the Petition, Cross Motion to Dismiss the Petition and Request for Stay ("Zimmerman Dec."), filed concurrently herein, ¶ 6; Xie Decl., ¶ 4.) Although a party to an arbitration does not have an *absolute*

17

1   right to cross-examination*, Sunshine Min.Co*., *supra*, 823 F.2d at. 1295, under certain

2   circumstances, "where a party to an arbitration hearing does not have an opportunity

3   to prepare for or to cross-examine the critical witness*,"* that party *"*did not receive a

4   fundamentally fair hearing." *In Matter of Watkins-Johnson Co., v. Public Utilities

5   Auditors*, No. C-95 20715 RMW(E.I.)., 1996 WL 83883, at *4 (N. D. Cal., Feb. 20,

6   1996). In *Matter of Watkins-Johnson*, the respondent was not given a chance to cross

7   examine the author of a written statement that was the other party's only evidence.

8   *Matter of Watkins-Johnson, supra* at p.3.

9        Here, Petitioner was denied the right to examine crucial witnesses with

10   percipient knowledge of written statements going to the heart of the parties' dispute.

11   The "explanation" notes were created for litigation and self-servingly contradicted the

12   unequivocal intent conveyed in the Letter of Commitment, a document that existed at

13   the time of the parties' conduct at issue and explained their intent.   Allowing the

14   litigation-created explanations as evidence without giving Liu the ability to test their

15   trustworthiness violates the most basic tenants of due process. "Courts are rightfully

16   wary when parties create self-serving documents and seek to offer them as business

17   records. *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir.1999),

18   citing *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258–59 (9th Cir.1984).

19        As our Supreme Court has recognized, cross-examination "is the principal

20   means by which the believability of a witness and the truth of his testimony are tested."

21   *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  Thus, as in *Matter of Watkins-Johnson*,

22   Liu should have been given a chance to test the credibility of witnesses to the

23   explanation notes by cross examination.  Without that opportunity, he did not receive

24   a fundamentally fair hearing. The most basic due process was denied Liu under Article

25   V(1)(b). Therefore, the Court should deny confirmation of the Arbitration Award.

26             2.   The Arbitration Award Was Beyond the Scope of the Submission,

27                 in violation of New York Convention Art. V(1)(c).

28        A court can refuse to confirm an arbitration award under Article V(1)(c) if an

18

CASE NO. 3:24-CV-00372-MMA-DEB

award "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration or contains decisions on matter beyond the scope of the submission to arbitration ...." New York Convention, Art. V. (1)(c). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Incorporation of an arbitration agreement by refence must be "clear and unequivocal." *Socoloff v. LRN Corp.*, 646 Fed. App'x 538, 539 (9th Cir. 2016) (citing *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1172 (2007))

Here, Petitioner initiated the Arbitration against Liu before the Tribunal on the basis of the Loan Agreement only. (Liu Decl., at ¶ 25; See Doc 2-1, at p. SZIC-00045.) Under the Loan Agreement, Petitioner was to loan Liu an amount not exceeding 160 million RMB for Liu to terminate the VIE structure of the Target Company. (Liu Decl., at ¶ 9.)

The Loan Agreement, however, was not the operative instrument pursuant to which Ningbo Zhenrong transferred 120 million RMB to the Target Company. In fact, the Loan Agreement had no function in the transfer at all.

The Loan Agreement was followed by the Cooperation Agreement, which makes no reference to the Loan Agreement. (Liu Decl., at ¶ 11-13.) The Cooperation Agreement was followed by the Investment Agreement, which does not include an arbitration clause, and which also makes no reference to the Loan Agreement. (*Id.*, at ¶ 17, 18) It was pursuant to the Investment Agreement that Ningbo Zhenrong would loan 120 million RMB to the Target Company and be entitled to a compulsory debt-to-equity swap for 5.71 % of the shares in the Target Company. (*Id.*, at ¶ 15.)

Petitioner is not a party to the Investment Agreement. (Liu Decl., at ¶ 16.) And there is no reference, let alone a reference by "clear and convincing evidence," to the Loan Agreement or its arbitration clause. *Socoloff, supra*, 646 Fed. App'x at 539. Rather the Investment Agreement contains a jurisdiction clause that with respect to

19

any dispute arising from the execution or performance of or in connection with this Agreement, either party may file a lawsuit with the competent people's court in the place where the agreement is signed. (Liu Decl., at ¶ 18.)

That the Investment Agreement was the operative agreement governing the transfer, is confirmed by the Memo.  The Memo is the only document signed by all participating parties, and explains the purpose and intent of the transfer.  Petitioner, Liu, Ningbo Zhenrong, and the Target Company signed the Memo. (Liu Decl., at ¶ 19.)  The Memo explains that Petitioner was lending 120 million RMB to Ningbo Zhenrong, so that Ningbo Zhenrong could fulfill its obligations under the Investment Agreement; it further explained that Petitioner would directly lend the Target Company an additional 40 million RMB . (*Id*., at ¶ 20.) The Memo does not make any reference to the Loan Agreement. (*Id*., at ¶ 21.)

Thus, Petitioner had no right to initiate arbitration of events that occurred pursuant to the Investment Agreement.  And, the Arbitration Tribunal had no jurisdiction to address matters related to the Investment Agreement.  Because the Tribunal was limited to arbitrating issues pertaining solely to the Loan Agreement, the Arbitration Award, "contains decisions on matter beyond the scope of the submission to arbitration ...." New York Convention, Art. V. (1)(c).

### 3. This Arbitration Award is Contrary to the Public Policy of the United States, in violation of New York Convention Art. V(2)(b).

A court should refuse to recognize an arbitration award "if the competent authority in the country where recognition and enforcement is sought finds that ... (b) The recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, Art. V(2)(b). This public policy defense applies "when confirmation or enforcement of a foreign arbitration award 'would violate the forum state's most basic notions of morality and justice.'" *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 665 F. 3d 1091, 1097 (9th Cir.2011) (citing *Parsons &*

20

1  *Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*,

2  508 F.2d 969, 974 (2d Cir. 1974)) This is the case here. The recognition or enforcement

3  of the Arbitration Award would seriously violate California's most basic notions of

4  morality and justice.

5        *(a)  The Arbitration Award Violates California's Most Basic Notions of Justice.*

6        As explained in detail in Section (D)(1) above, Liu was not given a chance to

7  examine the witness(es) who prepared and/or have percipient knowledge of the facts

8  stated in the contradictory explanation notes and the Letter of Commitment regarding

9  Ningbo Zhenrong's transfer of 120 million RMB to the Target Company. (Liu Decl.,

10  at ¶ 33.)  California's basic notion of justice mandates the ability to test the credibility

11  of the unsigned, unverified explanation notes via the crucible of cross-examination.

12  Furthermore, in another court proceeding, Ningbo Zhenrong acknowledged the

13  authenticity of the seal on the Letter of Commitment irrespective that Ningbo

14  Zhenrong objected to this file as being a copy rather than the original document. (Xie

15  Decl., at ¶ 6, Ex. A to Xie's Decl.) Under Chinese law, acknowledging the authenticity

16  of the seal equates to Ningbo Zhenrong acknowledging the truthfulness of the Letter

17  of Commitment. (*Id.*)  Since the two explanation notes are in contradiction with the

18  Letter of Commitment, the truthfulness of these two explanation notes is dubious at

19  best.  As discussed above, the California Supreme Court has confirmed the "well-

20  established proposition that in civil proceedings, including less formal administrative

21  proceedings, parties generally have a due process right to cross-examine available

22  hearsay declarants." *In re Lucero L.*(2020) 22 Cal. 4th, 1227, 1244.

23        Because the Arbitration Award is rendered based on evidence that lacks

24  California's most basic notions of justice, the Arbitration Award should not be

25  confirmed pursuant to Art. V(2)(b) of the New York Convention.

26        *(b)  There Is Evidence that Petitioner sought to Corrupt the Arbitration*

27            *Process.*

28        Arbitration in China before local arbitral institutions, such as the Beijing

21

1   Arbitration Commission (BAC), have several systemic and institutional limitations

2   and conditions that impact the fairness and impartiality of the dispute resolution

3   process. (Zimmerman Dec., at ¶ 4.) The Beijing Arbitration Commission is a local

4   arbitral institution with its founding roots with the Beijing municipal government,

5   having been founded in 1995. While it claims to be independent and a not-for-profit

6   organization, the BAC continues to be supported, subsidized, and supervised by the

7   Beijing city government and is under the direction of the Beijing Municipal Bureau of

8   Justice. (*Id*., at ¶ 5.) The systemic and institutional conditions and limitations that

9   impact the fairness and impartiality of the BAC dispute resolution process, such as

10   Beijing Arbitration Commission not having an express prohibition on ex parte

11   communications; no right for the parties to cross-exam witness in arbitration; any

12   challenge to arbitrator's independence/impartiality to be a futile exercise; arbitrators

13   having the right to act as an ex aequo et bono or as amiable compositeur; and that BAC

14   being dominated by the Communist Party leadership. (*Id*., at ¶ 6.)

15       In addition, the outcome of an arbitration depends critically on the arbitrator

16   each party appoints, who oftentimes act as advocates on behalf of their respective party

17   within the dynamics of the panel of arbitrators. (Zimmerman Decal., at ¶ 8.) In the

18   Chinese court system and under Chinese political culture, one party's arbitrator may

19   exert enormous influence on, and power over, the other party's arbitrator and/or the

20   presiding arbitrator due to prior and current seniority and political positions. (*Id*.) Here,

21   Petitioner's Arbitrator held several prominent positions in the High People's Court of

22   Beijing including, among other positions, as director of the political department, vice

23   president, and presiding judge. (Liu Decl., at¶ 26; Zimmerman Decl., at ¶ 8.)

24   Petitioner's Arbitrator was also the secretary and director of the Beijing Commission

25   on Discipline and Inspection responsible for supervising Communist Party officials

26   and activities within the court, which is a powerful political role (Zimmerman Decl.,

27   at ¶ 8.) In addition, December of 2015, Petitioner's Arbitrator became the founding

28   president of Beijing Association for Alternative Dispute Resolution, which describes

22

1  itself as a Communist Party driven organization responsible for supervising dispute

2  resolution organizations in Beijing, including the Beijing Arbitration Commission

3  (*Id.*) Petitioner's Arbitrator had the ability to exert much influence over the arbitration

4  process to the detriment of Liu. (*Id.*).  This is supported by Liu's Arbitrator assuring

5  Liu that there would be a second hearing even after the arbitrators had issued the

6  Arbitration Award. (Ding Decl. at ¶ 9; Liu Decl. at ¶ 35.)

7      In addition, in this Arbitration, there is evidence Petitioner acted unscrupulously

8  sought to corrupt the process. During the arbitration, Petitioner approached Zhexuan

9  Ding, the legal director of the Target Company. (Ding Decl., ¶ 6) Petitioner offered

10  Ding "benefits" if he helped petitioner in the arbitration. (Id.) Petitioner also asked

11  Ding to connect it with Liu's Arbitrator. (Id. at ¶ 8)

12      In light of Petitioner's attempt to corrupt the arbitration proceedings and the

13  susceptibility of arbitration in China to corruption, the Arbitration Award should not

14  be confirmed. New York Convention, Art. V(2)(b).

15  **E.      The Petition Should Be Stayed Pending Resolution of Litigation
              Among the Parties Which is Proceeding in China.**

16

17      A case filed by the Target Company against Petitioner, Liu, and Ningbo

18  Zhenrong with respect to Ningbo Zhenrong's transfer of 120 million RMB to the

19  Target Company is pending in China. (Liu Decl., at ¶ 43, Ex. H to Liu's Decl.) The

20  case seeks to resolve the rights of Petitioner, Liu, Ningbo Zhenrong and the Target

21  Company regarding the 120 million RMB that is the subject of the Award Petitioner

22  seeks to confirm. (*Id.*)  This Court should stay the Petition to Confirm Arbitration

23  Award pending resolution of the proceedings in China.

24      Courts consider three factors when determining whether to grant a stay pending

25  parallel proceedings: (1) "the possible damage which may result from the granting of

26  a stay"; (2) "the hardship or inequity which a party may suffer in being required to go

27  forward"; and (3) "the orderly course of justice measured in terms of the simplifying

28  or complicating of issues, proof, and questions of law which could be expected to

23

1   result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir.2005).

2       The factors weigh in favor of granting a stay of this proceeding, pending

3   resolution of the proceedings in China.

4       First, there is no possible damage to Petitioner should the Court grant a stay.

5   Petitioner has already instituted enforcement and collection proceedings against Liu

6   in China and Singapore.  The Chinese court has already ruled that Petitioner has frozen

7   sufficient stock of Liu's such that it is protected under its Award.

8       Second, in addition to Respondent Liu, Respondent Zhang will suffer hardship

9   and inequity if confirmation, and subsequent collection, of the Award proceeds here

10   prior to resolution of the proceedings in China. If the Chinese court determines that

11   the 120 million RMB transferred to the Target Company by Ningbo Zhenrong is, in

12   fact, not a loan from Petitioner to Liu, but a loan/investment from Ningbo Zhenrong

13   to the Target Company, then it would be terribly unfair and inequitable to allow

14   enforcement and collection of Respondent Zhang's assets.[1]

15       Finally, should this case proceed alongside the Chinese proceeding, there is an

16   inevitable risk of inconsistent rulings. If the Court confirms this Petition, essentially it

17   is confirming that the 120 million RMB is a loan from Petitioner to Liu. As discussed

18   above, the Chinese proceeding seeks a ruling that the 120 million RMB is instead an

19   investment from Ningbo Zhenrong to the Target Company.

20       Because the factors support a stay. The Court should at a minimum stay this

21   Petition.

22      **F.**    **The Court Should Not Award Petitioner its Costs Accrued in Bringing This Petition Since Liu Has Raised Colorable Arguments In Good Faith.**

25       Petitioner asks the Court not only to confirm the Arbitration Award, but also to

---

[1] It is clear by Petitioner's inclusion of Liu's wife, Zhang Xin - who was not a party to the Arbitration - as a respondent in its Petition to Confirm Arbitration Award, that Petitioner intends to enforce its Award against any property interests Ms. Zhang has in California.

24

1   order that Respondents must pay Petitioner's costs for the confirmation proceedings.

2   Petitioner is not entitled to such costs. "Courts should only award attorney's fees and

3   costs when a party acts in bad faith in defending an action to confirm a foreign arbitral

4   award." *BU8 Sdn. Bhd v. CreAgi, Inc.,* No. C–14–4503–EMC, 2015 WL 1010090, at

5   *1 (N.D. Cal., Mar. 6, 2015).

6       The standard is a high standard, which has not been met here. Regardless of

7   whether Liu prevails in opposing the Petition, he has raised colorable arguments in

8   good faith, and should not be subjected to further costs award for doing so. *See Sheet*

9   *Metal Workers Intern. Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756

10  F.2d 742, 747 (9th Cir. 1985) (rejecting a fee request under the New York Convention,

11  noting that "although Kinney has failed in its efforts to have the arbitral award in this

12  case vacated, it has presented colorable arguments in support of its position. No

13  evidence indicates that those arguments were made in bad faith. Our rejection of

14  Kinney's contentions does not permit the contrary inference.").

15  **IV.   CONCLUSION**

16      For the foregoing reasons, Liu respectfully requests that the Court dismiss the

17  Petition for lack of personal jurisdiction, on the grounds of forum non conveniens and

18  for failure to join a party or stay this case. In the alternative, Liu respectfully requests

19  that the Court enter judgment, in favor of Liu and against Petitioner, denying

20  recognition or confirmation of the Petition.

21

22  DATED: May 16, 2024          PROCOPIO, CORY, HARGREAVES &
                                  SAVITCH LLP
23

24

25                               By:  s/ Anthony J. Dain
                                     Anthony J. Dain
26                                   Lianlian Wu
                                     Attorneys for Respondents
27                                   Liu Yingkui and Zhang Xin

28

134082-00000001/7980976.8                    CASE NO. 3:24-CV-00372-MMA-DEB

1  Anthony J. Dain (Bar No. 98947)
   E-mail:      anthony.dain@procopio.com
2  Lianlian Wu (Bar No. 306523)
   E-mail:      lianlian.wu@procopio.com
3  PROCOPIO, CORY, HARGREAVES &
      SAVITCH LLP
4  525 B Street, Suite 2200
   San Diego, CA 92101
5  Telephone: 619.238.1900
   Facsimile: 619.235.0398
6
   Attorneys for Respondents
7  Liu Yingkui and Zhang Xin

8              UNITED STATES DISTRICT COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10  SHENZHEN ZEHUIJIN INVESTMENT          Case No. 3:24-cv-00372-MMA-DEB
    CENTER (Limited Partnership),
11                                        **DECLARATION OF LIU**
                 Petitioner,              **YINGKUI IN SUPPORT OF**
12                                        **RESPONDENT LIU YINGKUI'S**
                                          **OPPOSITION TO**
13  v.                                    **PETITIONER'S PETITION TO**
                                          **CONFIRM ARBITRATION**
14  LIU YINGKUI; ZHANG XIN,               **AWARD, CROSS-MOTION TO**
                                          **DISMISS THE PETITION ON**
15               Respondents.             **THE GROUNDS OF FORUM**
                                          **NON CONVENIENS AND FOR**
16                                        **FAILURE TO JOIN A PARTY**
                                          **AND REQUEST FOR STAY**
17

18  ──────────────────────────────

19        I, LIU YINGKUI, declare as follows:

20        1.    I am a citizen and resident of the People's Republic of China.

21        2.    I have personal knowledge of the facts detailed below, and if called as a

22  witness, I could and would competently testify thereto.

23        3.    I submit this Declaration in support of my Opposition to Petitioner's

24  Petition to Confirm Arbitration Award, Cross-Motion to Dismiss the Petition for Lack

25  of Jurisdiction, on the Ground of Forum Non Conveniens, and for Failure to Join a

26  Party, and Request for Stay filed herewith.

27        4.    I am not a resident of California. Although I am physically present in

28  California now, I do not have any intent to remain in California indefinitely.

3:24-CV-00372

134082-00000001/7962124.4

**ER-117**

5.   Shenzhen Zehuijin Investment Center (Limited Partnership) ("Petitioner") is a Chinese company and doing business in China.

6.   I founded Sinowel Communication Technology Co., Ltd. (the "Target Company".)

7.   In September 2017, Petitioner, the Target Company and I entered into a "Loan Agreement between Shenzhen Zehuijin Investment Center (Limited Partnership) and Mr. Liu Yingkui on Wealth Management Business" (the "Loan Agreement") in China.

8.   This Loan Agreement contains an arbitration clause, which states any dispute arising from the interpretation or performance of this agreement shall first be settled through amicable negotiation. If negotiation failed, then any party shall have the right to file an arbitration with Beijing Arbitration Commission, and the dispute shall be settled through arbitration in Beijing in accordance with the rules of Beijing Arbitration Commission.

9.   The purpose of the Loan Agreement was to provide a credit line from Petitioner to me of not exceeding 160 million RMB to terminate the variable interest entity ("VIE") structure of the Target Company.

10.   The Loan Agreement clearly states that any amendment to this agreement shall be in writing signed by all parties.

11.   Later in 2017, Petitioner, the Target Company and I entered a "Cooperation Agreement between Shenzhen Zehuijin Investment Centre (Limited Partnership) and Mr Liu Yingkui on Wealth Management Business" (the "Cooperation Agreement") in China.

12.   Under the Cooperation Agreement, Petitioner would loan 160 million RMB and be entitled to a debt-equity swap for 13.79% of the shares of Target Company at a special discounted pre-investment valuation of 1 billion RMB.

13.   This Cooperation Agreement contains an arbitration clause, but it does not make any reference to the Loan Agreement at all.

2                                    3:24-CV-00372

14.    Petitioner also introduced Ningbo Zhenrong Equity Investment Partnership (Limited Partnership) ("Ningbo Zhenrong") to me. In December 2017, Ningbo Zhenrong, the Target Company, and I, along with six other parties, entered into an investment agreement in relation to the Target Company (the "Investment Agreement") in China.

15.    Under the Investment Agreement, Ningbo Zhenrong would contribute 120 million RMB to the Target Company and be entitled to a compulsory debt-to-equity swap for 5.71 % of the shares in the Target Company.

16.    Petitioner is not a party to the Investment Agreement.

17.    This Investment Agreement makes no reference to the Loan Agreement.

18.    The Investment Agreement does not contain any arbitration clause. Rather, the Investment Agreement contains a dispute clause that if there is any dispute arising from this agreement, the parties shall file a lawsuit in a competent people's court of China where the agreement is signed.

19.    In December 2017, Petitioner, the Target Company, Ningbo Zhenrong and I, along with four other parties, entered into a "Memorandum Regarding the Cooperation of Shenzhen Zehuijin and Liu Yingkui on Wealth Management Business" (the "Memo").

20.    Under the Memo, with respect to the 160 million RMB to be loaned by Petitioner under the Cooperation Agreement, Petitioner shall loan 120 million RMB to Ningbo Zhenrong so that Ningbo Zhenrong can use such funds to fulfill its contribution obligations under the Investment Agreement; and meanwhile, Petitioner should loan 40 million RMB directly to the Target Company.

21.    There is no mention of the Loan Agreement in the Memo. Rather, it specifically states that this Memo is to supplement the Cooperation Agreement and the Investment Agreement.

22.    The Memo does not contain any arbitration clause.

134082-00000001/7962124.4

**ER-119**

23.     On December 22, 2017, Ningbo Zhenrong remitted 120 million RMB to the Target Company.

24.     On January 23, 2018,[1] Ningbo Zhenrong issued a Letter of Commitment stamped with its official seal. In this Letter of Commitment, Ningbo Zhenrong states that pursuant to the Investment Agreement, it provided a loan of 120 million RMB to the Target Company, which would be converted into capital contribution of the Target Company. Ningbo Zhenrong further states that the 120 million RMB constituted its own funds, that the funds were not entrusted on behalf of others and the funds were its investment in the Target Company. Exhibit A is a true and correct copy of the Letter of Commitment.

25.     On July 23, 2020, Petitioner commenced an arbitration proceeding (the "Arbitration") against me for breach of the Loan Agreement before the Beijing Arbitration Commission (the "Tribunal") according to the arbitration clause in the Loan Agreement only.

26.     The Tribunal consisted of three arbitrators. Mr. Ding Zhexuan, the legal director of the Target Company at that time, recommended Arbitrator Zhai Hui to me. I nominated Arbitrator Zhan Hui ("My Arbitrator"). My Arbitrator once worked as a judge in the 1st Intermediate People's Court. Petitioner Nominated Arbitrator Jinmin Zhai (Petitioner's Arbitrator.)   Petitioner's Arbitrator once held several prominent positions in the High People's Court of Beijing: director of the political department, vice president, presiding judge, secretary of the discipline inspection commission of the Beijing municipal commission for discipline inspection in the Beijing High Court.

27.     The merits hearing took place on November 12, 2020. The hearing was brief and perfunctory. No witness testified. Cross- examination of witness was not taken or allowed. The Arbitration consisted solely of the parties submitting documents

---

[1] The years of 2017 and 2018 were misplaced in the Letter of Commitment. First, the Letter was issued on January 23, 2018, instead of January 23, 2017; second, the date of remittance was December 22, 2017, not December 22, 2018. These are two mere typographical errors.

4

1    and the parties' counsel making objections to, and argument based on, those
2    documents. Exhibit B is a correct and true copy of the Hearing Transcript.

3        28.    The Tribunal held the case review conference only 15 minutes prior to
4    the hearing, although the case review conference should be held one hour prior to the
5    hearing according to the Code of Work of Arbitrators.

6        29.    During the Arbitration, Petitioner submitted two explanation notes issued
7    by Ningbo Zhenrong dated August 4, 2020, as evidence.

8        30.    In one explanation note, Ningbo Zhenrong stated that at Petitioner's
9    direction, it transferred 120 million RMB to the Target Company. Exhibit C is a true
10   and correct copy of this explanation note.

11       31.    In the other explanation note, Ningbo Zhenrong stated that the 120
12   million RMB paid by Ningbo Zhenrong to the Target Company is essentially a loan
13   from Petitioner to me. Exhibit D is a true and correct copy of this explanation note.

14       32.    These two explanation notes are in complete contrast to the Letter of
15   Commitment Ningbo Zhenrong issued regarding the nature of the 120 million RMB
16   Ningbo Zhenrong remitted to the Target Company.

17       33.    I did not get an opportunity to cross examine the witness(es) who
18   prepared these two explanation notes.

19       34.    After the hearing, Petitioner provided supplemental evidence, such as the
20   Cooperation Agreement. I made a written application to the Tribunal to have a second
21   hearing. Exhibit E is a true and correct copy of the Application for a Second Hearing.

22       35.    On March 1, 2021, the Tribunal issued a notice of extension of time to
23   render a decision. However, I did not receive this notice until March 25, 2021. On the
24   same day, the arbitrator I selected informed me through Mr. Ding Zhexuan that this
25   notice was confirmation the Tribunal would hold a second hearing. He even advised
26   that we prepare well for the second hearing.

27

28

36.     On March 22, 2021, the Tribunal issued its award ("Arbitration Award") against me. In the Arbitration Award, the transfer of 120 million RMB from Ningbo Zhenrong to the Target Company is characterized as a loan from Petitioner to me.

37.     The service of the Arbitration Award was effectuated on me on March 26, 2021.

38.     As early as 2021, Petitioner started enforcement proceedings in China to enforce and collect this Arbitration Award. Petitioner has many of my assets in China frozen, including my bank accounts and stocks.

39.     On June 30, 2021, the Beijing No. 2 Intermediate court issued a Notice of Enforcement Assistance in favor of Petitioner to the China Securities Depository and Clearing Co., Ltd Shenzhen Branch to freeze my bank accounts and 89,074,100 of my shares in Zhongjia Bochuang (securities code 000889.SZ), a public listed company on the Shenzhen Exchange, from June 30, 2021, to June 29, 2024. At the time of such freezing, the value of the frozen stock was around 297.96 million RMB. On December 30, 2021, the Beijing High People's Court decided that the value of the frozen stock was sufficient to pay off the Arbitration Award. In addition, the Beijing High Court's ruling also ruled that "with regard to the possible increase in the amount of the debt to be enforced over time, the claimant for enforcement may apply to the People's Court for another freezing order when the amount of the debt to be enforced is close to the value of the frozen stock." Exhibit F is a true and correct copy of the Court Order.

40.     In 2022, Petitioner filed a petition to recognize the arbitration award in Singapore against me.

41.     Most if not all the witnesses of the underlying transactions are in China.

42.     All conducts related to the underlying dispute happened in China. None of such activities ever happened in the United States. Exhibit G is a chart that shows the conducts related to the underlying dispute.

134082-00000001/7962124.4

43.    On March 21, 2024, the Target Company filed a lawsuit at the people's court of Chaoyang District, Beijing City against Petitioner, Ningbo Zhenrong, and me related to Ningbo Zhenrong's remittance of the 120 million RMB to the Target Company. This case seeks to resolve the rights of Petitioner, me, Ningbo Zhenrong and the Target Company regarding this 120 million RMB. Exhibit H is a true and correct copy of the Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on this 16th day of May, 2024, in San Diego, California.

_____

LIU YINGKUI

## TABLE OF CONTENTS

| | |
|---|---|
| Exhibit A is a true and correct copy of the Letter of Commitment | 9 |
| Exhibit B is a correct and true copy of the Hearing Transcript | 13 |
| Exhibit C Exhibit C is a true and correct copy of this explanation note | 39 |
| Exhibit D is a true and correct copy of this explanation note (essentially loan) | 43 |
| Exhibit E is a true and correct copy of the Application for a Second Hearing | 47 |
| Exhibit F is a true and correct copy of the Court Order (redacted) | 53 |
| Exhibit G is a chart | 75 |
| Exhibit H is a true and correct copy of the Complaint (redacted) | 77 |

# EXHIBIT A

## Letter of Commitment

Our company signed the Investment Agreement on Beijing Sinowel Communication

Technology Co., Ltd. (the "Investment Agreement") with Beijing Sinowel Communication

Technology Co., Ltd. (the "Target Company") and other parties in November 2017.

According to the Investment Agreement, our company provided a loan of RMB 120,000,000

(SAY RMB ONE HUNDRED AND TWENTY MILLION ONLY) to the Target Company

with its own real-name account on December 22, 2018, which will be converted into the

capital contribution of the Target Company in accordance with the terms agreed in the

Investment Agreement.

Our company hereby undertakes that the funds used by our company to provide loans to the

Target Company come from our company's own funds, and our company and the funds do

not have any affiliation or entrust relationship with the top three ex-shareholders of Maoye

Communications Network Co., Ltd. (Xiaochang Yinggu Investment Center (Limited

Partnership), Zhongzhao Investment Management Co., Ltd., Shenzhen Tongtaida Investment

Center (Limited Partnership). In addition, the funds are not entrusted by any other party or

derived from any illegal means, such as illegal fundraising or crime.

*[Seal of Ningbo Zhenrong Equity Investment Partnership]*

Ningbo Zhenrong Equity Investment Partnership (Limited Partnership)

January 23, 2017





**Business Linguistics, Inc**
*Specialized Language Services*
www.businesslinguistics.com

Business Linguistics, Inc. certifies that the below listed original documents are an exact, true, and correct translation of the submitted documents. These document translations were made by one of our official, certified public translators who is familiar with both the English and Chinese languages.

Furthermore, all documents were edited as well as proofread for accuracy, fluency and to screen for any other possible errors by a proofreader/editor familiar with both the English and Chinese languages as well as pertinent industry terminology.

Business Linguistics, Inc. certifies that it is a true and correct translation from the submitted document(s).

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## Ningbo Zhenrong Equity Investment Partnership
## Letter of Commitment Dated January 23, 2017

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Certification is executed by public notary on the date stated below.

Date: April 29 2024

Signed:

Position: Project Manager

Date: 04/29/2024

Signed:

Position:

Notary Public, Dekalb County, GA
My Commission Expires 11/16/24

## 承诺函

　　本机构于 2017 年 11 月与北京中天嘉华通信技术有限公司（"标的公司"）及其他当事方签署《关于北京中天嘉华通信技术有限公司之投资协议》（"投资协议"），根据投资协议，本机构于 2018 年 12 月 22 日以自有实名账户向标的公司提供借款人民币 120,000,000 元（大写：壹亿贰仟万元整），该借款将根据投资协议约定的条件转化为对标的公司的出资。

　　本机构在此承诺，本机构用于向标的公司提供借款的资金来源于本机构的自有资金，本机构及该资金与茂业通信网络股份有限公司前三大股东（孝昌鹰溪谷投资中心（有限合伙）、中兆投资管理有限公司、深圳通泰达投资中心（有限合伙））不存在任何关联关系或代持关系。该资金也不存在任何其他方委托的代持或来源于非法集资、犯罪所等任何非法途径的资金。

宁波臻荣股权投资合伙企业（有限合伙）（盖章）：

2017 年 1 月 23 日

# EXHIBIT B

**(2020) Beijing Arbitration Case No. 2547**

**Transcript of Court Hearing**

Time: November 12, 2020

Venue: Arbitration Hall II, Beijing Arbitration Commission

Claimant: Shenzhen Zehuijin Investment Center (Limited Partnership)

Appeared in Court: (see sign-in sheet for details)

Respondent: Yingkui Liu

Appeared in Court: (see sign-in sheet)

Arbitration Tribunal: Presiding Arbitrator Xiuming Tao, Arbitrator Jingmin Zhai, Arbitrator Hui Zhan

Case Clerk: Mian Wang

(Pre-trial Arbitration Tribunal has served both parties with a Declaration of Arbitrators)

Xiuming Tao: Verifying the identity of the persons appearing in court for both parties (see "Sign-in Sheet for Persons Appearing in Court", omitted). Do the parties have any objections to each other's entity and the identity of the persons appearing in court?

Claimant, Respondent: No objections.

Xiuming Tao: The Court is now in session to hear the arbitration case (2020) JZA No. 2547, in which the Claimant Shenzhen Zehuijin Investment Center (Limited Partnership), and the Respondent Yingkui Liu, are involved in the arbitration case arising out of the "Loan Agreement between Shenzhen Zehuijin Investment Center (Limited Partnership) and Mr. Yingkui Liu on Wealth Management Business". Since both parties failed to jointly select the presiding arbitrator on schedule, according to the arbitration rules of the Association, the Director of the Association appointed Xiuming Tao as the presiding arbitrator of the case, and formed an arbitration tribunal with Jingmin Zhai, the arbitrator selected by the Claimant, and Hui Zhan, the arbitrator selected by the Respondent, to be heard by ordinary arbitration procedures, and the secretarial work of the case shall be taken care of by Mian Wang. Do the parties have any objections to the composition of the arbitral tribunal? Do they request for recusal?

Claimant, Respondent: No objections to the composition of the arbitral tribunal and no request for recusal.

Xiuming Tao: (Announcement of courtroom discipline) Are the parties clear about their rights and obligations in the courtroom?

Claimant, Respondent: Yes.

Xiuming Tao: Did the parties receive all the arbitration materials, such as the Arbitration Rules, the Roster of Arbitrators, the Notice of Organization, the Notice of Hearing, etc., served by the arbitral tribunal before the hearing?

Claimant, Respondent: Yes.

Xiuming Tao: Do the parties dispute the validity of the arbitration agreement in this case and the jurisdiction of the Council in this case?

Claimant, Respondent: No objections.

Xiuming Tao: Do the parties dispute the arbitration proceedings previously conducted in this case and the scheduling of today's hearing?

Claimant, Respondent: No objections.

Xiuming Tao: The claimant is asked to state the request for arbitration and the facts and reasons on which it is based.

Claimant: (The Request for Arbitration was read out.) Our request for arbitration is as follows:

First, the respondent is requested to return the principal amount of the loan of 160 million;

Second, the Respondent is requested to pay interest to the Claimant for the term of the loan (365 days) at the

rate of 8% per annum on the basis of 160 million as follows: (1) interest on the loan of 140 million from December 22, 2017 to December 22, 2018, a total of 11,200,000; (2) interest on the loan of 10 million from April 27, 2018 to December 22, 2018, a total of 523,836 for 239 days; and (3) interest on the loan of 10 million from May 3, 2018 to December 22, 2018, a total of 510,685 for 233 days. The total interest during the above loan period was 12,234,521.

Third, the Respondent is requested to pay the liquidated damages for late repayment of the loan at the rate of five ten-thousandths of one percent per day from the date of payment of the loan by the Claimant as follows: (1) the liquidated damages for 140 million is 644,700,000 for a total of 921 days calculated tentatively until June 30, 2020, starting from December 22, 2017 until the date of actual payment; (2) the liquidated damages for 10 million is 3,975,000 for a total of 795 days calculated tentatively until June 30, 2020, starting from April 27, 2018 to the date of actual payment; and (3) liquidated damages for 10,000,000,000 from May 3, 2018 to the date of actual payment, tentatively calculated to June 30, 2020, a total of 789 days, for 3,945,000. The above liquidated damages total 72,390,000. <u>It is necessary to explain to the arbitral tribunal that: according to the provisions of the law interest and liquidated damages and the sum of the standard does not exceed 24% of the principal. We voluntarily reduce the liquidated damages calculation standard, and request to give up part of the liquidated damages and reduce the total liquidated damages discretionarily. We only claim liquidated damages of 26,165,479, and do not claim the excess. The specific calculations will be submitted after the court session in a written opinion.</u>

Fourth, the cost of preservation in this case of 5,000, the guarantee fee of 250,000 in full, the attorney's fee of 500,000, and the arbitration fee are requested to be borne by the Respondent. <u>It is necessary to explain to the arbitral tribunal that: Because the preservation and guarantee did not actually occur, the 5,000 for the preservation fee and the 250,000 for the guarantee fee are waived in court, and neither will be claimed in this case.</u> The facts and reasons are the same as in the Request for Arbitration.

Xiuming Tao: The respondent is asked to respond.

Respondent: (Reading of the Arbitration Response).

Xiuming Tao: Will the Respondent please clarify whether the 20 million is under the Loan Agreement or the Investment Agreement?

Respondent: The first 20 million was under the Loan Agreement.

Xiuming Tao: Was the 120 million incurred under the investment agreement?

Respondent: It was incurred under the investment agreement between Ningbo Zhenrong and Jiahua Communications Company and the shareholders of Jiahua Communications Company, and the total in this case was 160 million.

Xiuming Tao: There is another amount of 20 million. Please specify the source.

Respondent: That 20 million is irrelevant to this case.

Xiuming Tao: Under what transaction or agreement did it occur?

Respondent: Under what we abbreviate as the Fuding Musen Partnership and Jiahua Networks.

Xiuming Tao: What is the second graph on page 2 of Facts and Reasons?

Respondent: Bo Xu and Qianhai Wutong are the strategic investors that we have introduced to Jiahua Communications in current batch.

Xiuming Tao: Are their amounts involved with the amounts in this case?

Respondent: No. They are third parties to this case. However, it is necessary to explain that this batch of strategic investors, in addition to Ningbo Zhenrong, also includes other parties, the content of the agreements is essentially the same.

Xiuming Tao: What is the nature of the second 20 million fund? Is it a loan or an investment?

Respondent: We believe that the second 20 million is an investment, and the 20 million for the Musen Partnership is a loan with Jiahua Networks. The second 20 million is also a loan, and is not related to the Claimant's request of the 160 million.

Xiuming Tao: According to the Respondent's understanding, there is 20 million under the loan agreement, 120 million under the investment agreement, and the other another 20 million not relevant to this case, correct?

Respondent: Yes.

Xiuming Tao: Please specify the reasons.

Respondent: Before the hearing, we submitted evidence, mainly of the contracts corresponding to the 120 million and the second 20 million. The first 20 million was basically undisputed, so there was no evidence involved.

Xiuming Tao: What is the relationship between the underlying agreement in this case, the Loan Agreement, the 120 million Investment Agreement, and the agreements mentioned by the parties in this case?

Respondent: I don't think there is a relationship because the investment entities are all different.

Xiuming Tao: In terms of factual transactions, please clarify the relationship between the several agreements and the context.

Respondent: From the perspective of the overall communication between the two parties, at least from the exhibits we see, at least the loan agreement is not fully implemented. This 120 million was originally intended for direct investment by the Zehuijin, now has become Ningbo Zhenrong, and the rights and obligations in the agreement are also clearly different. Because based on the facts of this case, the first 20 million is pure borrowing, the investment agreement has a dual attribute, on the one hand, the investment attribute, if the contractual agreement to meet the circumstances, the debt is turned into equity, and if it is not in line with the agreed circumstances, the it will be treated as a borrowing and repaid in the principal amount and interest upon withdrawal.

Xiuming Tao: Do the parties confirm that the 160 million fund actually occurred?

Respondent: The 160 million occurred not with the Claimant.

Xiuming Tao: Regardless of being a borrowing or investment, was the 160 million actually incurred?

Claimant: Yes.

Respondent: It's more about who because the entities aren't quite the same.

Xiuming Tao: Putting the entity issue aside for now, did it happen?

Respondent: We acknowledge that a transaction of 160 million took place between different entities.

Xiuming Tao: Just now the Respondent mentioned that the 120 million was a conditional investment, or a conditional loan?

Respondent: We believe that first of all, it is an investment. It is an investment agreement because the first intention was the pursue of gains, and if the corresponding conditions were met, especially conditions in the contractual agreement to go public, the pursuit was to invest in accordance with the valuation of 1.95 billion, and obtain a greater return through the listing.

Xiuming Tao: What if it doesn't get listed?

Respondent: If not listed, the debt does not convert to equity, and is based on an annualized rate of 8%.

Xiuming Tao: Was it a loan before going public?

Respondent: You can say that. It was under the investment agreement, and not the loan agreement.

Xiuming Tao: The Claimant is asked to respond.

Claimant: For the source of the 160 million, Zehuijin, as an equity investment institution, determined that Yingkui Liu actually controls Jiahua Communications, Jiahua Networks, and Jiahua Information, which have the possibility of listing or even being acquired by a listed company. However, based on the fact that Jiahua Communications has a VIE structure, it needs a sum of money to dismantle the VIE structure and meet the requirements for listing, and that's when a loan of 160 million was signed for wealth management. After signing the loan, in the specific operation process, Zehuijin gave 120 million to Ningbo Zhenrong, so that Ningbo Zhenrong, as an entity, lent it to Yingkui Liu to dismantle the VIE structure, and then gave 20 million to Fuding Musen, so that Fuding Musen, as an entity, fulfilled the loan of 160 million with Yingkui Liu. Specifically, Yingkui Liu used this 160 million to dismantle the VIE. Because all the company are actually controlled by Yingkui Liu, we do not know how he specifically operated and where the remaining money went after the dismantling of the VIE structure.

Xiuming Tao: From the Claimant's perspective, what is the relationship between the 160 million loan agreement and the investment agreement?

Claimant: At that time, the investment agreement, are equity investment in the form of borrowing. If our agreed investment conditions were achieved, we as Zehuijin have the right to convert it to equity, but the conditions

were not met and it had been treated as a borrowing in the fulfillment of the agreement. Ultimately, the Ningbo Zhenrong equity investment agreement was not fulfilled, and only the loan agreement was.

Xiuming Tao: There seems to be a debt-to-equity conversion clauses in all of this, just with some different conditions?

Claimant: Yes.

Xiuming Tao: The Claimant mentioned the loan agreement. Was it between the Claimant and the Respondent?

Claimant: Yes.

Xiuming Tao: The 120 million was wired through Ningbo Zhenrong?

Claimant: Yes.

Xiuming Tao: What was the agreement for the Respondent to wire the 120 million? After the money was paid out, was there a clear arrangement between the parties concerned?

Claimant: At the time, Zehuijin was not in a position to make this equity investment on its own for other reasons.

Xiuming Tao: In the beginning, Zehuijin wanted to lend 160 million, and the parties has no objection on the first 20 million.

Claimant: Yes.

Xiuming Tao: Later on, the 120 million was supposed to go on the Claimant's books normally?

Claimant: Yes.

Xiuming Tao: It didn't go on the applicant's books. The applicant paid this through a third party. What was the agreement between the parties?

Claimant: Because Zehuijin was not in a position to participate directly, in fact, when this loan was arranged, there was an intention to invest and that if the investment conditions are met, it's possible to convert into an investment.

Xiuming Tao: Is this agreement in the loan agreement or the investment agreement?

Claimant: It is also in the loan agreement.

Xiuming Tao: Please specify the terms.

Claimant: There is no express agreement that Ningbo Zhenrong will pay.

Xiuming Tao: There was no agreement in the loan agreement that part of the 120 million or 160 million could be paid by a third party?

Claimant: There was no agreement, but it happened.

Xiuming Tao: What was your agreement or arrangement when it actually happened?

Claimant: There is no written evidence, but we can explain this arrangement. Because Zehuijin was not in a good position to participate directly, we acted under the name of Ningbo Zhenrong. This is also partly a request by the Respondent, because we can see that the Respondent also submitted a 120 million investment agreement to Ningbo Zhenrong between Ningbo Zhenrong and Jiahua Communications, which was signed by Ningbo Zhenrong and Jiahua Communications. This agreement involves other entities. If you want to dismantle the VIE, 160 million may not be enough. Financing from other businesses were needed. And this financing needed to be known as if Ningbo Zhenrong have other investors to invest, other people may follow up and invest money. With this agreement, there is a multi-entity contract.

Xiuming Tao: A deal that a party obtains and doesn't have enough money of their own and wants to refinance it or wants other partners to pitch in with them?

Claimant: Yes.

Xiuming Tao: When the Respondent received the 120 million, the Claimant argued that the 160 million was itself a loan at that time?

Claimant: Yes, but with a possibility to convert into equity under certain conditions。

Respondent: There was no agreement. The 160 million was a loan.

Xiuming Tao: What kind of fund was it when the Respondent receive the 120 million?

Respondent: Because we signed a separate investment agreement in December 2017, the entities of the contract included Ningbo Zhenrong, Jiahua Communications, and eight shareholders of the company, including Yingkui Liu, each signing this agreement separately, according to this agreement, we received 120 million of investment money. The investment agreement is our Exhibit 1, and Article 2.1 of the investment agreement speaks of a loan of 120 million.

Xiuming Tao: Is this 120 million the same 120 million mentioned earlier?

Respondent: This is what we are contesting, Ningbo Zhenrong's investment of 120 million in the target company.

Xiuming Tao: Article 2.1 provides that Ningbo Zhenrong intended to provide the target company with a loan of 120 million. First of all, it is a loan, not an investment as stated in the Respondent's form that the 120 million was an investment from the outset. Where is the agreement that makes the Respondent believe the 120 million to be an investment since the start?

Respondent: First of all, the title of this agreement is investment agreement, and the core purpose of both parties, because we feel that the transaction itself is not intended to be a pure borrowing, but in fact an investment, so we believe that in line with the debt-to-equity conversion, this 120 million is more in line with the nature of investment in terms of the existing situation. So, we think this is something that we would characterize as an investment payment, which of course is not agreed upon in this agreement.

Xiuming Tao: Was the 120 million actually paid for the fulfillment of this investment agreement payment?

Respondent: It was.

Xiuming Tao: If the 120 million was first a loan as agreed in the investment agreement, is the investment agreement an investment arrangement that starts with debt that may be converted to equity?

Respondent: Yes.

Xiuming Tao: Have the conditions for the conversion been fulfilled? At the beginning of the 160 million loan agreement, 20 million of borrowing occurred directly. Under the loan agreement, no other loans were directly incurred, and under the investment agreement, it was agreed that the total investment amount was 120 million, which was started as a debenture, and it was also agreed that it could be converted into shares under certain circumstances?

Claimant: Yes.

Respondent: Yes.

Xiuming Tao: Under which agreement is the other 20 million?

Respondent: Loan Agreement, see our Exhibit 7, p. 115.

Xiuming Tao: It happened a little later than the investment agreement that was just discussed. The investment agreement was in December 2017, and this loan agreement was in April 2018. Did this 20 million actually happen?

Claimant: Yes.

Respondent: Yes.

Xiuming Tao: Are the funds, however characterized, totaling 160 million disputed by the parties?

Claimant: No.

Respondent: No.

Xiuming Tao: What makes the Claimant say that the 160 million constitutes your claim? Without conversion into shares, strictly speaking, Ningbo Zhenrong should have claim for 120 million, Fuding Musen for 20 million, and the Claimant 20 million.

Claimant: The evidence we can now provide is that Ningbo Zhenrong's 120 million was also paid by Zehuijin to Ningbo Zhenrong, and Fuding Musen's 20 million was also paid by Zehuijin to Fuding Musen.

Xiuming Tao: Is the arrangement between you agreeable to the Respondent? Is there any evidence of a loan of 120 million between the Claimant and Ningbo Zhenrong.

Claimant: First, in terms of the source of the funds, they came from Zehuijin. Second, the certificates issued by Ningbo Zhenrong and Fuding Musen also proved that they did not have a claim on the two sums of money, that they were all Zehuijin's money, and that they were acting on behalf of Zehuijin in order to fulfill the loan

with Yingkui Liu, which was equivalent to subrogation investment.

Xiuming Tao: Was the Respondent aware of the subrogation investment?

Claimant: The Respondent was aware of this because it was impossible for the Respondent to be unaware given the large amount of money, and the Respondent did not raise any objections to this, which amounted to an acquiescence.

Xiuming Tao: Is it supported by evidence?

Claimant: It's because Zehuijin was not in a good position to step in.

Xiuming Tao: Why was it not?

Claimant: There is a commercial arrangement whereby Zehuijin, agreed upon by both parties, had Ningbo Zhenrong step in.

Xiuming Tao: If you were not in a good position to step in, why are you initiating the arbitration as the Claimant?

Claimant: There existed a listing arrangement at that time, which is no longer the case.

Xiuming Tao: Respondent is asked to respond.

Respondent: That is not our understanding of the situation. The entire act of investment and borrowing has undergone a fundamental change. Originally, it was Zehuijin that lent Yingkui Liu 160 million and dismantled all the VIE structures and paid the corresponding costs. And now, the actual situation of 120 million is that Ningbo Zhenrong invested in the target company, and then had the target company make the actual investment, the relationship of debts and liabilities, and all the target entities of repayment for all parties have changed in nature.

Xiuming Tao: Where was the 120 million paid to?

Respondent: Payments were made directly from Ningbo Zhenrong to the target company.

Xiuming Tao: The original loan agreement of 160 million was all to be lent to the Respondent?

Respondent: Yes, it was the borrower, and the communications company was not the debtor at all.

Xiuming Tao: There was a change of the user for the 120 million?

Respondent: Correct.

Xiuming Tao: According to the loan agreement, the user was supposed to be the Respondent?

Respondent: Correct.

Xiuming Tao: Now the target company is the user of the 120 million?

Respondent: Yes, the debtor has changed.

Xiuming Tao: And the original agreement they were contesting was purely a loan. There was a nature of investment, coupled with the difference in the entity. The original intention was for individuals to bear the obligation to repay the loan, even under the present circumstances, even if it does not meet the debt-to-equity conversion conditions, it is still a purely debt, and the one who should bear the responsibility is the target company. The later 20 million, according to my understanding, the later 20 million of Fuding Musen has nothing to do with the so-called VIE. The borrower also changed. This is completely another transaction. According to our understanding, the company wanted to borrow 20 million from Fuding Musen to pay off a debt.

Xiuming Tao: The Tribunal notes that the parties have submitted additional evidence this week, and asks whether the parties agree to cross-examine the evidence in court?

Claimant, Respondent: Yes.

Xiuming Tao: Next, the evidence will be produced and cross-examined. If either party needs to examine the original document when cross-examining the other party's evidence, they must raise such need in court. Otherwise, the original document and the copy will be deemed to be consistent. Are the parties clear?

Claimant, Respondent: Yes.

Xiuming Tao: The Claimant is asked to produce exhibits and the Respondent is asked to cross-examine.

Claimant: We submitted 8 exhibits; the names and objects of exhibit are the same as the list of written evidence.

Evidence 1, "Loan Agreement between Shenzhen Zehuijin Investment Center (Limited Partnership) and Mr.

Yingkui Liu regarding wealth management business." Please note that in Article 2.3.2, the same loan shall be paid directly by Party B to the target company.

Hui Zhan: Is there an arrangement to pay another company?

Claimant: The loan agreement does not stipulate any other designated account.

Hui Zhan: Is there a third-party collection agreement?

Claimant: As it stands there is no agreement to this effect in the loan agreement.

Respondent: For Exhibit 1, authenticity and legality are acknowledged, but the purpose of proof is not acknowledged. With regards to what has just been said that it can be paid to the target company, it is not denied by us, and the it aligns with the agreement, but at the heart of it is the point that we want to clarify that the payee can be a third-party based on a contractual agreement. Then we the debtor are still liable for the repayment of that debt, and there is a contractual agreement for that as well. Based on the entire facts, under the investment agreement, although Ningbo Zhenrong also sent the money to the target company, based on that agreement, the obligor for repayment is the target company, which is Jiahua Communications, and has nothing to do with Yingkui Liu. You cannot ask Yingkui Liu to pay just because you paid the target company.

Xiuming Tao: Is the repayment obligor clearly agreed upon?

Respondent: Yes. Paid to the target company and the repayment obligor is Yingkui Liu. That is true. However, it is based on the investment agreement. First of all, that agreement was signed after this agreement, and secondly, that money was clearly a debt between Ningbo Zhenrong and the communication company, and the repayment was to be made by the communication company, not by Yingkui Liu.

Xiuming Tao: Is there a dispute as to the content of the agreement in Exhibit 1?

Respondent: No.

Claimant: Exhibit 2, 20 Million Bank of Ningbo Customer Receipt (December 22, 2017)

Respondent: The authenticity and relevance of Exhibit 2 are acknowledged. Jiahua Communications is the target company.

Claimant: Exhibit 3, China Postal Savings Bank Corporate Internet Banking Electronic Receipt.

Respondent: The authenticity of Exhibit 2 is acknowledged but not the relevance.

Claimant: Exhibit 4, 120 Million Bank of Ningbo Customer Receipt (December 22, 2017)

Respondent: For Exhibit 4, we need to examine the original.

(Original of Exhibit 4 produced in court by the Claimant)

Respondent: After verification, the original and copy of Exhibit 4 are consistent and the fact that the payment took place are acknowledged, but the authenticity of Exhibit 4 is not acknowledged. The payer and payee of the payment are not clear. There is also a sum of money on the top for Ningbo Zhenrong, which we do not acknowledge.

Claimant: Exhibit 5, Note from Ningbo Zhenrong.

Respondent: With respect to Exhibit 5, the authenticity, legality, and purpose of proof are not acknowledged because the description is inconsistent with the facts, and there is no fact that the so-called Ningbo Zhenrong fulfilled the payment obligation for Zehuijin. In this loan agreement there is the repayment obligation but also the 160 million lending obligation. Therefore, we believe that the 120 million is the 120 million for the fulfillment of the investment agreement between Jiahua Communications and Ningbo Zhenrong, which is not related to the loan agreement. Moreover, it was issued on August 4, 2020, which should be the time when the arbitration was filed.

Xiuming Tao: The Claimant is asked to respond.

Claimant: We believe that the time of the issuance of these documents does not affect the validity of the evidence, as to when we went to Ningbo Zhenrong and Fuding Musen. Because now we are involved in these two cases, and the other party does not acknowledge the payment, we asked them to provide us with testimony, and the time of the testimony does not affect    its validity. They may as well provide the testimony in court today.

Xiuming Tao: Why were two notes submitted?

Claimant: The first one explains how the 120 million was paid, and the second one explains the investment

agreement on how Ningbo Zhenrong and Jiahua Communications, with the Respondent signed the investment agreement submitted by the Respondent, at that time, and why enter into this investment agreement. The short note was the first one, and when it came out at that time, we thought that it was not written well enough, and did not indicate the reason we signed this investment agreement at that time, and that is why the second one was written. When we submitted the paperwork, another person from the company submitted it on our behalf, and there may have been an issue with the transmission of the materials during that process. Please refer to the longer explanation on page 2 of the supplementary exhibit.

Xiuming Tao: The longer note on page 2 of the supplementary exhibit refers to the memorandum, so please clarify.

Claimant: That memorandum is from another case. We will examine if there's a copy of that memorandum after the session.

Xiuming Tao: Whose memorandum is this?

Claimant: It's a memorandum between the parties in this case. We will examine after the session because we don't see that memorandum now.

Xiuming Tao: What is the Respondent's cross-examination opinion on the 2 pages of notes?

Respondent: We adhere to the above cross-examination opinion.

Xiuming Tao: The Claimant is asked to continue with its exhibits.

Claimant: Exhibit 6, two notes as well from Fuding Musen.

Respondent: For Exhibit 6, our cross-examination opinion is the same with Exhibit 5. Even the borrower and the lender are inconsistent here, and it has nothing to do with the 160 million. The authenticity, legality, relevance are not acknowledged.

Claimant: Exhibit 7, Bank Statements.

Respondent: For Exhibit 7, we need to examine the original of the return receipt on page 5.

Claimant: The return forms on page 5, which the Claimant does not have the originals of, were printed directly from the internet, from the bank, and they were printed in black and white at the time.

Xiuming Tao: Who is this "payee"?

Claimant: The applicant transferred 20 million to Musen.

Xiuming Tao: Is there an agreement between the Claimant and Musen in addition to this transfer?

Claimant: No.

Xiuming Tao: What is the purpose of proof of page 6 of the supplemental agreement?

Claimant: Page 6 is intended to prove that our 120 million was paid by Zehuijin to Haoyu Wang, the then de facto controller of Ningbo Zhenrong. Page 7, the payer was Haoyu Wang, paid to Ningbo Zhenrong. He received the money to pay Ningbo Zhenrong as written above. That is, Zehuijin paid to Haoyu Wang, Haoyu Wang paid to Ningbo Zhenrong, and the payee was Ningbo Zhenrong. Ningbo Zhenrong then paid 120 million to the target company, and this is how the funds were exchanged.

Xiuming Tao: The Respondent is asked to cross-examine.

Respondent: With respect to Exhibit 7, the authenticity and legality are not acknowledged because the Claimant did not produce the original. However, the content of the exhibit is inconsistent with the purpose of Claimant's proof. The purpose of the remittance on page 5 of the supplemental exhibit was indicated directly in writing that the nature of the payment of May 2, 2018 by the Zehuijin and Musen Partnership is a purchase payment. In Supplemental Exhibit page 6, the total amount of funds Zehuijin gave to Haoyu Wang was a little more than 120 million, with an excess of $990,200, a total that is inconsistent with 120 million. The nature of this amount, as stated in all remark columns, is a loan. Haoyu Wang told Ningbo Zhenrong that the Internet banking note was TZK, which we repeatedly analyzed as an acronym for "investment money". Therefore, we believe that their current situation does not prove the Claimant's purpose of proof.

Claimant: <u>It is necessary to explain to the arbitral tribunal that: Exhibit 8 submitted by us to the Arbitration Tribunal on August 6, 2020, Announcement of Maoye Communications Network Co., Ltd. on the Completion of Payment of Cash Consideration for Phase I of the Reorganization; Announcement of Maoye Communications Network Co., Ltd. on the Completion of Payment of Cash Consideration for Phase II of the Reorganization, are not an evidence of this case, and are withdrawn, and will not be submitted as an evidence in this case.</u>

Xiuming Tao: Does Respondent agree to waive the cross-examination period for in-court cross-examination of the exhibits submitted in court by Claimant?

Respondent: Agreed. We will examine the authenticity in session, and submit a written cross-examination opinion post-session.

Claimant: Exhibit 8, National Enterprise Credit Information Publication Report. This one is mainly a response to the Respondent's exhibit. The Exhibit 4 submitted by Respondent was issued in January 2017, but according to this report, Ningbo Zhenrong was only established in November 2017, and it is impossible for them to have produced evidence in January 2017.

Xiuming Tao: When was your investment agreement signed?

Claimant: The investment agreement was signed in December 2017.

Claimant: Exhibit 9, Jiahua Networks' Tianyancha report, proves that the legal representative of Jiahua Networks is Yingkui Liu, and that Jiahua Networks is now renamed Jiayibao.

Exhibit 10, 5 invoices for attorney's fees. The exhibits are now complete.

Respondent: For Exhibits 8 and 9, there is no need to examine the originals in court. For Exhibit 10, we need to examine the original.

Claimant: We did not bring the originals of Exhibit 10.

Respondent: Exhibit 10, authenticity, legality and relevance are not acknowledged. Cross-examination in court is complete.

Xiuming Tao: The Respondent is asked to produce exhibits and the Claimant is asked to cross-examine.

Respondent: We submitted a total of eight exhibits in two sets. The names of which and the matters to be proved are the same as in the written list of exhibits.

First set of exhibits:

Exhibit 1, Investment Agreement Regarding Beijing Sinowel Communication Technology Co. signed in December 2017 by Ningbo Zhenrong, Jiahua Communications, and the shareholders of Jiahua Communications.

Exhibit 2, Investment Agreement Regarding Beijing Sinowel Communication Technology Company Limited, dated December 2017, by and among Xu Bo, Jiahua Communications, and the shareholders of Jiahua Communications.

Exhibit 3, "Investment Agreement Regarding Beijing Sinowel Communication Technology Co." dated December 2017 among Qianhai Wutong, Jiahua Communications, and the shareholders of Jiahua Communications.

Exhibit 4, Letter of Commitment issued by Ningbo Zhenrong.

Exhibit 5, May 29, 2019 Informational Letter from Jiahua Communications to Ningbo Zhenrong.

Exhibit 6, September 20, 2019 Response Letter from Ningbo Zhenrong to Jiahua Communications regarding the Notice of Conversion.

Second set of exhibits:

Exhibit 7, Loan Agreement, dated April 27, 2018, between Fuding Musen Enterprises and Jahua Networks.

Exhibit 8, Payment Receipts. End of exhibits.

Claimant: For Exhibit 1, the authenticity is acknowledged, but the purpose of proof is not. We cannot prove what Respondent said because the investment agreement and the loan agreement clearly stated the purpose of the money. Both of our agreements stated that the purpose of the loan was to dismantle the VIE structure of Jiahua Communications, and both agreed that the lender the right to choose to convert the debt into equity. So, in essence, there is no difference between the two agreements. Ningbo Zhenrong's agreement is a re-signed agreement to fulfill the loan agreement. This agreement does not essentially change the essence of the loan agreement.

Xiuming Tao: Is there a direct reference of the loan agreement inside the investment agreement?

Claimant: No, there's no mention of the loan agreement.

Xiuming Tao: Textually, are the two agreements separate and distinct agreements?

Claimant: We will examine post-court and submit a written response to the arbitral tribunal.

For both Exhibits 2 and 3, we need to examine the originals.

(Respondent produced the originals of Exhibits 2 and 3 in court)

Claimant: Upon examination, the originals and photocopies of Exhibits 2 and 3 are identical, and their authenticity is acknowledged, but the purpose of proof is not. Respondent's argument that because these two agreements exist, and that Ningbo Zhenrong has a similar agreement proves that Ningbo Zhenrong's action was an investment is not accepted by us. Neither these two agreements nor the execution of the Zehuijin and Ningbo Zhenrong agreements are directly relevant in this case. The context and purpose of the signing of these two investment agreements, and whether there are other economic connections behind them, as in the case of Zehuijin, are not available to Claimant at this time. Whether these two agreements present the true will, expression of meaning and context of the signing of the two investment entities cannot be ascertained, nor can the circumstances of their signing be used to presume the circumstances of Zehuijin's signing.

Xiuming Tao: Is the Claimant the entity in the two agreements?

Claimant: This is their separate agreement, and do not involve us.

Respondent: The core terms in our Exhibits 2 and 3 and Exhibit 1, especially the entire framework of the contractual agreement from the loan to the debt-to-equity conversion, are identical.

Hui Zhan: Bo Xu, mentioned in Respondent Exhibit 2, is not a party to this case, please clarify.

Respondent: And not in Exhibit 3 either. We would like to clarify the fact that Ningbo Zhenrong, Bo Xu and Qianhai Wutong are the three investors we brought in under the same valuation.

Hui Zhan: The contract terms for this program are roughly the same, and the purpose is to prove that they are the same wave of investors in the program?

Respondent: Yes, their valuations are the same, at 1.95 billion for this wave, and the main thing we want to prove is that this 120 million of investment money from Ningbo Zhenrong is a separate investment from Ningbo Zhenrong, and is not connected to the 120 million borrowing from Yingkui Liu.

Exhibit 4 involves the content of the proof mentioned just now, and there are two clerical errors. The time of payment should be November 23, 2018, and in the third line, the actual payment should be December 22, 2017. The proof of payment is available.

Claimant: For Exhibit 4, we need to examine the original.

Respondent: This was emailed at the time and the original is not available now.

Xiuming Tao: To whom is this letter of commitment issued to? For what purpose was it issued?

Respondent: We will verify post-court and submit a written response to the arbitral tribunal.

Claimant: With respect to Exhibit 4, we do not acknowledge the authenticity because there is no original.

Respondent: Exhibit 5 and Exhibit 6 are a back-and-forth, mainly to prove that based on the investment agreement of Ningbo Zhenrong, we sent a letter of notification to it, requesting it to make several choices accordingly, whether it is a conversion of debt to equity or a related handling of the existing situation. This is an informational letter dated May 29, 2019, from Jiahua Communications to Ningbo Zhenrong. Exhibit 6 is a clear response from Ningbo Zhenrong that it wanted to claim 120 million of loans from Jiahua Communications, which meant that the entity of the right, Ningbo Zhenrong, was claiming a debt from Jiahua Communications, and no longer claiming a conversion to shares.

Claimant: For Exhibits 5 and 6, the authenticity is acknowledged, but the purpose of proof is not. First, Ningbo Zhenrong's 120 million is a loan, rather than the investment the Respondent mentioned before. Second, since the Claimant transferred the amount in the name of Ningbo Zhenrong, a response letter from Ningbo Zhenrong in its name cannot be used to prove the Respondent's purpose of proof, clearly telling the other party that my lending entity is Ningbo Zhenrong, not the actual lender.

Xiuming Tao: Was the 120 million investment agreement signed by Ningbo Zhenrong?

Claimant: Yes, Ningbo Zhenrong signed and the intention was expressed in its name, which does not prove the acknowledgment of the entity it. The response letter regarding the share conversion notice clearly stated that we do not agree with your proposal to convert the 120 million loan we have paid into the equity of your

company. This sentence should not be taken to mean that it was a loan to Jiahua Communications.

Respondent: To clarify, in response to Exhibit 8 brought to the attention of the tribunal, both sums of money came in on the same day, that is to say, on the same day that Fuding Musen paid to Jahua, we transferred it out, and it was directly use for repayment in our Shanghai Huhong, for the working capital of our company.

Xiuming Tao: Does the Respondent represent the target company?

Respondent: No, but that is the fact.

Xiuming Tao: Was this money going directly to Yingkui Liu?

Respondent: No, it was made to Jiahua Networks, not the target company. I asked Jiahua Networks what the purpose of the loan was, and they said it was for repayment to a company in Shanghai.

Claimant: For Exhibits 7 and 8, the authenticity is acknowledged, but this loan was made to Yingkui Liu, after which he used to pay Jiahua Networks which he is the de facto controller of.

Claimant: We have just submitted evidence that 99% of the actual shareholders of Jiahua Networks are controlled by Yingkui Liu, and 1% is owned by his wife, Xin Zhang, so the actual controller behind Jiahua Networks is Yingkui Liu. Although there was an agreement on the purpose of the loan at that time, we actually have no way to exercise an absolute control over what this sum of money will be used for after it is paid to the account designated by him. Moreover, Jiahua Networks, Jiahua Communications, and Jiahua Information, as well as Yingkui Liu, hold a number of companies, which have some business connections with each other, and even the property of these companies and the property of the individuals would have some direct dealings. Fuding Musen has already made a statement about the 20 million. End of cross-examination.

Xiuming Tao: The Arbitration Tribunal summarizes the points of contention between the parties that the underlying facts of this case are simple, and that the parties only need to prove whether the Claimant may claim the 120 million of Ningbo Zhenrong and later the 20 million of Fuding Musen, and how to prove that the funds are legally part of Claimant's claim, despite all of this money may have come from Claimant behind the scenes. Whether Respondent denies the source of funds, and regardless of how this 160 million was prepared, what the Claimant needs to prove is how it constitutes the Claimant's claim. Because the 160 million, no matter whether it was in the form of debt, borrowing or investment, in fact, even according to the investment agreement, at the beginning, it was also a loan. There is no ambiguity. Only when the listing conditions were made, could it be converted into equity. Now that the listing conditions are met, the entirety of the 160 million is a loan, but whose?

Jingmin Zhai: What the Presiding Arbitrator said is of the utmost importance. Because what was received is clear. The Claimant asserts the claim, but it needs to be adequately substantiated as to who may asset it.

Hui Zhan: Another point of contention is the liquidated damages and interest.

Claimant, Respondent: Agree with the arbitral tribunal's summary of the points at issue.

Xiuming Tao: We will now take a five-minute recess.

(Adjournment)

Xiuming Tao: The arbitration is now resumed and the parties are asked to present their arguments on the points at issue.

Claimant: The facts of this case are clear: The Claimant Zehuijin lent 160 million to Respondent Yingkui Liu for the purpose of dismantling the VIE structure of Jiahua Communications as well as for day-to-day asset management operations. After Zehuijin paid 20 million, Zehuijin paid to Yingkui Liu another 120 million through Ningbo Zhenrong and 20 million through Fuding Musen. This fact is supported by our exhibits and the evidence provided by Ningbo Zhenrong and Fuding Musen. With specific reference to the investment agreement, the 160 million was initially a loan and the main purpose was for investment. After the court session, we will look for the memorandum, as there may be arrangements in this aspect. From the perspective of claims, Ningbo Zhenrong and Fuding Musen have acknowledged that these two claims belong to Zehuijin, so we believe that our evidence is sufficient to prove that Zehuijin has fulfilled its obligation of lending 160 million to Yingkui Liu, and that Yingkui Liu has failed to repay the principal and interest on the loan after its maturity and should be liable for repayment of principal and interest in accordance with the loan contract and for default.

Claimant: The Respondent mentioned in the defense about our interest and liquidated damages. This year's new private lending regulations are applicable for first instance cases accepted after August 20. This case was

accepted before that. Therefore, the changed interest and liquidated damages claimed by us remains the same at the ceiling of 24%. End of argument.

Respondent: We adhere to our arbitration opinion. We believe the fact are very clear. There are three sums of money. The first sum is the 120 million given by Ningbo Zhenrong to Jiahua Communications. We believe that from the perspective of the two existing agreements, the contractual entities, contractual purposes, legal relationships and specific content of the contract stipulations are all different, so we believe that the two agreements shall not be conflated as one thing. There is also a fundamental difference between the two contracts in terms of who the relevant responsible party, that is, the debtor, is. Moreover, it is emphasized here that Ningbo Zhenrong, throughout the contractual process with Jiahua Communications, also has relevant documents to prove that it actually enjoys the rights and demands Jiahua Communications to assume obligations. Throughout the arbitration process, we have also submitted evidence to prove that Ningbo Zhenrong and the other investors were introduced to Jiahua Communications in the same group of investors. Based on the above reasons, we believe that the 120 million has no relevance to the Loan Agreement and Yingkui Liu shall not be liable for the 120 million. The second sum of money was given by Fuding Musen to Jiahua Networks, and we believe that both the lender and the borrower are different from the loan agreement in dispute, and the purpose of the loan agreement is also different. We have provided the corresponding loan agreement as well as the exchange certificates after the receipt of the loan agreement, which can prove that the actual purpose of the loan and the borrowing of money by Jiahua Networks is not related to the loan agreement in dispute. Therefore, Yingkui Liu should not be liable for the 20 million. We also need to add, it was not mentioned earlier, but the dispute resolution clauses in the agreements with Ningbo Zhenrong and Fuding Musen both specify jurisdiction by the people's court. This is also inconsistent with the dispute resolution in the agreement in this case. Third, we indeed received the 20 million, but as a simple defense, we believe that the actual user of the money, the payee, should be Jiahua Communications, and that Jiahua Communications should bear the obligation to repay the money. Fourth, Regarding the interest rate, we believe that the liquidated damages are clearly too high. It is possible that Claimant has changed its arbitration request, and we will have to recalculate before we can submit an opinion. Fifth, because the borrower still has a lending obligation, we still reserve the right to be hold them liable for the breach. End of argument.

Xiuming Tao: Are there any additional statements by the parties regarding the facts of this case?

Claimant: No.

Respondent: No.


Xiuming Tao: Do the parties agree to mediation?

Claimant: Unable to reach mediation in court, we will discuss mediation after the court session.


Xiuming Tao: The parties are asked to make their final statements.

Claimant: We adhere to our arbitration request.

Respondent: We adhere to our response.


Xiuming Tao: Arrangements are to be made after the court session. If a party has additional evidence or cross-examination opinion regarding the current evidence to submit, it must do so prior to November 23, 2023. If a party wishes to examine the original of the additional evidence, it must submit a written notice within two days of receiving the additional evidence, otherwise the copy will be deemed to be consistent with the original. Examination opinion of additional evidence and written representation must be submitted by December 2, 2020. The arbitral tribunal has the right to refuse acceptance of the above-mentioned materials if they are submitted after the due date. Unless the parties jointly request so or the arbitral tribunal deems it necessary, the case will not be heard in court and will be processed in writing.

# Abacus Consulting Services

401 N. Garfield Ave. Ste 1, Alhambra, CA 91801 Tel: 626-487-8909  Fax: 626-282-9252
Website: http://www.certifiedchinesetranslation.com/ Email: info@certifiedchinesetranslation.com

## CERTIFICATION OF TRANSLATION
### (Certified by Courts)

This is to certify under the penalty of perjury that I am a court certified interpreter in California with license number #301138 and I am fluent in Chinese (Mandarin) and English languages, that the document(s) listed as

**(2020) Beijing Arbitration Case No. 2547 Transcript of Court Hearing**

is (are) complete and accurate translations of the original written document(s) to the best of my ability and knowledge.

I certify under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Signed on May 8, 2024 in Los Angeles, California, USA

Samuel Shen Chong
Federal Court Registered Interpreter (US District Courts)
CA Court Certified Interpreter (License No. 301138), New York Court Certified Interpreter
ATA (American Translators Association) Associate # 243264
Abacus Consulting Services
401 N. Garfield Ave.
#1
Alhambra, CA 91801, USA
Tel: 626-487-8909
Fax: 626-282-9252

1　　　　　　　　　（2020）京仲案字第 2547 号仲裁案
2　　　　　　　　　　　　庭审笔录
3　　时　　间：2020 年 11 月 12 日
4　　地　　点：北京仲裁委员会第二仲裁厅
5　　申 请 人：深圳市泽汇金投资中心（有限合伙）
6　　出庭人员：（详见出庭人员签到表）
7　　被申请人：刘英魁
8　　出庭人员：（详见出庭人员签到表）
9　　仲 裁 庭：首席仲裁员陶修明　仲裁员翟晶敏　仲裁员詹晖
10　　办案秘书：王绵
11
12　　（庭前仲裁庭已送达双方《仲裁员声明书》）
13　　陶修明：核对双方当事人出庭人员身份（详见《出庭人员签到表》，略），双方对
14　　　　　对方主体资格及出庭人员身份是否有异议？
15　　申请人、被申请人：均无异议。
16　　陶修明：现在开庭审理（2020）京仲案字第 2547 号仲裁案，申请人深圳市泽汇
17　　　　　金投资中心（有限合伙），被申请人刘英魁，双方之间因《深圳市泽汇金投
18　　　　　资中心（有限合伙）与刘英魁先生关于财富管理业务的借款协议书》引起本
19　　　　　争议仲裁案。因双方未按期共同选定首席仲裁员，依据本会仲裁规则，本会
20　　　　　主任指定陶修明担任本案首席仲裁员，与申请人选定的仲裁员翟晶敏，被申
21　　　　　请人选定的仲裁员詹晖组成仲裁庭，适用普通仲裁程序审理，本案秘书工作
22　　　　　由王绵负责。双方对仲裁庭的组成是否有异议？是否申请回避？
23　　申请人、被申请人：对仲裁庭的组成无异议，不申请回避。
24　　陶修明：（宣布庭审纪律）双方对各自在庭审中的权利义务是否清楚了？
25　　申请人、被申请人：清楚了。
26　　陶修明：双方庭前是否收到了仲裁庭送达的《仲裁规则》《仲裁员名册》《组庭通
27　　　　　知》《开庭通知》等全部仲裁材料？
28　　申请人、被申请人：都收到了。
29　　陶修明：双方对本案仲裁协议效力及本会对本案的管辖权是否有异议？
30　　申请人、被申请人：均无异议。
31　　陶修明：双方对本案此前进行的仲裁程序及今天开庭时间安排是否有异议？
32　　申请人、被申请人：均无异议。
33
34　　陶修明：请申请人陈述仲裁请求及所依据的事实与理由。
35　　申请人：（宣读《仲裁申请书》）我方仲裁请求如下：
36　　　　　第一项，请求被申请人返还 1.6 亿元借款本金；
37　　　　　第二项，请求被申请人以 1.6 亿元为基数，按年利率 8%的标准，向申请人
38　　　　　支付借款期限（365 日）内的利息，具体如下：（1）1.4 亿元的借款利息，
39　　　　　自 2017 年 12 月 22 日至 2018 年 12 月 22 日，共 11200000 元；（2）1000 万
40　　　　　元的借款利息，自 2018 年 4 月 27 日至 2018 年 12 月 22 日，共 239 天 523836
41　　　　　元；（3）1000 万元的借款利息，自 2018 年 5 月 3 日至 2018 年 12 月 22 日，
42　　　　　共 233 天 510685 元。上述借款期间利息共计 12234521 元。
43　　　　　第三项，请求被申请人支付逾期还款的违约金，自申请人支付借款之日起按

44　照每日万分之五的标准，具体如下：（1）1.4亿元的违约金自2017年12月
45　22日起至实际支付之日，暂计算至2020年6月30日，共921天，为64470000
46　元；（2）1000万元的违约金自2018年4月27日起至实际支付之日，暂计
47　算至2020年6月30日，共795天，为3975000元；（3）1000万元的违约
48　金自2018年5月3日起至实际支付之日，暂计算至2020年6月30日，共
49　789天，为3945000元。上述违约金共计72390000元。需要向仲裁庭说明：
50　根据法律的规定利息和违约金总和标准不超过本金的24%，我方自愿降低违
51　约金计算标准，本项仲裁请求当庭放弃部分违约金，违约金总额予以酌减，
52　我方只主张违约金26165479元，多出部分不再主张，具体计算方式庭后提
53　交书面意见。
54　　第四项，本案保全费5000元、担保费25万元整、律师费50万元、仲裁费
55　由被申请人承担。需要向仲裁庭说明：因为保全和担保并没有实际发生，所
56　以保全费5000元和担保费25万元当庭放弃，本案中均不再主张。事实与理
57　由同《仲裁申请书》。
58　陶修明：请被申请人答辩。
59　被申请人：（宣读《仲裁答辩意见》）。
60　陶修明：请被申请人明确2千万元是在《借款协议书》项下还是《投资协议》项
61　　下？
62　被申请人：第一个2千万元是在《借款协议书》项下。
63　陶修明：1.2亿元是在投资协议项下发生的？
64　被申请人：是在宁波臻荣及嘉华通信公司、嘉华通信公司股东之间的投资协议项
65　　下发生的，本案总标的1.6亿元。
66　陶修明：还有2千万元请说明来源。
67　被申请人：那2千万元与本案没有关系。
68　陶修明：是在什么交易或协议项下发生的？
69　被申请人：就是我们简称叫福鼎沐森合伙和嘉华网络公司。
70　陶修明：事实与理由第2页的第二个图是什么？
71　被申请人：徐波和前海梧桐是我们嘉华通信公司这一批所引进的战略投资方。
72　陶修明：他们的金额是否牵扯本案的金额？
73　被申请人：不牵扯，是案外第三人的，但是要解释一下这一批的战略投资方，除
74　　了宁波臻荣之外，还包括其他方，协议内容基本是一致的。
75　陶修明：第二笔2千万元资金的性质是什么？是借款还是投资？
76　被申请人：我方认为第二笔2千万元是投资款，沐森合伙这个2千万元是跟嘉华
77　　网络之间的借款，第二个2千万元也是借款，与申请人请求1.6亿元没有关
78　　联。
79　陶修明：按照被申请人的理解，有2千万元是借款协议项下的，1.2亿元是投资
80　　协议项下的，另外的2千万元与本案无关？
81　被申请人：是的。
82　陶修明：请明确理由。
83　被申请人：庭前我方提交了证据，主要是相对应1.2亿元和第二笔2千万元的合
84　　同。第一笔基本上没争议，所以不涉及证据。
85　陶修明：本案的基础协议《借款协议书》、1.2亿元《投资协议》以及本案双方
86　　提到的协议之间，有什么关系？

87　被申请人：我觉得没有关系，因为投资主体都不一样。

88　陶修明：在事实交易的角度来说，请明确几份协议之间的关系及背景。

89　被申请人：从整体的双方沟通的角度讲，至少从我们看到的证据讲，至少借款协
90　　　议没有完全履行，这一块的 1.2 亿元就是原来想由泽汇金直接投资，现在变
91　　　成了宁波臻荣，而且权利义务约定也明确不同，因为基于本案的事实，第一
92　　　个 2 千万元就是纯粹的借款，投资协议具有双重属性，一方面是投资属性，
93　　　如果达到合同约定的情形时，就债转股了，如果不符合约定情形，退出时就
94　　　以借款的形式还本付息。

95　陶修明：这 1.6 亿元资金实际发生了，双方是否确认？

96　被申请人：1.6 亿元的发生不是跟申请人。

97　陶修明：不管是借款还是投资，1.6 亿元是否实际发生了。

98　申请人：是的。

99　被申请人：主要是谁跟谁的，因为主体不太一样。

100　陶修明：先不管主体，有没有这么回事？

101　被申请人：不同主体之间形成了 1.6 亿元的往来，我方认可。

102　陶修明：刚才被申请人提及 1.2 亿元是一个有条件的投资，还是有条件的借款？

103　被申请人：我方认为首先是投资，它就是一个投资协议，因为首先想追求的利益，
104　　　如果符合相应条件，尤其是出现合同约定的上市的条件，追求的是按照 19.5
105　　　亿元的估值投资进来，通过上市获得更大的收益。

106　陶修明：如果没有上市怎么办？

107　被申请人：如果没有上市，这一部分不发生债转股，这一部分按照年化 8%。

108　陶修明：没上市之前它是一个债？

109　被申请人：可以这么说，是在投资协议项下的，不是在借款协议项下的。

110　陶修明：请申请人回应。

111　申请人：这 1.6 亿元的来源，当时泽汇金作为股权投资机构，认定刘英魁实际控
112　　　制着嘉华通信、嘉华网络、嘉华信息，有可能有上市甚至被上市公司收购的
113　　　可能。但是基于嘉华通信有 VIE 结构，需要一笔资金来拆 VIE 结构，符合
114　　　上市的要求，然后就签订了财富管理那 1.6 亿元的借款。签订了借款以后，
115　　　在具体的操作过程中，泽汇金给宁波臻荣打了 1.2 亿元，让宁波臻荣作为一
116　　　个主体，借给刘英魁来拆除 VIE 结构，又通过给福鼎沐森打了 2 千万元，
117　　　让福鼎沐森作为一个主体，来履行和刘英魁 1.6 亿元的借款。具体刘英魁这
118　　　个 1.6 亿元就是用于拆除 VIE，因为全部是刘英魁自己实控的公司，所以他
119　　　具体怎么运作，后期作为拆除 VIE 结构剩下的钱去还款还是什么，我方就
120　　　不清楚了。

121　陶修明：从申请人角度来解，这 1.6 亿元的借款协议和投资协议之间是什么关
122　　　系？

123　申请人：当时投资协议，都是股权投资以借款的形式来做股权投资，如果是能够
124　　　达到我们约定的投资的条件，我们作为泽汇金有权利转股，但是后来没有达
125　　　到，一直就是按照借款来履行的，包括宁波臻荣那个股权投资协议，也没有
126　　　实际履行，最终履行的就是一个借款协议。

127　陶修明：这里面似乎都存在着债转股的约定，只是条件不太一样？

128　申请人：是的。

129　陶修明：刚才申请人提及借款协议是申请人与被申请人之间签订的？

第 3 页 共 13 页

130　申请人：是的。

131　陶修明：1.2亿元是通过宁波臻荣打的？

132　申请人：是的。

133　陶修明：打这1.2亿元对于被申请人来说是怎样约定的？钱打出去了之后，相关
134　　　各方是否有明确的安排？

135　申请人：当时泽汇金由于其它的原因，自己不方便出面来做这个股权投资。

136　陶修明：一开始泽汇金要借款，借出1.6亿元，第一笔2千万元大家没有异议了。

137　申请人：是的。

138　陶修明：后面1.2亿元应该正常从申请人账上走？

139　申请人：是的。

140　陶修明：没有从申请人账上走，申请人通过第三人付这个款，各方有什么约定？

141　申请人：因为泽汇金不方便出面，其实这个借款安排的时候，就有一个投资的意
142　　　愿在，如果说达到这个投资的条件以后，这个是有可能转成投资的。

143　陶修明：这个约定在借款协议里面，还是投资协议里面？

144　申请人：借款协议里面也有。

145　陶修明：请明确条款。

146　申请人：没有明确约定由宁波臻荣代为支付。

147　陶修明：借款协议里面并没有约定1.2亿元或者1.6亿元当中的部分款项可以由
148　　　第三方支付的？

149　申请人：没有约定，但是实际发生了。

150　陶修明：实际发生的时候，你们有什么约定或安排？

151　申请人：没有书面证据证明，但是我们可以解释这个安排，因为宁波臻荣当时是
152　　　因为泽汇金不方便出面，所以我们以宁波臻荣的名义，这个也有一方面的考
153　　　虑是因为被申请人的一种要求，因为我们可以看到对于宁波臻荣，被申请人
154　　　也提交了一个1.2亿元的投资协议，是宁波臻荣和嘉华通信签的，这个协议
155　　　里面涉及其他各方主体，如果要拆这个VIE的话，可能1.6亿元根本不够，
156　　　他也需要其它商业主体融资。但是这个融资别人要知道，如果是宁波臻荣有
157　　　其他的投资方在里面投钱了，其他的这些人就可以跟进投钱。有了这个协议，
158　　　也有了多方主体的合同。

159　陶修明：一个交易，一个当事人拿到之后，自己没有足够的钱，希望再融钱，或
160　　　者希望其他的合作伙伴一起投？

161　申请人：是的。

162　陶修明：被申请人收到该1.2亿元时，申请人认为当时1.6亿元本身是借款？

163　申请人：是的，但是在一定条件下可以债转股的。

164　被申请人：没有约定，1.6亿元就是借款。

165　陶修明：被申请人收到1.2亿元是什么资金？

166　被申请人：因为我们在2017年12月份单独签署了一份投资协议，合同主体包括
167　　　宁波臻荣、嘉华通信以及包括刘英魁在内的8个公司股东单独签署这个协
168　　　议，按照这个协议我方收到了1.2亿元投资款。投资协议就是我方证据1。
169　　　投资协议第2.1条讲的就是借款1.2亿元。

170　陶修明：这1.2亿元是不是就是刚才提到的1.2亿元？

171　被申请人：这是我们诉争的，宁波臻荣向目标公司的投资款1.2亿元。

172　陶修明：第2.1条约定，宁波臻荣拟向目标公司提供1.2亿元的借款。首先讲它

第 4 页 共 13 页

| | |
|---|---|
| 173 | 是一个借款，而不是被申请人表格上讲的 1.2 亿元一开始就是投资款。被申 |
| 174 | 请人认为 1.2 亿元一开始就是投资款的约定在哪里？ |
| 175 | 被申请人：首先这个协议的名称叫投资协议，而且双方的核心目的，因为我们觉 |
| 176 | 得这个交易的本身并不是为了纯粹的借款，其实是一个投资行为，所以我方 |
| 177 | 认为在符合债转股的情况下，这 1.2 亿元从现有情况来讲，更符合投资的属 |
| 178 | 性。所以我方认为这个事情我们把它表述为投资款，当然这个协议里面没有 |
| 179 | 约定。 |
| 180 | 陶修明：这个投资协议款项的履行，1.2 亿元是否实际支付？ |
| 181 | 被申请人：实际支付了。 |
| 182 | 陶修明：如果按照投资协议约定，1.2 亿元先为借款，投资协议是一个由债开始 |
| 183 | 可能会债转股的投资安排？ |
| 184 | 被申请人：是的。 |
| 185 | 陶修明：转股的条件是否已成就？刚开始 1.6 亿元的借款协议项下，直接发生了 |
| 186 | 2 千万元的借款。在借款协议项下并没有再直接发生其它的借款，投资协议 |
| 187 | 项下约定了总的投资额度是 1.2 亿元，以债权的形式开始，也约定了在一定 |
| 188 | 情况下可以转成股份？ |
| 189 | 申请人：是的。 |
| 190 | 被申请人：是的。 |
| 191 | 陶修明：另外一笔 2 千万元是在哪个协议项下的？ |
| 192 | 被申请人：借款协议，见我方证据 7，第 115 页。 |
| 193 | 陶修明：发生的时间比刚才讨论的投资协议要晚一点，投资协议是 2017 年 12 |
| 194 | 月份，这个借款协议是 2018 年 4 月份，这个 2 千万元是否实际发生？ |
| 195 | 申请人：是的。 |
| 196 | 被申请人：是的。 |
| 197 | 陶修明：资金不管怎么定性，总额 1.6 亿元双方是否有异议？ |
| 198 | 申请人：无异议。 |
| 199 | 被申请人：无异议。 |
| 200 | 陶修明：申请人凭什么说这 1.6 亿元就构成你方债权？没有转成股，严格来说应 |
| 201 | 该宁波臻荣来要 1.2 亿元，福鼎沐森要 2 千万元，申请人主张 2 千万元。 |
| 202 | 申请人：我方现在可以提供的证据是宁波臻荣 1.2 亿元也是泽汇金付给宁波臻荣 |
| 203 | 的，福鼎沐森的 2 千万元也是泽汇金付给福鼎沐森的。 |
| 204 | 陶修明：你们之间的安排是否能得到被申请人的认同？是否有证据证明申请人和 |
| 205 | 宁波臻荣之间有 1.2 亿元借款。 |
| 206 | 申请人：第一，从资金的来源来讲，来源于泽汇金。第二，宁波臻荣跟福鼎沐森 |
| 207 | 出具的证明也能证明他们对这两笔钱不享有债权，全部是泽汇金的钱，而且 |
| 208 | 他们当时就是代泽汇金，为了履行与刘英魁的借款而作的安排，相当于代位 |
| 209 | 投资。 |
| 210 | 陶修明：被申请人是否知道代位投资？ |
| 211 | 申请人：被申请人是知情的，因为这么大的金额，被申请人不可能不知情，被申 |
| 212 | 请人对此没有提出任何异议，相当于默认行为。 |
| 213 | 陶修明：是否有证据支持？ |
| 214 | 申请人：就是因为泽汇金不方便出面来做这个事情。 |
| 215 | 陶修明：为什么不方便？ |

216 申请人：商业上有一个安排，泽汇金经过两方同意的，由宁波臻荣来出面。

217 陶修明：如果不方便的话，为什么你方作为申请人现在提起仲裁？

218 申请人：因为当时存在上市的安排，现在不存在这个疑虑。

219 陶修明：请被申请人回应。

220 被申请人：我方了解的情况不是这样的，因为整个的投资行为跟借款行为发生了
221 根本性的变化，原来就是泽汇金借给刘英魁 1.6 亿元，然后把所有 VIE 结
222 构拆掉，然后付出相应的成本。而现在的情况变成了 1.2 亿元的实际情况是
223 宁波臻荣投到了目标公司，然后让目标公司来进行实际的投资，债权债务的
224 关系，各方的还款主体都发生了本质性的变化。

225 陶修明：这 1.2 亿元付到了哪里？

226 被申请人：直接由宁波臻荣付给了目标公司。

227 陶修明：原来借款协议 1.6 亿元全部要借给被申请人的？

228 被申请人：对，他是借款人，通信公司根本就不是债务人。

229 陶修明：1.2 亿元的用款人变了？

230 被申请人：对。

231 陶修明：如果按照借款协议的话，用款人应该是被申请人？

232 被申请人：对。

233 陶修明：现在变成目标公司用 1.2 亿元？

234 被申请人：对，债务人发生变化了。

235 陶修明：而且他们原来诉争的协议就是纯粹的借贷，这里有投资的属性，再加上
236 主体的不同，原来是个人承担还款的义务，即使按照现在情况，即使不符合
237 债转股，还是一个纯粹的债，该承担责任的也是目标公司。后面的 2 千万元，
238 这个事据我了解，后面的 2 千万元福鼎沐森那个和所谓的 VIE 一点关系都
239 没有，借款人也变了，他们完全是另外一个交易层面，据我方了解应该是当
240 时那 2 千万元因为那家公司有一点资金上的要还债，临时找福鼎沐森借 2
241 千万元周转的。

242

243 陶修明：仲裁庭注意到双方本周和当庭提交了补充证据，请问双方是否同意当庭
244 质证？

245 申请人、被申请人：同意。

246 陶修明：接下来进行举证质证，双方在质证对方证据时如需核对原件须当庭提出，
247 否则视为原件与复印件一致，双方是否清楚？

248 申请人、被申请人：清楚了。

249 陶修明：请申请人举证，被申请人质证。

250 申请人：我方提交了 8 份证据，证据名称及证明对象同书面证据清单。

251 证据 1，《深圳市泽汇金投资中心（有限合伙）与刘英魁先生关于财富管理
252 业务的借款协议书》。提请注意，第 2.3.2 条，同一借款由乙方直接支付给
253 标的公司。

254 詹晖：有没有支付给另外公司的安排？

255 申请人：借款协议没有约定其它指定的账户。

256 詹晖：有没有第三方代收的约定？

257 申请人：目前来看借款协议上是没有这方面的约定。

258 被申请人：对于证据 1，真实性、合法性均认可，但证明目的不认可。对于刚才

第 6 页 共 13 页

259　　　说的可以付给目标公司，这个事实我方不否认，约定也是这么约定的。但是
260　　　核心是我们要确认的一点，可以基于合同的约定，将收款方约定给第三方，
261　　　那么我债务人仍然对该笔债务承担相应的还款责任，这个也有合同约定。而
262　　　我们基于整个事实，在投资协议项下，虽然这个钱是宁波臻荣也打给目标公
263　　　司，但是基于那个协议，还款的义务人是目标公司，也就是嘉华通信，跟刘
264　　　英魁没有任何关系，不能说打给目标公司就让刘英魁还款。
265　陶修明：还款义务人是否约定清楚？
266　被申请人：是清楚的，你打给目标公司，还款人也是刘英魁，这个情况属实。但
267　　　是基于投资协议来讲，首先那个协议签署在这个协议之后，第二，那个钱是
268　　　明确宁波臻荣和通信公司之间的相关的债权债务的约定，还款人是通信公
269　　　司，不是刘英魁。
270　陶修明：对于证据1的协议内容是否有歧义？
271　被申请人：没有。
272　申请人：证据2，2000万元宁波银行客户回单（2017年12月22日）。
273　被申请人：对于证据2，真实性、关联性均认可。嘉华通信就是目标公司。
274　申请人：证据3，中国邮政储蓄银行企业网上银行电子回单。
275　被申请人：对于证据3，真实性认可，但关联性不认可。
276　申请人：证据4，1.2亿元宁波银行客户回单（2017年12月22日）。
277　被申请人：对于证据4，我方需要核对原件。
278　（申请人当庭出示证据4的原件）
279　被申请人：经核对，证据4的原件与复印件一致，对于打款事实认可，但证据4
280　　　的真实性不认可，无法看清收付款双方。宁波臻荣上边还有一笔钱，我方不
281　　　认可。
282　申请人：证据5，宁波臻荣出具说明。
283　被申请人：对于证据5，真实性、合法性、证明目的均不认可，因为该说明与事
284　　　实不符，不存在所谓的宁波臻荣为泽汇金履行付款义务的事实。这个借款协
285　　　议除了履行还款义务，1.6亿元也要履行借款义务。所以我方认为现有情况
286　　　来讲，1.2亿元是履行嘉华通信和宁波臻荣之间投资协议的1.2亿元，与借
287　　　款协议无关联。而且出具时间是2020年8月4日，也应该就是在提起仲裁
288　　　的时间内才出具的。
289　陶修明：请申请人回应。
290　申请人：我方认为出具的这些东西的时间并不能影响证据的效力，我方什么时候
291　　　去宁波臻荣和福鼎沐森，因为现在涉及这两个案件了，对方不承认这个款项
292　　　了，所以我方才要求他们给我们做证言，所以证言的时间并不影响效力，哪
293　　　怕今天出庭作证，也是今天的证言。
294　陶修明：为什么提交了两份说明？
295　申请人：第一份是说明这1.2亿元是怎么打的，第二份是说明投资协议，宁波臻
296　　　荣和嘉华通信，与被申请人之间签的就是被申请人提交的投资协议，当时为
297　　　什么要签订这个投资协议。短的说明是第一个说明，当时出了之后，我方认
298　　　为写的不够完善，没有把当时为什么签这个投资协议的内容签得更清楚一
299　　　点，所以才有了第二个。因为当时交手续的时候，是公司另外的人来帮我们
300　　　代交，他可能把中间的传递材料时有可能是传递出现问题了。以补充证据第
301　　　2页稍微长一点的说明为准。

302　陶修明：补充证据第 2 页的长一点的说明里面提及备忘录，请说明。

303　申请人：那个备忘录是另外一个案件里面的。庭后落实看看有没有这个备忘录。

304　陶修明：这是谁的备忘录？

305　申请人：是本案双方之间的备忘录，庭后落实，因为现在没看到那个备忘录。

306　陶修明：这两页说明被申请人有什么质证意见？

307　被申请人：坚持上述质证意见。

308　陶修明：请申请人继续举证。

309　申请人：证据 6，福鼎沐森出具说明，也是做了两份说明。

310　被申请人：对于证据 6，质证意见同证据 5，而且这里确实连借款人到出借人都
311　　　　　不一致，而且跟 1.6 亿元一点关系都没有，真实性、合法性、关联性均不认
312　　　　　可。

313　申请人：证据 7，银行流水。

314　被申请人：对于证据 7，第 5 页的回单我方需要核对原件。

315　申请人：第 5 页的回单，申请人没有原件，这几张回单都是直接从网上打印的，
316　　　　　从银行打印的，当时打印的都是黑白的。

317　陶修明：这个"收款人"是指谁？

318　申请人：是申请人把 2 千万元打给沐森公司。

319　陶修明：申请人与沐森公司之间除了这个转账，是否还有协议？

320　申请人：没有。

321　陶修明：补充协议第 6 页，证明目的是什么？

322　申请人：第 6 页是想证明我们这 1.2 亿元是泽汇金打给宁波臻荣当时的实际控制
323　　　　　人王浩宇的。第 7 页付款人是王浩宇，给了宁波臻荣，是他收到了钱付给了
324　　　　　上面写的宁波臻荣。即泽汇金打给了王浩宇，王浩宇打给了宁波臻荣，收款
325　　　　　人是宁波臻荣。然后宁波臻荣再把 1.2 亿元打到目标公司，这是资金往来的
326　　　　　情况。

327　陶修明：请被申请人质证。

328　被申请人：对于证据 7，真实性、合法性均不认可，因为申请人没有出示原件。
329　　　　　但是从证据内容，与申请人证明目的不符，从补充证据第 5 页的汇款目的中，
330　　　　　下面直接写泽汇金与沐森合伙 2018 年 5 月 2 日这个款的性质是往来款。补
331　　　　　充证据第 6 页是泽汇金给王浩宇的资金总额应该是 1.2 亿元多一点，多出
332　　　　　99.02 万元，这个总额也与 1.2 亿元对不上。所有的备注栏写的这笔款项的
333　　　　　性质是借款。王浩宇向宁波臻荣，这个网银备注是 TZK，我方反复分析应
334　　　　　该是"投资款"的首字母缩写。所以我方认为通过他们现有的情况，不能证
335　　　　　明申请人的证明目的。

336　申请人：<u>需要向仲裁庭说明，我方 2020 年 8 月 6 日向仲裁庭提交的证据 8，茂</u>
337　　　　　<u>业通信网络股份有限公司关于重组一期现金对价支付完毕的公告；茂业通信</u>
338　　　　　<u>网络股份有限公司关于重组二期现金对价支付完毕的公告，非本案证据，当</u>
339　　　　　<u>庭撤回，本案中不作为证据提交。</u>

340　陶修明：对于申请人当庭提交的证据，被申请人是否同意放弃质证期进行当庭质
341　　　　　证？

342　被申请人：<u>同意，我方当庭核对真实性，庭后提交书面质证意见。</u>

343　申请人：证据 8，国家企业信用信息公示报告。这个主要是对被申请人的证据作
344　　　　　的一个回应，被申请人提交的证据 4 是 2017 年 1 月份出具的。但是根据这

345　　　个报告，宁波臻荣是 2017 年 11 月份才成立，他不可能在 2017 年 1 月份出
346　　　具证据。
347　陶修明：你们的投资协议是何时签订的？
348　申请人：投资协议是 2017 年 12 月份签订的。
349　申请人：证据 9，嘉华网络公司天眼查报告，证明嘉华网络法定代表人是刘英魁，
350　　　嘉华网络现在更名叫嘉易保。
351　　　证据 10，律师费发票 5 张。举证完毕。
352　被申请人：对于证据 8 和证据 9 不需要当庭核对原件。对于证据 10，我方需要
353　　　核对原件。
354　申请人：证据 10 没有带来原件。
355　被申请人：证据 10，真实性、合法性、关联性均不认可。当庭质证完毕。
356
357　陶修明：请被申请人举证，申请人质证。
358　被申请人：我方提交了两组共 8 份证据，证据名称及证明事项同书面证据清单。
359　　　第一组证据：
360　　　证据 1，宁波臻荣、嘉华通信、嘉华通信股东于 2017 年 12 月签订的《关于
361　　　北京中天嘉华通信技术有限公司之投资协议》。
362　　　证据 2，徐波、嘉华通信、嘉华通信股东于 2017 年 12 月签订的《关于北京
363　　　中天嘉华通信技术有限公司之投资协议》。
364　　　证据 3，前海梧桐、嘉华通信、嘉华通信股东于 2017 年 12 月签订的《关于
365　　　北京中天嘉华通信技术有限公司之投资协议》。
366　　　证据 4，宁波臻荣出具的《承诺函》。
367　　　证据 5，2019 年 5 月 29 日，嘉华通信向宁波臻荣发出《告知函》。
368　　　证据 6，2019 年 9 月 20 日，宁波臻荣向嘉华通信发出《关于转股通知的回
369　　　函》。
370　　　第二组证据：
371　　　证据 7，2018 年 4 月 27 日，福鼎沐森企业与嘉华网络之间签订《借款协议》。
372　　　证据 8，付款回单。举证完毕。
373　申请人：对于证据 1，真实性认可，但证明目的不认可，不能证明被申请人所说
374　　　的，因为投资协议和借款协议对款项的用途作了明确的说明，通过我们的两
375　　　份协议都载明借款的用途就是拆除嘉华通信的 VIE 结构，也都约定出借人
376　　　有选择债转股的权利。所以从本质上讲，两份协议没有什么区别，宁波臻荣
377　　　的协议就是为了履行借款协议而重新签订的协议，这个协议本质上并没有改
378　　　变借款协议的实质。
379　陶修明：在投资协议里面有没有直接引用借款协议？
380　申请人：没有，没有提到借款协议。
381　陶修明：从文字上来说，这两份协议是不是独立存在的协议？
382　申请人：庭后核实后书面回复仲裁庭。
383　　　对于证据 2、3，我方均需要核对原件。
384　（被申请人当庭出示证据 2、3 的原件）
385　申请人：经核对，证据 2、3 的原件与复印件均一致，真实性均认可，但证明目
386　　　的不认可，被申请人说因为有这两个协议的存在，那么宁波臻荣也有类似的
387　　　协议，来证明宁波臻荣也是一种投资行为，我方不认可。这两份协议和泽汇

第 9 页 共 13 页

388　　　　金和宁波臻荣协议的签订，与本案都没有直接的关联关系。这两份投资协议
389　　　　签订的背景和目的，是不是也像泽汇金这样，背后有其它的经济关系，现在
390　　　　申请人是无法得到的。这两份协议是否呈现的是两个投资主体真实的意思，
391　　　　意思表示和签订的背景都无法确定，也不能以他们的签订情况来推定泽汇金
392　　　　签订的情况。
393　陶修明：申请人是否为该两份协议的主体？
394　申请人：这是他们单独的协议，与我方无关。
395　被申请人：我方证据 2、3 和证据 1 里面核心的条款，尤其是整个从借款到债转
396　　　　股合同约定的框架是一模一样的。
397　詹晖：被申请人证据 2 的徐波不是本案的当事人，请说明。
398　被申请人：证据 3 也不是，我方要说明一个事实，宁波臻荣、徐波和前海梧桐，
399　　　　这是我们在同一批估值项下引进的三个投资人。
400　詹晖：这个项目的合同条款大致相同，为了证明同一波项目的投资人？
401　被申请人：是的，他们的估值都是一样的，他们这一波都是 19.5 亿元估值进来
402　　　　的，主要想证明这 1.2 亿元宁波臻荣的投资款，是宁波臻荣单独的投资，与
403　　　　刘英魁 1.2 亿元的借款没有关联。
404　　　　证据 4 涉及到刚才的证明内容，有两处笔误，正常来讲落款时间应该是 2018
405　　　　年 11 月 23 日，另外第三行实际付款时间应该是 2017 年 12 月 22 日，这个
406　　　　是有付款凭证的。
407　申请人：对于证据 4，我方需要核对原件。
408　被申请人：这个当时是邮件发过来的，现在没有原件。
409　陶修明：这个承诺函是给谁做的承诺？为了什么目的出具的？
410　被申请人：庭后核实后书面回复仲裁庭。
411　申请人：对于证据 4，真实性不认可，因为没有原件。
412　被申请人：证据 5 和证据 6 是一来一回，主要想证明的是依据宁波臻荣的投资协
413　　　　议，我方向其发出一封告知函，要求其相应地做出几种选择，是债转股还是
414　　　　相关的对于现有情况的处理。这是在 2019 年 5 月 29 日，嘉华通信公司给宁
415　　　　波臻荣发出的这么一份告知函。然后证据 6 是宁波臻荣明确回复，其要对嘉
416　　　　华通信公司主张 1.2 亿元的借款，也就是说现在权利的主体来讲，投资协议
417　　　　是宁波臻荣向嘉华通信主张债权，不再主张股权。
418　申请人：对于证据 5、6，真实性均认可，但证明目的均不认可，第一，宁波臻
419　　　　荣用到这 1.2 亿元是一个借款，而不是之前被申请人说的投资款。第二，申
420　　　　请人既然是以宁波臻荣的名义当时把这个款项打过去的，现在宁波臻荣以他
421　　　　的名义做的一个回函，并不能以此来证明被申请人的证明目的，以这种方式
422　　　　设定，明确告诉对方我这个出借款主体是宁波臻荣，而不是实际的出借人。
423　陶修明：投资协议 1.2 亿元就是以宁波臻荣出面的？
424　申请人：是的，是以宁波臻荣出面，以他的名义做意思表示，并不能证明承认背
425　　　　后的主体。关于转股通知的回函明确写着，我方不同意贵方提出的，关于将
426　　　　我方已经支付的 1.2 亿元的借款转为贵公司的股权，不能因为这一句就认
427　　　　为是借给嘉华通信。
428　被申请人：说明一下，针对证据 8 提请仲裁庭注意，这两笔钱都是进来的当天，
429　　　　也就是说福鼎沐森公司给嘉华网络进来的当天，我们就给转出去了，直接是
430　　　　偿还了我们上海沪弘的背景，用于我们公司的周转。

431　陶修明：被申请人是否代表目标公司？

432　被申请人：不代表，但是这个事实是这样的。

433　陶修明：这个钱是直接打给刘英魁的吗？

434　被申请人：没有，打给嘉华网络的，不是目标公司，我问了嘉华网络借款目的是

435　　什么，他们说是用于偿还上海一家公司的款项。

436　申请人：对于证据7、8、真实性均认可，但这个借款就是刘英魁借款以后，用

437　　于支付他实际控制的嘉华网络，来做的一个借款安排。

438　申请人：刚才我方也提交了证据，嘉华网络实际股东里面99%是刘英魁控制，1%

439　　是归他的妻子张欣所有，所以嘉华网络背后实际的控制人还是刘英魁自己本

440　　身。我们约定的虽然当时对借款的目的有约定，但是这个款项打到他指定的

441　　账户里以后，这个款项他用于做什么，我们实际上是没有办法进行一个绝对

442　　的控制的。而且嘉华网络、嘉华通信和嘉华信息以及包括刘英魁个人本身，

443　　他控股了多家公司，这些公司之间相互都存在一些经营上的关联性，甚至这

444　　些公司的财产和个人之间的财产也都会有一些直接的往来款项的混合的情

445　　形，福鼎沐森已经对这2千万元作了一个说明了。质证完毕。

446

447　陶修明：仲裁庭总结双方争议焦点，本案的基础事实很简单，双方只要证明这一

448　　点，宁波臻荣那1.2亿元以及后来的福鼎沐森2千万元，能够构成申请人的

449　　债权，尽管这个资金可能背后都来自于申请人，但是怎么样证明在法律上属

450　　于申请人的债权？资金来源不管被申请人是否否定，资金来源都是有这1.6

451　　亿元怎么筹集来的，但是要证明怎么构成申请人的债权，这是申请人要证明

452　　的。因为1.6亿元的发生，不管是债权形式、借款形式还是投资形式，事实

453　　上就算按照投资协议，刚开始也是一个借款形式，大家没什么歧义，只是具

454　　备上市条件了就转成股权了。现在上市条件不具备，1.6亿元全部是债权，

455　　但是是谁的债权？

456　翟晶敏：首席说的非常重要，因为整个的资金，收到的款项是明确的，申请人主

457　　张债权，由谁主张需要有充分的证据。

458　詹晖：还有一个争议点是关于违约金和利息。

459　申请人、被申请人：同意仲裁庭对争议焦点的总结。

460　陶修明：现在休庭5分钟。

461　（休庭）

462　陶修明：现在恢复开庭，请双方围绕争议焦点发表辩论意见。

463　申请人：本案的事实很清楚，申请人泽汇金向被申请人刘英魁借款1.6亿元，用

464　　于拆除嘉华通信的VIE结构以及日常的资管运营。在泽汇金支付了2千万

465　　元以后，泽汇金又通过宁波臻荣向刘英魁支付了1.2亿元，通过福鼎沐森支

466　　付了2千万元，这个事实通过我方证据以及宁波臻荣、福鼎沐森提供的证明，

467　　能够支持我方这一主张。具体关于投资协议，这1.6亿元一开始是借款，主

468　　要目的也是用于投资。庭后我方找一下备忘录，可能对这方面也有安排。从

469　　债权的角度来讲，宁波臻荣跟福鼎沐森已经认可了这两个债权是属于泽汇金

470　　的，所以我方认为我方证据是以证实泽汇金已经履行了向刘英魁借款1.6

471　　亿元的义务，刘英魁在借款到期以后，未偿付借款的本金及利息，应该按照

472　　借款合同承担还本付息，并承担违约金的责任。

473　申请人：因为被申请人在答辩时提到，说我们的利息和违约金的问题，今年新出

474 台的民间借贷的新的规定，它也是从今年的 8 月 20 日以后受理的一审案件
475 才适用新的关于民间借贷新规的标准，本案在那个时期之前就已经受理了，
476 所以我方更改后主张的利息和违约金还是按照 24%的上限主张的。辩论完
477 毕。
478 被申请人：坚持我方庭审意见。我方认为事实非常清楚，就是三笔钱，第一笔钱
479 是宁波臻荣给嘉华通信的 1.2 亿元，我方认为从现有的两个协议本身来看，
480 它的合同主体、合同目的、法律关系以及合同约定的具体内容，均不相同，
481 所以我方认为不能够强行将这两个协议混为一谈，相关的责任方，也就是债
482 务人是谁，在这两个合同中有本质的不同。而且这里强调一点，宁波臻荣在
483 与嘉华通信的整个合同过程中，也有相关的文件能够证明，其实际享有权利，
484 并要求嘉华通信承担义务。而且在整个仲裁过程中我方也提交了相应证据，
485 能够证明宁波臻荣与其它投资主体是在同一批作为投资人，引入到嘉华通信
486 中来的。基于上述理由，我方认为 1.2 亿元与借款协议无任何关联性，刘英
487 魁不应对该 1.2 亿元承担任何义务；第二笔钱是福鼎沐森给嘉华网络的，我
488 方认为无论是出借方还是借款人，都与诉争的借款协议不同，而且借款协议
489 的目的也不同，而且我方提供了相应的借款协议以及借款协议到款之后的往
490 来凭证，能够证明嘉华网络公司实际的借款目的和借款用途，与本案诉争的
491 借款协议并无相关的关联性。因此刘英魁对该 2 千万元不应该承担义务。而
492 且需要补充一点，其实刚才在事实中没有提及，包括宁波臻荣、福鼎沐森这
493 两个协议约定的争议解决条款，均是由人民法院管辖，这个管辖也与本案协
494 议约定的争议解决方式不一致；第三点，关于我方收到 2 千万元，我方确实
495 收到了，但是简单做一个抗辩，我方认为实际用款人，应该是收款人是嘉华
496 通信，应该由嘉华通信公司承担还款义务；第四点，利率的问题，我方认为
497 违约金明显约定过高，可能申请人变更了仲裁请求，我方针对这一部分还得
498 重新计算之后再发表意见；第五点，因为借款人还有一个出借义务，因为他
499 们有义务的话，我方仍然保留其承担相应违约责任的权利。辩论完毕。
500 陶修明：关于本案的事实，双方是否还有补充陈述？
501 申请人：没有了。
502 被申请人：没有了。
503
504 陶修明：双方是否同意调解？
505 申请人：无法当庭达成调解，庭后谈调解。
506
507 陶修明：请双方发表最后陈述意见。
508 申请人：坚持我方仲裁请求。
509 被申请人：坚持我方答辩意见。
510
511 陶修明：庭后安排，双方如有补充证据和对目前证据的质证意见，须在 2020 年
512 11 月 23 日之前提交，如需核对补充证据原件须在收到补充证据后 2 日内书
513 面提出，否则视为原件与复印件一致；2020 年 12 月 2 日之前提交对补充证
514 据的质证意见及书面代理意见，上述材料逾期提交的，仲裁庭有权拒绝接受。
515 除非双方共同申请或仲裁庭认为有必要，本案不再开庭审理，以书面形式审
516 理。

# EXHIBIT C

## Explanation

On 22 December 2017, we remitted RMB120 million to Beijing Sinowel Communication Technology Co., Ltd. ("Sinowel Communication") to perform the lending obligations on behalf of Shenzhen Zehuijin Investment Centre (Limited Partnership) ("Zehuijin") in favor of Mr. Liu Yingkui. This amount of RMB120 million is the fund that had been paid to us by Zehuijin, which we, in turn, remitted at the instruction of Zehuijin to the bank account of Sinowel Communication designated by Mr. Liu Yingkui.

Ningbo Zhenrong Equity Investment Partnership (Limited Partnership)

*[Seal of Ningbo Zhenrong Equity Investment Partnership (Limited Partnership)]*

*[Seal of Ningbo Zhenrong Equity Investment Partnership (Limited Partnership)]*



4 August 2020





**Business Linguistics, Inc**
*Specialized Language Services*
www.businesslinguistics.com

Business Linguistics, Inc. certifies that the below listed original documents are an exact, true, and correct translation of the submitted documents. These document translations were made by one of our official, certified public translators who is familiar with both the English and Chinese languages.

Furthermore, all documents were edited as well as proofread for accuracy, fluency and to screen for any other possible errors by a proofreader/editor familiar with both the English and Chinese languages as well as pertinent industry terminology.

Business Linguistics, Inc. certifies that it is a true and correct translation from the submitted document(s).

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

## Ningbo Zhenrong Equity Investment Partnership
## Explanation Dated August 4th, 2020

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Certification is executed by public notary on the date stated below.

Date: April 30, 2024

Signed:

Position: Project Manager

Date: 04/30/24

Signed:

Position:

Notary Public Dekalb County, GA
My Commission Expires 11/16/24

2694 Brook Park Way
Atlanta, GA 30340

404.892.9666

# 说　明

　　我单位于 2017 年 12 月 22 日向北京中天嘉华通信技术有限公司(以下简称"嘉华通信")打款 12000 万元，该款项系代深圳市泽汇金投资中心(有限合伙)(以下简称"泽汇金")向刘英魁先生履行借款义务。该 12000 万元系泽汇金向我单位支付的资金，我单位根据泽汇金指示向刘英魁先生指定的嘉华通信的账户转账。

宁波臻荣股权投资合伙企业（有限合伙）

2020 年 8 月 X 日

# EXHIBIT D

## Explanation

The investment agreement signed by our company in December 2017 with Mr. Yingkui Liu, Beijing Sinowel Communication Technology Co., Ltd. (hereinafter referred to as "Sinowel Communication"), and others was to prove the fact that our company made a payment of 120 million Yuan to the Sinowel Communication Account designated by Mr. Yingkui Liu. The memorandum signed in December 2017 is actually an agreement between Shenzhen Zehuijin Investment Center (Limited Partnership) (hereinafter referred to as "Zehuijin") and Mr. Yingkui Liu. Its purpose is to explain that the 120 million Yuan paid by our company is essentially a loan from Zehuijin to Yingkui Liu.

*[Seal of Ningbo Zhenrong Equity Investment Partnership]*

Ningbo Zhenrong Equity Investment Partnership (Limited Partnership)

August 4th, 2020





**Business Linguistics, Inc**
*Specialized Language Services*
www.businesslinguistics.com

Business Linguistics, Inc. certifies that the below listed original documents are an exact, true, and correct translation of the submitted documents. These document translations were made by one of our official, certified public translators who is familiar with both the English and Chinese languages.

Furthermore, all documents were edited as well as proofread for accuracy, fluency and to screen for any other possible errors by a proofreader/editor familiar with both the English and Chinese languages as well as pertinent industry terminology.

Business Linguistics, Inc. certifies that it is a true and correct translation from the submitted document(s).

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## Ningbo Zhenrong Equity Investment Partnership
## Explanation Dated August 4th, 2020

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Certification is executed by public notary on the date stated below.

Date: April 29, 2024

Signed:

Position: Project Manager

Date: 04/29/2024

Signed:

Position:

Notary Public, Dekalb County
My Commission expires 11/16/24

---

2694 Brook Park Way
Atlanta, GA 30340

404.892.9666

# 说　明

　　我单位 2017 年 12 月和刘英魁先生、北京中天嘉华通信技术有限公司（以下简称"嘉华通信"）等人签订的投资协议，系为了证明我单位向刘英魁先生指定的嘉华通信账户打款 12000 万元的事实。2017 年 12 月签订的备忘录实际是深圳市泽汇金投资中心（有限合伙）（以下简称"泽汇金"）和刘英魁先生之间的协议，本质是为了说明我单位支付的 12000 万元本质是泽汇金向刘英魁的出借款项。

宁波臻荣股权投资合伙企业（有限合伙）

2020 年 8 月 4 日

2

# EXHIBIT E

# The Application for a Second Hearing

**Applicant (Arbitration Respondent)**: Yingkui Liu

Attorneys: Guan Huang, Nan Zhou, Shichang Zeng, Junhui Xu

## Application matters:

Apply to the Beijing Arbitration Commission for another hearing on the (2020) Jingzhong Case No.2547 Arbitration Case.

## Facts and reasons:

The arbitration case (2020) Jingzhong Case No. 2547 <u>concerning the</u> <u>Loan Agreement</u> between the arbitration claimant Shenzhen Zehuijin Investment Center (Limited Partnership) (hereinafter referred to as "Zehuijin") and the arbitration respondent， Yingkui Liu， has been accepted by your commission. Zehuijin submitted the new evidence <u>"Cooperation Agreement" after the first hearing of this case on November</u> <u>12, 2020, and accordingly proposed that Zehuijin has fulfilled its loan</u> <u>obligations in this case.</u> However, it did not explain whether there was a connection between the Cooperation Agreement and the Loan Agreement of the subject of the arbitration in this case, nor did it clarify which agreement its arbitration application was based on, which led to the inability to clarify the fundamental legal relationship and facts on which the Zehuijin arbitration application in this case was based; and the clarification of the fundamental legal relationship and essential facts in this

[Yingkui Liu]          [(2020) Jingzhong Case No. 2547]          Legal Opinion for the Arbitration

case has a substantial impact on the fair trial of the case. At the same time, the amount of the subject matter in the case is enormous; one party is a natural person, and the outcome significantly impacts the parties.

Therefore, I hereby apply to you to hold another hearing on this case to allow all parties to fully explain the facts of the case and the fundamental legal relationship so that your commission can make a fair decision; please allow this.

To:

Beijing Arbitration Commission



Applicant: Yingkui Liu

Representative: *[Shichang Zeng's signature]*

December 2, 2020



**Business Linguistics, Inc**
*Specialized Language Services*
www.businesslinguistics.com

Business Linguistics, Inc. certifies that the below listed original documents are an exact, true, and correct translation of the submitted documents. These document translations were made by one of our official, certified public translators who is familiar with both the English and Chinese languages.

Furthermore, all documents were edited as well as proofread for accuracy, fluency and to screen for any other possible errors by a proofreader/editor familiar with both the English and Chinese languages as well as pertinent industry terminology.

Business Linguistics, Inc. certifies that it is a true and correct translation from the submitted document(s).

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

## Application for a Second Hearing
## Dated December 2, 2020

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Certification is executed by public notary on the date stated below.

Date: May 15, 2024

Signed: _____

Position: Project Manager

Date: 05/15/2024

Signed: _____

Position: NOTARY

Notary Public, Dekalb County, GA
My Commission Expires 11/16/24

# 再次开庭审理申请书

**申请人（仲裁被申请人）：**刘英魁

代理人：黄冠、周楠、增斯畅、徐俊辉

**申请事项：**

申请北京仲裁委员会对（2020）京仲案字第 2547 号仲裁案再次进行开庭审理。

**事实与理由：**

仲裁申请人深圳市泽汇金投资中心（有限合伙）（以下简称"泽汇金"）与仲裁被申请人刘英魁之间关于《借款协议书》（2020）京仲案字第 2547 号仲裁案件业经贵会受理。泽汇金在本案 2020 年 11 月 12 日第一次开庭审理后提交新证据《合作协议书》，并据此提出泽汇金已经履行本案借款义务。但其并未说明《合作协议书》与本案仲裁标的《借款协议书》之间是否存在关联，亦未明确其仲裁申请是基于哪份协议所主张，导致本案泽汇金仲裁申请所依据的基础法律关系及事实无法查清；而本案基础法律关系及基本事实情况的查清对案件的公证审理有重要影响。同时，本案标的额巨大，一方当事人为自然人，本案的裁决结果对当事人具有重大影响。

故现向贵会申请对本案再次进行开庭审理，给各方提供充分说明案件事实及基础法律关系的机会，以便贵会作出公正裁决，请予准许。

此致

北京仲裁委员会

<div style="text-align: right;">

申请人：刘英魁

代理人：

2020 年 12 月 2 日

</div>

# EXHIBIT F

## The High People's Court of Beijing Municipality
## Enforcement Ruling

(2021) Jing Zhi Fu No.315

Claimant for Review (the applicant for enforcement): Shenzhen Zehuijin Investment Centre (Limited Partnership), main business venue address: Room 2305, Building 8, Qianhai Zhuoyue Financial Centre (Phase I), Unit 2, Gui Wan Pian District, Nanshan Community, Qianhai Shengang Cooperation Zone, Shenzhen City, Guangdong Province.

Executive Partner: Pu Gang

Agent ad litem: Yue Dengpan, Shandong Huanzhou (Weihai) Law Firm lawyer

Agent ad litem: Ding Yuhe, Shandong Huanzhou (Weihai) Law Firm lawyer

Person subject to enforcement: Liu Yingkui, male, born on ███████████ of Han ethnic group, living at Room 2002, Unit 1, No. Jia 2, Dongzhimenwai Xiaojie, Dongcheng District, Beijing City

Agent ad litem: Wang Liyi, f Beijing King & Wood Mallesons Law Firm lawyer

Agent ad litem: Bi Yuanbo, Beijing King & Wood Mallesons Law Firm lawyer

The claimant for review, Shenzhen Zehuijin Investment Center (Limited Partnership) (hereinafter referred to as Zehuijin Center), refused to accept the enforcement ruling (2021) Jing 02 Zhi Yi No. 317 made by Beijing No. 2 People's Intermediate Court (hereinafter referred to as Beijing No. 2 Intermediate Court), and applied to this court for review.

After accepting to process the case, the court formed a collegial panel to review it according to the law. The review has been completed.



Regarding the case between Zehuijin Center and Liu Yingkui, in the course of the enforcement by Beijing No. 2 Intermediate Court [Enforcement Case No.: (2021) Beijing 02 Zhi No. 669], Liu Yingkui raised an objection to the enforcement and requested to lift the freezing order on the accounts under the name of Liu Yingkui, including the China Merchants Bank's accounts of 6231360166080909, 5240111109080907, 002751155084_00008, 6225800101908415, 6226090110560147, and 001003242139_00002; the China CITIC Bank's accounts of 6217680713799588, 6217680713799588_000001, and 6217730713882783_000001; the China Construction Bank's accounts of 6217000010168464884, 62270000138501484_156_1, 6227000063645459117_156 J, 436742073020091805 3_156_1, and 4367420011810519668_156_1; the Industrial and Commercial Bank of China's accounts of 9558880200004349238, 0200095801005421151, and 6222370036104699; the China Everbright Bank's accounts of 6226630202320767 and 35380166005420484; the Agriculture Bank of China's accounts of 6228480019046853677 and 9559980014389826117; the China Minsheng Bank's account of 0117014430617444; the Bank of Communications' accounts of 60142883712168203 and 6222600910051527818, the Bank of Beijing's account of 6029693026910907_001 and the Shanghai Pudong Development Bank's account of 94070066601400036186 (hereinafter referred to as the accounts involved in the case).

Beijing No.2 Intermediate Court found out that the Beijing Arbitration Commission issued an arbitration award (2021) Beijing Arbitration Zi No. 0673 on 22 March 2021, ruling that "(1) The respondent (Liu Yingkui, The same below) shall return the loan principal of RMB 140,000,000 to the claimant (Zehuijin Center, the same below); (2) The respondent shall pay the loan interest of RMB 11,200,000 to the claimant; (3) The respondent shall pay the claimant the liquidated damages accumulated at a daily interest rate of 5/10,000 based on the amount of RMB 140,000,000 from 10 July 2020 till the date of actual payment;



(4) The claimant shall pay the attorney fee of RMB 400,000; (5) The arbitration fee is RMB 1,351,207.84 (including the arbitrator's remuneration of RMB 773,986.75 and the agency fee of RMB 577,221.09, all of which was paid in advance by the claimant to the Arbitration Commission). The claimant shall bear 20% of it, i.e., RMB 270,241.57, and the respondent shall bear 80% of it, i.e., RMB 1,080,966.27. The respondent shall pay back the amount of RMB 1,080,966.27, which was paid in advance by the claimant for the respondent; (6) We rejected the claimant's other arbitration claims."

After the above-mentioned arbitration award became legally effective, Zehuijin Center applied to Beijing No.2 Intermediate Court for an enforcement order, and the court filed for enforcement on 6 May 2021 under the case number (2021) Jing 02 Zhi No. 669. On 8 May 2021, the court issued an enforcement notice of (2021) Jing 02 Zhi No. 669 and delivered it to Liu Yingkui, the person subject to the enforcement. Later, the court delivered the enforcement ruling (2021) Beijing 02 Zhi No. 669, stating that "1. Freezing and transferring the deposit of RMB 152,680,966.27 that belongs to Liu Yingkui, the person subject to enforcement. 2. Freezing and transferring the liquidated damages payable by Liu Yingkui, the person subject to enforcement (an accumulation based on RMB 140,000,000 and calculated at a daily interest rate of 5/10,000, starting from 10 July 2020 until the date of actual payment). 3. Freezing and transferring the double debt interest incurred during the late payment period payable by Liu Yingkui, the person subject to enforcement. 4. Freezing and transferring the enforcement fee and the actual expenses incurred during the enforcement payable by Liu Yingkui, the person subject to enforcement. 5. After the above-mentioned measures are taken, if the obligations stated in the effective legal documents have not yet been fulfilled, the other properties of Liu Yingkui, the person subject to enforcement, will be seized, detained, frozen, auctioned, and sold to fulfill the obligations in accordance with the laws." The above-mentioned ruling has been served on the parties.

During the execution process, Beijing No.2 Intermediate Court froze the bank accounts under the name of Liu Yingkui, including the China Merchants Bank's accounts of 6231360166080909, 5240111109080907, 002751155084_00008,



6225800101908415, and 001003242139_00002; the China CIT1C Bank's accounts of 6217680713799588 and 6217680713799588_000001; the China Construction Bank's accounts of 4367420011810519668_156_1; the Industrial and Commercial Bank of China's accounts of 0200095801005421151, and6222370036104699;   the China Everbright Bank's account of 35380166005420484; the Agriculture Bank of China's account of 9559980014389826117; the China Minsheng Bank's account of 0117014430617444; the Bank of Communications' accounts of 60142883712168203 and 6222600910051527818, the Bank of Beijing's account of 6029693026910907_001 and the Shanghai Pudong Development Bank's account of 94070066601400036186. Liu Yingkui objected and requested that his bank accounts be unfreezed. The court did not impose a freezing order on his China Merchants Bank account of 6226090110560147, C1TIC Bank's account of 6217730713882783_000001,   China   Construction   Bank's   accounts   of   6217000010168464884, 6227000013850181484_15 6_1, 6227000063645459117_156_1 and 4367420730200918053_15 6_1, Industrial and Commercial Bank of China's account of 9558880200004349238, China Everbright Bank's account of 6226630202320767 and Agricultural Bank of China's account of 6228480019046853677.

Beijing No. 2 Intermediate Court also found out that on 30 June 2021, the court issued a Notice of Enforcement Assistance (2021) Jing 02 Zhi No. 669 to China Securities Depository and Clearing Co., Ltd. Shenzhen Branch to freeze Zhongjia Bochuang's stock of 89,074,100 shares (securities code: 000889) held by Liu Yingkui, the person subject to enforcement, of which 7,024,426 shares in the securities account of 0248898637 were initially frozen, and the circulation type of the shares is unrestricted tradable shares; 66,185,136 shares in the securities account of 0105094464 were initially frozen, and the circulation type of the shares is restricted shares after the IPO; 10,851,885 shares in the securities account of 0248898637 are waiting to be frozen, and the circulation type of the shares is unrestricted tradable shares. The above freeze periods are from 30 June 2021 to 29 June 2024.



According to Article 19 of the "Provisions of the People's Supreme Court on Seizure, Detainment and Freezing of Properties in the Course of Civil Enforcement Conducted by the People's Courts (2020 Revision)", which stipulates that "The seizure, detainment and freezing of the properties of the person subject to enforcement shall be limited to an amount sufficient to settle the debt determined in the legal document and the enforcement fee, and must not apparently exceed that target amount. If the worth of the property seized, detained or frozen exceeds the target amount, the people's court shall promptly lift the seizure, detainment and freezing of the portion of the property that exceeds the target amount based on the application of the person subject to enforcement or according to the court's functions and powers, except that the concerned property is indivisible, and the person subject to enforcement has no other property available to be enforced or other properties are not enough to repay the debt", combined with the enforcement ruling (2021) Jing 02 Zhi No. 669 delivered by the court, the court held the opinion that the enforceable target amount of the case is RMB 152,680,966.27, the liquidated damages, double debt interest incurred during the late performance period, etc. Liu Yingkui, the person subject to enforcement, held a total of 89,074,100 shares of Zhongjia Bochuang (stock code: 000889), of which 7,024,426 shares were initially frozen (the circulation type is unlimited tradable sales), 66,185,136 shares were initially frozen (the circulation type is restricted shares after IPO), 10,851,885 shares are waiting to be frozen (the circulation type is unrestricted tradable shares). The value of the above-mentioned stock should be based on the closing price of the trading day before the freezing and generally determined on a reasonable price within a range of no more than 20% after the stock market conditions are taken into account. The closing price of Zhongjia Bochuang's unrestricted tradable shares on the previous trading day before the court's freezing order was RMB 4.07 per share. When the ruling on objection was made, the closing price of Zhongjia Bochuang's unrestricted tradable shares was RMB3.39 per share. After the preferential creditor's rights were secured, the court froze the value of the stocks under the name of Liu Yingkui, which can cover the debt Liu Yingkui owed to Zehuijin Center concerned in the case.



During the enforcement, the concept of good faith and civilized execution must be strengthened. While protecting the legitimate rights and interests of the prevailing parties in accordance with the law, the court will minimize the impact on the rights and interests of the person subject to enforcement, realize the organic integration of legal effects and social effects, maintain social fairness and justice, and promote social harmony and stability.

Having taken into account that the value of the frozen shares can cover Liu Yingkui's debts to Zehuijin Center concerned in the case, if the court continues with the freezing order imposed on the bank accounts under the name of Liu Yingkui, the person subject to enforcement, there will be a detrimental effect on Liu Yingkui's everyday life and business activities, in accordance with Article 225 of the "Civil Procedure Law of the People's Republic of China", Section 2 of Article 17 of the "Provisions of the People's Supreme Court on the People's Courts' Handling of Enforcement Objections and Reviews (2020 revision)", "Provisions of the People's Supreme Court on Seizure, Detainment and Freezing of Properties in the Course of Civil Enforcement Conducted by the People's Courts (2020 Revision)", the court ruled to revoke the court's freezing order imposed on Liu Yingkui's bank accounts including the China Merchants Bank's accounts of 6231360166080909, 5240111109080907, 002751155084_00008, 6225800101908415, and 001003242139_00002; the China CITIC Bank's accounts of 6217680713799588 and 6217680713799588_000001; the China Construction Bank's accounts of 4367420011810519668_156_1; the Industrial and Commercial Bank of China's accounts of 0200095801005421151, and 6222370036104699; the China Everbright Bank's account of 35380166005420484; the Agriculture Bank of China's account of 9559980014389826117; the China Minsheng Bank's account of 0117014430617444; the Bank of Communications' accounts of 60142883712168203 and 6222600910051527818, the Bank of Beijing's account of 6029693026910907_001 and the Shanghai Pudong Development Bank's account of 94070066601400036186.

Zehuijin Center applied to this court for review and requested revocation of the enforcement ruling (2021) Jing 02 Zhi Yi No. 317 made by the Beijing No.2 Intermediate Court in accordance with the laws.

Facts and reasons: First, stock prices are highly volatile. At the time of the freezing of Liu Yingkui's stock (on 29 June 2021), the closing price of the unrestricted tradable shares was RMB 4.07 per share. When the No.2 Intermediate Court delivered a ruling (on 16 August 2021), which was changed to RMB3.39. When the claimant filed for review (on 2 September 2021), it dropped to RMB3.07. There is a sharp drop in the stock price.



Secondly, according to Zhongjia Bochuang's announcement, Liu Yingkui took the initiative to file an arbitration against Zhongjia Bochuang about significant matters. There is a direct causal link between the decline in the stock price of Zhongjia Bochuang and Liu Yingkui's behavior. Thirdly, according to Zhongjia Bochuang's announcement, Liu Yingkui has triggered the company's performance compensation commitment. According to the agreement, Zhongjia Bochuang can withdraw and cancel Liu Yingkui's 24,519,471 shares. Finally, Liu Yingkui failed to repay the debts, and double debt interest was incurred during the late performance period. Due to the large debt base, Liu Yingkui's total debt will continue to increase. Above all, Liu Yingkui's shares under preservation are insufficient to fully realize the creditor's right of the claimant that requested review.

Liu Yingkui argued that Zehuijin Center's application for review lacked factual and legal basis and requested that the application be dismissed in accordance with the laws. Facts and reasons: 1. The shares of Liu Yingkui frozen by the Beijing No. 2 Intermediate Court are sufficient to cover all the debts. The decided enforceable target amount for this case is RMB 152,680,966.27. Beijing No. 2 Intermediate Court deducted RMB 2,747,577.2 from Liu Yingkui's bank deposit on 21 June 2021. Even if there is an increase of 20% to the remaining debt of RMB 149,933,409.07, the price of the shares frozen by the court should not exceed RMB 179,920,090.88. However, based on the closing price of the stocks involved in the case frozen by the Beijing No. 2 Intermediate Court on the previous trading day (29 June 2021) before the freezing measures are taken, the value of the stocks frozen by the Beijing No.2 Intermediate Court is as high as RMB297,962,917.34, which is more than enough to cover the enforceable target amount of this case. 2. Zehuijin Center's claim that the seizure of stocks held by Liu Yingkui cannot fulfill the realization of the creditor's enforceable rights lacks factual and legal basis.



First of all, according to the People's Supreme Court's "Opinions on Further Strengthening the Concept of Good Faith and Civilized Execution in the Course of Enforcement," the value of frozen stocks should be determined according to the closing price of the stocks on the trading day before the freezing measures are taken. As mentioned earlier, the value of the stocks frozen by Beijing No. 2 Intermediate Court has far exceeded the enforceable target amount. Secondly, Liu Yingkui's view that the value of the stocks involved in the case is on a downward trend lacks a factual basis. As of 17 November 2021, the closing price of Zhongjia Bochuang was RMB3.43 per share. During this period, Zhongjia Bochuang also once hit the value of RMB3.54 per share, which was significantly higher than the RMB3.39 per share when the No.2 Intermediate Court ruled on the objection to enforcement. Therefore, Zehuijin Center's statement that the price of the stocks involved in the case continued to show a downward trend is inconsistent with the objective facts. Moreover, calculations conducted based on the price claimed by the claimant for review and any of the above-mentioned prices anticipate no situation where the enforceable creditor's rights cannot be realized. Finally, the matter of performance compensation between Liu Yingkui and Zhongjia Bochuang has nothing to do with Zehuijin Center's compensation through enforcement. Regardless of whether Liu Yingkui bears the performance compensation liability to Zhongjia Bochuang, Zehuijin's realization of its creditor's rights through the frozen stocks will not be affected. In addition, Zehuijin Center claimed that Liu Yingkui's total debts were constantly increasing, and the stocks involved in the case were not enough to cover the debt but did not provide any calculation process or calculation basis to prove it. The factual ground is insufficient. 3. The respondent believes that the ruling of (2021) Jing 02 Zhiyi No. 317 has clearly identified the facts and applied the law correctly and should be maintained.

After review, this court confirmed the facts ascertained by Beijing No.2 Intermediate Court.

The court also found that Hebei Yufeng Real Estate Assets Appraisal Co., Ltd. was entrusted by Beijing No. 2 Intermediate People's Court to evaluate the 66,185,136 shares of Zhongjia Bochuang held by Liu Yingkui (circulation type: restricted tradable shares after IPO - listing). The assessment base date is 30 September 2021. On 1 November 2021, Hebei Yufeng Real Estate Assets Appraisal Co., Ltd. produced the "Asset appraisal report on Zhongjia Bochuang stocks (stock code 000899) proposed to be disposed of by Beijing No. 2 People's Intermediate Court" (Yu Feng Ping Bao Zi [2021] No. 101). According to the report, the market value of the aforementioned stock is RMB213,778,000. The closing price of the stock involved in the case (Zhongjia Bochuang stock) on 16 December 2021 was RMB3.98 per share. Based on the closing price, the market value of the 7,024,426 unrestricted tradable shares first frozen by Beijing No.2 Intermediate Court was RMB 27,957,215.48.

This court believes that the focus of the dispute of this case is whether the value of the stock frozen by Beijing No.2 Intermediate Court is sufficient to cover the debt under enforcement. In this case, the enforceable amount of debt is the sum of RMB 152.68 million, the corresponding liquidated damages, and the interest for delayed payment. The current market value of the Zhongjia Bochuang stock first frozen by Beijing No. 2 Intermediate Court is about RMB 241.7352 million. Despite the fluctuations in the stock market, the price of the frozen stocks is sufficient to pay off the debt under enforcement. Beijing No.2 Intermediate Court lifted the seizure of Liu Yingkui's other properties on legal grounds. Regarding the issue that Zhongjia Bochuang Company may take back and cancel the 24,519,471 shares held by Liu Yingkui, it boils down to the fact that Liu Yingkui may be liable for compensation to Zhongjia Bochuang Company due to the performance compensation commitment. Although Liu Yingkui and Zhongjia Bochuang Company agreed that the compensation liability could be realized in the way that Zhongjia Bochuang Company takes back and cancels the stocks held by Liu Yingkui, Zhongjia Bochuang Company did not enjoy the priority of compensation for the corresponding stocks because of this agreement. In addition, how much compensation Liu Yingkui should bear has not yet been finally confirmed in the arbitration, so the possibility that the stocks held by Liu Yingkui may be withdrawn and canceled cannot fully support the statement that the value of the frozen stocks is not enough to settle the debt under enforcement. With regard to the possible increase in the amount of the debt to be enforced over time, the claimant for enforcement may apply to the People's Court for another freezing order when the amount of the debt to be enforced is close to the value of the frozen stock. To sum up, in accordance with Section 1(1) of Article 23 of the "Provisions of the People's Supreme Court on the People's Courts' Handling of Enforcement Objections and Reviews," the ruling was delivered as follows:



The review application of Shenzhen Zehuijin Investment Center (Limited Partnership) shall be rejected, and the enforcement ruling (2021) Jing 02 Zhi Yi No. 317 of Beijing No.2 People's Intermediate Court shall be upheld.

This ruling shall be final.

Presiding Judge: Wang Feng

Judge: Qi Lixin

Judge: Yu Mingyi

*[The Seal of the People's High Court of Beijing]*

30 December 2021

Judge's Assistant: Wang He

Court Clerk: Li Yan

*[The document is the same as the original.]*





**Business Linguistics, Inc**
*Specialized Language Services*
www.businesslinguistics.com

Business Linguistics, Inc. certifies that the below listed translated document is a true translation of the Chinese source document.

The translation was proofread as well as edited for accuracy, fluency and screened for possible errors by one of our professional proofreaders/editors experts in both the English and Chinese languages as well as pertinent industry terminology.

Business Linguistics, Inc. certifies that it is a true and correct translation from the submitted document(s).

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

# The High People's Court of Beijing Municipality
# Enforcement Ruling Dated December 30th, 2021

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Certification is executed by public notary on the date stated below.

Date: Apil 30, 2024

Signed:

Position: Project Manager

Date: 04/30/24

Signed:

Position:

Notary Public, Dekalb County, GA
My Commission Expires 11/16/24

2694 Brook Park Way
Atlanta, GA 30340

404.892.9666

# 北京市高级人民法院
## 执行裁定书

（2021）京执复 315 号

复议申请人（申请执行人）：深圳市泽汇金投资中心（有限合伙），主要经营场所广东省深圳市前海深港合作区南山街道桂湾片区二单元前海卓越金融中心（一期）8 号楼 2305。

执行事务合伙人：蒲罡。

委托诉讼代理人：岳登攀，山东环周（威海）律师事务所律师。

委托诉讼代理人：丁雨荷，山东环周（威海）律师事务所律师。

被执行人：刘英魁，男，▆▆▆▆▆▆▆▆▆出生，汉族，住北京市东城区东直门外小街甲 2 号 1 单元 2002 号。

委托诉讼代理人：王力一，北京市金杜律师事务所律师。

委托诉讼代理人：毕元博，北京市金杜律师事务所律师。

复议申请人深圳市泽汇金投资中心（有限合伙）（以下简称泽汇金中心）不服北京市第二中级人民法院（以下简称北京二中院）作出的（2021）京 02 执异 317 号执行裁定，向本院申请复议。本院受理后，依法组成合议庭进行审查，现已审查终结。

北京二中院在执行泽汇金中心与刘英魁一案[执行案号：（2021）

1

京 02 执 669 号]过程中，刘英魁向该院提出执行异议。请求解除对刘英魁名下招商银行 6231360166080909、5240111109080907、002751155084_00008、6225800101908415、6226090110560147、001003242139_00002 账户，中信银行 6217680713799588、6217680713799588_000001、6217730713882783_000001 账户，建设银行 6217000010168464884、6227000013850181484_156_1、6227000063645459117_156_1、4367420730200918053_156_1、4367420011810519668_156_1 账户，工商银行 9558880200004349238、0200095801005421151、6222370036104699 账户，光大银行 6226630202320767、35380166005420484 账户，农业银行 6228480019046853677、9559980014389826117 账户，民生银行 0117014430617444 账户、交通银行 60142883712168203、6222600910051527818 账户，北京银行 6029693026910907_001 账户，浦发银行 9407006660140003618 6 账户（以下简称案涉账户）采取的冻结措施。

北京二中院查明，泽汇金中心与刘英魁一案，北京仲裁委员会于 2021 年 3 月 22 日作出（2021）京仲裁字第 0673 号裁决书，裁决："（一）被申请人（刘英魁，下同）向申请人（泽汇金中心，下同）返还借款本金 140 000 000 元；（二）被申请人向申请人支付借款利息 11 200 000 元；（三）被申请人向申请人支付以 140 000 000 元为基数，按照每日万分之五的利率计算，自 2020

2

年 7 月 10 日起至实际支付之日止的违约金；（四）被申请人向申请人支付律师费 400 000 元；（五）本案仲裁费 1 351 207.84 元（含仲裁员报酬 773 986.75 元、机构费用 577 221.09 元，已由申请人向本会全部预交），由申请人承担 20% 即 270 241.57 元，由被申请人承担 80% 即 1 080 966.27 元，被申请人直接向申请人支付申请人代其垫付的仲裁费 1 080 966.27 元；（六）驳回申请人的其他仲裁请求。"上述仲裁裁决发生法律效力后，泽汇金中心向北京二中院申请强制执行，该院于 2021 年 5 月 6 日立案执行，案号为（2021）京 02 执 669 号，2021 年 5 月 8 日该院作出（2021）京 02 执 669 号执行通知书并向被执行人刘英魁进行了送达。后该院作出（2021）京 02 执 669 号执行裁定书，裁定："一、冻结、划拨被执行人刘英魁存款人民币一亿五千二百六十八万零九百六十六元二角七分。二、冻结、划拨被执行人刘英魁应支付的违约金（以人民币一亿四千万元为基数，按照每日万分之五的利率计算，自二〇二〇年七月十日起至实际支付之日止）。三、冻结、划拨被执行人刘英魁应加倍支付迟延履行期间的债务利息。四、冻结、划拨被执行人刘英魁应负担的执行费及执行中的实际支付费用。五、采取上述措施后仍不足以履行生效法律文书确定的义务，则依法查封、冻结、扣押、拍卖、变卖被执行人刘英魁应当履行义务部分的其它财产。"上述裁定书，已送达当事人。

执行过程中，北京二中院院冻结刘英魁名下招商银行6231360166080909、5240111109080907、002751155084_00008、

3

6225800101908415 、 001003242139_00002 账户，中信银行 6217680713799588、6217680713799588_000001 账户，建设银行 4367420011810519668_156_1 账 户 ， 工 商 银 行 0200095801005421151 、 6222370036104699 账户，光大银行 35380166005420484 账户，农业银行 9559980014389826117 账户，民生银行 0117014430617444 账户，交通银行 60142883712168203、6222600910051527818 账户，北京银行 6029693026910907_001 账户，浦发银行 94070066601400036186 账户。刘英魁异议申请中要求解除冻结的招商银行 6226090110560147 账户，中信银行 6217730713882783_000001 账户，建设银行 6217000010168464884、6227000013850181484_156_1 、 6227000063645459117_156_1 、 4367420730200918053_156_1 账 户 ， 工 商 银 行 9558880200004349238 账户，光大银行 6226630202320767 账户，农业银行 6228480019046853677 账户该院并未冻结。

北京二中院另查明，该院于 2021 年 6 月 30 日向中国证券登记结算有限责任公司深圳分公司发出（2021）京 02 执 669 号协助执行通知书，冻结被执行人刘英魁持有的中嘉博创（证券代码为 000889）股票共计 8907.41 万股，其中初始冻结 0248898637 证券账户中的 7 024 426 股，流通类型为无限售流通股；初始冻结 0105094464 证券账户中的 66 185 136 股，流通类型为首发后限售股；轮候冻结 0248898637 证券账户中的 10 851 885 股，流通类

4

型为无限售流通股。上述冻结期限均为 2021 年 6 月 30 日至 2024 年 6 月 29 日。

　　北京二中院认为，《最高人民法院关于人民法院民事执行中查封、扣押、冻结财产的规定（2020 年修正）》第十九条规定，"查封、扣押、冻结被执行人的财产，以其价额足以清偿法律文书确定的债权额及执行费用为限，不得明显超标的额查封、扣押、冻结。发现超标的额查封、扣押、冻结的，人民法院应当根据被执行人的申请或者依职权，及时解除对超标的额部分财产的查封、扣押、冻结，但该财产为不可分物且被执行人无其他可供执行的财产或者其他财产不足以清偿债务的除外。"依据该院作出的（2021）京 02 执 669 号执行裁定，本案执行标的额为 152 680 966.27 万元及违约金、加倍支付迟延履行期间的债务利息等。被执行人刘英魁持有的中嘉博创（证券代码为 000889）股票共 8907.41 万股，其中初始冻结 7 024 426 股（流通类型为无限售流通股）、初始冻结 66 185 136 股（流通类型为首发后限售股）、轮候冻结 10 851 885 股（流通类型为无限售流通股）。上述股票价值应当以冻结前一交易日收盘价为基准，结合股票市场行情，一般在不超过 20% 的幅度内合理确定。该院冻结时前一交易日中嘉博创无限售流通股收盘价为 4.07 元，异议裁定作出时中嘉博创无限售流通股收盘价为 3.39 元，优先受偿债权扣除后，该院冻结的刘英魁名下案涉股票的价值可覆盖刘英魁所欠泽汇金中心的债务。执行中要强化善意文明执行理念，在依法保障胜诉当事人合

5

法权益同时，最大限度减少对被执行人权益影响，实现法律效果与社会效果有机统一，维护社会公平正义，促进社会和谐稳定。在已冻结案涉股票的价值可覆盖刘英魁所欠泽汇金中心债务的情况下，继续冻结被执行人刘英魁名下银行账户，不利于维护刘英魁正常的生活、经营活动。依照《中华人民共和国民事诉讼法》第二百二十五条、《最高人民法院关于人民法院办理执行异议和复议案件若干问题的规定（2020 修正）》第十七条第二项、《最高人民法院关于人民法院民事执行中查封、扣押、冻结财产的规定（2020 年修正）》之规定，裁定撤销该院对刘英魁名下招商银行 6231360166080909、5240111109080907、002751155084_00008、6225800101908415、001003242139_00002 账户，中信银行 6217680713799588、6217680713799588_000001 账户，建设银行 4367420011810519668_156_1 账户，工商银行 0200095801005421151、6222370036104699 账户，光大银行 35380166005420484 账户，农业银行 9559980014389826117 账户，民生银行 0117014430617444 账户，交通银行 60142883712168203、6222600910051527818 账户，北京银行 6029693026910907_001 账户，浦发银行 9407006660140036186 账户的冻结。

泽汇金中心向本院申请复议称，请求依法撤销北京二中院作出的（2021）京 02 执异 317 号执行裁定。事实与理由：首先，股票价格具有波动性较大的特点，刘英魁的股票在本次冻结时（2021 年 6 月 29 日）无限售流通股收盘价为 4.07 元，在二中院作出裁

6

定时（2021 年 8 月 16 日）为 3.39 元，在复议申请人提出复议时（2021 年 9 月 2 日）为 3.07 元，价格持续大幅下跌。其次，根据中嘉博创的公告，刘英魁主动向中嘉博创提起重大仲裁事项，中嘉博创股票价格下跌与刘英魁本人的行为也有重大直接关联。再次，根据中嘉博创的公告，刘英魁已经触发了该公司的业绩补偿承诺，按照约定中嘉博创可收回注销刘英魁 24 519 471 股股票。最后，刘英魁未履行执行债务，应当加倍支付迟延履行期间的债务利息，基于债务基数较大，刘英魁的债务总额将不断增加，在此情况下，经保全刘英魁的股票不足以确保完全实现复议申请人的债权。

刘英魁答辩称，泽汇金中心的复议申请缺乏事实基础和法律依据，请求依法裁定驳回复议申请。事实与理由：一、北京二中院冻结的刘英魁股票足以覆盖全部债权。本案明确的执行标的为 152 680 966.27 元，北京二中院已于 2021 年 6 月 21 日划拨刘英魁银行存款 2 747 577.2 元，即便在剩余债权 149 933 409.07 元的基础上上浮 20%，北京二中院冻结股票的价额也不应超过 179 920 090.88 元。但根据北京二中院冻结案涉股票前一交易日（2021 年 6 月 29 日）的收盘价计算，北京二中院冻结的股票价值高达 297 962 917.34 元，足以覆盖本案执行标的。二、泽汇金中心关于仅查封刘英魁所持股票不能完全实现执行债权的主张缺乏事实与法律依据。首先，根据最高人民法院《关于在执行工作中进一步强化善意文明执行理念的意见》的规定，冻结股票的价值

7

应以采取冻结措施前一交易日的股票收盘价确定。如前所述，北京二中院冻结股票的价值已经远超执行标的。其次，刘英魁关于案涉股票价值呈下跌趋势的观点缺少事实基础。截至 2021 年 11 月 17 日，中嘉博创收盘价为 3.43 元/股。在此期间，中嘉博创还一度触及 3.54 元/股，显著高于二中院作出执行异议裁定时的 3.39 元/股。因此，泽汇金中心关于案涉股票的价额持续呈现下跌趋势与客观事实不符。并且，无论按照复议申请人主张的价格，还是上述任何价格计算，都不存在执行债权无法实现的情况。最后，刘英魁同中嘉博创之间的业绩补偿事宜与泽汇金中心在执行案件中能否受偿无关。无论刘英魁对中嘉博创是否负担业绩补偿责任，都不影响泽汇金中心通过冻结的股票实现债权。此外，泽汇金中心主张刘英魁的债务总额呈不断增加，案涉股票不足以覆盖债权，但未提供任何计算过程及计算依据予以证明，缺乏事实依据。三、答辩人认为（2021）京 02 执异 317 号裁定认定事实清楚，适用法律正确，裁定结果应予维持。

本院经审查，对北京二中院查明的事实予以确认。

本院另查明，河北玉峰房地产资产评估有限公司受北京二中院委托，对刘英魁持有的 66 185 136 股中嘉博创股票（流通类型：首发后限售股-上市）进行了评估，评估基准日为 2021 年 9 月 30 日。2021 年 11 月 1 日，河北玉峰房地产资产评估有限公司出具《北京市第二中级人民法院拟执行中嘉博创（股票代号 000899）处置项目资产评估报告》（玉峰评报字[2021]第 101 号），根据该报

8

告，上述股票市场价值为 21 377.80 万元。案涉股票（中嘉博创）2021 年 12 月 16 日的收盘价为 3.98 元/股。根据该收盘价计算，北京二中院首先冻结的 7 024 426 股无限售流通股的市场价值为 27 957 215.48 元。

本院认为，本案的争议焦点为北京二中院冻结的股票价值是否足以覆盖执行债权的金额。本案中，执行债务金额约为 15 268 万元及相应违约金和迟延履行利息，北京二中院首先冻结的中嘉博创股票的当前市场价值约为 24 173.52 万元。即便考虑到股票市场波动情况，冻结股票的变价款亦足以清偿执行债务，北京二中院解除对刘英魁其他财产的查封于法有据。关于中嘉博创公司可能收回注销刘英魁持有 24 519 471 股股票问题，实际系刘英魁因业绩补偿承诺可能对中嘉博创公司承担补偿责任。虽然刘英魁与中嘉博创公司约定该补偿责任可以通过中嘉博创公司收回注销刘英魁持有股票的方式实现，但中嘉博创公司并不因该约定而对相应股票享有优先受偿的权利。加之刘英魁究竟应当承担多少补偿责任尚未经仲裁最终确认，故刘英魁持有的股票可能被收回注销，并不足以证明已冻结股票的价值不足以清偿执行债务。关于执行债务金额可能随时间经过而增加问题，申请执行人可以在执行债务金额接近冻结股票价值的情况下，再向人民法院申请追加冻结。综上，依照《最高人民法院关于人民法院办理执行异议和复议案件若干问题的规定》第二十三条第一款第一项之规定，裁定如下：

9

驳回深圳市泽汇金投资中心（有限合伙）的复议申请，维持北京市第二中级人民法院（2021）京02执异317号执行裁定。

本裁定为终审裁定。

审　判　长　　王　　峰

审　判　员　　齐立新

审　判　员　　禹明逸

二〇二一年十二月三十日

法官助理　　王　　赫

书　记　员　　李　艳

10

# EXHIBIT G



# EXHIBIT H

# Civil complaint

**Plaintiff: Beijing Sinowel Communication Technology Co., Ltd.**

Address: Room A-3206,2nd Floor, Building 3, No.30 Shixing Street, Shijingshan District, Beijing

Legal Representative: Jijun Li          Title: Manager

### Defendant 1: Ningbo Zhenrong Equity Investment Partnership (Limited Partnership)

Address: Room 504, 1st Floor, Building B, No.88, 76 Shounan West Road, Yinzhou District, Ningbo City, Zhejiang Province

Executive Partner: Jian Zhang

Contact: ▮▮▮▮▮▮

### Defendant 2: Yingkui Liu (ID No.: ▮▮▮▮▮▮▮▮ )

Address: Suite 2002, Unit 1, No. Jia 2, Dongzhimenwai Xiaojie, Dongcheng District, Beijing

Gender: ▮▮▮

Ethnicity: ▮▮▮

Date of Birth: ▮▮▮▮▮

Contact: ▮▮▮▮▮

### Third Party: Shenzhen Zehuijin Investment Center (Limited Partnership)

Address: Suite 2305, Building 8, Qianhai Zhuoyue Financial Center (Phase I), Unit 2, Guiwan Area, Nanshan Street, Shenzhen Qianhai Shenzhen-Hong Kong Cooperation Zone

Managing Partner: Gang Pu    ID No ▮▮▮▮▮▮

Contact: ▮▮▮▮

### Subject matter: Contract dispute

### Claims:

1. Request the People's Court to order Defendant 1, Ningbo Zhenrong Equity Investment Partnership (Limited Partnership), to pay the plaintiff liquidated damages from

January 27, 2018, until the actual performance of the contractual obligations is completed. The liquidated damages are temporarily calculated as RMB 48,448,800.00 as of March 20, 2024, and the calculation standard is based on 0.06% per day;

2. Request the People's Court to order Defendant 1, Ningbo Zhenrong Equity Investment Partnership (Limited Partnership), to compensate the plaintiff for losses and expenses of RMB 5,000,000.00;

3. Request the People's Court to order the Third Party Shenzhen Zehuijin Investment Center (Limited Partnership), to bear joint and several liability for the first and second litigation claims;

4. Defendant 1 and the Third Party Shenzhen Zehuijin Investment Center (Limited Partnership), shall bear the litigation fees in this case.

**Facts and reasons:**

The plaintiff and Defendant 1 and 2 signed the Investment Agreement in December 2017, stipulating that Defendant 1 shall perform the contractual obligation of contributing 120 million Yuan within 20 working days from the date of signing this Agreement. Defendant 1 performed the investment obligation of the Investment Agreement to the plaintiff on December 22, 2017, by remitting 120 million Yuan into the plaintiff's account and issued the "Letter of Commitment" on January 23, 2018, clarifying that the 120 million Yuan paid by the defendant to the plaintiff on December 22, 2017, was the capital contribution obligation in the "Investment Agreement." Based on the Investment Agreement and the commitments of Defendant 1, the plaintiff performed the agreed contractual obligations per the Investment Agreement. However, it was not until mid-to-late April 2021 that the plaintiff learned the fact that Defendant 1 submitted evidence to the Beijing Arbitration Commission, namely the "Explanation," denying that the 120 million Yuan paid by Defendant 1 to the plaintiff on December 22, 2017, was a performance of the obligations under the Investment Agreement, and acknowledging that the 120 million Yuan payment was a loan obligation performed for Defendant 2 on behalf of the Third Party. This led the

Beijing Arbitration Commission to issue the (2021) Beijing Arbitration Zi No.0673 Arbitration Award, which determined that the Third Party owned the 120 million Yuan paid by Defendant 1 and that it was Defendant 1 performed the loan obligation in the Cooperation Agreement signed between the Third Party and Defendant 2, for Defendant 2 and on behalf of the Third Party.

Based on the above, although the plaintiff determined that the 120 million Yuan paid by Defendant 1 on December 22, 2017, was the performance of the capital contribution obligation of the Investment Agreement, and the commitment of Defendant 1 had legal effect, the dishonesty of Defendant 1, as well as the breach of the guarantee obligation in Article 5 of the Investment Agreement and the contractual obligation of the Investment Agreement, constituted a malicious breach and intentional breach of contract, which was of a very bad nature, caused confusion in the legal relationship between the parties and affected the realization of the purpose of the contract. Therefore, it should bear the liability for breach of contract and should bear the liability for breach of contract and compensation to the plaintiff per the provisions of Article 7 of the Investment Agreement. Therefore, we request the People's Court to support the plaintiff's lawsuit and safeguard the plaintiff's legitimate rights and interests according to law.

To:

Beijing Chaoyang District People's Court

Document prepared by: Beijing Zhongtian Jiahua Communication Technology Co., Ltd.

*[Seal of Beijing Zhongtian Jiahua Communication Technology Co., Ltd.]*

Legal Representative: *[Jijun Li signature]*

March 21, 2024





**Business Linguistics, Inc**
*Specialized Language Services*
www.businesslinguistics.com

Business Linguistics, Inc. certifies that the below listed original documents are an exact, true, and correct translation of the submitted documents. These document translations were made by one of our official, certified public translators who is familiar with both the English and Chinese languages.

Furthermore, all documents were edited as well as proofread for accuracy, fluency and to screen for any other possible errors by a proofreader/editor familiar with both the English and Chinese languages as well as pertinent industry terminology.

Business Linguistics, Inc. certifies that it is a true and correct translation from the submitted document(s).

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

## Beijing Sinowel Communication Technology Co., Ltd.
## Civil Complaint

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Certification is executed by public notary on the date stated below.

Date: May 16, 2024

Signed:

Position: Project Manager

Date: 05/16/2024

Signed:

Position: NOTARY

Notary Public  Dekalb County
My Commission Expires 11/16/24

2694 Brook Park Way
Atlanta, GA 30340

404.892.9666

# 民 事 起 诉 状

**原告：**北京中天嘉华通信技术有限公司

住所： 北京市石景山区实兴大街30号院3号楼2层A-3206 房间

法定代表人：李吉军　　　　职务：经理

**被告一： 宁波臻荣股权投资合伙企业(有限合伙)**

住 所： 浙江省宁波市鄞州区首南西路88、76号Ｂ 幢1层504室

执行事务合伙人：张建

联系方式：▮▮▮▮▮▮▮▮

**被告二：刘英魁(身份证号：**▮▮▮▮▮▮▮▮▮

住 址： 北京市东城区东直门外小街甲2号1单元2002号

性别：▮▮　　民族▮▮▮　　出生日期：▮▮▮▮▮▮▮

联系方式：▮▮▮▮▮▮

**第三人：深圳市泽汇金投资中心(有限合伙)**

住所：深圳市前海深港合作区南山街道桂湾片区二单元前海卓越金融中心(一期)

8号楼2305

执行事务合伙人：蒲罡　　身份证号：▮▮▮▮▮▮▮▮

联系方式：▮▮▮▮▮▮

**案 由 ： 合同纠纷**

**诉讼请求：**

　　1、请求人民法院依法判令被告一宁波臻荣股权投资合伙企业(有限合伙)向

原告支付违约金自2018年1月27日起至实际履行合同义务完毕之日止，违约金暂

计于2024年3月20日止为人民币48,448,800.00元，计算标准为以1.2亿为基数每

日万分之六；

　　2、请求人民法院依法判令被告一宁波臻荣股权投资合伙企业(有限合伙)赔

偿原告损失及费用人民币5,000,000.00元；

3、请求人民法院依法判令第三人深圳市泽汇金投资中心(有限合伙)对第1项和第2项诉讼请求承担连带责任;

4、本案诉讼费由被告一和第三人深圳市泽汇金投资中心(有限合伙)承担。

**事实和理由:**

原告与被告一、被告二于2017年12月签订《投资协议》,约定被告一在签订本协议之日起20个工作日内履行出资1.2亿元的合同义务,被告一于2017年12月22日向原告履行该《投资协议》的出资义务,将1.2亿汇入原告账户内。并于2018年1月23日出具《承诺函》明确了被告一在2017年12月22日向原告支付的1.2亿是履行的《投资协议》中的出资义务。原告基于《投资协议》和被告一的承诺,按照《投资协议》履行了约定的合同义务。但在2021年4月中下旬才知道被告一在北京仲裁委员会审理的(2021)京仲裁字第0673号案件中,向北京仲裁委员会提交了一份证据即《说明》,否认了被告一在2017年12月22日向原告支付的1.2亿是履行《投资协议》中的出资义务,并认可该1.2亿的支付行为是代第三人向被告二履行的借款义务;导致北京仲裁委员会作出(2021)京仲裁字第0673号仲裁裁决书,裁决认定被告一所支付的1.2亿元是第三人享有所有权的款项,并且是被告一代第三人向被告二履行第三人与被告二签订的《合作协议书》中的借款义务。

基于上述内容,虽然原告认定被告一在2017年12月22日所支付的1.2亿元是履行的《投资协议》的出资义务,被告一的承诺具有法律效力;但被告一的不诚信行为、以及违反《投资协议》第五条陈述与保证中的保证义务和《投资协议》的合同义务,已构成恶意违约且故意违约行为,性质十分恶劣,造成多方当事人之间的法律关系混乱,影响了合同目的的实现,故应当承担违约责任,应当依据《投资协议》第七条的约定向原告承担违约责任和赔偿责任。故请求人民法院依法支持原告的诉讼请求,维护原告的合法权益。

此致

北京市朝阳区人民法院



具状人:北京中天嘉华通信技术有限公司

法定代表人:

2024年3月21日

1   YI-CHIN HO (CA SBN 204834)
2   yichin.ho@hugheshubbard.com
    HANNAH A. BOGEN (CA SBN 324294)
3   hannah.bogen@hugheshubbard.com
4   HUGHES HUBBARD & REED LLP
    1999 Avenue of the Stars, 9th Floor
5   Los Angeles, California  90067-4620
6   Telephone:  (213) 613-2800
    Facsimile:  (213) 613-2950
7
8   Attorneys for Petitioner
    Shenzhen Zehuijin Investment Center (Limited Partnership)
9

10              **UNITED STATES DISTRICT COURT**

11       **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

12

13  Shenzhen Zehuijin Investment Center     )  CASE NO. 3:24-cv-00372-MMA-DEB
    (Limited Partnership),                  )
14                                          )  [Assigned to Hon. Michael M. Anello]
                    Petitioner,             )
15                                          )  **PROOF OF SERVICE ON PETITION**
                                            )  **TO CONFIRM ARBITRATION**
16            v.                            )  **AWARD AND FOR ENTRY OF**
                                            )  **JUDGMENT ON RESPONDENT LIU**
17  Liu Yingkui, Zhang Xin,                 )  **YINGKUI**
                                            )
18                                          )
                    Respondents.            )
19

20
21
22
23
24
25
26
27
28

─────────────────────────────────────────────

# PROOF OF SERVICE

# BY PERSONAL DELIVERY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Shenzhen Zehuijin Investment Center (Limited Partnership)                      CASE NO. : 3:24-CV-00372-MMA-
                                                                               DEB

                                        **vs**                    *Petitioner*

Liu Yingkui, Zhang Xin


                                                                  *Respondents*

# AFFIDAVIT OF SERVICE

State of California }
County of San Diego } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of California.

That on **03/11/2024** at **9:35 AM** at **16978 Circa Del Sur, Rancho Santa Fe, CA 92067**

deponent served a(n) **Petition to Confirm Arbitration Award, Civil Cover Sheet, Memorandum of Points and Authorities in Support of Its Petition to Confirm Arbitration Award and for Entry of Judgment, Declaration of Pu Gang in Support of Petition to Confirm Arbitration Award with Exhibits A to L, Declaration of Hannah A. Bogen in Support of Petition to Confirm Arbitration Award with Supplemental Exhibits D to F**

on **Liu Yingkui**, respondent therein named,

by delivering thereat a true copy of each to **Jing Ya (Co-Tenant)** a person of suitable age and discretion. Said premises is respondent's dwelling place/usual place of abode within the state.

Attempted personal service on:
03/08/2024 at 7:00 PM – no answer at 16978 Circa Del Sur, Rancho Santa Fe, CA 92067
03/09/2024 at 7:10 AM – no answer at 16978 Circa Del Sur, Rancho Santa Fe, CA 92067

Description of Person Served:
Gender: Female
Skin: Asian
Hair: Black
Age: 36 - 50 Yrs.
Height: 5' 4" - 5' 8"
Weight:131-160 Lbs.
Other:   Spoke very little English


  Sworn to before me this
      day of March, 2024

                          SEE NOTARY
                          ATTACHMENT
   ---------------------------------
        NOTARY PUBLIC                                             Karla Fukuda
                                                          San Diego County Reg# 1842


Serving By Irving, Inc. | 18 East 41st Street, Suite 1600 | New York, NY 10017
New York City Dept. of Consumer Affairs License No. 0761160

ER-202

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Diego_

Subscribed and sworn to (or affirmed) before me on this 21 st day of _March_ , 2024, by _Karla Fukuda_ ,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

LYNN D. TRUDE
COMM. #2349020
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires MARCH 22, 2025

(Seal)                    Signature _Lynn D Trude_

**OPTIONAL**
Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _Affidavit of Service_

Document Date: _March 21, 2024_     Number of Pages: _1_

# PROOF OF SERVICE

# BY MAIL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
-----------------------------------------------------------------x    Case No. 3:24-cv-00372-MMA-DEB

Shenzhen Zehuijin Investment Center
(Limited Partnership),

                                        Petitioner,        AFFIDAVIT OF MAILING
                                                           VIA FIRST CLASS MAIL
                    against

Li Yingkui, Zhang Xin

                                        Respondents.
-----------------------------------------------------------------x

STATE OF NEW YORK        )
COUNTY OF NEW YORK       )    SS.:

    I, Ji Yang, being duly sworn depose and state that I am not a party in this action and I am

over the age of eighteen years and employed by Serving by Irving, Inc, 18 East 41st Street, Suite

1600, New York, NY 10017.

    On March 12, 2024, I served a **Petition to Confirm Arbitration Award, Civil Cover**

**Sheet, Memorandum of Points and Authorities in Support of It's Petition to Confirm**

**Arbitration Award and for Entry of Judgment, Declaration of Pu Gang in Support of**

**Petition to Confirm Arbitration Award with Exhibits A to L, Declaration of Hannah A.**

**Bogen in Support of Petition to Confirm Arbitration Award with Supplemental Exhibits**

**D to F** in the above entitled action, upon the respondent **Liu Yingkui** by mailing true copies of

the aforesaid documents, enclosed in a sealed, first-class post-paid envelope addressed to Liu

Yingkui, 16978 Circa Del Sur, Rancho Santa Fe, CA 92014, which I placed into the exclusive

care and custody of the United States Postal Service within New York State. The envelope bore

the legend "Personal and Confidential" and did not indicate by return address or

1

Serving By Irving, Inc. | 18 East 41st Street, Suite 1600 | New York, NY 10017
New York City Dept. of Consumer Affairs License No. 0761160

otherwise; that the communication is from an attorney or concerning a legal action against the

respondent.

Ji Yang

Sworn to before me this
๙ | day of March, 2024

Notary Public

DI CONG JIANG
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01JI0004030
Qualified In Queens County
Commission Expires 03/27/2027

2

Serving By Irving, Inc. | 18 East 41st Street, Suite 1600 | New York, NY 10017
New York City Dept. of Consumer Affairs License No. 0761160

**ER-206**

# PROOF OF SERVICE

# BY E-MAIL

1

**CERTIFICATE OF SERVICE**

2

Hannah Bogen, pursuant to 28 U.S. Code § 1746, hereby declares under penalty of perjury of

3

that (i) I am attorney duly admitted to practice law in California, (ii) I am counsel for Petitioner,

4

Shenzhen Zehuijin Investment Center (Limited Partnership), in the above-captioned action, and (iii) on

5

March 11, 2024 at 12:15PM I served a true and complete copy of the Petition to Confirm Arbitration

6

7

Award on Respondent, Liu Yingkui, by electronic mail at yingkuiliusg@gmail.com and

8

yingkui@sinowel.com.

_____
Hannah Bogen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

280822371_1

**ER-208**

1  YI-CHIN HO (CA SBN 204834)
   yichin.ho@hugheshubbard.com
2  HANNAH A. BOGEN (CA SBN 324294)
   hannah.bogen@hugheshubbard.com
3  HUGHES HUBBARD & REED LLP
   1999 Avenue of the Stars, 9th Floor
4  Los Angeles, California 90067-4620
   Telephone: (213) 613-2800
5  Facsimile: (213) 613-2950

6  Attorneys for Petitioner
   Shenzhen Zehuijin Investment Center (Limited Partnership)

7

8

9              **UNITED STATES DISTRICT COURT**

10        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11                              )
12  Shenzhen Zehuijin Investment Center    )  CASE NO. **'24 CV 0372 MMA DEB**
13  (Limited Partnership),                 )
                                           )  [Assigned to Hon. _____]
14                    Petitioner,          )
                                           )  **PETITION TO CONFIRM**
15           v.                            )  **ARBITRATION AWARD**
                                           )
16  Liu Yingkui, Zhang Xin,                )
17                                         )
                    Respondents.          )
18

19

20

21

22

23

24

25

26

27

28

---

Shenzhen Zehuijin Investment Center (Limited Partnership) ("SZIC"), by and through its undersigned attorneys, hereby respectfully petitions this Court for an order and judgment confirming a final, binding arbitration award issued in Beijing, China on March 22, 2021, against Respondents Liu Yingkui and Zhang Xin ("Respondents"). This Petition is supported by an accompanying Memorandum, the Declaration of Pu Gang dated February 22, 2024 (the "Gang Decl.") and all exhibits thereto, and any and all briefing and oral argument that may be heard on this matter. In support of this Petition, SZIC respectfully states as follows:

### NATURE OF THE PROCEEDING

1. This is a Petition pursuant to 9 U.S.C § 201 *et seq.* of the Federal Arbitration Act (the "FAA") and Article III of the 1958 Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), requesting that this Court (a) confirm and enforce the March 22, 2021 arbitration award (the "Award") issued by the Beijing Arbitration Commission (the "Tribunal" or "BAC") comprised of three arbitrators and constituted under the September 1, 2019 Arbitration Rules of the BAC; (b) issue a judgment in SZIC's favor against the Respondents as provided for in the Award; (c) award SZIC the costs of this confirmation proceeding; and (d) retain jurisdiction over this matter until such time as the Respondents have fully complied with the Award and the Court's orders.

2. The Award concluded BAC case number (2021) ZhongCaiZi ("J.Z.A.Z.") No. 0673 (the "Arbitration"), which resolved a dispute between SZIC and Respondent Liu Yingkui[1] in SZIC's favor. (*See* Gang Decl. ¶¶ 12-15; *Id.* Ex. D.)

3. SZIC respectfully requests that this Court confirm the Award and incorporate its terms into a judgment in its favor. SZIC also seeks to recover costs and fees associated with confirming the Award and any other and such further relief as

---

[1] To the extent "Respondent" is referred to in the singular form, SZIC refers to Respondent Liu Yingkui. "Respondents" plural refers to Liu Yingkui and Zhang Xin collectively.

1  this Court may find just and proper, and requests that the Court retain jurisdiction over

2  this matter until the Respondents have fully complied with the Award and the Court's

3  orders.

4  **PARTIES**

5      4.      SZIC is a Limited Partnership organized under the laws of the People's

6  Republic of China ("PRC"), with its principal place of business located at 2305, 8F,

7  QianHai Excellence Finance Centre, Phase I Unit 2 GuiWan Area, NanShan Sub-

8  District, QianHai ShenZhen-Hong Kong Cooperation Zone, (Suite 515 5/F Tsinghua

9  Information Harbor Research Building, Keyuan Road, Xili Street, Nanshan District),

10 Shenzen, Guangdong Provence.  (Gang Decl. ¶ 1.)

11     5.      SZIC is informed and believes, and on that basis alleges that Respondent

12 is an individual residing within the Southern District of California, with his primary

13 residence located at Room 2002, Unit 1, No. 2, DongzimenwaiXiaojieJia, Dongcheng

14 District, Beijing, is otherwise sui juris, and currently resides in San Diego County,

15 California.  (*Id.* ¶ 3.)  On information and belief, Respondent Zhang Xin is Liu

16 Yingkui's wife and resides with him in San Diego County, California.  (*Id.*; *see also*

17 Gang Decl. Ex B. pp. SZIC_00024-26 (acknowledging spousal consent to

18 transaction); Ex. C pp. SZIC_00042, SZIC_00079 (same).)

19 **JURISDICTION AND VENUE**

20     6.      SZIC's right to confirm the Award arises under the New York

21 Convention.  Chapter 2 of the FAA, 9 U.S.C § 201 *et seq.* codifies and applies the

22 New York Convention to award-recognition actions brought before the courts of the

23 United States.  *Id.*

24     7.      The Court has original subject matter jurisdiction over this action under 9

25 U.S.C § 203, which provides that "[t]he district courts of the United States...shall have

26 original jurisdiction over" any "action or proceeding falling under the Convention."

27 *Id.*  This proceeding falls under the New York Convention because it arises out of a

28 commercial dispute between parties that are not citizens of the United States.  *See* 9

2

PETITION TO CONFIRM ARBITRATION AWARD

1    U.S.C § 202 ("an arbitral award arising out of a legal relationship...which is

2    considered as commercial...falls under the Convention" unless the relationship is

3    "entirely between citizens of the United States…").  Moreover, the Award was made

4    in the PRC, which is a signatory and party to the New York Convention.

5         8.    28 U.S.C § 1331 also gives the Court subject-matter jurisdiction over this

6    proceeding, because this proceeding "is a civil action arising under the...laws, or

7    treaties of the United States."  *Id.*

8         9.    The Court has personal jurisdiction over the Respondents, as upon

9    information and belief, the Respondents currently reside in San Diego County,

10   California within the Southern District of California.  (Gang Decl. ¶ 3.)

11        10.   Venue is proper in this Court under 9 U.S.C § 204 and 28 U.S.C §

12   1391(b)(1) due to the fact that this a proceeding arising under the New York

13   Convention and the Respondents reside in this district.

<div align="center">

**FACTUAL BACKGROUND**

</div>

15   **A.    The Underlying Loans and Dispute**

16        11.   The dispute underlying the Arbitration and the Award itself, is rooted in a

17   lending agreement entered into by SZIC, Respondent, and Sinowel Communication

18   Technology Co., Ltd. in September 2017 (the "Loan Agreement").  (*See* Gang Decl.

19   Ex. A pp. SZIC_00017-18.)  Pursuant to the Loan Agreement, SZIC made a loan to

20   Respondent for 160,000,000 Yuan, which was to be used by Respondent to repurchase

21   and release the VIE structure of Beihing Sinowel Communication Technology Co.,

22   Ltd.  and Beijing Sinowel Asset Administration Co., Ltd. (collectively, the "Target

23   Company") (*Id.*; Gang Decl ¶ 2.)

24        12.   The Loan Agreement term was one year from the date of SZIC's first

25   payment on December 22, 2017.  (*Id.* ¶ 9.)

26        13.   If Respondent failed to repay SZIC pursuant to the Loan Agreement's

27   terms, liquidated damages with a 5% interest rate per day from the date of the overdue

28   payment would apply.  (*Id*. Ex, A p. SZIC_00019, subd. 3.2.2.)

<div align="center">

3

PETITION TO CONFIRM ARBITRATION AWARD

</div>

14. Section 4.2 of the Loan Agreement provides that any dispute between the parties was to be governed by the laws of China (except for Hong Kong Special Administration Region, Macau Special Administration Region, and Taiwan Region). (*Id.*, subd. 4.2.)

15. Section 4.2 of the Loan Agreement also states that if amicable negotiation failed to resolve a dispute arising out of the Loan Agreement, "any party shall have the right to file a lawsuit with [BAC], and the dispute shall be settled through arbitration in Beijing in accordance with the rules of [the BAC]." (*Id.*)

16. Also in 2017, SZIC, Respondent, and the Target Company entered into a Cooperation Agreement which states that when SZIC provides Respondent with the 160,000,000 Yuan pursuant to the Loan Agreement, SZIC's creditor's rights could be converted into equities and that, after converting into equities, Respondent should transfer 13.79% of the Target Company to SZIC which, after transfer is final, should fully settle the principal and interest paid pursuant to the Loan Agreement. (*Id.* ¶ 4; *Id.* Ex. B p. SZIC_00021.)

17. In December 2017, SZIC, Ningbo Zhenrong, and the Target Company entered into an Investment Agreement whereby Ningbo Zhenrong would loan 120,000,000 Yuan to the Target Company for one year, which would only need to be repaid at 8% interest if the equity conversion of the Target Company failed. (*Id.* ¶ 6; *Id.* Ex. C p. SZIC_00044.) In the same month, the same parties also drafted an Investment Memorandum which was designed to outline the relevant returns on investment and clarify the fund relationship between SZIC and Respondent (collectively, the "Investment Agreement and Memorandum"). (*Id.* pp. SZIC_00079-82.)

18. The dispute underlying the Arbitration and the Award itself is rooted in the Loan Agreement. Pursuant to the Loan Agreement, SZIC made a loan to Respondent for 160,000,000 Yuan (the "Loan"), which was to be used by Respondent to repurchase and release the VIE structure of the Target Company. (Gang Decl. ¶ 2;

*Id.* Ex. A p. SZIC_00019.)  The Loan term was one year from the first payment installment.  (*Id.* ¶ 9; *Id.* Ex. A.)  If Respondent did not pay back the Loan within that year, liquidated damages with a 5% interest rate per day from the date of the overdue payment would apply.  (*Id.*)

19.     The Loan was funded starting on December 22, 2017 in the amount of 120,000,000 Yuan, on April 17, 2018 in the amount of 10,000,000 Yuan, and on May 3, 2018 in the amount of 10,000,000 Yuan.  (Gang Decl. ¶ 10.)

20.     Payments pursuant to the Loan Agreement were paid both by SZIC individually and through third parties Ningbo Zhenrong Equity Investment Partnership (Limited Partnership) ("NZ") and FudingMusen Equity Investment Partnership (Limited Partnership) ("FM").  (*Id.*)  Using SZIC's funds, NZ and FM funded the Target Company as outlined and planned for in the Loan Agreement.  (*Id.*) As admitted by NZ and FM, accepted by the Tribunal, and as is clear from the Loan Agreement's terms, regardless of any third-party involvement in the transfer of the Loan funds, Respondent remained responsible for repayment of the Loan at all times. (*Id.* ¶ 4; *Id.* Ex. A p. SZIC_00019, subd. 4.2.)  On December 22, 2018, Respondent failed to perform the repayment liabilities outlined in the Loan Agreement.  (Gang Decl. ¶ 11.)

21.     As a result, on July 23, 2020, SZIC made arbitration claims against Respondent for 160,000,000 Yuan with an annual 8% interest rate for the 365-day loan period.  (*Id.* ¶ 12.)  Specifically, SZIC sought 140,000,000 Yuan for the borrowing period between December 22, 2017 to December 22, 2018, and interest thereon totaling 11,200,000 Yuan; the interest for the borrowing of 10,000,000 Yuan for the borrowing period from April 27, 2018 to December 22, 2017 which totaled 523,836 Yuan; and the interest for the borrowing of 10,000,000 Yuan for the period from May 3, 2018 to December 22, 2018 which totaled 510,685 Yuan.  (*See* Gang Decl. Ex. D p. SZIC_00046-47; Gang Decl. ¶ 12.)  In total, SZIC claimed 12,234,521 Yuan in interest associated with its payments pursuant to the Loan Agreement.  (*Id.*)

5

22.    SZIC also requested liquidated damages.  (*Id.*) Specifically, SZIC claimed 64,470,000 Yuan for the borrowing of 140,000,000 from December 22, 2017 to June 30, 2020 (the date of the past due payment), 3,795,000 Yuan for the borrowing of 10,000,000 from April 17, 2018 to June 30, 2020 (the date of past due payment); and 3,945,000 Yuan for the borrowing of 10,000,000 from May 3, 2018 to June 30, 2020 (the past due payment).  (*Id.*)  In total, SZIC claimed 72,390,000 Yuan in liquidated damages.  (*Id.*)[2]

23.    SZIC also sought 5,000 Yuan in preservation fees, 250,000 Yuan in guarantee fees, 500,000 Yuan in attorney's fees, and all arbitration fees associated with SZICs arbitration claim.  (*Id.*)

**B.    The Arbitration**

24.    The Arbitration was held on November 12, 2020 and was governed by the ordinary procedures contained within the Arbitration Rules of the BAC, as implemented on September 1, 2019.  (Gang Decl. ¶ 13; Gang Decl. Ex. D pp. SZIC_00045-46.).  The Tribunal tried the matter in accordance with the BAC Arbitration Rules and heard the parties' respective arguments, facts, and evidence.  (*Id.*)

25.    During the Arbitration, both parties stated their claims and the facts and grounds on which the claims and respective defenses were based.  (*See id.*)  Both parties testified and cross-examined the witnesses produced by them and expressed their arguments.  The Tribunal conducted the investigation and verification on the relevant issues in the case and both parties made final statements.  (*Id.*)

---

[2] During the arbitration, SZIC agreed to lower the liquidated damages claimed to 26,165,479 Yuan and apply a 5% liquidated damages rate from the date of the arbitration to the date of Respondent's payment, such that liquidated damages would not exceed 24% of the principal amount in the Loan Agreement, pursuant to relevant laws and regulations.  (*Id.* ¶ 8.)  SZIC also waived its claims for preservation and guarantee fees because none had occurred.  (Gang Decl. Ex. D p. SZIC_00048.)

6

26.     In short, SZIC's argument was that, on December 22, 2017, pursuant to the Loan Agreement, SZIC paid Respondent 160,000,000 Yuan which was to be repaid within one year, on December 22, 2018.  Because Respondent failed to repay the loan pursuant to the Loan Agreement, Respondent owed SZIC 160,000,000 Yuan, plus interest, liquidated damages, and all expenses and costs incurred as a result of Respondent's lack of repayment.  (Gang Decl. Ex. D pp. SZIC_00046-47.)

27.     Respondent denied liability for any repayment, claiming that the 160,000,000 Yuan was owed on behalf of separate entities including but not limited to the Target Company, NZ, and FM.  (Gang Decl. Ex. D pp. SZIC_00047-50.) [3]

28.     After a hearing was held on November 12, 2020, on March 22, 2021, the Tribunal ultimately found that Respondent was liable to SZIC under the Loan Agreement.  (Gang Decl. ¶¶ 13-15, Ex. D p. SZIC_00064.)

**C.     The Award**

29.     On March 22, 2021, the Tribunal ruled that Respondent owed SZIC the following: 140,000,000 Yuan, the principal pursuant to the Loan Agreement; 8% interest on that loan between December 22, 2017 and December 22, 2018 totaling 11,200,000 Yuan; liquidated damages for overdue payment on the principal loan of 140,000,000 Yuan at the rate of 5% per day to the date of actual settlement; lawyer's fees in the amount of 400,000 Yuan; and 80% of the arbitration fees in the amount of 1,080,966.27 Yuan.  (*Id.*)  Pursuant to the Tribunal's order, Respondent was to pay the above sums within 15 days of service of the Tribunal's March 22, 2021 award or the interest for the debt would be doubled for the delayed period.  (*Id.*)

30.     On May 8, 2021, the Court issued Enforcement Notice (2021) J 02 Z No. 669 and served it on Respondent and made an enforcement ruling requiring a freeze of 152,680,966.27 Yuan, all liquidated damages, doubled interest on Respondent's debt,

---

[3] The record suggests that Respondent entered into supplemental loan agreements using outside entities, including NZ and FM, to avoid personal liability for loan repayment pursuant to the Loan Agreement.  (*See* Gang Decl. Ex. D; Gang Decl. ¶ 6.)

7

1  and the actual expenses paid in the enforcement from June 2021 to June 2024 (the

2  "Enforcement Order"). (Gang Decl. ¶ 16.) The Enforcement Order further stated that

3  if the above sums were insufficient to fulfill Respondent's obligations, his other assets

4  would be sealed up, frozen, seized, auctioned, or sold off according to law. (*Id.*) This

5  ruling was served on Respondent.

6  **D.    Procedural History and Appeals**

7       31.    Respondent brought numerous legal challenges against the Award in the

8  PRC seeking to set aside the award and secure a non-enforcement order. Each of

9  Respondent's attempts to overrule or set aside the Tribunal's original Award was

10  rejected. (Gang Decl. ¶ 19.)

11      32.    On June 2, 2021, the Beijing Fourth Intermediate People's Court rejected

12  Respondent's attempts to revoke the arbitral award. (*See* Gang Decl. ¶ 20, Ex. E.)

13  Despite Respondent's claims, the Fourth Intermediate People's Court found no

14  evidence that the arbitration procedure somehow violated legal procedure, was not

15  based on a valid agreement to arbitrate, or that the statement of evidence was forged.

16  (*Id.*)

17      33.    On August 16, 2021, the Beijing Second Intermediate People's Court

18  rejected Respondent's requests to unfreeze his assets on the grounds that the method

19  of freezing his assets was unlawful because he did not receive the requisite notice.

20  (*See* Gang Decl. Ex. ¶ 22, Ex. F.) However, the court unfroze certain of Respondent's

21  bank accounts purely because the sale of his stocks and other freezing measures

22  satisfied the debts he owed to SZIC such that additional asset freezes were

23  unnecessary. (*Id.*)

24      34.    On September 9, 2021 the Beijing Second Intermediate People's Court

25  rejected Respondent's request for a non-enforcement order and, in turn, rejected his

26  arguments that the matter did not fall within the scope of an arbitration agreement, the

27  arbitration procedure violated legal procedure, and that the evidence on which the

28  Tribunal's award was based was falsified. (*See* Gang Decl. Ex. ¶ 24, Ex. G.)

35.   On April 12, 2022, Respondent applied to the Fourth Branch of the Beijing Municipal People's Procuratorate (the "Fourth Branch, People's Procuratorate") for a procuratorial order for civil supervision of the decision of the Fourth Intermediate Court; this application was rejected on November 15, 2022.  (*See* Gang Decl. ¶ 26, Ex. H.)

36.   On November 1, 2022, SZIC filed an application in HC/OA 725 of 2022 ("OA 725") to enforce the Award in Singapore pursuant to s 29(1) of the International Arbitration Act 1994 (2020 Rev Ed) (the "IAA").  (*See* Gang Decl. ¶ 28, Ex. I.)  On November 2, 2022, the Assistant Registrar granted the Enforcement Order.  (*Id.*)

37.   On December 14, 2022, Respondent filed SUM 4435 to set aside the Enforcement Order.  (*See* Gang Decl. ¶¶ 30-31, Ex. J.)  In his affidavit filed in support of his application, Respondent argued that the Enforcement Order should be set aside on the following grounds: (a) The Award had been fully and/or effectively satisfied in enforcement proceedings by SZIC in the PRC, including by way of freezing the Respondent's shares in the Listed Company; (b) The Award dealt with a difference not contemplated by, or not falling within the terms of, the submission to arbitration or contained a decision on the matter beyond the scope of the submission to arbitration (s 31(2)(*d*) IAA); (c) SZIC breached its duty of full and frank disclosure; and (d) The enforcement of the Award would be contrary to the public policy of Singapore (s 31(4)(*b*) IAA).  Respondent applied in the alternative to adjourn SZIC's application in OA 725 pursuant to s 31(5)(*a*) of the IAA until after his application to set aside or challenge the Award had been fully dealt with by the courts of the PRC (including by way of an application to the People's Procuratorate, and a potential protest to the Beijing High People's Court).  (*Id.*)

38.   On February 20, 2023, the General Division of the High Court of the Republic of Singapore dismissed Respondent's appeal of the Assistant Registrar's order denying his application to file a further affidavit related to his application to set

---

9

PETITION TO CONFIRM ARBITRATION AWARD

aside the Enforcement Order, and dismissed his application to set aside the Enforcement Order.  (*Id.*)

39.    On March 3, 2023, the High Court of the Republic of Singapore issued a judgment in SZIC's favor related to payment of the Tribunal's Award, ordering Respondent to pay all sums due.  (*See* Gang Decl. Ex. K.)

40.    On April 5, 2023, the High Court of the Republic of Singapore denied Respondent's appeal seeking to set aside any enforcement orders related to the Tribunal's Award.  (*See id.* Ex. L.)

41.    To date, Respondents have failed to pay all amounts due pursuant to the Award.  (Gang Decl. ¶¶ 11, 17.)

## ARGUMENT

42.    The Award is a well-reasoned award, issued by respected jurists in a proceeding in which all parties bound by the Award had a full and ample opportunity to participate.  (*See* Gang Decl. Exs. D-L.)

43.    The FAA provides that "[w]ithin three years after an arbitral award falling under the New York Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C § 207.  Given that the Award was rendered on March 22, 2021, this Petition to recognize and enforce the Award is timely under the FAA.  *Id.*

44.    Confirmation of the Award is governed by the New York Convention, as implemented by Chapter 2 of the FAA, 9 U.S.C § 201 *et seq.*  The Award is an "arbitral award arising out of a legal relationship...which is considered as commercial" and therefore it lands directly within the purview of the New York Convention.  *See* 9 U.S.C § 202.

45.    Under similar circumstances, this Court has previously held that an awards issued by the BAC were typically "very likely" to be confirmed because they "fall[] under the …New York Convention."  *Shanghai Lan Cai Asset Mgmt. Co., Ltd.*

*v. Jia Yueting*, No. 218CV10255SJOMRWX, 2018 WL 10151034, at *3 (C.D. Cal. Dec. 13, 2018).

46. According to the New York Convention and the FAA, a district court's role in reviewing an arbitral award is strictly limited.  9 U.S.C § 207.  The Ninth Circuit has reiterated this strictly limited role of the district courts, stating that "Section 207 of the FAA provides that a U.S. court shall confirm a foreign arbitral award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York Convention]."  *Shanghai Lan*, 2018 WL 10151034, at *4 (citing 9 U.S.C. § 207; *China Nat. Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004) (quotation marks omitted)).

47. Absent the existence of one of the specified grounds for refusal or deferral as enumerated in the New York Convention, an arbitral award must be recognized and enforced.  The grounds for refusal or deferral are:

1. The parties to the [arbitration] agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made (Article V(1)(a));

2. The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case (Article V(1)(b));

3. The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that

11

1          part of the award which contains decisions on matters submitted to

2          arbitration may be recognized and enforced (Article V(1)(c));

3       4.      The composition of the arbitral authority or the arbitral procedure

4          was not in accordance with the agreement of the parties, or, failing

5          such agreement, was not in accordance with the law of the country

6          where the arbitration took place (Article V(1)(d));

7       5.      The award has not yet become binding on the parties, or has been

8          set aside or suspended by a competent authority of the country in

9          which, or under the law of which, that award was made (Article

10         V(1)(e));

11      6.      The subject matter of the difference is not capable of settlement by

12         arbitration under the law of that country (Article V(2)(a)); or

13      7.      The recognition or enforcement of the award would be contrary to

14         the public policy of that country (Article V(2)(b)).  *See* 9 U.S.C. §

15         207; New York Convention Art. V.

16

17     48.    Here, none of the grounds above for refusal to recognize or enforce an

18 arbitral award are present.

19     49.    Specifically, (1) the plain language of Section 4.2 of the Loan Agreement

20 makes clear that certain disputes could be resolved by arbitration (Gang Decl. Ex. A p.

21 SZIC_00019, subd. 4.2), (2) all parties to the original Arbitration received proper

22 notice of, and participated in, the proceedings (*See* Gang Decl. Ex. D), (3) the Award

23 issued by the Tribunal fell squarely within the parameters of the Arbitration

24 proceedings because the Tribunal was composed by and followed the Rules of the

25 BAC, as was contemplated by the parties' Loan Agreement which included an

26 arbitration clause (*See* Gang Decl. Ex. A p. SZIC_00019 subd. 4.2; *See id.* Ex. D), and

27 there is no issue with respect to issues not submitted to Arbitration that cannot be

28 separated from those decided by the Tribunal (*Id.*), (4) the composition of the Tribunal

and its procedure was in accordance with the law of the country where the Arbitration took place (*Id.*), (5) the Arbitration is binding and was further enforced on May 8, 2021 (*Id.*; Gang Decl. ¶ 16), and has not been set aside in the PRC, or upon information and belief, in any other jurisdiction (*See* Gang Decl. Exs. E-L), (6) federal law in the United States permits enforcement of this Arbitration under the New York Convention, 9 U.S.C § 201 *et seq.*, and (7) the recognition or enforcement of the Tribunal's Award would not be contrary to public policy in California. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (endorsing "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce").

50.   The party opposing confirmation of an arbitral award under the New York Convention bears the burden of proving that such a ground for refusal exists and applies to the situation at hand. *See Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 836 (9th Cir. 2010) ("the [Respondent] has the burden of showing the existence of a New York Convention defense. The burden is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly." (internal citations omitted)). As evidenced by Respondent's numerous failed attempts to set aside the Tribunal's Award, Respondents cannot meet this burden. (*See* Gang Decl. Exs. E-L.)

51.   Based on the foregoing, the Award should be confirmed in all respects so that SZIC may seek enforcement of the Award and immediately receive the monetary sums it is entitled to receive.

## **COUNT I**

## **(CONFIRMATION OF AWARD UNDER 9 U.S.C § 207)**

52.   SZIC repeats, reaffirms, and incorporates by reference each and every preceding paragraph above as if fully set forth herein.

53.   The United States in a contracting party to the New York Convention, as is the PRC.

13

54.   The Award is governed by the New York Convention (as that treaty is made applicable in this proceeding under Chapter 2 of the FAA, 9 U.S.C § 201 *et seq.*) because the Award arises out of a commercial contract dispute between SZIC and Respondents, none of whom are citizens of the United States. *Id.* at § 202.

55.   Article IV of the New York Convention provides that the party applying for confirmation of an award "shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] or a duly certified copy thereof." *See* New York Convention Art. IV.  A duly authenticated copy of the Award, in Mandarin and English, is attached as **Exhibit D** to the Gang Declaration, and a duly authenticated copy of the Loan Agreement, in Mandarin and English, is attached to the Gang Declaration as **Exhibit A**, which sets forth the agreement to arbitrate between SZIC and Respondent pursuant to subdivision 4.2.  (*See* Gang Decl. Exs. A, D.)

56.   The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C § 202.

57.   Article 51 of the Rules of the BAC provides that the Award is "legally binding from the date on which it [was] made," and Respondent was required to "perform the award in accordance with the time limit for performance specified in the award", which was in this case, "within 15 days from the date of service of [the Award]." (*See* Gang Decl. ¶ 14, Ex. D p. SZIC_00064.)

58.   Respondent has not paid SZIC the amounts due and owing it under the Award.  (Gang Decl. ¶ 17.)  Article 51 of the Rules also authorizes judicial relief under precisely such circumstances: "[w]here any party fails to perform the award, the other party may apply to the competent court for enforcement."  BAC Rules Art. 51(2).

59.   9 U.S.C § 207 provides that, in an action to confirm an award that is governed by the New York Convention, a "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the

14

award specified in the said Convention." 9 U.S.C § 207.  The Ninth Circuit has reiterated this strictly limited role of the district courts.  "It is well-settled that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration..." *Balen v. Holland Am. Line Inc., 583 F.3d 647, 652 (9th Cir. 2009)* (internal citations omitted).

60.    This Petition is timely because it is filed within three years after the Award was issued.  9 U.S.C § 207.

61.    This Court has authority to confirm the Award under 9 U.S.C § 207, as it is a final award falling under the New York Convention insofar as it is "made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." New York Convention Art.  I, Sec. 1.

62.    No grounds for refusal or deferral of recognition or enforcement of the Award exist.  9 U.S.C § 207.

63.    Under 9 U.S.C § 207 and Article III of the New York Convention, this Petition is duly authorized and SZIC is entitled to an order confirming the Award. SZIC respectfully requests that the Court confirm the Award by entering judgment in its favor and against Respondents in the amount of the Award, plus any accrued post-award interest, in addition to the costs of this instant confirmation proceeding, and such other and further relief as may be just, proper and necessary in conformity with the Award.

## PRAYER FOR RELIEF

WHEREFORE, SZIC moves for an Order:

    A.    Confirming the Award made by the Commission assigned case no.: (2021) J.Z.C.Z. No. 0673 against the Respondents, as authorized by 9 U.S.C § 207;

1       B.    Awarding SZIC damages in an amount which includes the
2       principal pursuant to the Loan Agreement and additional interest
3       and liquidated damages according to proof;

4       C.    Entering judgment in favor of SZIC;

5       D.    Awarding SZIC its costs accrued in bringing this action for
6       confirmation;

7       E.    Maintaining this Court's jurisdiction over this matter until such
8       time as the Respondents have fully complied with the Award; and

9       F.    Awarding SZIC such other and further relief as may be just, proper
10      and necessary in conformity with the Award.

11

12    DATED:  February 26, 2024      YI-CHIN HO
13                              HANNAH A. BOGEN
                                  HUGHES HUBBARD & REED LLP

14

15                       By:_____
16                                Hannah A. Bogen
                                Attorneys for SZIC
17                 Shenzhen Zehuijin Investment Center
                        (Limited Partnership)

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF | SOUTHERN DISTRICT OF CALIFORNIA

### Form 1. Notice of Appeal from a Judgment or Order of a
### United States District Court

U.S. District Court case number: | 24-cv-00372-MMA-DEB

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: | 02/26/2024

Date of judgment or order you are appealing: | 09/10/2024

Docket entry number of judgment or order you are appealing: | 30; 31

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes    ○ No    ○ IFP was granted by U.S. District Court

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

Liu Yingkui

Is this a cross-appeal?  ○ Yes   ◉ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case?  ○ Yes   ◉ No

If yes, what is the prior appeal case number?

Your mailing address (if pro se):

City: | State: | Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** | /s/Anthony J. Dain    **Date** | 10/9/2024

*Complete and file with the attached representation statement in the U.S. District Court*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 1**                                                                 *Rev. 06/09/2022*

APPEAL,CLOSED

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:24−cv−00372−MMA−DEB

Shenzhen Zehuijin Investment Center v. Yingkui et al
Assigned to: Judge Michael M. Anello
Referred to: Magistrate Judge Daniel E. Butcher
 Case in other court:  USCA, 24−06215
Cause: 09:0201 Petition to Compel/Stay Arbitration under an
Insurance Contract

Date Filed: 02/26/2024
Date Terminated: 09/10/2024
Jury Demand: None
Nature of Suit: 896 Other Statutes:
Arbitration
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 02/26/2024 | 1 | PETITION TO CONFIRM ARBITRATION AWARD, against Zhang Xin, Liu Yingkui ( Filing fee $ 405 receipt number ACASDC−18618030.), filed by Shenzhen Zehuijin Investment Center. (Attachments: # 1 Civil Cover Sheet, # 2 Memo of Points and Authorities, # 3 Declaration of Pu Gang, # 4 Exhibit A − 2017−09 Loan Agreement, # 5 Exhibit B − 2017 Cooperation Agreement, # 6 Exhibit C − 2017−10 Investment Agreement and 2017−12 Memo, # 7 Exhibit D − 2021−03−22 Award, # 8 Exhibit E − 2021−06−02 Order, # 9 Exhibit F − 2021−08−16 Order, # 10 Exhibit G − 2021−09−09 Order, # 11 Exhibit H − 2022−11−15 Order, # 12 Exhibit I − 2022−11−03 Enforcement Order, # 13 Exhibit J − 2023−02−20 Order, # 14 Exhibit K − 2023−03−03 Order, # 15 Exhibit L − 2023−04−05 Order)<br><br>The new case number is 3:24−cv−372−MMA−DEB. Judge Michael M. Anello and Magistrate Judge Daniel E. Butcher are assigned to the case.(rxc) (anh). (Entered: 02/26/2024) |
| 02/26/2024 | 1 | Petition to Confirm Arbitration Award by Shenzhen Zehuijin Investment Center. (no document attached) (rxc) (anh). (Entered: 02/26/2024) |
| 03/04/2024 | 2 | SUPPLEMENTAL DOCUMENT by Shenzhen Zehuijin Investment Center re 1 Motion to Compel Arbitration Award,,, . (Attachments: # 1 Exhibit D − 2021−03−22 Award, # 2 Exhibit E − 2021−06−02 Order, # 3 Exhibit F − 2021−08−16 Order)(Bogen, Hannah) (aas). (Entered: 03/04/2024) |
| 03/28/2024 | 3 | Proof of Service on Petition to Confirm Arbitration Award and for Entry of Judgment on Respondent Liu Yingkui (Bogen, Hannah) (exs). (Entered: 03/28/2024) |
| 03/28/2024 | 4 | Proof of Service on Petition to Confirm Arbitration Award and for Entry of Judgment on Respondent Zhang Xin (Bogen, Hannah) (exs). (Entered: 03/28/2024) |
| 04/01/2024 | 5 | Joint MOTION for Extension of Time to File Answer re 1 MOTION to Compel *[Joint Motion and Stipulation to Extend Time to Respond to Initial Petition]* by Zhang Xin, Liu Yingkui. (Dain, Anthony)Attorney Anthony J Dain added to party Zhang Xin(pty:res), Attorney Anthony J Dain added to party Liu Yingkui(pty:res) (aas). (Entered: 04/01/2024) |
| 04/02/2024 | 6 | ORDER Granting 5 Joint Motion for Extension of Time. Zhang Xin answer due 4/16/2024; Liu Yingkui answer due 4/16/2024. Signed by Judge Michael M. Anello on 4/2/24. (aas) (Entered: 04/02/2024) |
| 04/15/2024 | 7 | Joint MOTION for Extension of Time to File Answer re 1 Motion to Compel Arbitration Award,,, *Second Joint Stipulation* by Zhang Xin, Liu Yingkui. (Dain, Anthony) (aas). (Entered: 04/15/2024) |
| 04/15/2024 | 8 | ORDER Granting 7 Joint Motion for Extension of Time. Zhang Xin answer due 5/1/2024; Liu Yingkui answer due 5/1/2024. Signed by Judge Michael M. Anello on 4/15/24. (aas) (Entered: 04/15/2024) |
| 04/30/2024 | 9 | RESPONSE in Opposition re 1 MOTION to Compel *; Memorandum of Points and Authorities in Support Thereof* filed by Zhang Xin. (Attachments: # 1 Objection To Declaration Of Pu Gang In Support Of Arbitration Award, # 2 Declaration in support of Xin's Opposition to Petitioner's Petition to Confirm Arb Award)(Dain, Anthony) |

| | | (aas). (Entered: 04/30/2024) |
|---|---|---|
| 04/30/2024 | 10 | Joint MOTION for Extension of Time to File Answer re 1 MOTION to Compel, 1 Motion to Compel Arbitration Award,,, by Liu Yingkui. (Dain, Anthony) (aas). (Entered: 04/30/2024) |
| 05/01/2024 | 11 | ORDER Granting 10 Joint Motion for Extension of Time. Liu Yingkui answer due 5/16/2024. Signed by Judge Michael M. Anello on 5/1/24. (aas) (Entered: 05/01/2024) |
| 05/16/2024 | 12 | RESPONSE in Opposition re 1 MOTION to Compel *To Confirm Arbitration Award, Cross−Motion To Dismiss The Petition For Lack Of Personal Jurisdiction, On The Grounds Of Forum Non Conveniens And For Failure To Join A Party; Request For Stay; Memorandum Of Points And Authorities In Support Thereof* filed by Liu Yingkui. (Attachments: # 1 Declaration of Ding Zhexuan In Support of Respondent Liu Yingkui's Opposition To Petitioner's Petition To Confirm Arbitration A Ward And Cross−Motion To Dismiss The Petition For Lack Of Jurisdiction, On The Grounds Of Forum Non Conveniens, And For Failure To Join A Party, # 2 Declaration of James M. Zimmerman In Support Of Respondent Liu Yingkuis Opposition To The Petition, Cross−Motion To Dismiss The Petition And Request For Stay, # 3 Declaration of Minmin Xie In Support Of Respondent Liu Yingkuis Opposition, Cross−Motion To Dismiss The Petition And Request For Stay, # 4 Respondent Liu Yingkuis Objection To Declaration Of Pu Gang In Support Of Arbitration Award, # 5 Declaration of Liu Yingkui In Support Of Respondent Liu Yingkuis Opposition To Petitioners Petition To Confirm Arbitration Award, Cross−Motion To Dismiss The Petition On The Grounds Of Forum Non Conveniens And For Failure To Join A Party And Request For Stay)(Dain, Anthony) (aas). (Entered: 05/16/2024) |
| 05/20/2024 | 13 | Minute Order Setting Briefing Schedule : Respondent Liu Yingkui has filed a 12 Response in Opposition to Petitioner's Petition to Confirm Arbitration Award and Cross−Motion to Dismiss or Stay. Responses to Yingkui's Cross−Motion due on or before **June 10, 2024**. Yingkui may then file a reply, if any, on or before **June 17, 2024**. Petitioner may also file a reply in support of its Petition on or before **June 17, 2024**. Upon completion of the briefing, the Court will take these matters under submission pursuant to Civil Local Rule 7.1.d.1. and issue a written ruling in due course. SO ORDERED by Judge Michael M. Anello on May 20, 2024.(no document attached) (kff) (Entered: 05/20/2024) |
| 05/31/2024 | 14 | Joint MOTION *and Stipulation for Extension of the Briefing Schedule* by Shenzhen Zehuijin Investment Center. (Attachments: # 1 Proposed Order)(Bogen, Hannah) (aas). (Entered: 05/31/2024) |
| 05/31/2024 | 15 | ORDER Granting 14 Joint Motion for Extension of Time. Signed by Judge Michael M. Anello on 5/31/24. (aas) (Entered: 05/31/2024) |
| 07/10/2024 | 16 | RESPONSE re 9 Response in Opposition to Motion, 12 Response in Opposition to Motion,,,,, filed by Shenzhen Zehuijin Investment Center. (Attachments: # 1 Declaration of Pu Gang in Support of Petitioner's Opposition to Respondent Liu Yingkui's Motion to Dismiss Petition to Confirm Arbitration Award, # 2 Declaration of Zhang Jian in Support of Petitioner's Opposition to Respondent Liu Yingkui's Motion to Dismiss Petition to Confirm Arbitration Award, # 3 Declaration of Yi−Chin Ho in Support of Petitioner's Omnibus Opposition to Respondent Liu Yingkui's Motion to Dismiss its Petition to Confirm the Arbitration Award and Request for Stay and its Reply in Support of its Petition)(Ho, Yi−Chin) (aas). (Entered: 07/10/2024) |
| 07/10/2024 | 17 | OBJECTION by Shenzhen Zehuijin Investment Center re 12 Response in Opposition to Motion,,,,, . (Ho, Yi−Chin) (aas). (Entered: 07/10/2024) |
| 07/10/2024 | 18 | RESPONSE re 12 Response in Opposition to Motion,,,,, filed by Shenzhen Zehuijin Investment Center. (Ho, Yi−Chin) (aas). (Entered: 07/10/2024) |
| 07/11/2024 | 19 | NOTICE *of Withdrawal of Attorney Hannah A. Bogen as Counsel for Petitioner* by Shenzhen Zehuijin Investment Center (Bogen, Hannah) (aas). (Entered: 07/11/2024) |
| 07/22/2024 | 20 | REPLY − Other re 16 Response − Other,,, *Respondent Liu Yingkuis Reply In Support of His Cross−Motion to Dismiss The Petition and Request for Stay* filed by Zhang Xin, Liu Yingkui. (Attachments: # 1 Declaration Supplemental Declaration of Liu Yingkui In Support of His Reply In Support of His Cross Motion to Dismiss and Request for |

| | | |
|---|---|---|
| | | Stay, # 2 Declaration Supplemental Declaration of Minimin Xie In Support of Respondent Liu Yingkuis Reply In Support of Cross Motion to Dismiss and Request for Stay, # 3 Declaration Declaration of Zhang Xin In Support of Respondent Liu Yingkuis Reply In Support of Cross Motion to Dismiss and Request for Stay)(Dain, Anthony)(mjw). (Entered: 07/22/2024) |
| 07/22/2024 | 21 | OBJECTION by Zhang Xin, Liu Yingkui re 16 Response − Other,,, *Respondent Liu Yingkuis Omnibus Objections To Decls Of Pu Gang, Zhang Jian And Yi Chin Ho In Support Of Petitioners Opposition To Respondent Liu Yinkguis Cross−Motion To Dismiss And Request For Stay And Petitioners Reply In Support Of Its Petition* (Dain, Anthony) (mjw). (Entered: 07/22/2024) |
| 07/22/2024 | 22 | RESPONSE re 17 Objection *Respondent Liu Yingkuis Response To Petitioners Omnibus Objections To Declarations Filed In Support Of Opposition To Petition And Cross−Motion To Dismiss And Request For Stay* filed by Zhang Xin, Liu Yingkui. (Dain, Anthony)(mjw). (Entered: 07/22/2024) |
| 07/22/2024 | 23 | Ex Parte MOTION for Leave to File *To File A Sur−Reply* by Zhang Xin, Liu Yingkui. (Attachments: # 1 Memo of Points and Authorities In Support Of Respondent Zhang Xins Ex Parte Motion For Leave To File A Sur−Reply, # 2 Declaration Of Anthony J. Dain In Support Of Respondent Zhang Xins Ex Parte Motion To File A Sur−Reply)(Dain, Anthony) (mjw). (Entered: 07/22/2024) |
| 07/23/2024 | 24 | ORDER Granting Ex Parte Motion for Leave to File Surreply (Doc. No. 23 ). Signed by Judge Michael M. Anello on 7/23/24. (jmo) (Entered: 07/23/2024) |
| 07/24/2024 | 25 | SUR−REPLY − re 24 Order on Motion for Leave to File Document *In Opposition To Petitioners Petition To Confirm Arbitration Award* filed by Zhang Xin. (Dain, Anthony) (aas). (Entered: 07/24/2024) |
| 07/26/2024 | 26 | DECLARATION re 16 Response − Other,,, *Supplemental Declaration of Yi−Chin Ho in Support of Petitioner's Omnibus Opposition to Respondent Liu Yingkui's Motion to Dismiss its Petition to Confirm the Arbitration Award and Request for Stay and its Reply in Support of its Petition* by Petitioner Shenzhen Zehuijin Investment Center. (Ho, Yi−Chin) (aas). (Entered: 07/26/2024) |
| 08/02/2024 | 27 | OBJECTION by Shenzhen Zehuijin Investment Center re 20 Reply − Other,, *to Supplemental Declarations of Liu YingKui in Support of his Reply in Support of his Cross Motion to Dismiss and Request for Stay*. (Ho, Yi−Chin) (aas). (Entered: 08/02/2024) |
| 08/02/2024 | 28 | RESPONSE re 21 Objection, *to Liu Yinkuis Omnibus Objections to Declarations of Pu Gang, Zhang Jian and Yi−Chi Ho in Support of Petitioner's Opposition to Respondent Liu Yinkuis Cross Motion to Dismiss and Request for Stay and Petitioner's Reply in Support of its Petition* filed by Shenzhen Zehuijin Investment Center. (Ho, Yi−Chin) (aas). (Entered: 08/02/2024) |
| 08/14/2024 | 29 | RESPONSE re 27 Objection *to Supplemental Declarations of Respondent Liu Yingkui in Support of His Reply in Support of His Cross Motion To Dismiss and Request For Stay* filed by Liu Yingkui. (Dain, Anthony) (aas). (Entered: 08/14/2024) |
| 09/10/2024 | 30 | ORDER Granting Petition to Confirm Arbitration Award; and [Doc. No. 1] Denying Cross−Motion to Dismiss or Stay [Doc. No. 12]. Signed by Judge Michael M. Anello on 9/10/2024. (bdc) (Entered: 09/10/2024) |
| 09/10/2024 | 31 | CLERK'S JUDGMENT. IT IS SO ORDERED AND ADJUDGED that the Court DENIES Respondent Lius cross−motion to dismiss or stay and GRANTS the Petition. The Court CONFIRMS the Award. The case is hereby closed.(All non−registered users served via U.S. Mail Service)(bdc) (Entered: 09/10/2024) |
| 09/24/2024 | 32 | BILL OF COSTS submitted by Petitioner Shenzhen Zehuijin Investment Center in the amount of $ 5,084.06. Hearing set for 10/14/2024 at 10:30AM. (Attachments: # 1 Declaration of Yi−Chin Ho in Support of Petitioners Bill of Costs with Exhibits A−C, # 2 Memorandum of Law in Support of Bill of Costs)(Ho, Yi−Chin) (aas). (Entered: 09/24/2024) |
| 09/24/2024 | 33 | NOTICE of Hearing − Bill of Costs, re 32 Bill of Costs, filed by Shenzhen Zehuijin Investment Center : Hearing set for 10/14/2024 at 10:30AM. Any opposition or |

| | | responsive pleading due 10/7/2024. All parties requesting to appear telephonically for this Bill of Costs hearing are directed to join on a conference call, then contact A. Hazard 619−557−6437 at the time of the hearing. (no document attached) (anh) (Entered: 09/24/2024) |
|---|---|---|
| 09/24/2024 | 34 | NOTICE of Reschedule Hearing − Bill of Costs, re 33 Notice of Hearing − Bill of Costs, : Hearing set for 10/14/2024 is rescheduled to 10/21/2024 at 10:30AM. Any opposition or responsive pleading due 10/7/2024. All parties requesting to appear telephonically for this Bill of Costs hearing are directed to join on a conference call, then contact A. Hazard 619−557−6437 at the time of the hearing. (no document attached) (anh) (Entered: 09/24/2024) |
| 10/09/2024 | 35 | NOTICE OF APPEAL to the 9th Circuit as to 31 Clerk's Judgment, 30 Order on Motion to Compel by Liu Yingkui. ( Filing fee $ 605 receipt number ACASDC−19254740.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (Attachments: # 1 Notice of Representation)(Dain, Anthony) (mjw). (Entered: 10/09/2024) |
| 10/11/2024 | 36 | USCA Case Number 24−6215 for 35 Notice of Appeal to 9th Circuit, filed by Liu Yingkui. (Attachments: # 1 Attorney Appeal Case Opening, # 2 Pro Se Appeals Case Opening, # 3 Ninth Circuit Appellate Mentoring Program)(mjw) (Entered: 10/11/2024) |
| 10/11/2024 | 37 | USCA Time Schedule Order as to 35 Notice of Appeal to 9th Circuit, filed by Liu Yingkui. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court, provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 11/8/2024 (see Ninth Circuit Rule 10−3.1); Due date for filing of transcripts in US District Court is 12/9/2024.) (cc: Court Reporter). (mjw) (Entered: 10/11/2024) |
| 10/16/2024 | 38 | NOTICE of VACATED Hearing − Bill of Costs, re 32 Bill of Costs, filed by Shenzhen Zehuijin Investment Center. No opposition of responsive pleading filed by 10/7/2024 deadline. Thus, the Hearing set for 10/21/2024 at 10:30AM is VACATED. Order to follow. (no document attached) (anh) (Entered: 10/16/2024) |
| 10/31/2024 | 39 | Costs Taxed in amount of $5,084.06 against Liu Yingkui, Zhang Xin (anh) (Entered: 10/31/2024) |